John J. McLeod, Esq., State Bar No. 174169
john@mcleodlawgroup.com
Paul C. Hirst, Esq., State Bar No. 234460
pchirst@mcleodlawgroup.com
McLEOD LAW GROUP, A.P.C.
701 B Street, Suite 1570
San Diego, California 92101
Telephone: (619) 236-9938
Facsimile: (619) 236-9943

Attorneys for Plaintiff,
IRONWOOD COUNTRY CLUB

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| IRONWOOD COUNTRY CLUB,<br><br>            Plaintiff,<br>     v.<br><br>LIBERTY INSURANCE UNDERWRITERS, INC. and DOES 1 through 100,<br><br>            Defendants. | CASE NO. 13-00996-VAP (DTBx)<br><br>**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:  January 27, 2014<br>Hearing Time:  2:00 p.m.<br>Courtroom:      Hon. Virginia A. Phillips<br><br>Date Complaint Filed: May 1, 2013<br>Trial Date: August 5, 2014<br><br>Filed concurrently with:<br>   1. *Notice of Motion and Motion;*<br>   2. *Points and Authorities;*<br>   3. *Declaration of Bryan R. Gerstel;*<br>   4. *Declaration of Joshua Tanner;*<br>   5. *Declaration of Alan Lux;*<br>   6. *Declaration of Robert C. Manion;*<br>   7. *Declaration of John J. McLeod;*<br>   8. *Request for Judicial Notice; and*<br>   9. *[Proposed] Order.* |

Statement of Undisputed Facts ISO Ironwood's Motion for Partial Summary Judgment

Pursuant to L.R. 56-1 and Paragraph 4 of this Court's Standing Order in this matter, Plaintiff, Ironwood Country Club ("Ironwood"), respectfully submits the following statement of undisputed facts ("SUF") in support of its motion for partial summary judgment.

| Pl.'s SUF No. | Fact | Supporting Evidence |
| --- | --- | --- |
| 1. | In July 2011, Ironwood's General Manager and Chief Operating Officer, Joshua Tanner, began working with Ironwood's insurance broker, Alan Lux of Tanenbaum-Harber, to purchase a policy providing Directors & Officers Liability coverage for the policy period of October 1, 2011 to October 1, 2012. | Decl. of Joshua Tanner ¶¶ 3-4; Decl. of Alan Lux ¶¶ 4-5. |
| 2. | On or about October 5, 2011, Ironwood submitted to Liberty an "Application for Nonprofit Executive Advantage Policy" ("Liberty Application"). | Decl. of Joshua Tanner ¶ 5, Ex. 1; Decl. of Alan Lux ¶ 7. |
| 3. | Liberty thereafter issued a "Nonprofit Executive Advantage Policy" to Ironwood, policy number DOCH216747-211, for the policy period of October 1, 2011 to October 1, 2012 ("Policy"). | Decl. of Joshua Tanner ¶ 7, Ex. 2; Decl. of Alan Lux ¶ 9, Ex. 1. |
| 4. | In 1999, Ironwood's club members approved an assessment of $25,500 per member ("Assessment"). | Decl. of Robert C. Manion ¶ 3; Decl. of Joshua Tanner ¶ 8. |
| 5. | The Assessment was to be repaid to a member when they subsequently sold | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner |

1
Statement of Undisputed Facts ISO Ironwood's Motion for Partial Summary Judgment

| | | | |
|---|---|---|---|
| | | their membership. | ¶ 8. |
| | 6. | Members sold their memberships by placing them on a resale list. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. |
| | 7. | In addition to members selling their memberships, some members had forfeited their membership to the club rather than have it sold to an incoming member. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. |
| | 8. | The forfeited memberships became club property. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. |
| | 9. | The forfeited memberships that became club property were called Treasury memberships. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. |
| | 10. | For several years prior to 2010, Ironwood had a business practice of selling these Treasury memberships to incoming new members. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. |
| | 11. | Ironwood would then repay the Assessment to the forfeiting member when the Treasury sale occurred, which was usually years after the member forfeited it. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. |
| | 12. | For several years prior to 2010, Ironwood's Boards had been intermittently discussing the nature and terms of this business practice. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. |

| | | |
|---|---|---|
| 13. | In 2010, the Board was discussing the nature and terms of Ironwood's business practice of repaying the Assessment to a forfeiting member when the Treasury membership was sold. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. |
| 14. | In discussing whether or not to cease repaying the Assessment to forfeiting members, the Board consulted with many individuals, including Ironwood's counsel, Bryan Gerstel. | Decl. of Robert C. Manion ¶ 5; Decl. of Joshua Tanner ¶ 9. |
| 15. | Prior to January 2012, the matter of changing Ironwood's business practice of repaying the Assessment to forfeiting members was never presented to the Board for a vote. | Decl. of Robert C. Manion ¶ 5; Decl. of Joshua Tanner ¶ 9. |
| 16. | Prior to January 2012, Ironwood was not aware of any fact or circumstance that might give rise to a claim against Ironwood as a result of the Board considering making a change to Ironwood's practice of repaying the Assessment to forfeiting members. | Decl. of Robert C. Manion ¶¶ 5 and 8-9; Decl. of Joshua Tanner ¶¶ 9 and 12-13. |
| 17. | Prior to January 2012, the Board was not aware of any fact or circumstance that might give rise to a claim against the Board as a result of the Board considering making a change to Ironwood's practice of repaying the Assessment to forfeiting | Decl. of Robert C. Manion ¶¶ 5 and 8-9; Decl. of Joshua Tanner ¶¶ 9 and 12-13. |

3
Statement of Undisputed Facts ISO Ironwood's Motion for Partial Summary Judgment

| | | | |
|---|---|---|---|
| 1 | | members. | |
| 2-6 | 18. | On January 19, 2012, during a regularly-scheduled board meeting, the Board for the first time voted on whether to cease Ironwood's business practice of repaying the Assessment to forfeiting members. | Decl. of Robert C. Manion ¶ 6; Decl. of Joshua Tanner ¶ 10. |
| 7-9 | 19. | The Board voted to stop that business practice immediately. | Decl. of Robert C. Manion ¶ 6; Decl. of Joshua Tanner ¶ 10. |
| 10-16 | 20. | On January 24, 2012, the Board's President sent a letter to Ironwood's members summarizing the decisions that were made during the January 19, 2012 Board meeting, including the vote to stop repaying the Assessment to forfeiting members. | Decl. of Robert C. Manion ¶ 7, Ex. 1; Decl. of Joshua Tanner ¶ 11, Ex. 3. |
| 17-21 | 21. | On May 7, 2012, William S. Cobb, Jr. sent a letter to Ironwood regarding the Board's January 19, 2012 vote to stop repaying the Assessment to forfeiting members. | Decl. of Robert C. Manion ¶ 10, Ex. 2; Decl. of Joshua Tanner ¶ 14, Ex. 4. |
| 22-26 | 22. | Mr. Cobb's May 7, 2012 letter was the first claim of which Ironwood was aware regarding the January 19, 2012 vote to stop repaying the Assessment to forfeiting members. | Decl. of Robert C. Manion ¶ 10; Decl. of Joshua Tanner ¶ 14. |
| 27-28 | 23. | Ironwood forwarded Mr. Cobb's May 7, 2012 letter to its insurance broker, Mr. | Decl. of Joshua Tanner ¶ 15; Decl. of Alan Lux ¶ 10. |

| | | | |
|---|---|---|---|
| | | Lux. | |
| | 24. | On May 15, 2012, Mr. Lux caused Mr. Cobb's May 7, 2012 letter to be forwarded Liberty. | Decl. of Joshua Tanner ¶ 15; Decl. of Alan Lux ¶ 11. |
| | 25. | On May 16, 2012, Liberty acknowledged receipt of Mr. Cobb's claim. | Decl. of Joshua Tanner ¶ 15; Decl. of Alan Lux ¶ 12, Ex. 2. |
| | 26. | On August 21, 2012, Mr. Cobb filed a lawsuit against Ironwood regarding many of the same issues set forth in his May 7, 2012 demand letter. | Request for Judicial Notice ¶ 1, Ex. 1; Decl. of Joshua Tanner ¶ 16; Decl. of Alan Lux ¶ 16. |
| | 27. | On or about September 13, 2012, Liberty informed Ironwood's insurance broker, Mr. Lux, that it would defend Ironwood in the Cobb matter. | Decl. of Joshua Tanner ¶ 17; Decl. of Alan Lux ¶ 17. |
| | 28. | Liberty requested copies of the bills that Ironwood had received for legal fees and costs in connection with the Cobb matter. | Decl. of Joshua Tanner ¶ 17; Decl. of Alan Lux ¶ 17. |
| | 29. | On September 13, 2012, Ironwood's insurance broker, Mr. Lux, asked Mr. Tanner to send him all of Ironwood's invoices for legal fees and costs in connection with the Cobb claim. | Decl. of Joshua Tanner ¶ 17; Decl. of Alan Lux ¶ 18. |
| | 30. | Mr. Lux did not tell Mr. Tanner to limit the scope of invoices to only those for legal fees that post-dated the May 15, 2012 notice to Liberty. | Decl. of Joshua Tanner ¶ 17; Decl. of Alan Lux ¶ 18. |

5
Statement of Undisputed Facts ISO Ironwood's Motion for Partial Summary Judgment

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4 | 31. | Mr. Tanner did not understand that Liberty was only asking for the invoices reflecting legal fees and costs incurred in defense of the Cobb claim. | Decl. of Joshua Tanner ¶ 19. |
| 5<br>6<br>7<br>8 | 32. | As a result, the invoices that Ironwood sent to its insurance broker, Mr. Lux, included invoices dating back to June 2011. | Decl. of Joshua Tanner ¶¶ 19-20; Decl. of Bryan R. Gerstel ¶ 11. |
| 9<br>10<br>11<br>12 | 33. | On September 13, 2013, Mr. Lux forwarded to Liberty the invoices that he received from Ironwood, including invoices dating back to June 2011. | Decl. of Alan Lux ¶ 18, Ex. 5. |
| 13<br>14<br>15 | 34. | Mr. Lux did not review Ironwood's invoices before forwarding them to Liberty. | Decl. of Alan Lux ¶ 18. |
| 16<br>17<br>18<br>19 | 35. | Around the time that Liberty agreed to defend Ironwood, Liberty agreed to pay Ironwood's counsel, Mr. Gerstel, to defend Ironwood in the Cobb matter. | Decl. of Alan Lux ¶ 19; Ex. 6; Decl. of Bryan R. Gerstel ¶ 8. |
| 20<br>21<br>22<br>23<br>24 | 36. | On September 25, 2012, Mr. Gerstel sent a letter to Ms. Testaverde confirming that Liberty had agreed to pay his firm to defend Ironwood at the hourly rate of $275. | Decl. of Bryan R. Gerstel ¶ 9, Ex. 5. |
| 25<br>26<br>27<br>28 | 37. | On October 25, 2012, Liberty sent a letter to Ironwood confirming its agreement to defend Ironwood in the Cobb matter through Mr. Gerstel's firm. | Decl. of Joshua Tanner ¶ 27, Ex. 5; Decl. of Alan Lux ¶ 21, Ex. 8; Decl. of Bryan R. Gerstel ¶ 11. |

6
Statement of Undisputed Facts ISO Ironwood's Motion for Partial Summary Judgment

| | | | |
|---|---|---|---|
| 38. | After Ironwood received the October 25, 2013 letter from Liberty, Mr. Gerstel learned that Ironwood's insurance broker, Mr. Lux, sent Liberty copies of the following invoices that Mr. Gerstel had previously issued to Ironwood: invoice dated June 30, 2011 (for work performed throughout June 2011), invoice dated September 6, 2011 (for work performed throughout July 2011 and August 2011), invoice dated October 13, 2011 (for work performed throughout September 2011), invoice dated December 8, 2011 (for work performed throughout November 2011), invoice dated March 5, 2012 (for work performed throughout February 2012), invoice dated April 3, 2012 (for work performed throughout March 2012), and invoice dated May 1, 2012 (for work performed throughout April 2012) (collectively the "Pre-Tender Invoices"). | Decl. of Bryan R. Gerstel ¶ 11; Decl. of Joshua Tanner ¶ 20. | |
| 39. | The Pre-Tender Invoices do not include any billing entries related to the defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 12; Decl. of Joshua Tanner ¶ 21. | |
| 40. | The Pre-Tender Invoices contain attorney-client communications describing work performed by Mr. Gerstel for Ironwood on various matters unrelated to the | Decl. of Bryan R. Gerstel ¶ 12; Decl. of Joshua Tanner ¶ 21. | |

7
Statement of Undisputed Facts ISO Ironwood's Motion for Partial Summary Judgment

| | | | |
|---|---|---|---|
| | | defense of the Cobb claim. | |
| | 41. | Mr. Gerstel and Ironwood have always kept the Pre-Tender Invoices and their contents confidential in the normal course of their attorney-client relationship. | Decl. of Bryan R. Gerstel ¶ 13; Decl. of Joshua Tanner ¶ 21. |
| | 42. | The Pre-Tender Invoices were not provided to Liberty with any intention of waiving the attorney-client privilege. | Decl. of Joshua Tanner ¶ 21. |
| | 43. | Ironwood's General Manager and Chief Operating Officer, Mr. Tanner, does not have authority to waive any privileges, including the attorney-client privilege, on behalf of Ironwood. | Decl. of Joshua Tanner ¶ 26; Decl. of Robert C. Manion, ¶ 12. |
| | 44. | Any such waiver would require authorization from Ironwood's Board. | Decl. of Joshua Tanner ¶ 26; Decl. of Robert C. Manion, ¶ 12. |
| | 45. | Mr. Tanner did not ask for authority from the Board to waive any privileges applicable to the Pre-Tender Invoices. | Decl. of Joshua Tanner ¶ 26; Decl. of Robert C. Manion, ¶ 12. |
| | 46. | Mr. Tanner did not obtain authority from the Board to waive any privileges applicable to the Pre-Tender Invoices. | Decl. of Joshua Tanner ¶ 26; Decl. of Robert C. Manion, ¶ 12. |
| | 47. | The Pre-Tender Invoices were sent to Liberty without Mr. Gerstel's knowledge. | Decl. of Bryan R. Gerstel ¶ 13. |
| | 48. | The Pre-Tender Invoices were sent to Liberty without Mr. Gerstel's authorization. | Decl. of Bryan R. Gerstel ¶ 13. |

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | 49. | If Mr. Gerstel had been asked to submit the Pre-Tender Invoices to Liberty, he would have refused to do so. | Decl. of Bryan R. Gerstel ¶¶ 13-14. |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16 | 50. | In addition to the Pre-Tender Invoices, Mr. Lux, sent Liberty copies of the following the following invoices that Mr. Gerstel had previously issued to Ironwood: invoice dated June 4, 2012 (for work performed throughout May 2012), invoice dated July 2, 2012 (for work performed throughout June 2012), invoice dated August 10, 2012 (for work performed throughout July 2012), and invoice dated September 1, 2012 (for work performed throughout July 2012) (collectively the "Post-Tender Invoices"). | Decl. of Bryan R. Gerstel ¶ 16; Decl. of Joshua Tanner ¶ 23. |
| 17<br>18<br>19<br>20 | 51. | Of the invoices that Mr. Lux sent to Liberty, the Post-Tender Invoices are the only invoices that include billing entries related to the defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 16; Decl. of Joshua Tanner ¶ 23. |
| 21<br>22<br>23<br>24<br>25 | 52. | Of the invoices that Mr. Lux sent to Liberty, the Post-Tender Invoices are the only invoices that should have been submitted in response to Liberty's request for invoices related to the Cobb matter. | Decl. of Joshua Tanner ¶ 25. |
| 26<br>27<br>28 | 53. | In addition to the Pre-Tender Invoices and Post-Tender Invoices, Mr. Lux also sent Liberty copies of the following invoices | Decl. of Bryan R. Gerstel ¶ 17; Decl. of Joshua Tanner ¶ 24. |

9

Statement of Undisputed Facts ISO Ironwood's Motion for Partial Summary Judgment

| | | | |
|---|---|---|---|
| | | that the Lavely & Singer firm had previously issued to Ironwood: invoice dated June 30, 2012 (for work performed throughout June 2012) and invoice dated July 31, 2012 (for work performed throughout July 2012) (collectively "Lavely & Singer Invoices"). | |
| | 54. | Ironwood did not retain the Lavely & Singer firm to assist Mr. Gerstel with the defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 17; Decl. of Joshua Tanner ¶ 24. |
| | 55. | The Lavely & Singer Invoices do not include any billing entries related to the defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 17; Decl. of Joshua Tanner ¶ 24. |
| | 56. | Beginning on or about December 10, 2012, Ironwood has made several written requests that Liberty return the bills that pre-date the May 15, 2012 notice to Liberty. | Decl. of Joshua Tanner ¶ 22; Decl. of Bryan R. Gerstel ¶ 15; Decl. of John J. McLeod ¶¶ 3, 4, 7, 8, 12 & 15, Exs. 1, 2, 5, 6, 10 & 13. |
| | 57. | Beginning on or about December 10, 2012, Ironwood has made several written requests that Liberty destroy any copies that have been made of the bills that pre-date the May 15, 2012 notice to Liberty. | Decl. of Joshua Tanner ¶ 22; Decl. of Bryan R. Gerstel ¶ 15; Decl. of John J. McLeod ¶¶ 3, 4, 7, 8, 12 & 15, Exs. 1, 2, 5, 6, 10 & 13. |
| | 58. | From December 10, 2012 to the present, Liberty has not returned any bills to Ironwood. | Decl. of Joshua Tanner ¶ 22; Decl. of Bryan R. Gerstel ¶ 15; Decl. of John |

|     |     |     |
| --- | --- | --- |
|     |     | J. McLeod ¶¶ 3, 4, 7, 8, 12 & 15, Exs. 1, 2, 5, 6, 10 & 13. |
| 59. | From December 10, 2012 to the present, Liberty has not agreed to destroy copies of any of the bills. | Decl. of Joshua Tanner ¶ 22; Decl. of Bryan R. Gerstel ¶ 15; Decl. of John J. McLeod ¶¶ 3, 4, 7, 8, 12 & 15, Exs. 1, 2, 5, 6, 10 & 13. |
| 60. | On or about February 21, 2013, Ironwood paid its defense counsel, Mr. Gerstel, $10,000.00 to satisfy the $10,000.00 retention under the Liberty Policy. | Decl. of Joshua Tanner ¶ 28, Ex. 6; Decl. of Bryan R. Gerstel ¶ 22, Ex. 11. |
| 61. | On February 26, 2013, Liberty informed Ironwood that it was denying coverage in connection with the Cobb matter. | Decl. of Bryan R. Gerstel ¶ 23; Decl. of John J. McLeod ¶ 9, Ex. 7. |
| 62. | In May 2012, Ironwood's counsel spent 12 hours assisting Ironwood in defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 4, Ex. 1. |
| 63. | In June 2012, Ironwood's counsel spent 7 hours assisting Ironwood in defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 5, Ex. 2. |
| 64. | In July 2012, Ironwood's counsel spent 19.25 hours assisting Ironwood in defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶¶ 6-7, Exs. 3 & 4. |
| 65. | In August 2012 and September 2012, the defense fees and costs incurred through Mr. Gerstel's firm totaled $4,853.75 after | Decl. of Bryan R. Gerstel ¶ 10, Ex. 6. |

11
Statement of Undisputed Facts ISO Ironwood's Motion for Partial Summary Judgment

| | | |
|---|---|---|
| | subtracting $137.50 for one billing entry that pre-dated the May 15, 2012 notice to Liberty. | |
| 66. | In October 2012, the defense fees and costs incurred through Mr. Gerstel's firm totaled $5,036.96. | Decl. of Bryan R. Gerstel ¶ 18, Ex. 7. |
| 67. | In November 2012, the defense fees and costs incurred through Mr. Gerstel's firm totaled $5,752.44. | Decl. of Bryan R. Gerstel ¶ 19, Ex. 8. |
| 68. | In December 2012, the defense fees and costs incurred through Mr. Gerstel's firm totaled $2,147.53. | Decl. of Bryan R. Gerstel ¶ 20, Ex. 9. |
| 69. | In January 2013, the defense fees and costs incurred through Mr. Gerstel's firm totaled $17,389.50. | Decl. of Bryan R. Gerstel ¶ 21, Ex. 10. |
| 70. | In February 2013, the defense fees and costs incurred through Mr. Gerstel's firm totaled $20,870.43 after subtracting $357.50 for four billing entries that post-dated February 26, 2013. | Decl. of Bryan R. Gerstel ¶ 24, Ex. 12. |
| 71. | Using the $275 hourly rate that Liberty agreed to pay for Ironwood's defense, the amount of defense fees and costs unpaid by Liberty from May 15, 2012 through February 26, 2013 totals $56,569.36 after subtracting the $10,000 retention payment made by Ironwood. | Decl. of Bryan R. Gerstel ¶ 27, Exs. 1-4 & 6-12. |
| 72. | Beginning on or about January 29, 2013, | Decl. of John J. McLeod ¶¶ |

12

Statement of Undisputed Facts ISO Ironwood's Motion for Partial Summary Judgment

| | | |
|---|---|---|
| | Ironwood has made several written requests that Liberty pay Ironwood any unpaid defense fees and costs incurred after the date of notice to Liberty. | 6, 7, 10 & 12, Exs. 4, 5, 8 & 10. |
| 73. | To date, Liberty has not paid any money to Ironwood in connection with the Cobb matter. | Decl. of Joshua Tanner ¶ 29; Decl. of Bryan R. Gerstel ¶ 27. |

DATED: December 30, 2013      McLEOD LAW GROUP, A.P.C.

By:   /s/ Paul C. Hirst
    John J. McLeod
    Paul C. Hirst
    Attorneys for Plaintiff, Ironwood Country Club