John J. McLeod, Esq., State Bar No. 174169
john@mcleodlawgroup.com
Paul C. Hirst, Esq., State Bar No. 234460
pchirst@mcleodlawgroup.com
McLEOD LAW GROUP, A.P.C.
701 B Street, Suite 1570
San Diego, California 92101
Telephone:  (619) 236-9938
Facsimile:  (619) 236-9943

Attorneys for Plaintiff,
IRONWOOD COUNTRY CLUB

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| IRONWOOD COUNTRY CLUB,<br><br>Plaintiff,<br>v.<br><br>LIBERTY INSURANCE UNDERWRITERS, INC. and DOES 1 through 100,<br><br>Defendants. | CASE NO. 13-00996-VAP (DTBx)<br><br>**DECLARATION OF JOHN J. MCLEOD IN SUPPORT OF PLAINTIFF'S *AMENDED* MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:  February 24, 2014<br>Hearing Time:  2:00 p.m.<br>Courtroom:  Hon. Virginia A. Phillips<br><br>Date Complaint Filed: May 1, 2013<br>Trial Date: August 5, 2014<br><br>Filed concurrently with:<br>  1. *Notice of Amended Motion and Amended Motion;*<br>  2. *Points and Authorities;*<br>  3. *Statement of Undisputed Facts;*<br>  4. *Declaration of Bryan R. Gerstel;*<br>  5. *Declaration of Joshua Tanner;*<br>  6. *Declaration of Alan Lux;*<br>  7. *Declaration of Robert C. Manion;*<br>  8. *Request for Judicial Notice; and*<br>  9. *[Proposed] Order.* |

**I, JOHN J. MCLEOD, declare:**

    1.    I am an attorney duly licensed to practice law before all courts of the State of California and this Court.  I am shareholder of McLeod Law Group, A.P.C. ("MLG"), counsel of record for plaintiff, Ironwood Country Club ("Ironwood"), in the above-entitled action, and I have handled this matter since its inception.  I have personal knowledge of the matters set forth herein and if called upon to testify I could and would competently do so, except as to those matters stated on information and belief and, as to those matters, I believe them to be true.  I make this declaration in support of Ironwood's motion for partial summary judgment.

    2.    MLG maintains separate files for each client matter.  It is our custom and practice to save hard copies of any and all emails and letters that are sent and/or received in connection with each client matter in a file labeled "correspondence."  I have reviewed MLG's "correspondence" file for this matter and located each of the following emails and letters, true and correct copies of which are attached as exhibits to this declaration.

    3.    On December 10, 2012, I was copied on an email from attorney Dan Rylaarsdam of MLG to Liberty's adjuster, Christine Testaverde.  Attached to the email was a letter from me to Ms. Testaverde dated December 10, 2012.  A true and correct copy of said December 10 email and letter is attached hereto as Exhibit 1.

    4.    On January 10, 2013, I was copied on an email from Mr. Rylaarsdam to Ms. Testaverde.  Attached to the email was a letter from me to Ms. Testaverde dated January 10, 2013.  A true and correct copy of said January 10 email and letter (without enclosure) is attached hereto as Exhibit 2.  The enclosure to the January 10 letter is omitted from Exhibit 2.

    5.    On or about January 11, 2013, I received a letter from Ms. Testaverde dated January 11, 2013.  A true and correct copy of said January 11 letter is attached hereto as Exhibit 3.

/ / /

Declaration of John J. McLeod ISO Ironwood's Motion for Partial Summary Judgment

6.     On January 29, 2013, I was copied on an email from Mr. Rylaarsdam to Ms. Testaverde.  Attached to the email was a letter from Mr. Rylaarsdam to Ms. Testaverde dated January 29, 2013.  A true and correct copy of said January 29 email and letter (without enclosures) is attached hereto as Exhibit 4.  The voluminous enclosures to the January 29 letter are omitted from Exhibit 4.

7.     On February 7, 2013, I was copied on an email from Mr. Rylaarsdam to Ms. Testaverde.  Attached to the email were two letters from Mr. Rylaarsdam to Ms. Testaverde dated February 7, 2013.  A true and correct copy of said February 7 email and letters is attached hereto as Exhibit 5.

8.     On February 20, 2013, I was copied on an email from Mr. Rylaarsdam to Seon Choi on behalf of Liberty.  Attached to the email was a letter from Mr. Rylaarsdam to Ms. Choi dated February 20, 2013.  A true and correct copy of said February 20 email and letter is attached hereto as Exhibit 6.

9.     On or about February 26, 2013, I received a letter from Ms. Choi dated February 26, 2013.  A true and correct copy of said February 26 letter is attached hereto as Exhibit 7.

10.    On March 1, 2013, I was copied on an email from Mr. Rylaarsdam to Ms. Choi.  Attached to the email was a letter from Mr. Rylaarsdam to Ms. Choi dated March 1, 2013.  A true and correct copy of said March 1 email and letter (without enclosures) is attached hereto as Exhibit 8.  The voluminous enclosures to the March 1 letter are omitted from Exhibit 8.

11.    On March 13, 2013, Ms. Choi sent an email to Mr. Rylaarsdam.  The March 13 email attached another copy of Ms. Choi's February 26 letter to me (Exhibit 7 hereto).   A true and correct copy of said March 13 email and February 26 letter is attached hereto as Exhibit 9.

12.    On March 25, 2013, I was copied on an email from Mr. Rylaarsdam to Ms. Choi.  Attached to the email was a letter from Mr. Rylaarsdam to Ms. Choi dated March 25, 2013.  A true and correct copy of said March 25 email and letter (without

enclosure) is attached hereto as Exhibit 10.  The voluminous enclosure to the March 25 letter is omitted from Exhibit 10.

13.   On April 5, 2013, I was copied on an email from Mr. Rylaarsdam to Ms. Choi.  A true and correct copy of said April 5 email is attached hereto as Exhibit 11.

14.   On April 19, 2013, I was copied on an email from Ms. Choi to Mr. Rylaarsdam.  A true and correct copy of said April 19 email is attached hereto as Exhibit 12.

15.   On July 8, 2013, I was copied on an email from Mr. Rylaarsdam to Liberty's counsel of record in this matter, Jeffrey S. Whittington, Esq.  Attached to the email was a letter from me to Mr. Whittington dated July 8, 2013.  A true and correct copy of said July 8 email and letter (without enclosures) is attached hereto as Exhibit 13.  The voluminous enclosures to the July 8 letter are omitted from Exhibit 13.

16.   On July 11, 2013, I received an email from Mr. Whittington.  Attached to the email was a letter from Mr. Whittington to me dated July 11, 2013.  A true and correct copy of said July 11 email and letter is attached hereto as Exhibit 14.

17.   On July 12, 2013, I was copied on an email from Mr. Rylaarsdam to Mr. Whittington.  Attached to the email was a letter from Mr. Rylaarsdam to Mr. Whittington dated July 12, 2013.  A true and correct copy of said July 12 email and letter is attached hereto as Exhibit 15.

18.   On July 16, 2013, I received an email from Mr. Whittington.  Attached to the email was a letter from Mr. Whittington to me dated July 16, 2013.  A true and correct copy of said July 16 email is attached hereto as Exhibit 16.

19.   On July 17, 2013, I was copied on an email from Mr. Rylaarsdam to Mr. Whittington.  A true and correct copy of said July 17 email is attached hereto as Exhibit 17.

20.   On July 17, 2013, I was copied on an email from Mr.  Whittington to Mr. Rylaarsdam.  A true and correct copy of said July 17 email is attached hereto as Exhibit 18.

Declaration of John J. McLeod ISO Ironwood's Motion for Partial Summary Judgment

21.     On July 17, 2013, I sent an email to Mr. Whittington. A true and correct copy of said July 17 email is attached hereto as Exhibit 19.

22.     On August 5, 2013, I was copied on an email from attorney Paul Hirst of MLG to Mr. Whittington. A true and correct copy of said August 5 email is attached hereto as Exhibit 20.

23.     On August 7, 2013, I was copied on an email from an attorney with Mr. Whittington's firm, Richard Pretti, to Mr. Hirst. A true and correct copy of said August 7 email is attached hereto as Exhibit 21.

24.     On August 9, 2013, I was copied on an email from Mr. Hirst to Mr. Pretti. A true and correct copy of said August 9 email is attached hereto as Exhibit 22.

25.     On December 17, 2013, I was copied on an email from Mr. Hirst to Mr. Whittington. A true and correct copy of said December 17 email is attached hereto as Exhibit 23.

26.     On December 20, 2013, at 12:37 p.m., I was copied on an email from Mr. Whittington to Mr. Hirst. A true and correct copy of said December 20 email is attached hereto as Exhibit 24.

27.     On December 20, 2013, at 1:05 p.m., I was copied on an email from Mr. Whittington to Mr. Hirst. Attached to the email was a letter from Mr. Whittington to me and Mr. Hirst dated December 20, 2013. In that letter, Liberty asked for the very first time that Ironwood stipulate to Liberty amending its answer in this action to add rescission as an affirmative defense. A true and correct copy of said December 20 email and letter is attached hereto as Exhibit 25.

28.     On December 23, 2013, I was copied on an email from Mr. Hirst to Mr. Whittington. A true and correct copy of said December 23 email is attached hereto as Exhibit 26.

29.     On December 23, 2013, I was copied on an email from Mr. Whittington to Mr. Hirst. A true and correct copy of said December 23 email is attached hereto as Exhibit 27.

30.     Since the December 23, 2013 exchange of emails between Messrs. Hirst and Whittington, the parties have exchanged emails regarding Liberty's request that Ironwood stipulate to Liberty amending its answer in this action to add rescission as an affirmative defense.   However, the parties' meet and confer efforts regarding Ironwood's motion for partial summary judgment had concluded as of December 23.

31.     On October 1, 2013, MLG received Liberty's initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1).   A true and correct copy of said initial disclosures is attached hereto as Exhibit 28.

32.     On August 16, 2013, counsel for Ironwood (me and Mr. Hirst) and Liberty (Messrs. Whittington and Pretti and Miriam Gregory) met and conferred telephonically to discuss the issues required by Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 26-1, and the Court's June 11, 2013 Scheduling Order.   During this conference, counsel agreed that the privilege issue regarding pre-tender invoices was an important issue that should be decided by the Court as soon as possible.   We discussed "teeing up" the privilege issue by filing competing discovery motions.   We also discussed participating in mediation after the competing motions were filed but before the hearing on said motions.   Between August 16 and August 30, we exchanged several emails regarding proposed schedules for these competing motions.   A true and correct copy said email chain is attached hereto as Exhibit 29.

33.     On September 9, 2013, I attended the scheduling conference in this action. During the scheduling conference, Mr. Whittington and I apprised the Court of the parties' plan to "tee up" the privilege issue with competing discovery motions and to participate in mediation after the competing motions were filed but before the hearing on said motions.

34.     My firm and Mr. Whittington's firm thereafter exchanged several emails and telephone calls about the competing motions and the proposed mediation.   We ultimately agreed to participate in mediation on November 20, 2013.   We also agreed to file a joint stipulation/discovery motion to "tee up" the privilege issue (in lieu of

5

competing motions), which would be filed on October 31 and scheduled for hearing on November 21.  We also agreed to exchange initial drafts of the parties' respective portions of the joint stipulation/discovery motion on October 28 and "final" drafts on October 30.

35.    On October 28 and October 30, 2013, we exchanged drafts of the parties' respective portions of the joint stipulation/discovery.  Liberty's drafts included verbatim quotations of the very billing entries that Ironwood contends are privileged. Ironwood objected to Liberty publishing these billing entries in the joint stipulation – a document that will be a public record.  And, on October 30 and October 31, Mr. Hirst and I exchanged several emails with Mr. Whittington and Ms. Gregory in an effort to meet and confer on this issue.

36.    Ultimately, because of this dispute, the joint stipulation was not filed on October 31.  A true and correct copy of the emails exchanged between my office and Mr. Whittington's office on October 31 is attached hereto as Exhibit 30.

37.    On November 11, 2013, Mr. Whittington sent a letter to me and Mr. Hirst, which purported to be Liberty's effort to meet and confer on a motion to stay this action until the underlying Cobb matter is resolved.  A true and correct copy of the November 11 letter is attached hereto as Exhibit 31.

38.    On November 13, 2013, I sent an email to Mr. Whittington responding to his November 11 letter.  A true and correct copy of my November 13 email is attached hereto as Exhibit 32.

39.    On November 19, 2013, Mr. Whittington sent a letter to me and Mr. Hirst responding to my November 13 email.  A true and correct copy of the November 19 letter is attached hereto as Exhibit 33.

40.    On November 20, 2013, the parties participated in a full-day mediation session.  The case did not settle during the mediation.  For the next two weeks, the parties continued to communicate with the mediator in an ongoing effort to resolve the case.  But, those efforts were terminated on December 4.

Declaration of John J. McLeod ISO Ironwood's Motion for Partial Summary Judgment

1    I declare under penalty of perjury under the laws of the United States of America

2    that the foregoing is true and correct.

3    Executed at San Diego, California, on January 27, 2014.

4

5                                   /s/ John J. McLeod
                                    John J. McLeod, Esq.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of John J. McLeod ISO Ironwood's Motion for Partial Summary Judgment

# EXHIBIT 1

## Dan Rylaarsdam

**From:** Dan Rylaarsdam <drylaarsdam@mcleodlawgroup.com>
**Sent:** Monday, December 10, 2012 11:35 AM
**To:** 'Christine.Testaverde@LibertyIU.com'
**Cc:** 'John McLeod'
**Subject:** Cobb, et al. v. Ironwood County Club

Ms. Testaverde,

Please see the attached letter.



Testaverde (resp
to 102512 ltr...

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

Exhibit _____ 1
Page _____ 1

93

# McLeod Law Group
### A PROFESSIONAL CORPORATION

701 "B" STREET, SUITE 1570
SAN DIEGO, CALIFORNIA 92101

JOHN J. McLEOD
john@mcleodlawgroup.com

TELEPHONE (619) 236-9938
FACSIMILE (619) 236-9943

December 10, 2012

**VIA U.S. MAIL and E-MAIL (Christine.Testaverde@LibertyIU.com)**

Christine J. Testaverde
Liberty International Underwriters
55 Water Street, 18th Floor
New York, NY 10041

Re:   Cobb, et al. v. Ironwood County Club
      Insurer:      Liberty Insurance Underwriters Inc.
      Policy No.:   DOCH216747-211 (October 1, 2011 to October 1, 2012)
      Insured:      Ironwood Country Club
      Your File No.: CHRISPC000006429

Dear Ms. Testaverde:

This firm is coverage counsel for Liberty Insurance Underwriters Inc.'s ("Liberty") insured, Ironwood Country Club ("Ironwood"), in connection with the above-referenced litigation (the "*Cobb* Lawsuit"). We write in regard to your October 25, 2012, letter to Joshua Tanner of Ironwood, on behalf of Liberty. In that letter, Liberty requests the memorandum referenced in the October 13, 2011, invoice of Bryan Gerstel of Green Bryant & French LLP. This invoice as well as any other invoice pre-dating Ironwood's tender of the claim referenced above to Liberty were provided to Liberty by mistake. Ironwood is only requesting that Liberty pay Ironwood's defense fees and costs reflected on the invoices provided to Liberty that post-date Ironwood's tender. Moreover, the pre-tender invoices are protected by, among potentially other privileges and protections, the attorney-client privilege and attorney work product doctrine. The same is true for the memorandum mentioned in the October 13, 2011, invoice. Accordingly, we ask that Liberty return to Ironwood all invoices that pre-date tender of the claim referenced above and destroy all copies of those invoices. Ironwood appreciates Liberty's assistance with this request and thanks Liberty in advance for its cooperation.

Exhibit _____ 1 _____
Page _____ 2 _____

Christine J. Testaverde
December 10, 2012
Page 2 of 2

Thank you for your prompt attention to this matter.  If you or Liberty has any questions, please do not hesitate to contact us.  In the meantime, Ironwood reserves all of its rights and waives none.

Very truly yours,

McLEOD LAW GROUP, A.P.C.

John J. McLeod

Exhibit ___1___
Page ___3___

# EXHIBIT 2

## Dan Rylaarsdam

| | |
|---|---|
| **From:** | Dan Rylaarsdam <drylaarsdam@mcleodlawgroup.com> |
| **Sent:** | Thursday, January 10, 2013 3:11 PM |
| **To:** | 'Christine.Testaverde@LibertyIU.com' |
| **Cc:** | 'John McLeod' |
| **Subject:** | Cobb, et al. v. Ironwood County Club |

Ms. Testaverde,

Please see the attached letter.



Testaverde (resp
to 2nd sendin...

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

Exhibit _____ 2
Page _____ 1

# McLeod Law Group

A PROFESSIONAL CORPORATION

701 "B" STREET, SUITE 1570
SAN DIEGO, CALIFORNIA 92101

JOHN J. McLEOD
john@mcleodlawgroup.com

TELEPHONE (619) 236-9938
FACSIMILE (619) 236-9943

January 10, 2013

**VIA U.S. MAIL and E-MAIL (Christine.Testaverde@LibertyIU.com)**

Christine J. Testaverde
Liberty International Underwriters
55 Water Street, 18th Floor
New York, NY 10041

|      |                                                               |
|------|---------------------------------------------------------------|
| Re:  | Cobb, et al. v. Ironwood County Club                          |
|      | Insurer:        Liberty Insurance Underwriters Inc.           |
|      | Policy No.:     DOCH216747-211 (October 1, 2011 to October 1, 2012) |
|      | Insured:        Ironwood Country Club                         |
|      | Your File No.:  CHRISPC000006429                             |

Dear Ms. Testaverde:

Ironwood Country Club ("Ironwood") recently received another copy of your October 25, 2012, letter to Joshua Tanner of Ironwood, on behalf of Liberty Insurance Underwriters Inc. ("Liberty"). Liberty, however, did not indicate why it re-sent the October 25 letter to Ironwood. Accordingly, we assume that the sending of Liberty's October 25 letter was in error and nothing was meant by it. If our assumption is incorrect in any way, please let us know immediately. Additionally, as you know, we responded to the October 25 letter on behalf of Ironwood by letter dated December 10, 2012. For your convenience, a copy of our December 10 letter is enclosed. We have, however, not received a response to that letter. Nor has Liberty returned to Ironwood all invoices that pre-date tender of the claim referenced above and confirmed that it has destroyed all copies of those invoices. Thus, we ask again that Liberty return these invoices and destroy all copies of those invoices.

Thank you for your prompt attention to this matter. If you or Liberty has any questions, please do not hesitate to contact us. In the meantime, Ironwood reserves all of its rights and waives none.

Exhibit _____ 2
Page _____ 2

Christine J. Testaverde
January 10, 2013
Page 2 of 2

Very truly yours,

McLEOD LAW GROUP, A.P.C.

John J. McLeod

Enclosure: December 10, 2012 letter from John J. McLeod of McLeod Law Group, A.P.C.
to Christine J. Testaverde of Liberty International Underwriters (2 pages)

Exhibit _____ 2
Page _____ 3

# EXHIBIT 3



Christine J. Testaverde
55 Water Street, 18th Floor
New York, NY 10041
Telephone No: (212) 898-4360
Fax No: (212) 208-4290
Email: Christine.Testaverde@LibertyIU.com

January 11, 2013

**BY E-MAIL and
CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

John J. McLeod
McLeod Law Group
701 B Street, Suite 1570
San Diego, California 92101

| | |
|---|---|
| Re: | Nonprofit Executive Advantage Policy |
| Insured: | Ironwood County Club |
| Insurer: | Liberty Insurance Underwriters Inc. |
| Policy No: | DOCH216747-211 |
| Policy Period: | October 1, 2011 to October 1, 2012 |
| Limit of Liability: | $2 million in the Aggregate for the Policy Year |
| Retention: | $10,000 in the Aggregate each Claim |
| Matter: | *William S. Cobb, Jr., et al. v. Ironwood Country Club* |
| File No.: | CHISPC000006429 |

Dear Mr. McLeod:

Thank you for your correspondence dated January 10, 2013 and December 10, 2012.   We understand that you are currently acting as "coverage counsel" on behalf of Ironwood Country Club ("ICC") in connection with the captioned matter and are writing in response to our letter to Mr. Josh Tanner dated October 25, 2012.

First, Liberty International Underwriters ("Liberty") did not reissue its letter dated October 25, 2012.  Therefore, there was no error or intent on the part of Liberty regarding same.

Second, we appreciate the fact that you have withdrawn from Liberty's consideration the pre-tender invoices that were submitted to Liberty for credit toward the $10,000 retention that is

Exhibit _3_
Page _1_

applicable to the captioned Claim under the Policy. However, in this regard, you indicate that the statements were provided to Liberty by "mistake" and that the invoices, as well as the memorandum mentioned in the October 13, 2011 invoice, are protected by the attorney-client privilege and the attorney work product doctrine. We are puzzled by your contention that the invoices were forwarded to Liberty by mistake in light of the history of this matter and therefore believe that any privilege that may have been accorded to these documents has been waived.

In fact, ICC was insistent in its request for Liberty to retain Mr. Gerstel to defend the captioned litigation. ICC was also persistent in its request for the pre-tender invoices to be applied toward the relevant retention. In particular, during our conversations regarding the defense of the litigation, ICC's agent, Alan Lux, stressed that Mr. Gerstel had familiarity with the facts at issue and that Mr. Gerstel had invested significant time in investigating and advising ICC. This point was also emphasized by Mr. Gerstel himself when I spoke with him on September 10, 2012. Based on these conversations, it is my understanding that the billing statements were intentionally forwarded to Liberty on the following day, September 11, 2012, and were done so with Mr. Gerstel's approval. Moreover, after the invoices were forwarded to Liberty, Mr. Lux continued to request a determination from Liberty regarding its review of the pre-tender invoices.

In light of the foregoing, Liberty would appreciate the basis for your statement that the pre-tender invoices were forwarded by "mistake." Liberty would also appreciate a better understanding of your position that these invoices, and the memorandum referenced in the October 13, 2011 invoice, are protected by privilege.

Moreover, in our October 25, 2012 letter, Liberty requested additional information from ICC regarding this matter and those requests remain outstanding.[1] In particular, Liberty asked for the reason for the analysis of insurance coverage in July, August and September 2011, prior to the execution of the **Application**, dated October 5, 2011. Liberty has also asked whether the captioned litigation has been reported to any other carriers. Please advise whether ICC or your firm will answer these queries and when we can expect to receive a response to same.

We trust you understand that our comments herein are without prejudice to any rights or defenses available under the Policy, at law and in equity. All such rights and defenses continue to be fully reserved.

Very truly yours,

Christine J. Testaverde
Liberty International Underwriters
for Liberty Insurance Underwriters

---

[1] This letter adopts, incorporates and supplements all of our prior correspondence regarding this matter.

Exhibit ___3___
Page ___2___

# EXHIBIT 4

## Dan Rylaarsdam

**From:** Dan Rylaarsdam <drylaarsdam@mcleodlawgroup.com>
**Sent:** Tuesday, January 29, 2013 3:40 PM
**To:** Christine.Testaverde@LibertyIU.com
**Cc:** 'John McLeod'
**Subject:** Cobb, et al. v. Ironwood

Ms. Testaverde,

Please see the attached letter.



Testaverde (re
unpaid invoices...

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

Exhibit ____4____
Page ____1____

3

# McLeod Law Group

A PROFESSIONAL CORPORATION

701 "B" STREET, SUITE 1570
SAN DIEGO, CALIFORNIA 92101

DANIEL H. RYLAARSDAM
drylaarsdam@mcleodlawgroup.com

TELEPHONE (619) 236-9938
FACSIMILE (619) 236-9943

January 29, 2013

**VIA U.S. MAIL and E-MAIL (Christine.Testaverde@LibertyIU.com)**

Christine J. Testaverde
Liberty Insurance Underwriters
55 Water Street, 18th Floor
New York, NY 10041

Re:   Cobb, et al. v. Ironwood County Club
       Insurer:        Liberty Insurance Underwriters Inc.
       Policy No.:      DOCH216747-211 (October 1, 2011 to October 1, 2012)
       Insured:        Ironwood Country Club
       Your File No.: CHRISPC000006429

Dear Ms. Testaverde:

      We write in regard to invoices submitted by Ironwood Country Club's defense counsel,
Bryan R. Gerstel of Green Bryant & French LLP ("GB&F"), to you as Liberty Insurance
Underwriters Inc.'s representative that remain unpaid. In particular, we are referring to GB&F
invoices dated October 11, 2012, November 21, 2012 and December 12, 2012. For your
convenience, copies of these invoices are enclosed. The total amount due is now $15,780.65. We
ask that these invoices be paid as soon as possible but no later than **Friday, February 1, 2013**.
Going forward, we request that future invoices submitted by Mr. Gerstel be paid within thirty (30)
days.

Exhibit ____4____
Page ____2____

Christine J. Testaverde
January 29, 2013
Page 2 of 2

      Thank you for your prompt attention to this matter.  If you or Liberty has any questions, please do not hesitate to contact us.  In the meantime, Ironwood reserves all of its rights and waives none.

Very truly yours,

McLEOD LAW GROUP, A.P.C.

Daniel H. Rylaarsdam

Enclosures: (1) GB&F's October 11, 2013, invoice number 32881 (3 pages); (2) GB&F's November 21, 2012, invoice number 33184 (3 pages); and (3) GB&F's December 12, 2012, invoice number 33595 (4 pages).

Exhibit ____4____
Page ____3____

# EXHIBIT 5

## Dan Rylaarsdam

| | |
|---|---|
| **From:** | Dan Rylaarsdam <drylaarsdam@mcleodlawgroup.com> |
| **Sent:** | Thursday, February 07, 2013 11:13 AM |
| **To:** | Christine.Testaverde@LibertyIU.com |
| **Cc:** | 'John McLeod' |
| **Subject:** | Cobb, et al. v. Ironwood |

Ms. Testaverde,

Please see the two attached letters. The letters were also mailed today.

  

Testaverde (resp     Testaverde
to 011113 ltr...    (follow-up to 01...

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

Exhibit _____ 5
Page _____ 1

# McLeod Law Group

A PROFESSIONAL CORPORATION

701 "B" STREET, SUITE 1570
SAN DIEGO, CALIFORNIA 92101

DANIEL H. RYLAARSDAM
drylaarsdam@mcleodlawgroup.com

TELEPHONE (619) 236-9938
FACSIMILE (619) 236-9943

February 7, 2013

**VIA U.S. MAIL and E-MAIL (Christine.Testaverde@LibertyIU.com)**

Christine J. Testaverde
Liberty Insurance Underwriters
55 Water Street, 18th Floor
New York, NY 10041

Re:     Cobb, et al. v. Ironwood County Club
        Insurer:        Liberty Insurance Underwriters Inc.
        Policy No.:      DOCH216747-211 (October 1, 2011 to October 1, 2012)
        Insured:        Ironwood Country Club
        Your File No.: CHRISPC000006429

Dear Ms. Testaverde:

We write to follow-up on our January 29, 2013, letter to you. That letter concerned certain invoices submitted by Ironwood Country Club's defense counsel, Bryan R. Gerstel of Green Bryant & French LLP ("GB&F"), to you as Liberty Insurance Underwriters Inc.'s representative that remain unpaid. Although we requested that the invoices be paid no later than February 1, 2013, they remain unpaid. Accordingly, we repeat our request that Mr. Gerstel's invoices be paid as soon as possible but no later than **Friday, February 15, 2013**. And, as requested in the January 29 letter, we request that future invoices submitted by Mr. Gerstel be paid within thirty (30) days.

Exhibit ____5____
Page ____2____

Christine J. Testaverde
February 7, 2013
Page 2 of 2

Thank you for your prompt attention to this matter. If you or Liberty has any questions, please do not hesitate to contact us. In the meantime, Ironwood reserves all of its rights and waives none.

Very truly yours,

McLEOD LAW GROUP, A.P.C.

Daniel H. Rylaarsdam

Exhibit _____ 5 _____
Page _____ 3 _____

# McLeod Law Group

A PROFESSIONAL CORPORATION

701 "B" STREET, SUITE 1570
SAN DIEGO, CALIFORNIA 92101

DANIEL H. RYLAARSDAM
drylaarsdam@mcleodlawgroup.com

TELEPHONE (619) 236-9938
FACSIMILE (619) 236-9943

February 7, 2013

**VIA U.S. MAIL and E-MAIL (Christine.Testaverde@LibertyIU.com)**

Christine J. Testaverde
Liberty Insurance Underwriters
55 Water Street, 18th Floor
New York, NY 10041

Re:     <u>Cobb, et al. v. Ironwood County Club</u>
        Insurer:        Liberty Insurance Underwriters Inc.
        Policy No.:      DOCH216747-211 (October 1, 2011 to October 1, 2012)
        Insured:        Ironwood Country Club
        Your File No.: CHRISPC000006429

Dear Ms. Testaverde:

        We write in response to your January 11, 2013, letter sent on behalf of Liberty Insurance Underwriters Inc. ("Liberty"). The January 11 letter responds to our letters dated December 10, 2012 and January 10, 2013. We write now to dispel any concerns Liberty may have about any claim or lawsuit pre-dating the above-entitled litigation (the "*Cobb* Lawsuit"). We also write to repeat our request that the pre-tender invoices mistakenly provided by Ironwood be returned to Ironwood. Finally, we also decline Liberty's requests for the memorandum referenced in the October 13, 2011, invoice and an explanation for the work performed by Bryan Gerstel of Green Bryant & French LLP as generally reflected in the July, August and September 2011 invoices. The following will explain Ironwood's positions on these issues.

        First, Ironwood now has a better understanding of why Liberty has an interest in work performed by Mr. Gerstel that pre-dated the *Cobb* Lawsuit. We have been informed that Liberty is concerned that the *Cobb* Lawsuit (or some precursor claim concerning the *Cobb* Lawsuit) was either (1) known by Ironwood Country Club ("Ironwood") prior to its submission of the Application dated October 5, 2011, or (2) tendered to some other insurer. Liberty's concerns are unfounded. No claim or lawsuit concerning the *Cobb* Lawsuit was made upon Ironwood prior to the renewal of the above-referenced policy or for a substantial period thereafter. Additionally,

Exhibit _____5_____
Page _____4_____

Christine J. Testaverde
February 7, 2013
Page 2 of 3

because there was no such prior claim or lawsuit there was nothing that Ironwood could tender to any insurer. We would also point out that Ironwood did not make the decision that is the subject of *Cobb* Lawsuit until months **after** submitting the Liberty application. As such, there could be nothing to report.

Second, your purported understanding that the pre-tender invoices were sent to Liberty with Mr. Gerstel's approval appears to be incorrect. Our understanding is that the invoices that Ironwood thought it was required to provide were simply forward to Liberty. Once realizing its mistake, Ironwood (through this firm) informed Liberty of the mistake and requested that the invoices be returned and any copies destroyed. Mr. Gerstel's prior knowledge and familiarity with the issues raised by the *Cobb* Lawsuit does not somehow make the invoices now not privileged or protected. Similarly, Ironwood's belief and Mr. Lux's apparent belief that Mr. Gerstel was a good choice to handle the defense of the *Cobb* Lawsuit also does not change anything. Finally, whatever statements Mr. Lux may have made to Liberty cannot be construed as an Ironwood's intentional waiver of any privileges or protections covering the pre-tender invoices. With respect to the attorney-client privilege, only Ironwood (and not any agent of Ironwood) can waive that privilege. (State Comp. Ins. Fund v. WPS, Inc. (1999) 70 Cal.App.4th 644, 652-653.) For documents protected by the attorney work product doctrine, the attorney is the holder of the "privilege" (which can be asserted by either the attorney or the client) and, thus, only the attorney can waive the "privilege." (OXY Resources Calif. LLC v. Superior Court (2004) 115 Cal.App.4th 874, 901.) Ironwood maintains that the pre-tender invoices are privileged and protected by the attorney work product doctrine. Accordingly, Ironwood repeats its demand that Liberty return these invoices (and destroy any copies in its possession).

Third, Liberty is not entitled to the memorandum referenced in the October 13, 2011, invoice under any scenario. First, the memorandum is privileged and protected from disclosure by both the attorney-client privilege and the attorney work product doctrine. Second, neither Ironwood nor Mr. Gerstel have waived any privileges or protections regarding that memorandum. (Mitchell v. Superior Court (1984) 37 Cal.3d 591, 602-603.) Accordingly, Ironwood will not be providing the memorandum to Liberty. If Liberty continues to contend that it has a right to receive this memorandum, please provide the basis for that purported right.

Finally, with respect to Liberty's request that Ironwood explain the purpose of Mr. Gerstel's work as generally reflected in the July, August and September 2011 invoices, Ironwood also declines to provide this information. As Mr. Gerstel's work for Ironwood and Mr. Gerstel's communications with Ironwood during that time were and continue to be privileged and protected from disclosure (for the reasons set forth above and in our December 10 letter), Liberty is not entitled to this information. In any event, we would again emphasize that the Ironwood board did not make any decision with respect to the assessment that is the subject of the *Cobb* Lawsuit until January 19, 2012, which was well after the October 5, 2011, application. Ironwood is not trying to hide anything. Instead, Ironwood, like any business, has a right (and a duty) to make informed decisions with the input of its attorney. If Liberty continues to contend that it has a right to the requested information, please provide the basis for that purported right.

Exhibit _____ 5 _____
Page _____ 5 _____

Christine J. Testaverde
February 7, 2013
Page 3 of 3

For the reasons stated herein (and in the December 10 letter), Ironwood requests that Liberty return the pre-tender invoices (and confirm that it has destroyed any copies) by no later than **Friday, February 22, 2013**. Thank you for your prompt attention to this matter. If you or Liberty has any questions, please do not hesitate to contact us. In the meantime, Ironwood reserves all of its rights and waives none.

Very truly yours,

McLEOD LAW GROUP, A.P.C.

Daniel H. Rylaarsdam

Exhibit _____ 5 _____
Page _____ 6 _____

# EXHIBIT 6

## Dan Rylaarsdam

**From:** Dan Rylaarsdam <drylaarsdam@mcleodlawgroup.com>
**Sent:** Wednesday, February 20, 2013 9:58 AM
**To:** 'seon.choi@LibertyIU.com'
**Cc:** 'John McLeod'
**Subject:** Cobb, et al. v. Ironwood Country Club

Ms. Choi,

Please see the attached letter.



**Seon Choi**
**(Liberty) (resp to...**

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

Exhibit _____ 6 _____
Page _____ 1 _____

# McLeod Law Group
A PROFESSIONAL CORPORATION

701 "B" STREET, SUITE 1570
SAN DIEGO, CALIFORNIA 92101

DANIEL H. RYLAARSDAM
drylaarsdam@mcleodlawgroup.com

TELEPHONE (619) 236-9938
FACSIMILE (619) 236-9943

February 20, 2013

**VIA U.S. MAIL and E-MAIL (seon.choi @LibertyIU.com)**

Seon Choi
AVP, Specialty Casualty Claims
Liberty International Underwriters
55 Water Street, 18th Floor
New York, NY 10041

Re:     Cobb, et al. v. Ironwood County Club
        Insurer:     Liberty Insurance Underwriters Inc.
        Policy No.:  DOCH216747-211 (October 1, 2011 to October 1, 2012)
        Insured:     Ironwood Country Club
        Your File No.: CHRISPC000006429

Dear Ms. Choi:

     We were provided with a copy of your February 13, 2013, e-mail to Alan Lux sent on behalf of Liberty Insurance Underwriters Inc. ("Liberty"). The February 13 e-mail continues Liberty's efforts to obtain privileged and protected information from its insured, Ironwood County Club ("Ironwood"), regarding a legal memorandum and legal work performed by Ironwood's attorney, Bryan Gerstel of Green Bryant & French LLP, as reflected in Mr. Gerstel's July, August and September 2011 invoices.  Ironwood's position remains the same—Liberty is not entitled to information protected by, among potentially other things, the attorney-client privilege and the attorney work product doctrine.  Liberty's continued requests for this privileged/protected information is without legal support and is bordering on harassment of its insured and bad faith. Indeed, other than repeating its request for the privileged/protected information, Liberty did not even respond to this firm's February 7, 2013, letter to Christine J. Testaverde.  Instead, Liberty invokes the cooperation clause in the above-referenced policy (the "Liberty policy") as part of its latest wrongful attempt to obtain privileged/protected information.  This latest tactic, however, is without legal support and is directly contrary to well-established California law.  The following will explain.

Exhibit ___6___
Page ___2___

Seon Choi
February 20, 2013
Page 2 of 3

As Liberty surely knows, the purpose of the cooperation clause is solely to assist the insurer defend the insured against the claims asserted in the underlying action. (Valladao v. Fireman's Fund Indem. Co. (1939) 13 Cal.2d 322, 329; Truck Ins. Exch. v. Unigard Ins. Co. (2000) 79 Cal.App.4th 966, 975-976 (cooperation clause only requires the cooperation and the assistance of the insured "in opposing a claim or action lodged against" the insured).) Despite the cooperation clause's purpose, however, insurers may not rely on the cooperation clause to transfer to insureds the non-transferable duty to conduct a thorough investigation of the claims against the insured. (Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc. (2000) 78 Cal.App.4th 847, 879); Mariscal v. Old Republic Life Ins. Co. (1996) 42 Cal.App.4th 1617, 1624-1625; Frommoethelydo v. Fire Ins. Exch. (1986) 42 Cal.3d 208, 220; Eigner v. Worthington (1997) 57 Cal.App.4th 188, 198.) Liberty has not suggested in any way that the privileged/protected information it seeks will assist it in defending Ironwood in the above-referenced lawsuit (the "Cobb Lawsuit"). This is not surprising because none of the information sought by Liberty would assist in Ironwood's defense in the Cobb Lawsuit. If the opposite were true, Ironwood would use this supposedly helpful information against the plaintiffs in the Cobb Lawsuit. It is, however, not.

More importantly, a cooperation clause **does not** require the insured to disclose privileged/protected information to the insurer. California law on this issue could not be more clear. (Rockwell Int'l Corp. v. Superior Court (1994) 26 Cal.App.4th 1255, 1265-6 ("[W]e refuse to read into the cooperation clause an unintended implied waiver of the attorney-client privilege."); Civ. Code § 2860 (d).) Accordingly, because the information sought by Liberty is privileged/protected, Liberty is not entitled to the requested information as a matter of law. Simply put, there is no basis under California law that entitles Liberty to receive the requested privileged/protected information and Liberty has provided none.

Furthermore, as matter of law, the insured is not obligated to reveal any privileged information that would be relevant to any dispute concerning coverage under the policy. (Civ. Code §2860 (d); Truck, supra, 79 Cal.App.4th at 975-976.) Because the information sought by Liberty will not assist it in the defense of the Cobb Lawsuit, Liberty's apparent sole purpose of seeking the information is to hope to obtain information it could use against Ironwood. We emphatically point out, however, that none of the information sought by Liberty would have any bearing on any coverage defense Liberty may believe it has. Irrespective of that though, we also point out that under California law, Liberty cannot use the cooperation clause to obtain any such information even if it existed. And, we note that Liberty has not offered to reimburse Ironwood for the fees incurred for the work performed by Mr. Gerstel as reflected in his July, August and September 2011 invoices.

Finally, to the extent Liberty is implying in the February 13 e-mail that Ironwood has somehow breached the cooperation clause in the Liberty policy, Liberty would be required to show that it was substantially prejudiced in its ability to defend Ironwood against the Cobb Lawsuit by the breach. (Truck, supra, 79 Cal.App.4th at 976 ("Where an insured violates a cooperation clause, the insurer's performance is excused if its ability to provide a defense has been substantially prejudiced.")) Because the privileged/protected information has no bearing on any of Ironwood's defenses, Liberty would never be able to meet its burden.

Exhibit ___6___
Page ___3___

Seon Choi
February 20, 2013
Page 3 of 3

      For the reasons stated herein and in this firm's letters to Liberty dated December 10, 2012 and February 7, Ironwood again requests that Liberty return the pre-tender invoices (and confirm that it has destroyed any copies) by no later than **Friday, March 1, 2013**. Thank you for your prompt attention to this matter. If you or Liberty has any questions, please do not hesitate to contact us. In the meantime, Ironwood reserves all of its rights and waives none.

Very truly yours,

McLEOD LAW GROUP, A.P.C.

Daniel H. Rylaarsdam

Exhibit _____ 6
Page _____ 4

# EXHIBIT 7



**Liberty**
**International**
**Underwriters**

Seon Choi, Esq.
55 Water Street, 18th Floor
New York, NY  10041
Telephone (212) 208-9581
Fax (212) 208-4290
Seon.Choi@libertyiu.com

February 26, 2013

**CERTIFIED MAIL 7008 1140 0046 2510 982**
**RETURN RECEIPT REQUESTED**

Mr. John McLeod
McLeod Law Group
701 B Street, Suite 1570
San Diego, California  92101

Re: Nonprofit Executive Advantage Policy
Insured:              Ironwood Country Club
Insurer:              Liberty Insurance Underwriters Inc.
Policy No.:           DOCH216747-211
Policy Period:        October 1, 2011 to October 1, 2012
Limit of Liability: $2 million
Retention:            $10,000 each Claim
Matter:               William S. Cobb Jr. et al., v. Ironwood Country Club
File No.:             CHISPC000006429

Dear Mr. McLeod:

We also write to respond to your recent correspondence dated February 7, 2013 and February 20, 2013 as coverage counsel to Ironwood Country Club ("ICC") and to advise you that based upon our further investigation, there appears to be no coverage for this matter under the Policy as provided in more detail below.  We supplement our prior letters dated October 25, 2012 and January 11, 2013 which are incorporated by reference herein.

Exhibit ___7___
Page ___1___

The Complaint

On or about August 21, 2012, Mr. Cobb and several other members of ICC filed a complaint in the Superior Court of Riverside County, California against Ironwood Country Club. The Complaint alleges that on or about 1998, approximately 588 former and current members of ICC, including Mr. Cobb were assessed and loaned over $15 million to ICC for the purchase of real estate surrounding ICC. At the time of those loans, ICC provided a Statement of Information/Loan Agreement ("Agreement") dated March 24, 1999 to its members which governed the terms of the land purchase and details ICC's obligation to repay those loans or assessments to its members. The loan obligation by ICC to the members was determined to be approximately $25,500 per member.

The Complaint alleges that ICC has breached its fiduciary duties to its members and unjustly enriched itself by improperly administering the loans, underpaying certain members, and breaching its obligations to repay its members in full under the agreement. Towards that end, ICC's President, Ken Delf, allegedly sent a letter to all the members dated January 24, 2012 advising that ICC would no longer repay the $25,500 Land Assessments "to members who had or will resign and thereby forfeit their membership from the Club." The Complaint seeks declaratory relief regarding ICC and the members' respective rights under the Agreement; an accounting; imposition of a trust, as well as attorney fees and costs.

A prior demand letter from Mr. Cobb dated May 7, 2012 was also submitted to Liberty relating to this dispute between ICC and its members regarding the loans.

Coverage Analysis

ICC previously submitted to Liberty and sought coverage for the Complaint filed in August 2012, and also sought reimbursement for certain invoices for legal work by defense counsel Bryan Gerstal from the law firm of Green Bryant & French. The invoices by Mr. Gerstal reflect legal work for this matter during the period [July, August, September 2011], which was prior to ICC's execution of the Application for insurance with Liberty dated October 5, 2011 and prior to the inception date [October 1, 2011] of the Policy issued by Liberty to ICC.

In our earlier letter dated October 25, 2012, Liberty directed your attention to the **Application,** dated October 5, 2011. Specifically, question 14, *Prior Knowledge,* asks whether anyone for whom insurance is sought has any knowledge or information of any act, error, omission, fact or circumstance which may give rise to a **Claim** which may fall within the scope of the proposed insurance. The answer to question 14 in the **Application** is "No."

Exhibit _____ 7 _____
Page _____ 2 _____

The Application further provides that:

> It is understood and agreed that if anyone for whom this insurance is sought has any knowledge of any such act, error, omission, fact or circumstance, any **Claim** emanating therefrom shall be excluded from coverage under the proposed insurance.

In this regard, a billing statement from Mr. Gerstal dated October 13, 2011, for "Legal Services Month of September 2011," includes the following entry:

> Review and analyze legal issues and facts re: Assessment, Mistake of Fact and Law issues, Estoppel, Class Action issues and Liability; Declaratory Relief issues and Liability; Insurance issues re potential claims and coverage; Transferability of assessment rights; Contractual liability for assessment payments by forfeiting members; potential for present member claims; analysis of statutes, case law and Club documentation re issues; prepare Memo to Board of Directors on these issues[.]

Specifically, it appears that ICC and its counsel were considering "Insurance issues re potential claims and coverage" for this matter prior to the execution of the **Application** on October 5, 2011 and were aware as early of July and August of 2011 of the facts and circumstances which might give rise to this **Claim** by Mr. Cobb and other members of ICC. In light of this information, the response in the **Application** to question 6 appeared to have been inaccurate at the time the **Application** was executed.

As such, in our letter dated October 25, 2012, Liberty expressly reserved our rights to deny coverage for the **Claim** based upon the Application defenses in Section 6.1 of the Policy, but we offered ICC an opportunity to provide an explanation of the pre-tender invoices incurred by Mr. Gerstel for this matter and requested a copy of the legal memorandum Mr. Gerstel had prepared for the board. Rather than providing Liberty with the requested and relevant information, your letters dated February 7, and 20, 2013 purport to (1) withdraw Ironwood's prior request for reimbursement of the pre-tender invoices from the law firm of Green Bryant & French already submitted by ICC to Liberty; (2) seeks the return of copies of the pre-tender invoices on the grounds of privilege; and (3) declines our request for a copy of the legal memorandum or an explanation of the work performed by Mr. Gerstal on the grounds of privilege.

Moreover, we note that any serious privilege concerns that ICC's may have had with the legal invoices, and the relevant legal memorandum prepared for the board at issue could have easily been addressed through the execution of a standard confidentiality agreement which Liberty routinely signs with our Insureds and is willing to sign with ICC. Rather, your flat refusal to provide the relevant legal memorandum and explanation for the invoices further supports Liberty's view that ICC and its board

Exhibit ___7___
Page ___3___

members appear to have been aware of facts and circumstances which gave rise to the Complaint prior to the execution of the insurance Application.

Please note that Policy was issued to ICC in reliance upon the truthfulness and accuracy of the statements made in the **Application.**   Section 6.1 of the Policy provides that the **Insureds** represent that the statements and representations contained in the **Application** are true and shall be deemed material to the acceptance of the risk or the hazard assumed by Liberty under the Policy. Moreover, Section 6.1 provides that the Policy was issued in reliance upon the truth of such statements and representations.   Section 6.2 of the Policy indicates that the **Insureds** agree that if the **Application** contains any material statements or representations that are untrue, this Policy shall be void as to the **Insured Organization** and any **Insured Person** who knew the facts that were not truthfully disclosed, provided that such knowledge shall not be imputed to any other **Insured Person.** In this regard, there appears to be no coverage for the **Claim** based upon 6.1 and 6.2 of the Policy and Liberty must also reserve our rights to rescind the Policy.

In addition to the foregoing disclaimer, Liberty expressly reserves all of its rights and defenses raised in our prior correspondence and under the Policy, at law, and in equity, including our right to deny and/or void coverage on any of the foregoing bases and to deny and/or void coverage on additional and alternative bases as other terms, conditions, provisions and exclusions of the Policy, including matters contained in any **Application,** are found to apply. Liberty's position with respect to coverage for this matter is based on a review of the allegations in the Demand Letter, the Complaint and the exhibits attached thereto, the billing statements provided to us, and currently known facts. We also reserve the right to supplement Liberty's Position based upon the submission of any additional information regarding this matter, including but not limited to the information requested herein, including the legal memorandum prepared for the board referenced in Mr. Gerstal's legal invoice.

If you have any questions or concerns regarding your insurance coverage, you are entitled to have your claim reviewed by the California Department of Insurance. Your inquiry may be directed as follows:

California Department of
Insurance
Consumer Services
Division
300 South Spring Street,
11th Floor Los Angeles,
California 90013 (800)
927-4357 *I* (213) 897-
5961

Exhibit _____ 7
Page _____ 4

Of course, we encourage you to first contact the undersigned with any questions or comments you may have regarding the foregoing.

Sincerely,

*Seon Choi*

Seon Choi


cc:   Mr. Josh Tarmer
      Ironwood Country Club
      73-735 Irontree Drive
      Palm Desert, California 92260

      Mr. Alan Lux *I* Tanenbaum
      Harber of CA

      Todd Weber/Liberty International
      Underwriters.

Exhibit _____ 7

Page _____ 5

# EXHIBIT 8

## Dan Rylaarsdam

| | |
|---|---|
| **From:** | Dan Rylaarsdam <drylaarsdam@mcleodlawgroup.com> |
| **Sent:** | Friday, March 01, 2013 3:49 PM |
| **To:** | seon.choi@LibertyIU.com |
| **Cc:** | 'John McLeod' |
| **Subject:** | Cobb v. Ironwood |

Ms. Choi,

Please see the attached letter.



Choi (resp to
022613 ltr and u...

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

Exhibit ____8____
Page ____1____

# McLeod Law Group

A PROFESSIONAL CORPORATION

701 "B" STREET, SUITE 1570
SAN DIEGO, CALIFORNIA 92101

DANIEL H. RYLAARSDAM
drylaarsdam@mcleodlawgroup.com

TELEPHONE (619) 236-9938
FACSIMILE (619) 236-9943

March 1, 2013

**VIA U.S. MAIL and E-MAIL (seon.choi @LibertyIU.com)**

Seon Choi
AVP, Specialty Casualty Claims
Liberty International Underwriters
55 Water Street, 18th Floor
New York, NY 10041

|  |  |
|---|---|
| Re: | **Cobb, et al. v. Ironwood County Club** |
| Insurer: | Liberty Insurance Underwriters Inc. |
| Policy No.: | DOCH216747-211 (October 1, 2011 to October 1, 2012) |
| Insured: | Ironwood Country Club |
| Your File No.: | CHRISPC000006429 |

Dear Ms. Choi:

We write in regarding to your February 26, 2013, letter to John McLeod of this firm and in regard to certain invoices submitted by Ironwood Country Club's ("Ironwood") defense counsel, Bryan R. Gerstel of Green Bryant & French LLP ("GB&F"), to Liberty Insurance Underwriters Inc. ("Liberty") that remain unpaid.

First, having reviewed the February 26 letter, it is unclear what Liberty's position is with respect to its duty to provide a defense for Ironwood in the above-entitled matter (the "Cobb Lawsuit"). Is Liberty withdrawing from the defense? If so, it needs to clearly apprise Ironwood of Liberty's position. Even if Liberty has decided to withdraw from the defense (Ironwood would dispute the correctness and reasonableness of such a decision), it is a prospective decision that does not affect Liberty's duty to pay defense fees incurred to date.

Second, this is the third time we have written to Liberty to request that Mr. Gerstel's invoices be paid in a timely manner. We first wrote to Liberty on January 29, 2013, and asked that Mr. Gerstel's invoices dated October 11, 2012, November 21, 2012 and December 12, 2012 be paid no later than February 1, 2013. Liberty neither responded to the January 29 letter nor paid the

Exhibit ___8___
Page ___2___

Seon Choi
March 1, 2013
Page 2 of 2

outstanding invoices.  We then wrote to Liberty on February 7, 2013, and again reminded Liberty that Mr. Gerstel's invoices still had not been paid and demanded that they be paid no later than February 15, 2013.  That request for payment was ignored as well.  For your convenience, copies of the invoices that are the subject of the January 29 and February 6 letters (as well as the letters themselves) are enclosed.  In addition, we are enclosing Mr. Gerstel's invoices dated January 27, 2013 and February 12, 2013.  Ironwood has paid $10,000 to Mr. Gerstel and has satisfied the Liberty policy's retention.  Based on Ironwood's payment of the retention, the total amount due by Liberty is presently **$25,317.68**.

As Liberty surely knows, under California law, an insurer has a duty to immediately defend its insured against any lawsuit involving potentially covered claims.  (Buss v. Superior Court (1997) 16 Cal.4th 35, 49 ("To defend meaningfully, the insurer must defend immediately.  To defend immediately, it must defend entirely."))  And, under California law, an insurer's failure to timely pay defense fees is a breach of its duty to defend.  (Intergulf Develop. v. Superior Court (2010) 183 Cal.App.4th 16, 20 ("Unreasonable delay in paying policy benefits . . . is an actionable withholding of benefits which may constitute a breach of contract as well as bad faith giving rise to damages in tort."))  Ironwood should have long ago begun paying Mr. Gerstel and complying with its duties under the Liberty policy and California law.  We would like to believe that this issue can now be quickly resolved.

Thank you for your prompt attention to this matter.  We request that Mr. Gerstel's invoices be paid as soon as possible but no later than **Monday, March, 11, 2013**.  And, as requested before, we request that future invoices submitted by Mr. Gerstel be paid within thirty (30) days.  If you or Liberty has any questions, please do not hesitate to contact us.  In the meantime, Ironwood reserves all of its rights and waives none.

Very truly yours,

McLEOD LAW GROUP, A.P.C.

Daniel H. Rylaarsdam

Enclosures: (1) GB&F's October 11, 2013, invoice number 32881 (3 pages); (2) GB&F's November 21, 2012, invoice number 33184 (3 pages); (3) GB&F's December 12, 2012, invoice number 33595 (4 pages); (4) January 27, 2013 (3 pages); (5) February 12, 2013 (7 pages); (6) January 29, 2013, letter from Daniel H. Rylaarsdam of McLeod Law Group, A.P.C. to Christine J. Testaverde of Liberty Insurance Underwriters (2 pages); and (7) February 7, 2013, letter from Mr. Rylaarsdam to Ms. Testaverde (2 pages).

Exhibit _____ 8 _____
Page _____ 3 _____

# EXHIBIT 9

**Dan Rylaarsdam**

| | |
|---|---|
| **From:** | Choi, Seon (New York-LIU) <Seon.Choi@LibertyIU.Com> |
| **Sent:** | Wednesday, March 13, 2013 4:47 PM |
| **To:** | drylaarsdam@mcleodlawgroup.com |
| **Subject:** | Ironwood Country Club   File No. CHRISPC00006427 |
| **Attachments:** | Ironwood Denial.pdf |

Mr. Rylaarsdam,

In response to your letter dated March 1, 2013, attached is another copy of Liberty's letter dated February 26, 2013 denying coverage for this matter which is incorporated herein. As you know, a denial of coverage by Liberty means that we will not be assigning defense counsel or reimbursing Ironwood for the defense firm that Ironwood has already retained for this matter.

Thank you,

Seon Choi
AVP, Specialty Casualty Claims
Liberty International Underwriters
55 Water Street, 18th Street
New York, New York 10041
(212)208-9581

The information in this e-mail and in any attachments is confidential and may be privileged. If you are not the intended recipient, please destroy this message and notify the sender immediately. You should not retain, copy or use this e-mail for any purpose, nor disclose all or any part of its contents to any other person or persons.

Any views expressed in this message are those of the individual sender, except where the sender specifically states them to be the views of Liberty International Underwriters.

Liberty International Underwriters may monitor the content of e-mails sent and received via its network for viruses or unauthorized use and for other lawful business purposes.

1

Exhibit _____ 9
Page _____ 1



**Liberty**
**International**
**Underwriters**

Seon Choi, Esq.
55 Water Street, 18th Floor
New York, NY 10041
Telephone (212) 208-9581
Fax (212) 208-4290
Seon.Choi@libertyiu.com

February 26, 2013

**CERTIFIED MAIL 7008 1140 0046 2510 9982**
**RETURN RECEIPT REQUESTED**

Mr. John McLeod
McLeod Law Group
701 B Street, Suite 1570
San Diego, California 92101

Re: Nonprofit Executive Advantage Policy
Insured:          Ironwood Country Club
Insurer:          Liberty Insurance Underwriters Inc.
Policy No.:       DOCH216747-211
Policy Period:    October 1, 2011 to October 1, 2012
Limit of Liability: $2 million
Retention:        $10,000 each Claim
Matter:           William S. Cobb Jr. et al., v. Ironwood Country Club
File No.:          CHISPC000006429

Dear Mr. McLeod:

We also write to respond to your recent correspondence dated February 7, 2013 and February 20, 2013 as coverage counsel to Ironwood Country Club ("ICC") and to advise you that based upon our further investigation, there appears to be no coverage for this matter under the Policy as provided in more detail below. We supplement our prior letters dated October 25, 2012 and January 11, 2013 which are incorporated by reference herein.

Exhibit _____ 7 _____
Page _____ 2 _____

The Complaint

On or about August 21, 2012, Mr. Cobb and several other members of ICC filed a complaint in the Superior Court of Riverside County, California against Ironwood Country Club. The Complaint alleges that on or about 1998, approximately 588 former and current members of ICC, including Mr. Cobb were assessed and loaned over $15 million to ICC for the purchase of real estate surrounding ICC. At the time of those loans, ICC provided a Statement of Information/Loan Agreement ("Agreement") dated March 24, 1999 to its members which governed the terms of the land purchase and details ICC's obligation to repay those loans or assessments to its members. The loan obligation by ICC to the members was determined to be approximately $25,500 per member.

The Complaint alleges that ICC has breached its fiduciary duties to its members and unjustly enriched itself by improperly administering the loans, underpaying certain members, and breaching its obligations to repay its members in full under the agreement. Towards that end, ICC's President, Ken Delf, allegedly sent a letter to all the members dated January 24, 2012 advising that ICC would no longer repay the $25,500 Land Assessments "to members who had or will resign and thereby forfeit their membership from the Club." The Complaint seeks declaratory relief regarding ICC and the members' respective rights under the Agreement; an accounting; imposition of a trust, as well as attorney fees and costs.

A prior demand letter from Mr. Cobb dated May 7, 2012 was also submitted to Liberty relating to this dispute between ICC and its members regarding the loans.

Coverage Analysis

ICC previously submitted to Liberty and sought coverage for the Complaint filed in August 2012, and also sought reimbursement for certain invoices for legal work by defense counsel Bryan Gerstal from the law firm of Green Bryant & French. The invoices by Mr. Gerstal reflect legal work for this matter during the period [July, August, September 2011], which was prior to ICC's execution of the Application for insurance with Liberty dated October 5, 2011 and prior to the inception date [October 1, 2011] of the Policy issued by Liberty to ICC.

In our earlier letter dated October 25, 2012, Liberty directed your attention to the **Application,** dated October 5, 2011. Specifically, question 1 4, *Prior Knowledge,* asks whether anyone for whom insurance is sought has any knowledge or information of any act, error, omission, fact or circumstance which may give rise to a **Claim** which may fall within the scope of the proposed insurance. The answer to question 14 in the **Application** is "No."

Exhibit 9
Page 3

The Application further provides that:

> It is understood and agreed that if anyone for whom this insurance is sought has any knowledge of any such act, error, omission, fact or circumstance, any **Claim** emanating therefrom shall be excluded from coverage under the proposed insurance.

In this regard, a billing statement from Mr. Gerstal dated October 13, 2011, for "Legal Services Month of September 2011," includes the following entry:

> Review and analyze legal issues and facts re: Assessment, Mistake of Fact and Law issues, Estoppel, Class Action issues and Liability; Declaratory Relief issues and Liability; Insurance issues re potential claims and coverage; Transferability of assessment rights; Contractual liability for assessment payments by forfeiting members; potential for present member claims; analysis of statutes, case law and Club documentation re issues; prepare Memo to Board of Directors on these issues[.]

Specifically, it appears that ICC and its counsel were considering "Insurance issues re potential claims and coverage" for this matter prior to the execution of the **Application** on October 5, 2011 and were aware as early of July and August of 2011 of the facts and circumstances which might give rise to this **Claim** by Mr. Cobb and other members of ICC. In light of this information, the response in the **Application** to question 6 appeared to have been inaccurate at the time the **Application** was executed.

As such, in our letter dated October 25, 2012, Liberty expressly reserved our rights to deny coverage for the **Claim** based upon the Application defenses in Section 6.1 of the Policy, but we offered ICC an opportunity to provide an explanation of the pre-tender invoices incurred by Mr. Gerstel for this matter and requested a copy of the legal memorandum Mr. Gerstel had prepared for the board. Rather than providing Liberty with the requested and relevant information, your letters dated February 7, and 20, 2013 purport to (1) withdraw Ironwood's prior request for reimbursement of the pre-tender invoices from the law firm of Green Bryant & French already submitted by ICC to Liberty; (2) seeks the return of copies of the pre-tender invoices on the grounds of privilege; and (3) declines our request for a copy of the legal memorandum or an explanation of the work performed by Mr. Gerstal on the grounds of privilege.

Moreover, we note that any serious privilege concerns that ICC's may have had with the legal invoices, and the relevant legal memorandum prepared for the board at issue could have easily been addressed through the execution of a standard confidentiality agreement which Liberty routinely signs with our Insureds and is willing to sign with ICC. Rather, your flat refusal to provide the relevant legal memorandum and explanation for the invoices further supports Liberty's view that ICC and its board

Exhibit ___9___
Page ___4___

members appear to have been aware of facts and circumstances which gave rise to the Complaint prior to the execution of the insurance Application.

Please note that Policy was issued to ICC in reliance upon the truthfulness and accuracy of the statements made in the **Application.** Section 6.1 of the Policy provides that the **Insureds** represent that the statements and representations contained in the **Application** are true and shall be deemed material to the acceptance of the risk or the hazard assumed by Liberty under the Policy. Moreover, Section 6.1 provides that the Policy was issued in reliance upon the truth of such statements and representations. Section 6.2 of the Policy indicates that the **Insureds** agree that if the **Application** contains any material statements or representations that are untrue, this Policy shall be void as to the **Insured Organization** and any **Insured Person** who knew the facts that were not truthfully disclosed, provided that such knowledge shall not be imputed to any other **Insured Person.** In this regard, there appears to be no coverage for the **Claim** based upon 6.1 and 6.2 of the Policy and Liberty must also reserve our rights to rescind the Policy.

In addition to the foregoing disclaimer, Liberty expressly reserves all of its rights and defenses raised in our prior correspondence and under the Policy, at law, and in equity, including our right to deny and/or void coverage on any of the foregoing bases and to deny and/or void coverage on additional and alternative bases as other terms, conditions, provisions and exclusions of the Policy, including matters contained in any **Application,** are found to apply. Liberty's position with respect to coverage for this matter is based on a review of the allegations in the Demand Letter, the Complaint and the exhibits attached thereto, the billing statements provided to us, and currently known facts. We also reserve the right to supplement Liberty's Position based upon the submission of any additional information regarding this matter, including but not limited to the information requested herein, including the legal memorandum prepared for the board referenced in Mr. Gerstal's legal invoice.

If you have any questions or concerns regarding your insurance coverage, you are entitled to have your claim reviewed by the California Department of Insurance. Your inquiry may be directed as follows:

California Department of
Insurance
Consumer Services
Division
300 South Spring Street,
11th Floor Los Angeles,
California 90013 (800)
927-4357 J (213) 897-
5961

Exhibit ____ 9
Page ____ 5

Of course, we encourage you to first contact the undersigned with any questions or comments you may have regarding the foregoing.

Sincerely,

*Seon Choi*

Seon Choi

cc:   Mr. Josh Tanner
      Ironwood Country Club
      73-735 Irontree Drive
      Palm Desert, California 92260

      Mr. Alan Lux *I* Tanenbaum
      Harber of CA

      Todd Weber/Liberty International
      Underwriters.

Exhibit _____ 9
Page _____ 6

# EXHIBIT 10

**Dan Rylaarsdam**

| | |
|---|---|
| **From:** | Dan Rylaarsdam <drylaarsdam@mcleodlawgroup.com> |
| **Sent:** | Monday, March 25, 2013 3:47 PM |
| **To:** | seon.choi@LibertyIU.com |
| **Cc:** | 'John McLeod' |
| **Subject:** | Cobb v. Ironwood |

Ms. Choi,

Please see the attached letter.



Choi (resp to
022613 ltr and 0...

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

Exhibit ___10___
Page ___1___

# McLeod Law Group

A PROFESSIONAL CORPORATION

701 "B" STREET, SUITE 1570
SAN DIEGO, CALIFORNIA 92101

DANIEL H. RYLAARSDAM
drylaarsdam@mcleodlawgroup.com

TELEPHONE (619) 236-9938
FACSIMILE (619) 236-9943

March 25, 2013

<u>VIA U.S. MAIL and E-MAIL (seon.choi @LibertyIU.com)</u>

Seon Choi
AVP, Specialty Casualty Claims
Liberty International Underwriters
55 Water Street, 18th Floor
New York, NY 10041

Re: <u>Cobb, et al. v. Ironwood County Club</u>
Insurer:      Liberty Insurance Underwriters Inc.
Policy No.:   DOCH216747-211 (October 1, 2011 to October 1, 2012)
Insured:      Ironwood Country Club
Your File No.: CHRISPC000006429

Dear Ms. Choi:

We write in regard to your February 26, 2013, letter to John McLeod and your March 13, 2013, e-mail to me. According to your March 13 e-mail, the February 26 letter memorializes Liberty Insurance Underwriters Inc.'s ("Liberty") withdrawal from its agreement to provide a defense to Ironwood Country Club ("Ironwood") in the above-entitled action (the "Cobb Lawsuit"). It also confirmed that Liberty is now refusing to pay for any defense fees and costs already incurred (or to be incurred) by Ironwood in the Cobb Lawsuit. Liberty takes these positions now even though it initially acknowledged in its October 25, 2012, letter that coverage under the above-referenced policy (the "Liberty Policy") was triggered by the Cobb Lawsuit and it admits (as it must) that it has received no new or different information since the sending of that letter. The following will explain why Liberty's new position is wrong and unreasonable. We also repeat our request that Liberty immediately return the privileged/protected invoices as set forth in our December 10, 2012 and January 10 and February 7 and 20, 2013 letters to Liberty.[1]

---

[1] Ironwood also demands that Liberty not disseminate the protected/privileged invoices (or their contents) to any person or entity, including its attorneys. And, if it has already done so, Ironwood demands that Liberty protect Ironwood's interests, as it is required to do under California law, and notify the person(s) or entity(ies) who have received the invoices and/or their contents that they are privileged/protected and must be returned to Ironwood without delay. We also remind Liberty that any

Exhibit     10
Page        2

Seon Choi
March 25, 2013
Page 2 of 8

Accordingly, for the reasons set forth below, Ironwood demands that, as soon as possible but no later than **Friday, April 5, 2013**, Liberty (1) agree to withdraw its erroneous and wrongful denial of its duty to defend; (2) pay in full all outstanding fees and costs incurred in the defense of the Cobb Lawsuit (which amount, after deduction of the Retention payment, now totals **$46,545.61**); and (3) return the privileged/protected invoices. To show that Ironwood takes serious Liberty's breaches of its obligations and its bad faith conduct, enclosed is a courtesy copy of the declaratory relief/bad faith complaint Ironwood will file if Liberty does not fully comply with these demands by the deadline set forth herein.

Preliminarily, we remind Liberty of the pertinent facts relating to the present dispute. During the period covered by Mr. Gerstel's July, August and September 2011 invoices, it is undisputed that the Ironwood board has not made any decision with respect to its alleged obligation to re-pay the assessments that are the subject of the Cobb Lawsuit. Indeed, until the board voted on January 19, 2012, there did not even appear to be a consensus among the board members as to whether Ironwood should or would alter its business practice. The application that is the subject of this dispute was signed by Ironwood several months before on October 5, 2011. Accordingly, on or prior to October 5, 2011, Ironwood, like any business, was simply performing its due diligence, considering its options and preparing to make an informed decision, with the assistance of its attorney, regarding whether it should or should not change one of its business practices. It was not until more than three months later that the board voted to stop re-paying the assessments. That January 19 decision was the event and circumstance that gave rise to the allegations in the Cobb Lawsuit. Indeed, it was the board's January 19 decision on which the plaintiffs in the Cobb Lawsuit base all of their claims. There are no allegations or claims in the Cobb Lawsuit that arise out of the due diligence the board undertook during the summer of 2011.

Additionally, we point out that Liberty continues to refuse to return the inadvertently disclosed July, August and September 2011 invoices of Mr. Gerstel. It also continues to request a copy of the privileged/protected memorandum mentioned in the October 13, 2011, invoice and for an explanation of the work performed by Mr. Gerstel for Ironwood during the June to October 2011 time period. There is no dispute, however, that these documents, their contents and the information Liberty seeks from Ironwood are privileged and/or protected under the attorney-client privilege and the attorney work product doctrine.[2] Moreover, it is undisputed that under California

---

attorney retained by Liberty has ethical obligations with respect to the receipt of privileged/protected information inadvertently disclosed. Under California law, an attorney has an ethical obligation to (1) not view privileged/protected information that the attorney knows in advance is privileged/protected; and/or (2) not use that privileged/protected information in any way. Here, because the information is clearly privileged/protected under California law and Ironwood has repeatedly asserted all applicable privileges/protections, Liberty's attorney has an ethical obligation to return the privileged/protected invoices to Ironwood without delay and to not use the invoices or their contents for any purpose.

[2] We reject Liberty's suggestion in the February 26 letter that the privilege issues could have been resolved by the parties simply entering into a confidentiality agreement. First, Liberty did not offer this purported "solution" to Ironwood until its February 26 letter. However, by then, Liberty had denied all coverage for the Cobb Lawsuit and refused to defend Ironwood. Thus, this suggestion is nothing more than a red herring. Second, even if Liberty had made such an offer earlier, a confidentiality agreement would not necessarily protect third parties (or even the plaintiffs in the Cobb Lawsuit) from claiming that Ironwood waived all the privileges/protections by disclosing the privileged/protected information to Liberty. Third, and perhaps most importantly, Ironwood has no obligation or duty under the Liberty Policy or California law, with or without a

Exhibit _____ 10
Page _____ 3

Seon Choi
March 25, 2013
Page 3 of 8

law, Ironwood is the holder of the attorney-client privilege and Mr. Gerstel is the holder of the protections afforded by the attorney work product doctrine. (State Comp. Ins. Fund v. WPS, Inc. (1999) 70 Cal.App.4th 644, 652-653; OXY Resources Calif. LLC v. Superior Court (2004) 115 Cal.App.4th 874, 901; and Mitchell v. Superior Court (1984) 37 Cal.3d 591, 602-603.) And, as Liberty knows and as we explained in our February 7, 2013, letter to Christine Testaverde, neither Ironwood nor Mr. Gerstel waived any privileges or protections afforded those materials. Accordingly, Liberty's refusal to return the privileged/protected materials and information and its continued requests for additional privileged/protected information is wrongful and unreasonable.

We now turn to Liberty's decision to withdraw from of the defense of Ironwood in the Cobb Lawsuit. The following will explain why Liberty's decision was wrong and unreasonable and not in conformity with California law. Liberty's withdrawal is entirely based on Ironwood's purported "No" answer to Question No. 14[3] on the application for the Liberty Policy and the accompanying exclusion. Liberty contends that Ironwood should have answered "Yes" because at the time the application was completed Ironwood's board of directors was contemplating possible changes to Ironwood's policies with respect to the assessments. Liberty has yet to explain why the mere contemplation of a possible action in the future required Ironwood to answer "Yes" to this question. As Liberty surely knows and recognizes (and as we explained in our February 7 letter), Ironwood and its board has a right (and a duty) to thoroughly consider the ramifications of any contemplated future action. It also has a right (and a duty) to protect Ironwood's and its members' interests and assets. Businesses everyday consider possible future actions and whether they have adequate insurance to protect their interests. The mere contemplation of a possible future action and associated insurance coverage issues is not required to be disclosed on an insurance application, much less in response to a question like Question No. 14 on Liberty's application. Indeed, if that were the rule, there would be no end to what a prospective insured would be required to include in responding to Liberty's Question No. 14. Liberty's position is patently unreasonable because it would require the disclosure of everything that a prospective insured ever considered or thought about doing (apparently without any time limitations[4]) because of the chance that it might later actually take an action that might result in a lawsuit. Taking Liberty's position to its logical conclusion, a prospective insured would be required to disclose on an application the fact that it is thinking about terminating an employee. It would also be required to

---

[3] Ironwood reserves all of its rights with respect to the purported "No" response Liberty contends Ironwood provided for Question No. 14 in the application. We also note that in Liberty's October 25, 2012, letter Liberty stated that it was Ironwood's purported response to Question No. 6 for which it was reserving its rights. In Liberty's February 26 letter, it claims that it was Ironwood's purported responses to both Question No. 6 and Question No. 14. Liberty's unexplained and constantly changing positions are, to say the least, perplexing.

[4] Liberty's position would conceivably require an insured to disclose on an application any action it contemplates (or contemplated) taking or any issue that it considers (or considered) even if those deliberations take place over several years or decades.

confidentiality agreement, to provide privileged/protected information or communications or information related to coverage disputes to Liberty. To the contrary, Ironwood is absolutely entitled to assert all privileges/protections afforded such materials and to refuse to provide the privileged/protected information or communications. (Grey v. Superior Court (1976) 62 Cal.App.3d 698, 703-04; Rockwell Int'l Corp. v. Superior Court (1994) 26 Cal.App.4th 1255, 1265-56; Truck Ins. Exch. v. Unigard Ins. Co. (2000) 79 Cal.App.4th 966, 975-976; and Civ. Code § 2860 (d).) Thus, Liberty's belated offer to enter into a confidentiality agreement is not a solution and is unreasonable.

Exhibit _____ 10
Page _____ 4

Seon Choi
March 25, 2013
Page 4 of 8

disclose that it was thinking about constructing a building or changing a business practice or that it was purchasing insurance or reviewing its coverage because it might be sued at some point in time for something it had not even actually done. Indeed, under Liberty's rationale, an insured would be required to disclose that it was thinking about replacing the carpet in its business because an injury might occur during installation. Liberty is legally obligated to take reasonable positions and its position here is grossly unreasonable.

Moreover, no California court has held that a prospective insurer is required to disclose the fact that it was thinking about doing something or thinking about changing its business practices that, if done, could lead to a later claim. Indeed, no California court has ever construe a question like Question No. 14 on the application to require a prospective insured to disclose what the insured was contemplating. The cases that that have addressed the failure to disclose facts or circumstances on an application (or the insured's prior knowledge of such facts or circumstances) that could later give rise to a claim concern situations where a wrongful act or accident had already occurred or a demand letter and threat of future litigation had already been received. For example, in Advanced Micro Devices v. Great American Surplus Lines Insurance Co. (1988) 199 Cal.App.3d 791, the insured knew that its tanks were leaking toxic substances into the soil and ground water and testing had already revealed that the leaking substances contained toxins higher then permitted by law. As a result of the insured's failure to disclose these facts on its application, the court held that there was no coverage. In Resure, Inc. v. Superior Court (1996) 42 Cal.App.4th 156, the insured did not disclose lawsuits already filed against it as part of its application for insurance, allowing the insurer to pursue rescission of the policy. (Id. at 158-59.) Another example is Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co. (1976) 64 Cal.App.3d 261, in which the insured received a demand letter but did not disclose it on an insurance application, resulting in the subsequent lawsuit being excluded from coverage. (Id. at 269-270.) The situation presented here, however, is not one that comes with the ambit of these (or similar) cases. Instead, the situation here is far removed from the fact patterns of those cases. This is so because as of October 5, 2011, Ironwood had not made any decision to change its business practices or policies. Therefore, there was no claim that had been made against Ironwood or evidence of a problem that would lead it to believe that a claim would be asserted.

Second, as Liberty knows, under California law, Liberty must apply and construe exclusions and limitations on coverage narrowly in favor of Ironwood.[5] (See, e.g., State Farm Mut. Auto. Ins. Co. v. Partridge (1973) 10 Cal.3d 94, 101 ("Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured, exclusionary clauses are interpreted narrowly against the insurer.")) And, if there is any doubt with respect to coverage, it must be resolved in the insured's favor. (MacKinnon v. Truck Insurance Exchange (2003) 31 Cal.4th 635, 656.) These rules apply equally to questions in applications for insurance. (Metropolitan Life Ins. Co. v. Devore (1967) 66 Cal.2d 129, 136; Jefferson Standard Life Ins. Co. v. Anderson (1965) 236 Cal.App.2d 905, 912 (ambiguous question in insurance policy application

---

[5] The discussions in the letter regarding Liberty's wrongful and unreasonable position with respect to the "Yes" response it believes Ironwood was required to give to Question No. 14 apply equally to Liberty's wrongful and unreasonable position with respect to the purported exclusion in the application that appears to bar coverage for matters for which a "Yes" response to Question No. 14 was required.

Exhibit _____ 10 _____
Page _____ 5 _____

Seon Choi
March 25, 2013
Page 5 of 8

must be interpreted in a manner that does not avoid coverage); Allstate Ins. Co. v. Erickson (9th
Cir. 1955) 227 F.2d 755, 756.)  Because Question No. 14 and the purported "exclusion" in the
application[6] must be narrowly construed and applied, Question No. 14 can only be read as
requiring Ironwood to provide information about an actual "act, error, omission, fact, or
circumstance," that has already taken place and that actually may give rise to a later claim.  As
noted above, the mere consideration of taking some action in the future did not give rise to the
Cobb Lawsuit.  Nor could it give rise to any future lawsuit.  What gave rise to the Cobb Lawsuit
was Ironwood's January 19, 2012, decision to stop re-paying the assessments.  That decision was
made many months after the October 5, 2011, application was signed.  However, contrary to
California law, Liberty has abandoned the defense of Ironwood in the Cobb Lawsuit based solely
on the notion that Ironwood was required to disclose more than what the application sought or
more than what Ironwood could have reasonably understood was purportedly being sought.  If
Liberty wanted to know what Ironwood was contemplating doing, California law required it to
actually ask that question.  Having not done so, it cannot deny coverage based on information for
which it did not ask.  (Ashley v. Am. Mut. Liab. Ins. Co. (N.D. Cal. 1958) 167 F.Supp. 125, 131
(insurers must "use such language as to make the questions in the application clear to the ordinary
mind"); Metropolitan, supra, 66 Cal.2d at 136; Jefferson, supra, 236 Cal.App.2d at 912; Allstate,
supra, 227 F.2d at 756 ("Any printed questions . . . that the insurance company felt were proper or
desirable could have been printed in the application and the policy. . . .  If it desired more detailed
or other information, it could have asked for it."); and Unionamerica Ins. Co. v. The Fort Miller
Group. Inc. (N.D. Cal. 2008) 590 F.Supp.2d 1254, 1260 (insured not required to disclose
information in application which insurer did not ask for).)

Furthermore, if in fact a prospective insured is required to disclose that it is considering a
new or different business practice or procedure, at what point in the decision making process does
it have to answer "Yes" to a question like Question No. 14?  Question No. 14 certainly does not
give any clue as to when on the spectrum of the decision making process such contemplations
would have to be disclosed.  If a board member merely informally suggests a new or different
business practice, does that trigger a "Yes" response to Question No. 14?  If one or more board
members are, or a committee is, tasked with evaluating a contemplated change in procedure, does
that trigger a "Yes" response to Question No. 14?  If the contemplated change in procedure is put
up for a vote by the board, does that trigger a "Yes" response to Question No. 14?  What if the
board seeks the advice of counsel regarding the contemplated change in procedure, does that
trigger a "Yes" response to Question No. 14?  Whatever answers Liberty may suggest in response
to these questions, there is nothing in the language of Question No. 14 that makes those parameters
clear.  Whatever Liberty's intentions, Liberty's failure to clearly phrase the question to get that
information precludes it from trying to impose that unexpressed intent on its insured after the fact.
There is nothing in the language of Question No. 14 that put Ironwood on notice that Liberty was
seeking the disclosure of such information.

---

[6] Ironwood reserves all its rights regarding the interpretation and application of the purported "exclusion" in the application.
We also note that Liberty apparently contends that Sections 6.1 and 6.2 are coverage exclusions.  This is patently false and
Liberty's position to the contrary is erroneous and unreasonable.

Exhibit _____ 10
Page _____ 6

Seon Choi
March 25, 2013
Page 6 of 8

Third, Liberty cannot properly withdraw from Ironwood's defense based solely on
Ironwood's supposed omission in its application.  Under California law, Liberty has a duty to
defend against any claims where there exists a potential for coverage.  (Gray v. Zurich Insurance
Co. (1966) 65 Cal.2d 263, 275.)  An insurer can avoid its duty to defend only if "the third party
complaint can by no conceivable theory raise a single issue which could bring it within the policy
coverage." (Montrose Chem. Corp. v. Superior Court (1993) 6 Cal.4th 287, 300.)  Liberty is
speculating as to what Ironwood may or may not have been aware of as of October 5, 2011, when
the application was submitted.  And, is relying exclusively on that speculation to justify its
abandonment of Ironwood's defense.  The facts demonstrate the fallacy in Liberty's position.
Liberty repeatedly requested (1) an explanation of the work performed by Mr. Gerstel for
Ironwood before October 5, 2011; and (2) Mr. Gerstel's privileged/protected memorandum.  These
requests show that Liberty did not (and does not) have information sufficient to demonstrate
definitively that prior to October 5, 2011, there existed an "act, error, omission, fact, or
circumstance" which might give rise to a "Claim, which may fall within the scope of the" Liberty
Policy.  Indeed, the language Liberty used in the February 26 letter is telling.  Nowhere does
Liberty state that the facts unequivocally show that there is no potential that Ironwood was not
aware of an "act, error, omission, fact, or circumstance," that could give rise to a later claim.
Instead, Liberty repeatedly makes the following concessions: "there appears to be no coverage,"
"it appears that [Ironwood] and its counsel were considering 'Insurance issues re potential claims
and coverage," "the response in the Application to question [SIC] appeared to have been
inaccurate" and "[Ironwood] and its board members appear to have been aware of facts and
circumstances which gave rise to the Complaint."  Liberty surmising that there "appears" to be no
coverage is not a sufficient basis to deny a duty to defend.  California law requires a higher
showing.  Accordingly, because Liberty's position is based solely on speculation, there is no way it
can (or would ever be able to) demonstrate that there is no potential duty to defend the Cobb
Lawsuit.

Fourth, Liberty's denial of its duty to defend is based solely on inadvertently disclosed
privileged and protected information.  Liberty's reliance on this information, however, is wrong,
unreasonable and not supported by California law.  Indeed, because California law precludes an
insurer from receiving privileged/protected information from its insured, it logically follows then
that an insurer cannot rely on that privileged/protected information as a basis to refuse to defend its
insured.  (Grey, supra, 62 Cal.App.3d at 703-04; Rockwell, supra, 26 Cal.App.4th at 265-56;
Truck, supra, 79 Cal.App.4th at 975-976; and Civ. Code § 2860 (d).)  The Grey case is instructive
here.  In Grey, the insurer sought to avoid having to provide policy benefits under a life insurance
policy.  (Id. at 702.)  The only way it could prove that a suicide exclusion was applicable (and thus
avoid having to pay out under the policy) was to invade the patient-psychiatrist privilege and
question the insured's former psychiatrist about his treatment of the deceased.  (Id. at 703.)  The
court denied the insurer's attempt to invade this privilege even though it meant that insured was
left without any evidence to support its denial of policy benefits.  (Id. at 704.)  Like the insurer
attempted to do in Grey, Liberty is relying on Ironwood's privileged/protected information as the
sole basis to abdicate its duty to defend Ironwood in the Cobb Lawsuit.  California law does not
permit such conduct.

Exhibit ___10___
Page ___7___

Seon Choi
March 25, 2013
Page 7 of 8

Fifth, no purpose would be served by requiring a prospective insured to disclose that it was contemplating taking some action in the future. Liberty's position would subject businesses to an endless series of "gotcha" moments.[7] It is undisputed that the board's decision to stop re-paying the assessments, which later gave rise to the Cobb Lawsuit, did not occur until many months after the Liberty application was submitted by Ironwood. Accordingly, there was nothing that Ironwood was required to or could disclose on the application. Indeed, Ironwood's mere contemplation of maybe doing something in the future is not responsive to Question No. 14. This is so because when Ironwood completed the application, there was no "act, error, omission, fact, or circumstance[8], which may give rise to a Claim, which may fall within the scope of the proposed insurance." Ironwood was not sued because it was thinking about changing its practice of re-paying the assessment. Instead, as Liberty knows, Ironwood was sued because it decided on January 19, 2012, to actually stop re-paying the assessments. That was the only "act, error, omission, fact or circumstance" that gave rise to the Cobb Lawsuit. Thus, there was nothing Ironwood was required to disclose or that Ironwood was aware of that was responsive to Question No. 14.

Finally, we remind Liberty again of its duty under California law to timely pay for Ironwood's defense in the Cobb Lawsuit. With Ironwood's payment of $10,000 towards the defense, the total amount incurred by Ironwood in the defense of the Cobb Lawsuit is now $46,545.61. As with Ironwood's prior requests, we demand that Liberty immediately process the invoices already provided to Liberty for payment. Once we receive Liberty's agreement that it will defend Ironwood, we will provide it with subsequently issued invoices. For the reasons explained above, Liberty has a duty to defend Ironwood in the Cobb Lawsuit. Under California law, Liberty cannot sit idly by and not pay for the defense it promised it would provide and has a duty under the Liberty Policy and California law to provide. (Buss v. Superior Court (1997) 16 Cal.4th 35, 49; Intergulf Develop. v. Superior Court (2010) 183 Cal.App.4th 16, 20.) Finally, even if Liberty wrongly chooses to stand by its February 26 denial of coverage (for the reasons explained herein such a position would be erroneous and unreasonable), it still has an obligation under California law to pay the outstanding defense fees and costs. (Scottsdale Ins. Co. v. MV Transp. (2005) 36 Cal.4th 643, 655 ("When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, it is extinguished only prospectively and not retroactively.")) Thus, by refusing to even pay for the defense fees and costs already incurred, Liberty is in breach of its duty to defend and is subject to bad faith liability.

Thank you for your prompt attention to this matter. Ironwood again demands that by no later than **Friday, April 5, 2013**, Liberty (1) agree to withdraw its erroneous and wrongful denial

---

[7] Liberty's position also would require a prospective insured to notify its current insurer of what it was contemplating doing. However, that insurer would most likely not treat that disclosure as an occurrence or event that might result in a claim (which would not be covered as a claim if one was subsequently made outside of the policy period.) Accordingly, Liberty's position cannot be correct because the prospective insurer would find itself without coverage for a later made claim because it would be excluded under its prior policy and under its newly acquired policy.

[8] "[C]ircumstance" is undefined in the Liberty application. Webster's defines "circumstance" as "a particular incident or occurrence." Under this definition, there was no "circumstance" that would have required Ironwood to answer Question No. 14 with a "Yes." This is so because, for the reasons explained herein, there had not yet been an "incident" or "occurrence" that "may give rise to a Claim."

Exhibit _____ 10
Page _____ 8

Seon Choi
March 25, 2013
Page 8 of 8

of coverage; (2) pay in full all outstanding fees and costs incurred in the defense of the Cobb Lawsuit (which amount, after deduction of the Retention payment, now totals **$46,545.61**); and (3) return the privileged/protected invoices. If these demands are not met by the deadline, Ironwood will file the enclosed complaint. If you or Liberty has any questions, please do not hesitate to contact us. In the meantime, Ironwood reserves all of its rights and waives none.

Very truly yours,

McLEOD LAW GROUP, A.P.C.

Daniel H. Rylaarsdam

Enclosure: Proposed Complaint (15 pages)

Exhibit 10
Page 9

# EXHIBIT 11

## Dan Rylaarsdam

| | |
|---|---|
| **From:** | Dan Rylaarsdam <drylaarsdam@mcleodlawgroup.com> |
| **Sent:** | Friday, April 05, 2013 4:30 PM |
| **To:** | seon.choi@LibertyIU.com |
| **Cc:** | 'John McLeod' |
| **Subject:** | Ironwood Country Club   File No. CHRISPC00006427 |

Ms. Choi,

Liberty may have until Friday, April 19, 2013, to respond to our March 25, 2013. In light of the extension, we request that you provide me with Liberty's position by that Friday by e-mail or fax.

As always, Ironwood continues to reserve all of its rights and waives none.

Thank you.


Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

Exhibit ___\\___
Page _____

# EXHIBIT 12

**Dan Rylaarsdam**

| | |
|---|---|
| **From:** | Choi, Seon (New York-LIU) <Seon.Choi@LibertyIU.Com> |
| **Sent:** | Friday, April 19, 2013 1:09 PM |
| **To:** | Dan Rylaarsdam |
| **Cc:** | 'John McLeod' |
| **Subject:** | RE: Ironwood Country Club    File No. CHRISPC00006427 |

Mr. Rylaarsdam,

Thank you for providing the extension for Liberty to review this matter.   Liberty has reviewed Ironwood's  letter dated March 25, 2013 and attachments.   However, we continue to maintain our position as set forth in Liberty's prior correspondence  dated February 26, 2013 which is incorporated by reference herein, denying coverage for this matter.

In addition to our foregoing denial, Liberty reserves all rights under the Policy and at law.

Thank you.

Seon Choi
AVP, Specialty Casualty Claims
Liberty International Underwriters
55 Water Street, 18th Street
New York, New York 10041
(212)208-9581

---

**From:** Dan Rylaarsdam [mailto:drylaarsdam@mcleodlawgroup.com]
**Sent:** Friday, April 05, 2013 7:30 PM
**To:** Choi, Seon (New York-LIU)
**Cc:** 'John McLeod'
**Subject:** Ironwood Country Club File No. CHRISPC00006427


Ms. Choi,

Liberty may have until Friday, April 19, 2013, to respond to our March 25, 2013.  In light of the extension, we request that you provide me with Liberty's position by that Friday by e-mail or fax.

As always, Ironwood continues to reserve all of its rights and waives none.

Thank you.

Daniel H. Rylaarsdam, Esq.

McLEOD LAW GROUP, APC

701 B Street, Suite 1570

San Diego, California 92101

1

Exhibit ____12____
Page ____1____

619.236.9938 (x 104) (telephone)

619.236.9943 (facsimile)

drylaarsdam@mcleodlawgroup.com (e-mail)

www.mcleodlawgroup.com

---

The information in this e-mail and in any attachments is confidential and may be privileged. If you are not the intended recipient, please destroy this message and notify the sender immediately. You should not retain, copy or use this e-mail for any purpose, nor disclose all or any part of its contents to any other person or persons.

Any views expressed in this message are those of the individual sender, except where the sender specifically states them to be the views of Liberty International Underwriters.

Liberty International Underwriters may monitor the content of e-mails sent and received via its network for viruses or unauthorized use and for other lawful business purposes.

---

Exhibit ___12___
Page ___2___

# EXHIBIT 13

## Dan Rylaarsdam

| | |
|---|---|
| **From:** | Dan Rylaarsdam <drylaarsdam@mcleodlawgroup.com> |
| **Sent:** | Monday, July 08, 2013 5:40 PM |
| **To:** | 'Jeffrey S. Whittington'; 'nsarris@KBRlaw.com' |
| **Cc:** | 'john@mcleodlawgroup.com' |
| **Subject:** | Ironwood County Club v. Liberty Insurance Underwriters, Inc., et al. |

Gentlemen,

Please see the attached letter from John McLeod.  The original will be sent via U.S. Mail.

Thank you.

Whittington
(meet and confe...

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

Exhibit ___13___
Page ___1___

# McLeod Law Group
A PROFESSIONAL CORPORATION

701 "B" STREET, SUITE 1570
SAN DIEGO, CALIFORNIA 92101

JOHN J. McLEOD
john@mcleodlawgroup.com

TELEPHONE (619) 236-9938
FACSIMILE (619) 236-9943

July 8, 2013

**VIA U.S. MAIL and E-MAIL (jwhittington@KBRlaw.com and
nsarris@KBRlaw.com)**

Jeffrey Whittington, Esq.
Nicholas W. Sarris, Esq.
KAUFMAN BORGEEST & RYAN LLP
23975 Park Sorrento, Suite 370
Calabasas, CA 91302

Re:   Ironwood County Club v. Liberty Insurance Underwriters, Inc., et al.,
United States District Court – Central District – Eastern Division, Case No.
13-00996-VAP(DTBx)

Dear Messrs. Whittington and Sarris:

Pursuant Central District Local Rule 7-3, we write to meet and confer with you, counsel for
defendant Liberty Insurance Underwriters, Inc. ("Liberty") in the above entitled action (the
"Ironwood Lawsuit"), in regard plaintiff Ironwood Country Club's ("Ironwood") intention to file a
motion pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking summary adjudication of the
following issues: (1) Liberty's duty to reimburse defense fees and costs Ironwood incurred from
the date that Ironwood gave notice of the underlying lawsuit entitled Cobb, et al. v. Ironwood
County Club (the "Cobb Lawsuit") to the date Liberty withdrew from Ironwood's defense[1]; and
(2) Liberty's duty to defend Ironwood in the Cobb Lawsuit.  We also write again to demand that
Liberty (and you, if applicable), immediately return the privileged/protected invoices inadvertently
disclosed to Liberty as set forth in this firm's December 10, 2012 and January 10, February 7 and

---

[1] Under California law, Liberty actually has a duty to pay Ironwood's defense fees and costs until a court actually determines
that no claim can in fact be covered under any conceivable theory.  Accordingly, Ironwood reserves all of its rights under
California law to seek additional defense fees and costs incurred by Ironwood.  *Hartford Accident  & Indem. Co. v. Superior
Court*, 23 Cal. App. 4th 1774, 1781  (1994) ("[A] declaratory judgment of no coverage, either by summary judgment or after
trial, does not retroactively relieve the primary insurer of the duty to defend. It only relieves the insurer of the obligation to
continue to defend after the declaration."); *Haskel, Inc. v. Superior Court*, Cal. App. 4th 963, 977  (1995) (same).

Exhibit _____ 13
Page _____ 2

Jeffrey Whittington, Esq.
Nicholas W. Sarris, Esq.
July 8, 2013
Page 2 of 5

20 and March 25, 2013 letters to Liberty. If Liberty will not agree to do so, Ironwood intends to file a motion seeking an order establishing that the invoices are privileged and must be returned. Finally, Ironwood repeats its demand that Liberty not disseminate the protected/privileged invoices (or their contents) to any person or entity, including your and your firm or any other attorneys.

With respect to Ironwood's position regarding Liberty's duty to reimburse defense fees and costs incurred by Ironwood from on or about August 12, 2012, the date of tender of the Cobb Lawsuit, to February 26, 2013, the date that Liberty withdrew from its agreement to defend Ironwood in the Cobb Lawsuit, Ironwood intends to file a motion for summary adjudication on this issue. First, as Liberty presumably knows, an insurer cannot sit idly by and not pay for the defense it promised it would provide. *Buss v. Superior Court*, 16 Cal.4th 35, 49 (1997); *Intergulf Develop. v. Superior Court*, 183 Cal.App.4th 16, 20 (2010). Second, even if the duty to defend is extinguished by a showing that no claim can in fact be covered, the duty to defend is "extinguished only prospectively and not retroactively." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 655 (2005) ("When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, it is extinguished only prospectively and not retroactively.")) Accordingly, until a court determines that the underlying claims are in fact not covered, an insurer has an obligation under California law to continue defending its insured and paying outstanding defense fees and costs. Here, in its October 25, 2012, letter, Liberty stated that "Liberty confirms the defense that Liberty has agreed to provide to [Ironwood in the Cobb Lawsuit]" and acknowledged that "coverage is triggered for the [Cobb Lawsuit], subject to the reservation of rights discussed below." Liberty incurred defense fees and costs based on this agreement and invoices were submitted to Liberty for payment. Liberty, however, never paid any amount towards Ironwood's defense and never reimbursed Ironwood for any defense fees or costs incurred. Then, by letter dated February 26, 2013, Liberty withdrew its agreement to defend Ironwood in the Cobb Lawsuit based solely on it contention that no claim in the Cobb lawsuit could be covered by operation of the purported exclusion following Question No. 14 of the Application for Nonprofit Executive Advantage Policy (the "Question No. 14 Exclusion") and refused to pay any of Ironwood's defense fees and costs, including those already incurred.[2]

Liberty is fully aware that Ironwood contends that Liberty's positions on this issue is wrong and not in conformity with California law. Indeed, prior to filing its lawsuit against Liberty, Ironwood's position and the cases supporting its position have been set forth in its prior correspondence with Liberty's representatives. For your convenience, copies of that correspondence is enclosed and incorporated herein as is set forth in full. We request that Liberty again review Ironwood's positions and supporting authority, engage in the meet and confer process regarding Liberty's duty to reimburse Ironwood for defense fees and costs already incurred and respond to Ironwood's contentions by no later than **Thursday, July 11, 2013.**

---

[2] While Liberty's position in the February 26 letter was not entirely clear, Liberty's position was affirmed in a March 13, 2013, e-mail from Seon Choi of Liberty International Underwriters.

Exhibit ___ 13
Page ___ 3

Jeffrey Whittington, Esq.
Nicholas W. Sarris, Esq.
July 8, 2013
Page 3 of 5

        With respect to Liberty's broad duty to defend Ironwood in the Cobb Lawsuit (and duty to
continue to do so until the Cobb Lawsuit is resolved), Liberty presumably knows that under
California law, the duty to defend arises **immediately** upon notice of a covered claim against its
insured. *Buss v. Superior Court*, 16 Cal.4th 35, 49 (1997) ("To defend meaningfully, the insurer
must defend immediately.") And, under California law, Liberty has a duty to defend against any
claims where there exists a potential for coverage. As the California Supreme Court explained in
*Gray v. Zurich Insurance Co.*, 65 Cal.2d 263 (1966), an insurer "must defend a suit which
**potentially** seeks damages within the coverage of the policy." Id. at 275 (emphasis added). Under
long-standing California law, an insurer can avoid its duty to defend only if "the third party
complaint **can by no conceivable theory raise a single issue which could bring it within the
policy coverage.**" *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 300 (1993) (emphasis
added). Here, however, even Liberty's February 26 letter shows that Liberty cannot satisfy the
high "by no conceivable theory" standard. Instead, Liberty fails to offer any facts that
unequivocally show that there is no potential that Ironwood was not aware of an "act, error,
omission, fact, or circumstance," that could give rise to a later claim. Instead, Liberty repeatedly
makes the following concessions in its February 26 letter that show that even in Liberty's mind
there is doubt as to whether the purported Question No. 14 Exclusion applies and bars all coverage
for the Cobb Lawsuit:

- "there **appears** to be no coverage under the Policy";
- "it **appears** that [Ironwood] and its counsel were considering 'Insurance issues re potential claims and coverage";
- "the response in the Application to question [SIC] **appeared** to have been inaccurate"; and
- "[Ironwood] and its board members **appear** to have been aware of facts and circumstances which gave rise to the Complaint."

        Liberty surmising that there merely "appears" to be no coverage is not a sufficient basis to
withdraw from the defense of Ironwood in the Cobb Lawsuit or to deny a duty to defend.
California law requires a much higher showing. Accordingly, because Liberty's position is based
solely on speculation, there is no way it can (or would ever be able to) demonstrate that there is no
potential duty to defend the Cobb Lawsuit.

        Again, Liberty is fully aware that Ironwood contends that Liberty's positions on this issue
is wrong and not in conformity with California law. Prior to filing its lawsuit, Ironwood explained
in full its position to Liberty. We request that Liberty review Ironwood's positions and supporting
authority, engage in the meet and confer process regarding Liberty's duty to defend Ironwood and
respond to Ironwood's contentions by no later than **Thursday, July 11, 2013**.

        Additionally, Ironwood repeats its demand that the privileged/protected invoices
inadvertently disclosed to Liberty be returned immediately for the reasons set forth in this firm's
December 10, 2012 and January 10, February 7 and 20 and March 25, 2013 letters to Liberty.
Accordingly, Ironwood demands that Liberty return the privileged/protected invoices to this firm

Exhibit ___13___
Page ___4___

Jeffrey Whittington, Esq.
Nicholas W. Sarris, Esq.
July 8, 2013
Page 4 of 5

by no later than **Thursday, July 11, 2013**. If Liberty will not agree to return the
privileged/protected invoices, Ironwood intends to file a motion seeking an order determining that
the invoices are privileged and must be returned. We request that Liberty again review Ironwood's
positions and supporting authority set forth in its prior communications with Liberty and respond
to Ironwood's position on this issue by no later than **Thursday, July 11, 2013**.

Finally, Ironwood again demands that Liberty not disseminate the protected/privileged
invoices (or their contents) to any person or entity, including your and your form or any other
attorneys. If you have received the privileged/protected invoices from Liberty, under California
law, you have an ethical obligation to (1) not view privileged/protected information that you know
in advance is privileged/protected; and/or (2) not use that privileged/protected information in any
way. *See, e.g., Rico v. Mitsubishi Motors Corp.*, 42 Cal.4th 807, 819 (2007); *Clark v. Superior
Court*, 196 Cal. App. 4th 37 (2011). Here, because the information is clearly privileged/protected
under California law and Ironwood has repeatedly asserted all applicable privileges/protections
(and repeatedly requested the immediate return of the invoices), you, as Liberty's attorney, have an
ethical obligation to return the privileged/protected invoices to Ironwood without delay and to not
use the invoices or their contents for any purpose. If the invoices and/or their contents are used by
Liberty or you (or any other attorney for Liberty), Ironwood reserves all of its rights to seek to
have you and your firm (or any other attorney or firm) disqualified in this action and to seek all
other appropriate relief. *Gifford v. Target Corp.*, 723 F. Supp. 2d 1110, 1121 (D. Minn. 2010)
(motion to disqualify firm granted where attorney received privileged information because the
situation "raise[s] serious doubts as to whether th[e] case can proceed without the threat of a
'continuing taint on the litigation and trial.'"); *Rico*, 42 Cal.4th at 819.[3]

Thank you for your prompt attention to this matter. We look forward to having a
productive discourse on the issues discussed above and in Ironwood's prior communications with
Liberty. If you or Liberty has any questions, please do not hesitate to contact us. In the meantime,
Ironwood reserves all of its rights and waives none.

Very truly yours,

McLEOD LAW GROUP, A.P.C.

John J. McLeod

Enclosures: (1) December 10, 2012, letter from John J. McLeod of McLeod Law Group to
Christine J. Testaverde of Liberty International Underwriters (2 pages); (2) January 10,

---

[3] Federal courts look to state law to determine if an attorney acted unethically in reviewing more than necessary privileged
materials and improperly using privileged information to determine if the attorney and his/her firm should be disqualified.
*Gifford*, 723 F. Supp. 2d at 1117. The California Supreme Court has held that an attorney acts unethically when he/she uses
privileged materials inadvertently disclosed. *Rico*, 42 Cal.4th at 819.

Exhibit ___13___
Page ___5___

Jeffrey Whittington, Esq.
Nicholas W. Sarris, Esq.
July 8, 2013
Page 5 of 5

2013, letter from Mr. McLeod or Ms. Testaverde (2 pages) (without enclosure); (3) January 29, 2013, letter from Daniel H. Rylaarsdam of McLeod Law Group to Ms. Testaverde (12 pages); (4) February 7, 2013, letter from Mr. Rylaarsdam to Ms. Testaverde (2 pages); (5) February 7, 2013, letter from Mr. Rylaarsdam to Ms. Testaverde (3 pages); (6) February 20, 2013, letter from Mr. Rylaarsdam to Ms. Testaverde (3 pages); (7) March 1, 2013, letter from Mr. Rylaarsdam to Seon Choi of Liberty International Underwriters (2 pages); and (8) March 25, 2013, letter from Mr. Rylaarsdam to Ms. Choi (8 pages) (without enclosure).

Exhibit ___13___
Page ___6___

# EXHIBIT 14

## John McLeod

| | |
|---|---|
| **From:** | Jeffrey S. Whittington [jwhittington@kbrlaw.com] |
| **Sent:** | Thursday, July 11, 2013 8:04 PM |
| **To:** | 'Dan Rylaarsdam'; john@mcleodlawgroup.com |
| **Cc:** | Miriam Gregory; Richard A. Pretti |
| **Subject:** | Ironwood Country Club v. Liberty Insurance |
| **Attachments:** | 2264700_1.pdf |

Counsel:

Attached please find correspondence of today's date.

Jeffrey S. Whittington  **I  KAUFMAN BORGEEST & RYAN LLP**
23975 Park Sorrento, Suite 370  I  Calabasas, CA 91302
direct: 818.961.8006  I  fax: 818.880.0993
vcard  I  email  I  website

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit _____ K+
Page _____ I



23975 PARK SORRENTO, CALABASAS, CA 91302
TEL: 818.880.0992   FAX: 818.880.0993   WWW.KBRLAW.COM

July 11, 2013

JEFFREY S. WHITTINGTON
DIRECT: 818.961.8008
JWHITTINGTON@KBRLAW.COM

<u>VIA EMAIL ONLY</u>

John J. McLeod
McLeod Law Group, APC
701 B Street, Suite 1570
San Diego, California 92101

Re:    Insured          :     Ironwood Country Club
       Policy No.       :     DOCH216747-211
       Claimant         :     William S. Cobb, Jr., et al.
       KBR No.          :     381.006

Dear Mr. McLeod:

We are in receipt of your five-page meet and confer letter dated July 8, 2013 (plus eight (8) exhibits totaling 57 pages) regarding Ironwood Country Club's intention to file a second Rule 12(b)(6) motion.  As you know, Ironwood has already filed a Rule 12(b)(6) motion seeking to dismiss the prayer for attorney's fees in Liberty's Answer to the Ironwood Complaint.  Ironwood's second (proposed) Rule 12(b)(6) motion will be on the issues of: 1) Liberty's purported duty to reimburse defense fees and costs Ironwood incurred on its behalf in the <u>Cobb v. Ironwood</u> matter, and (2) Liberty's purported duty to defend Ironwood in the <u>Cobb v. Ironwood</u> matter.  We note your unilateral imposition of today as a deadline to respond in writing to such letter.  Please be advised that, due to the current press of business, we anticipated responding to such letter on Tuesday, July 16, 2013.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

Jeffrey S. Whittington

NEW YORK CITY        WESTCHESTER        LONG ISLAND        NEW JERSEY        LOS ANGELES

Exhibit _____ 14
Page _____ 2

# EXHIBIT 15

## Dan Rylaarsdam

| | |
|---|---|
| **From:** | Dan Rylaarsdam <drylaarsdam@mcleodlawgroup.com> |
| **Sent:** | Friday, July 12, 2013 2:41 PM |
| **To:** | 'Jeffrey S. Whittington' |
| **Cc:** | 'john@mcleodlawgroup.com' |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |
| **Attachments:** | Whittington (resp to 071113 letter re meet and confer re MSA) - 071213.pdf |

Mr. Whittington,

Please see the attached letter.

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Thursday, July 11, 2013 8:04 PM
**To:** 'Dan Rylaarsdam'; john@mcleodlawgroup.com
**Cc:** Miriam Gregory; Richard A. Pretti
**Subject:** Ironwood Country Club v. Liberty Insurance

Counsel:

Attached please find correspondence of today's date.

Jeffrey S. Whittington   I   **KAUFMAN BORGEEST & RYAN LLP**
23975 Park Sorrento, Suite 370   I   Calabasas, CA 91302
direct: 818.961.8006   I   fax: 818.880.0993
vcard   I   email   I   website

---

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained
herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message
(including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the
original message and all copies.

Exhibit ___15___
Page ___1___

# McLeod Law Group

A PROFESSIONAL CORPORATION

701 "B" STREET, SUITE 1570
SAN DIEGO, CALIFORNIA 92101

DANIEL H. RYLAARSDAM
drylaarsdam@mcleodlawgroup.com

TELEPHONE (619) 236-9938
FACSIMILE (619) 236-9943

July 12, 2013

**VIA U.S. MAIL and E-MAIL (jwhittington@KBRlaw.com)**

Jeffrey Whittington, Esq.
KAUFMAN BORGEEST & RYAN LLP
23975 Park Sorrento, Suite 370
Calabasas, CA 91302

Re:   Ironwood County Club v. Liberty Insurance Underwriters, Inc., et al.,
United States District Court – Central District – Eastern Division, Case No.
13-00996-VAP(DTBx)

Dear Mr. Whittington:

Thank you for your July 11, 2013, letter. We look forward to receiving defendant Liberty Insurance Underwriters, Inc.'s ("Liberty") response to our July 8, 2012, letter on Tuesday, July 16, 2013. For clarification, plaintiff Ironwood Country Club's ("Ironwood") intends to file a summary adjudication motion pursuant to Federal Rule of Civil Procedure 56, not Federal Rule of Civil Procedure 12(b)(6). Additionally, with respect to Ironwood's intention to obtain a ruling from the Court deeming the invoices inadvertently disclosed to Liberty privileged/protected and must be returned, Ironwood currently intends to include this issue with its Rule 56 motion for summary adjudications as well.

Thank you for your prompt attention to this matter. If you or Liberty has any questions, please do not hesitate to contact us. In the meantime, Ironwood reserves all of its rights and waives none.

Very truly yours,

McLEOD LAW GROUP, A.P.C.

Daniel H. Rylaarsdam

Exhibit ___15___
Page ___2___

# EXHIBIT 16

**Dan Rylaarsdam**

| | |
|---|---|
| **From:** | Jeffrey S. Whittington <jwhittington@kbrlaw.com> |
| **Sent:** | Tuesday, July 16, 2013 9:57 PM |
| **To:** | john@mcleodlawgroup.com; 'Dan Rylaarsdam' |
| **Cc:** | Miriam Gregory; Richard A. Pretti |
| **Subject:** | Ironwood Country Club v. Liberty Insurance |
| **Attachments:** | 2268979_1.pdf |

Gentlemen, attached please find correspondence of today's date.

Best regards,
Jeffrey Whittington

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit ___16___
Page ___1___



**KAUFMAN BORGEEST & RYAN LLP**

23975 PARK SORRENTO, CALABASAS, CA 91302
TEL: 818.880.0992   FAX: 818.880.0993   WWW.KBRLAW.COM

July 16, 2013

JEFFREY S. WHITTINGTON
DIRECT: 818.961.8006
JWHITTINGTON@KBRLAW.COM

<u>VIA EMAIL ONLY</u>

John J. McLeod, Esq.
Dan Rylaarsdam, Esq.
McLeod Law Group, APC
701 B Street, Suite 1570
San Diego, California 92101

Re:   Insured        :   Ironwood Country Club
      Policy No.     :   DOCH216747-211
      Claimant       :   William S. Cobb, Jr., et al.
      KBR No.        :   381.006

Dear Counsel:

As you know, we are in receipt of your meet and confer correspondence of July 8, 2013, wherein you advise as to Ironwood Country Club's ("Ironwood") intent to seek summary adjudication on the issue of Liberty Insurance Underwriters, Inc.'s ("Liberty") purported duty to reimburse defense fees and costs Ironwood incurred from the date of tender of the underlying lawsuit (<u>Cobb v. Ironwood</u>, or the "Cobb lawsuit"), and Liberty's duty to defend Ironwood in the Cobb lawsuit. Additionally, you requested the return or certain (allegedly) privileged invoices that were (purportedly) inadvertently disclosed to Liberty when such invoices were submitted to Liberty for payment. We take this opportunity to respond to your correspondence.

**Claim Background**

On or about August 21, 2012, Cobb and other members of Ironwood filed a lawsuit in Riverside County Superior Court against Ironwood. The Complaint alleges that, in or about 1998, approximately 588 former and current members of Ironwood were assessed for and/or loaned to Ironwood over $15 million for the purchase of real estate surrounding Ironwood. At the time of those loans, Ironwood provided a Statement of Information/Loan Agreement dated March 24, 1999, to its members that governed the terms of the land purchase and detailed Ironwood's obligation to repay those loans or assessment to its members. The loan obligation by Ironwood to its members was determined to be approximately $25,500 per member.

NEW YORK CITY         WESTCHESTER         LONG ISLAND         NEW JERSEY         LOS ANGELES

2268979

Exhibit ___ 16

Page ___ 2

The Complaint further alleges that Ironwood breached its fiduciary duties to its members and unjustly enriched itself by improperly administering the loans, underpaying certain members, and breaching its obligations to repay its members in full under the Agreement. In this regard, Ken Delf allegedly sent a letter to all members dated January 24, 2012, advising that Ironwood would no longer repay the $25,500 Land Assessments to members who had or will resign and thereby forfeit their membership from Ironwood. The Complaint seeks declaratory relief on various issues as well as attorney's fees.

## Coverage Issues – Duty to Defend and Duty to Reimburse Legal Fees

As you know, by correspondence dated October 25, 2012, Liberty reserved all of its rights with respect to Ironwood's responses on Ironwood's Application for insurance with Liberty dated October 5, 2011. Specifically, Question 14 on the Application asks:

> "Does anyone for whom insurance is sought have any knowledge or information of any act, error, omission, fact, or circumstances which may give rise to a Claim which may fall within the scope of the proposed insurance?"

> Ironwood, via its Chief Operating Officer, responded "No."

The Application further provides that:

> "IT IS UNDERSTOOD AND AGREED THAT IF ANYONE FOR WHOM THIS INSURANCE IS SOUGHT HAS ANY KNOWLEDGE OF ANY SUCH ACT, ERROR, OMISSION, FACT OR CIRCUMSTANCE, ANY CLAIM EMANATING THEREFROM SHALL BE EXCLUDED FROM COVERAGE UNDER THE PROPOSED INSURANCE."

Furthermore, Section 6, of the Policy, Application Representations and Severability, states:

> 6.1 The Insureds represent that the statements and representations contained in the Application are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insured under this Policy. This Policy is issued in reliance upon the truth of such statements and representations.

> 6.2 The Insureds agree that if the Application contains any statements or representations that are untrue, this Policy shall be void as to the Insured Organization and any Insured Person who knew the facts that were not truthfully disclosed, provided that such knowledge shall not be imputed to any other Insured Person.

As you are also aware, Ironwood submitted several invoices to Liberty for payment for services rendered by Ironwood's counsel, Bryan Gerstel, Esq., of Green Bryant & French LLP, in connection with the Cobb lawsuit. Specifically, one of Mr. Gerstel's invoices dated September

6, 2011, includes the entry: "telecom Tanner re additional information on Insurance and sales of memberships."[1]

Furthermore, another invoice from Mr. Gerstel dated October 13, 2011, described as "Legal Services Month of September 2011," includes the entry:

> "Review and analyze legal issues and facts re: Assessment, Mistake of Fact and Law issues, Estoppel, Class action issues and Liability; Declaratory Relief issues and Liability; Insurance issues re potential claims and coverage; Transferability of assessment rights; Contractual liability for assessment payments by forfeiting members; potential for present member claims; analysis of statues, case law Club documentation re: issues; prepare Memo to Board of Directors on these issues."

Based upon Mr. Gerstel's invoice, Ironwood was clearly evaluating the likelihood of claims against Ironwood by its forfeiting and/or present members, as well as evaluating the availability of insurance coverage for such claims that may arise out the circumstances of Ironwood's pending decision to no longer repay the $25,500 Land Assessments. In this regard, Ironwood plainly had knowledge of facts or circumstances that may give rise to a Claim that may fall within the scope of the proposed insurance, as was specifically requested in the Application.[2] Ironwood's citation to Liberty's use of the word "apparently" lacks merit and in no way suggests that Liberty was somehow making a "concession" that the opposite might also be true, as Ironwood contends. Accordingly, given the applicability of the Application exclusion referenced above, Liberty has no duty to defend Ironwood.

In support of Ironwood's position that Liberty has a duty to reimburse Ironwood for those defense fees and costs incurred by Ironwood from August 12, 2012 (date of tender) to February 26, 2013 (date of disclaimer), Ironwood cites to *Scottsdale Ins. Co. v. MV Transp.* (2005) 36 Cal.4th 643 ("*Scottsdale*") and *Buss v. Sup. Ct.* (1997) 16 Cal.4th 35 ("*Buss*"), the latter of which is discussed and referenced in *Scottsdale*. In this regard, we must respectfully disagree with Ironwood's reliance on the *Scottsdale* decision.

As the *Scottsdale* Court stated, "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." *Scottsdale, supra.*

---

[1] We understand that Josh Tanner is the General Manager and Chief Operating Officer of Ironwood.

[2] Given the foregoing, and as part of its ongoing coverage investigation, Liberty quite reasonably requested that Ironwood provide Liberty with a copy of the "Memo" referenced in the October 13 invoice as well as any additional information that Ironwood wanted Liberty to consider. Liberty also reserved the right to invoke both the Application language, which excludes coverage for any Claim arising out of a misrepresentation made in the Application, as well as under Section 6 of the Policy, which voids the Policy for any misrepresentations made in the Application. On February 26, 2013, given Ironwood's withdrawal of its request for payment of Mr. Gerstel's invoices, its request for the return of Mr. Gerstel's invoices, and its refusal to provide Liberty with a copy of the "Memo" prepared by Mr. Gerstel on privilege grounds, Liberty advised of its disclaimer of coverage for the Cobb lawsuit in accordance with the Application exclusion set forth above. Additionally, Liberty reserved the right to rescind the Policy in accordance with Section 6 of the Policy set forth above.

KAUFMAN BORGEEST & RYAN LLP

The *Scottsdale* Court acknowledged that an insurer, having reserved its rights to do so, may obtain reimbursement of defense costs that, in hindsight, were never owed. Indeed, this was essentially the *Buss* holding. But the *Scottsdale* Court also factually distinguished *Buss* in that *Buss* was a "mixed" case of both covered and uncovered claims. *Scottsdale* involved the situation where it was subsequently determined that there was never any potential for coverage and that the insurer in *Scottsdale* was therefore entitled to reimbursement of the defense fees and costs it had paid out. *Id.*

As a result, the *Scottsdale* Court concluded that an insurer "*may* advance sums to defend its insured against a third-party lawsuit, and *may* thereafter recoup such costs from the insured if it is determined, as a matter of law, that no duty to defend ever arose because the third party suit never suggested the possibility of a covered claim." (emphasis supplied). *Id.* The *Scottsdale* Court did not, however, mandate that an insurer actually handle the claim in this way. Indeed, the Court expressly discussed the inherently unfair position that doing so would place insurers in that they would be faced with the decision to either pay such costs or file declaratory relief actions.

The *Scottsdale* court also referenced the *Tamrac, Inc. v. Calif. Ins. Guarantee Assn.* (1998) 63 Cal.App.4[th] 751 ("*Tamrac*"), which expressly rejected an insured's argument that a determination of non-coverage operates prospectively only. The insured, said the *Tamrac* Court, "misplaces reliance on cases where there was *factually* a potential for coverage which imposed the duty to defend, and the insurer subsequently developed *facts* showing there was no duty in the particular circumstances. In those situations the insurer's duty to defend ceases prospectively from the subsequent determination but not retroactively to the beginning…Here,…as a matter of law there was *never* a potential for coverage." *Id.*

Accordingly, inasmuch as there was never a potential for coverage here based upon the applicability of the Application exclusion, no obligation to pay Ironwood's defense costs ever commenced. The *Scottsdale* case, upon which Ironwood relies, discusses that an insurer may advance defense costs, not that it is required to do so when there is no possibility of coverage as is the case here.

### Attorney – Client Privilege Concerns

In response to your office's letters to Liberty dated December 10, 2012, and January 10, 2013, Liberty noted Ironwood's position that Mr. Gerstel's invoices were "inadvertently" submitted to Liberty for payment. By letter dated January 11, 2013, Liberty advised that such a position was wholly inconsistent with the efforts by Ironwood to secure payment for such invoices. In this regard, Ironwood had been insistent that Mr. Gerstel be appointed as defense counsel for Ironwood, that his pre-tender invoices be applied to the Retention, and that Mr. Gerstel had significant familiarity with the relevant issues and had been advising Ironwood on them for a significant time. As Liberty advised at that time, however, not only were the invoices intentionally submitted for payment, but Ironwood intentionally followed up and pressed Liberty for payment.

Prior to discussing the discoverability of the pre-tender invoices, please note the following relevant events:

KAUFMAN BORGEEST & RYAN LLP

2268979

Exhibit _____ 16
Page _____ 5

- September 13, 2012: Lydia Magal, CFO of Ironwood, sends Mr. Gerstel's invoices to Alan Lux (Ironwood's broker) with body of message reading "Per Josh, for reimbursement" with cc to Josh Tanner, GM/COO of Ironwood.

- September 13, 2012: Alan Lux sends Christine Testaverde (Liberty) an email, stating "As you requested, here are the bills and payments made so far to Bryan Gerstel on the Ironwood claim."

- September 26, 2012: Alan Lux emails Christine Testaverde asking whether she had a chance to review the bills, stating that he was on his way to see Josh Tanner at Ironwood and wanted to let Tanner know how much of the bills are covered and would be applied to the deductible.

At the outset, given that this case arises under diversity jurisdiction, California law will apply. FRCP 501. Evidentiary privileges are statutorily created in California and must be strictly construed, and the party claiming the privilege – Ironwood – has the burden of demonstrating that the communications at issue are covered by that privilege. *Wells Fargo Bank*, 22 Cal.4th at 208; Cal. Evid.Code § 917(a).

As you know, the attorney-client privilege protects confidential communications between a client and an attorney from disclosure. This privilege applies "when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his attorney. *Clark v. American Commerce Nat'l Bank* (9th Cir. 1992) 974 F.2d 127,129. "Confidential communication" is defined as including legal opinion formed and advice given by attorney in the course of the attorney-client relationship; privilege applies to confidential communications within the scope of the attorney-client relationship even if the communication does not relate to pending litigation. *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363. Mr. Gerstel's invoices, however, are not communications necessary to obtain informed legal advice and their protection would not encourage "full and frank disclosure by the client to his or her attorney. See *Clarke v. American Commerce Nat'l Bank* (9th Cir. 1992) 974 F.2d 127, 129.

Moreover, we note that the invoices do not state that they are confidential. In order to establish the applicability of the attorney-client privilege to a given communication, the party asserting the privilege must affirmatively demonstrate non-waiver. *Weil v. Investment/Indicators, Research & Management, Inc.* (9th Cir.1981) 647 F.2d 18, 25. Thus far, while there has been significant "remorse" that the invoices were submitted by Ironwood to Liberty for payment – given the information that was included in them – there has been no information provided that suggest that their submission to Liberty was anything other than intentional.

Under California law, waiver of the attorney-client privilege depends entirely on whether the client provided knowing and voluntary consent to the disclosure. "A trial court called upon to determine whether inadvertent disclosure of privileged information constitutes waiver of the privilege must examine both *the subjective intent* of [the client] and the relevant surrounding circumstances for any manifestation of the [client's] consent to disclose the information." *State Compensation Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 652–53.[3]

---

[3] Generally, a waiver of the attorney-client privilege for purposes of one proceeding is applicable to all subsequent proceedings. *People v. Ledesma* (2006) 39 Cal.4th 641.

KAUFMAN BORGEEST & RYAN LLP

Moreover, it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject. *Weil v. Inv./Indicators, Research & Mgmt., Inc.* (9th Cir. 1981) 647 F.2d 18, 24. Generally, the voluntary disclosure of a privileged attorney-client communication to a third party waives the privilege, *United States v. Plache* (9th Cir.1990) 913 F.2d 1375, 1379.

Liberty does not disagree that California law rejects the doctrine of inadvertent disclosure as a basis for waiver of the attorney-client privilege. *F.D.I.C. v. Fidelity & Deposit Co. of Maryland* (S.D.Cal.2000) 196 F.R.D. 375. Absent evidence of the client's intent to waive the privilege, the attorney's inadvertent disclosure of confidential communications during discovery does *not* constitute a waiver. *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 CA 4th 644, 652-654, 82 CR2d 799, 804-805 (holding that privileged documents accidentally included in large stack of documents delivered in response to inspection demand was an inadvertent disclosure). Of course, the invoices at issue were not included in a stack of documents, but were intentionally submitted to Liberty by Ironwood for payment (or in satisfaction of the applicable Retention).

In this regard, courts in the Central District of California have adopted a five-factor test to determine whether there was inadvertent disclosure. See *Flores v. Albertson's, Inc.,* 2004 WL 3639290 (C.D. Cal. Apr. 9, 2004). The factors are: (1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the "overriding issue of fairness." *U.S. ex rel. Bagley v. TRW, Inc.* (C.D. Cal. 2001) 204 F.R.D. 170, 177. Each of the foregoing factors operate against the idea that this was an inadvertent disclosure. Indeed, Ironwood was quite pointedly submitting the invoices for payment with full knowledge that they were pre-tender invoices.

Accordingly, Liberty must respectfully deny Ironwood's request that Liberty return or destroy the aforementioned invoices given that any privilege that may have attached to such invoices was intentionally waived.

I trust this is responsive to your meet and confer letter of July 8, 2013. We also look forward to a productive discussion with you on these issues. Please note that I will be on vacation from July 18 to July 26, so I would welcome such discussion with you thereafter.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

*Jeff Whittington*

Jeffrey S. Whittington

2268979
Exhibit ____ 16
Page ____ 7

# EXHIBIT 17

**Paul Hirst**

| | |
|---|---|
| **From:** | Dan Rylaarsdam <drylaarsdam@mcleodlawgroup.com> |
| **Sent:** | Wednesday, July 17, 2013 1:35 PM |
| **To:** | 'Jeffrey S. Whittington' |
| **Cc:** | 'Miriam Gregory'; 'Richard A. Pretti'; john@mcleodlawgroup.com; Paul C. Hirst |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |

Mr. Whittington,

We are in receipt of your July 16 letter to this firm, which responds to this firm's July 8 meet and confer letter regarding Ironwood's intent to seek summary adjudication of the three issues set forth therein.  Since your letter indicates that you will be on vacation from July 18 to July 26, we wanted to take this earliest opportunity to briefly follow up with you before you leave on the 18th.  (As an aside, we note that your letter was sent via email and was received well after regular business hours (at about 9:57 p.m.).)  Consequently, this is the first opportunity we have had to respond.)

While we appreciate the detailed explanation for Liberty's position set forth in your July 16 letter, it is apparent that Liberty is not willing to change its position vis-à-vis its duty to reimburse the post-tender defense fees and costs incurred by Ironwood in the underlying Cobb lawsuit or its duty to defend Ironwood in the Cobb suit.  It is also apparent that Liberty is unwilling to change its position and return the privileged invoices that were inadvertently disclosed to Liberty.  Accordingly, neither a further letter writing campaign nor a discussion of these issues seems warranted given the apparent hardline positions that Liberty has adopted.

Moreover, based on your July 16 letter, it appears as though the parties have reached a point where they will have to "agree to disagree" on these issues pending judicial resolution.  That said, if you would like to discuss these issues, we would invite you to please contact our office before you leave on vacation.  If we do not hear back from you by July 18, we will assume that Liberty is not willing to reconsider the positions outlined in your July 16 letter and Ironwood will proceed accordingly.

Thank you for your prompt attention to this matter.

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Tuesday, July 16, 2013 9:57 PM
**To:** john@mcleodlawgroup.com; 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti
**Subject:** Ironwood Country Club v. Liberty Insurance

Gentlemen, attached please find correspondence of today's date.

Best regards,
Jeffrey Whittington

Exhibit _____17_____
Page _____1_____

1

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit __17__
Page __2__

2

# EXHIBIT 18

**Paul Hirst**

| | |
|---|---|
| **From:** | Jeffrey S. Whittington <jwhittington@kbrlaw.com> |
| **Sent:** | Wednesday, July 17, 2013 1:56 PM |
| **To:** | 'Dan Rylaarsdam' |
| **Cc:** | Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |

Dan,

I must admit to being perplexed by your email below. You sent a meet and confer letter wherein you stated Ironwood's position, but indicated your desire to have a productive discussion about the issues raised therein. I responded yesterday with a letter outlining Liberty's position and likewise indicated our desire to have a productive discussion about such issues, but noted that I will be out on vacation starting tomorrow. Yet you respond below by saying that since Liberty is unwilling to change its position, no further discussion seems warranted, but that I should let you know if I feel otherwise. I imagine that I could have responded to your letter by saying "well, you seem set in your ways, so there's no point in responding." I did not. Regardless, as I indicated in my letter, I am open to further participation in a good faith meet and confer process, however, it will just need to take place when I get back from vacation. I do agree, however, that a letter writing campaign doesn't seem productive at this point.

Best regards,
Jeffrey Whittington

**From:** Dan Rylaarsdam [mailto:drylaarsdam@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 1:35 PM
**To:** Jeffrey S. Whittington
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Mr. Whittington,

We are in receipt of your July 16 letter to this firm, which responds to this firm's July 8 meet and confer letter regarding Ironwood's intent to seek summary adjudication of the three issues set forth therein. Since your letter indicates that you will be on vacation from July 18 to July 26, we wanted to take this earliest opportunity to briefly follow up with you before you leave on the 18th. (As an aside, we note that your letter was sent via email and was received well after regular business hours (at about 9:57 p.m.).) Consequently, this is the first opportunity we have had to respond.)

While we appreciate the detailed explanation for Liberty's position set forth in your July 16 letter, it is apparent that Liberty is not willing to change its position vis-à-vis its duty to reimburse the post-tender defense fees and costs incurred by Ironwood in the underlying Cobb lawsuit or its duty to defend Ironwood in the Cobb suit. It is also apparent that Liberty is unwilling to change its position and return the privileged invoices that were inadvertently disclosed to Liberty. Accordingly, neither a further letter writing campaign nor a discussion of these issues seems warranted given the apparent hardline positions that Liberty has adopted.

Moreover, based on your July 16 letter, it appears as though the parties have reached a point where they will have to "agree to disagree" on these issues pending judicial resolution. That said, if you would like to discuss these issues, we would invite you to please contact our office before you leave on vacation. If we do not hear back from you by July 18,

Exhibit _____ 18 _____
Page _____ 1 _____

we will assume that Liberty is not willing to reconsider the positions outlined in your July 16 letter and Ironwood will proceed accordingly.

Thank you for your prompt attention to this matter.


Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Tuesday, July 16, 2013 9:57 PM
**To:** john@mcleodlawgroup.com; 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti
**Subject:** Ironwood Country Club v. Liberty Insurance

Gentlemen, attached please find correspondence of today's date.

Best regards,
Jeffrey Whittington

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit ___18___
Page ___2___

# EXHIBIT 19

## John McLeod

| | |
|---|---|
| **From:** | John McLeod [john@mcleodlawgroup.com] |
| **Sent:** | Wednesday, July 17, 2013 5:29 PM |
| **To:** | 'Jeffrey S. Whittington'; 'Dan Rylaarsdam' |
| **Cc:** | 'Miriam Gregory'; 'Richard A. Pretti'; 'Paul C. Hirst' |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |

We are equally perplexed by your position. We have demanded that (1) Liberty reimburse the fees and costs incurred by Ironwood in the defense of the pending case from the date of tender through the date that Liberty withdrew from the defense, (2) Liberty re-assume the defense of Ironwood in the pending case and (3) Liberty return the privileged materials that were inadvertently forwarded to it. On behalf of Liberty, you have patently refused to do any of these things. What, exactly, is left to discuss?

John J. McLeod, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938, Ext. 102 (telephone)
619.236.9943 (facsimile)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Wednesday, July 17, 2013 1:56 PM
**To:** 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Dan,

I must admit to being perplexed by your email below. You sent a meet and confer letter wherein you stated Ironwood's position, but indicated your desire to have a productive discussion about the issues raised therein. I responded yesterday with a letter outlining Liberty's position and likewise indicated our desire to have a productive discussion about such issues, but noted that I will be out on vacation starting tomorrow. Yet you respond below by saying that since Liberty is unwilling to change its position, no further discussion seems warranted, but that I should let you know if I feel otherwise. I imagine that I could have responded to your letter by saying "well, you seem set in your ways, so there's no point in responding." I did not. Regardless, as I indicated in my letter, I am open to further participation in a good faith meet and confer process, however, it will just need to take place when I get back from vacation. I do agree, however, that a letter writing campaign doesn't seem productive at this point.

Best regards,
Jeffrey Whittington

---

**From:** Dan Rylaarsdam [mailto:drylaarsdam@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 1:35 PM
**To:** Jeffrey S. Whittington
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Mr. Whittington,

Exhibit ___19___
Page ___1___

We are in receipt of your July 16 letter to this firm, which responds to this firm's July 8 meet and confer letter regarding Ironwood's intent to seek summary adjudication of the three issues set forth therein. Since your letter indicates that you will be on vacation from July 18 to July 26, we wanted to take this earliest opportunity to briefly follow up with you before you leave on the 18th. (As an aside, we note that your letter was sent via email and was received well after regular business hours (at about 9:57 p.m.).) Consequently, this is the first opportunity we have had to respond.)

While we appreciate the detailed explanation for Liberty's position set forth in your July 16 letter, it is apparent that Liberty is not willing to change its position vis-à-vis its duty to reimburse the post-tender defense fees and costs incurred by Ironwood in the underlying <u>Cobb</u> lawsuit or its duty to defend Ironwood in the <u>Cobb</u> suit. It is also apparent that Liberty is unwilling to change its position and return the privileged invoices that were inadvertently disclosed to Liberty. Accordingly, neither a further letter writing campaign nor a discussion of these issues seems warranted given the apparent hardline positions that Liberty has adopted.

Moreover, based on your July 16 letter, it appears as though the parties have reached a point where they will have to "agree to disagree" on these issues pending judicial resolution. That said, if you would like to discuss these issues, we would invite you to please contact our office before you leave on vacation. If we do not hear back from you by July 18, we will assume that Liberty is not willing to reconsider the positions outlined in your July 16 letter and Ironwood will proceed accordingly.

Thank you for your prompt attention to this matter.


Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Tuesday, July 16, 2013 9:57 PM
**To:** john@mcleodlawgroup.com; 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti
**Subject:** Ironwood Country Club v. Liberty Insurance

Gentlemen, attached please find correspondence of today's date.

Best regards,
Jeffrey Whittington

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit _____ 19
Page _____ 2

# EXHIBIT 20

**Paul Hirst**

| | |
|---|---|
| **From:** | Paul Hirst <pchirst@mcleodlawgroup.com> |
| **Sent:** | Monday, August 05, 2013 4:49 PM |
| **To:** | 'Jeffrey S. Whittington' |
| **Cc:** | john@mcleodlawgroup.com; 'Miriam Gregory'; 'Richard A. Pretti' |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |
| **Attachments:** | Email from Kemp (Tanenbaum-Harber) to Schmitt (Arc Excess) (re notice of Cobb claim) - 051512.pdf; Email from Schmitt (Arc Excess) to Kemp (Tanenbaum-Harber) (re Liberty acknowledgment of Cobb cliam)  - 051612.pdf |

Mr. Whittington,

Having received no response to John McLeod's email below, we assume that you agree that there is nothing more to discuss about the three issues on which Ironwood intends to seek summary adjudication.

That said, we wanted to clarify one item: the date of tender to Liberty.  It has been brought to our attention that notice of the Cobb claim was provided to Liberty on May 15, 2012 – not August 12, 2012 as identified in this firm's July 8 letter to you and your July 16 letter to this firm. (A copy of the May 15 notice of claim and Liberty's May 16 acknowledgement are attached.)  Accordingly, it is Ironwood's position that Liberty's duty to defend was triggered as of May 15, 2012 – not August 12, 2012.  As such, on the issue of reimbursement for the defense fees and costs incurred by Ironwood from the date of notice (May 15, 2012) through the date Liberty withdrew from Ironwood's defense (February 26, 2013), Ironwood is seeking to recover about $57,944.36 (excluding pre-judgment interest).  (As an aside, investigation is ongoing and Ironwood reserves the right to adjust the amount that it is seeking on this reimbursement issue.)  And on the issue of Liberty's ongoing duty to defend, Ironwood is seeking to recover all of the post-tender defense fees and costs incurred by Ironwood from May 15, 2012 to the conclusion of the underlying Cobb matter.

Since Liberty has refused to reimburse and/or pay any defense fees and costs in connection with this matter, we assume that being advised of the foregoing will not alter Liberty's position on any of the three issues raised during the meet and confer process.  But, we wanted to make you aware of this development in case you would like to discuss this matter further.

If you would like to further discuss, please contact our office by <u>August 7</u>.

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938 (telephone)
(619) 236-9943 (facsimile)
<u>www.mcleodlawgroup.com</u>

**From:** John McLeod [mailto:john@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 5:29 PM
**To:** 'Jeffrey S. Whittington'; 'Dan Rylaarsdam'
**Cc:** 'Miriam Gregory'; 'Richard A. Pretti'; 'Paul C. Hirst'
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

We are equally perplexed by your position.  We have demanded that (1) Liberty reimburse the fees and costs incurred by Ironwood in the defense of the pending case from the date of tender through the date that Liberty withdrew from the defense, (2) Liberty re-assume the defense of Ironwood in the pending case and (3) Liberty return the privileged

1

Exhibit _____ 20
Page _____ 1

materials that were inadvertently forwarded to it. On behalf of Liberty, you have patently refused to do any of these things. What, exactly, is left to discuss?

John J. McLeod, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938, Ext. 102 (telephone)
619.236.9943 (facsimile)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Wednesday, July 17, 2013 1:56 PM
**To:** 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Dan,

I must admit to being perplexed by your email below. You sent a meet and confer letter wherein you stated Ironwood's position, but indicated your desire to have a productive discussion about the issues raised therein. I responded yesterday with a letter outlining Liberty's position and likewise indicated our desire to have a productive discussion about such issues, but noted that I will be out on vacation starting tomorrow. Yet you respond below by saying that since Liberty is unwilling to change its position, no further discussion seems warranted, but that I should let you know if I feel otherwise. I imagine that I could have responded to your letter by saying "well, you seem set in your ways, so there's no point in responding." I did not. Regardless, as I indicated in my letter, I am open to further participation in a good faith meet and confer process, however, it will just need to take place when I get back from vacation. I do agree, however, that a letter writing campaign doesn't seem productive at this point.

Best regards,
Jeffrey Whittington

---

**From:** Dan Rylaarsdam [mailto:drylaarsdam@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 1:35 PM
**To:** Jeffrey S. Whittington
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Mr. Whittington,

We are in receipt of your July 16 letter to this firm, which responds to this firm's July 8 meet and confer letter regarding Ironwood's intent to seek summary adjudication of the three issues set forth therein. Since your letter indicates that you will be on vacation from July 18 to July 26, we wanted to take this earliest opportunity to briefly follow up with you before you leave on the 18th. (As an aside, we note that your letter was sent via email and was received well after regular business hours (at about 9:57 p.m.).) Consequently, this is the first opportunity we have had to respond.)

While we appreciate the detailed explanation for Liberty's position set forth in your July 16 letter, it is apparent that Liberty is not willing to change its position vis-à-vis its duty to reimburse the post-tender defense fees and costs incurred by Ironwood in the underlying Cobb lawsuit or its duty to defend Ironwood in the Cobb suit. It is also apparent that Liberty is unwilling to change its position and return the privileged invoices that were inadvertently disclosed to

Exhibit ____20____
Page ____2____

Liberty.  Accordingly, neither a further letter writing campaign nor a discussion of these issues seems warranted given the apparent hardline positions that Liberty has adopted.

Moreover, based on your July 16 letter, it appears as though the parties have reached a point where they will have to "agree to disagree" on these issues pending judicial resolution.  That said, if you would like to discuss these issues, we would invite you to please contact our office before you leave on vacation.  If we do not hear back from you by July 18, we will assume that Liberty is not willing to reconsider the positions outlined in your July 16 letter and Ironwood will proceed accordingly.

Thank you for your prompt attention to this matter.


Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Tuesday, July 16, 2013 9:57 PM
**To:** john@mcleodlawgroup.com; 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti
**Subject:** Ironwood Country Club v. Liberty Insurance

Gentlemen, attached please find correspondence of today's date.

Best regards,
Jeffrey Whittington

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit _____ 20
Page _____ 3

**Diane Kemp**

| | |
|---|---|
| **From:** | Diane Kemp |
| **Sent:** | Tuesday, May 15, 2012 9:25 AM |
| **To:** | Robin Schmitt |
| **Subject:** | IRONWOOD COUNTRY CLUB - D&O -NOTICE OF POSSIBLE CLAIM |
| **Attachments:** | DOC061.PDF |

Robin,
Please file this with the insurance and have the adjuster call Alan to discuss. This is only putting the insurance on notice.
Thank you.

*Have a nice day!*

*Diane Kemp*
Office Manager
Tanenbaum-Harber of CA, Inc.

Kempd@tanharca.com
P(858)487-8839
Fax(858)487-3984

1

Exhibit ___20___
Page ___4___

# ACORD® GENERAL LIABILITY NOTICE OF OCCURRENCE / CLAIM

**DATE (MM/DD/YYYY)** 05/15/2012

**AGENCY**
TANENBAUM-HARBER OF CALIFORNIA, INC.
11610 IBERIA PLACE, SUITE 200

SAN DIEGO        CA  92128
**CONTACT NAME:**
**PHONE (A/C, No, Ext):** (858) 487-8839
**FAX (A/C, No):** (858) 487-3984
**E-MAIL ADDRESS:** LICENSE #0783125
**CODE:**                        **SUBCODE:**
**AGENCY CUSTOMER ID:**

**INSURED LOCATION CODE**        **DATE OF LOSS AND TIME**        AM / PM

**CARRIER** LIBERTY INSURANCE UNDERWRITERS        **NAIC CODE**

**POLICY NUMBER** DOCH216747-211

*Notice only*

## INSURED

**NAME OF INSURED (First, Middle, Last)**
IRONWOOD COUNTRY CLUB

**DATE OF BIRTH**        **FEIN (if applicable)**

**PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL   **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL

**INSURED'S MAILING ADDRESS**
73-735 IRONTREE DRIVE

PALM DESERT        CA  92260

**PRIMARY E-MAIL ADDRESS:**
**SECONDARY E-MAIL ADDRESS:**

## CONTACT        ☐ CONTACT INSURED

**NAME OF CONTACT (First, Middle, Last)**
ALAN LUX

**PRIMARY PHONE #** ☐ HOME ☒ BUS ☐ CELL   **SECONDARY PHONE #** ☐ HOME ☐ BUS ☒ CELL
(858) 487-8839        (619) 980-1215
**WHEN TO CONTACT** DAYS

**CONTACT'S MAILING ADDRESS**
11610 IBERIA PLACE STE 200

SAN DIEGO        CA  92128
**PRIMARY E-MAIL ADDRESS:** LUXAS TANHARCA.COM
**SECONDARY E-MAIL ADDRESS:**

## OCCURRENCE

**LOCATION OF OCCURRENCE**
**STREET:**
**CITY, STATE, ZIP:**
**COUNTRY:**

**POLICE OR FIRE DEPARTMENT CONTACTED**

**REPORT NUMBER**

**DESCRIPTION OF OCCURRENCE (Attach additional sheets if more space is required)**
SEE ATTACHED LETTER

## TYPE OF LIABILITY

**PREMISES: INSURED IS** ☒ **OWNER** ☐ **TENANT** ☐
**OWNER'S NAME & ADDRESS (if not insured)**

**TYPE OF PREMISES** COUNTRY CLUB
**PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL   **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL
**PRIMARY E-MAIL ADDRESS:**
**SECONDARY E-MAIL ADDRESS:**

**PRODUCTS: INSURED IS** ☐ **MANUFACTURER** ☐ **VENDOR** ☐
**MANUFACTURER'S NAME & ADDRESS (if not insured)**

**TYPE OF PRODUCT**
**PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL   **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL
**PRIMARY E-MAIL ADDRESS:**
**SECONDARY E-MAIL ADDRESS:**

**WHERE CAN PRODUCT BE SEEN?**

**ACORD 3 (2009/01)**
NS003 (200901)

Page 1 of 4        © 1986-2009 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

Exhibit ___20___
Page ___5___

William S. Cobb, Jr.
73-132 Carrizo Circle
Palm Desert, CA 92260


May 7, 2012


Via Email

Bob Manion, Board President
Ironwood Country Club
73-735 Iron Tree Drive
Palm Desert, CA 92260

RE: Repayment of $25,500 Loan

Dear Bob:

As you have no doubt become aware, a large number of current and former members of Ironwood Country Club ("ICC") have become very concerned about the manner in which ICC is repaying the $25,500 loans to former members whose memberships have sold. Briefly stated, the Board is calculating the loan reimbursement and the net membership refund upon sale as one transaction, instead of as two separate transactions, which is required by the Board's loan approval correspondence to ICC members and ICC's financial statements, among other documentation.

Many former members who resigned are also concerned about the Board's new policy announced in January, 2012, to the effect that resigned members will no longer receive reimbursement of their loans when their treasury memberships are sold, reversing the Board's previous position and practice.

These concerned members and I have formed Concerned ICC Members ("CIM") to bring these and other important issues to your attention and to reach a satisfactory resolution. As of the date of this letter, more than 50 current and former members have joined CIM and more are joining every day. Furthermore, I have retained an attorney to represent me in this matter.

Enclosed is a list of the demands of CIM. If you have a genuine interest in settling this matter out of court, we request that you provide a positive written response within seven (7) days of the date of this letter. If I do not receive a timely affirmative response from you, CIM will have no choice but to conclude that the Board is not interested in reaching a settlement.

Exhibit ____ 20
Page ____ 6

# CIM Demands
## May 7, 2012

### Proper Repayment of the $25,500 refundable assessment.

1) According to the Club, 280 members who paid the $25,500 have sold their memberships. These members were not paid in accordance with the transaction approved by the members in 1999.

   a) As such, the Club underpaid these members by approximately $5 to $6 million.

   b) Our demand is that the Club pay the required additional monies to any former member in this group that contacts the Club and requests the adjusted payment.

2) Resigned/converted (Proprietary to Tennis, Social & Fitness or Emeritus) members must be repaid the $25,500, or the portion they paid, once their corresponding Treasury membership is resold.

3) According to the Club, 76 existing members are on the Members Sales List. Based upon the level of membership resignations and conversions, it is also apparent that far more than 100 former equity members are on the Treasury Sales List.

   a) Our first demand is for the Club to reduce its initiation fee to no more than $25,500, until the Club has at least 500 Proprietary members. As of April 30, 2012, the Club had 440 Proprietary members.

   b) Second, the sales ratio should be changed from three Treasury membership sales for one Member's membership sale to two Treasury membership sales for one Member's membership sale, as this is more consistent with the number of memberships in each category.

   c) Third, the Members Sales List, the Treasury Sales List and the combined list should be provided to any current or former member listed thereon upon request.

   d) Fourth, when a Member's membership is sold in the future, the selling member would receive the sales proceeds specified by the By-Laws plus $25,500, or the portion, if any, of the refundable assessment he or she paid.

### Treat all members in the same membership class equally.

As evidenced most recently by the Board's decision to forgive unpaid $25,500 installment payments from approximately 30 members, the Club has not always treated all members in the same class equally. This must stop now. Adjustments to correct existing discrepancies within each membership class should also be made immediately.

### Follow the By-Laws.

As I have pointed out before, the Club has violated and continues to violate its own By-Laws. Our demand is that this be stopped immediately.

Exhibit ___20___
Page ___2___

Bob Manion, Board President
May 7, 2012
Page 2

      Since additional litigation would not be in the best interest of ICC or its members, we look forward to hearing from you soon and reaching a fair resolution.

                                      Sincerely,


                                        WILLIAM S. COBB, JR.




Enclosure: CIM Demands

Cc: Concerned ICC Members (via email)
Steven W. DeLateur, Esq. (via email)
ICC Board of Directors (via email)
Josh Tanner (via email)
Dale Echols (via email)

Exhibit _____ 20
Page _____ 8

**Diane Kemp**

| | |
|---|---|
| **From:** | Michelle Cioni <MCioni@arcxs.com> |
| **Sent:** | Wednesday, May 16, 2012 6:42 AM |
| **To:** | Diane Kemp |
| **Cc:** | Robin Schmitt |
| **Subject:** | FW: Ironwood Country Club - CIM (CHISPC000006429) |
| **Attachments:** | Ironwood Country Club - CIM.pdf |

Diane,

Please see attached claim acknowledgement we received from Liberty in regards to the above captioned matter.

*Best Regards,*

*Michelle Cioni for Robin Schmitt*
*ARC Excess & Surplus, LLC*
*The ARC Group, LLC*
*Robin's Direct Phone:  516-408-5727*
*Robin's Direct Fax:  516-408-5772*
*Rschmitt@arcxs.com*
*Michelle's Direct Phone:  516-408-1828*
*Mcioni@arcxs.com*

*RS: mlc/encls.*

**From:** Fenn, James (New York-LIU) [mailto:James.Fenn@LibertyIU.Com]
**Sent:** Wednesday, May 16, 2012 9:05 AM
**To:** Robin Schmitt
**Cc:** Weber, Todd (Chicago-LIU); Michelle Cioni; kempd@tanharca.com
**Subject:** Ironwood Country Club - CIM (CHISPC000006429)

Please review the attached acknowledgement letter.

Regards,

James Fenn

The information in this e-mail and in any attachments is confidential and may be privileged. If you are not the intended recipient, please destroy this message and notify the sender immediately. You should not retain, copy or use this e-mail for any purpose, nor disclose all or any part of its contents to any other person or persons.

Any views expressed in this message are those of the individual sender, except where the sender specifically states them to be the views of Liberty International Underwriters.

Liberty International Underwriters may monitor the content of e-mails sent and received via its network for

1

Exhibit ___20___
Page ___9___



**Liberty**
International
Underwriters

James Fenn
55 Water Street, 18th Floor
New York, NY 10041
Telephone (212) 898-4309
Fax (212) 208-2855
James.Fenn@libertyiu.com

May 16, 2012

Robin Schmitt
ARC Excess & Surplus, LLC
The ARC Group, LLC

| | |
|---|---|
| Insured: | Ironwood Country Club |
| Insurer: | Liberty Insurance Underwriters |
| Policy#: | DOCH216747-211 |
| Policy Period: | 10/01/11 – 10/01/12 |
| File: | CIM |
| File No.: | CHISPC000006429 |

Dear Ms. Schmitt:

This will acknowledge our receipt of the correspondence dated May 15, 2012 notifying Liberty International Underwriters of the above-referenced matter. We are currently reviewing this matter and will contact you shortly. In the interim, we reserve all of Liberty's rights accordingly.

An adjuster will be assigned and will contact you shortly. Please forward to us all correspondence you receive from all parties involved in this matter. We also ask that you keep us apprised of any material developments that arise.

Very truly yours,

*James Fenn*

James Fenn

Cc:   Todd Weber/Liberty International Underwriters, Inc.
      kempd@tanharca.com
      Mcioni@arcxs.com

Exhibit ____20____
Page ____10____

# EXHIBIT 21

**Paul Hirst**

| | |
|---|---|
| **From:** | Richard A. Pretti <rpretti@kbrlaw.com> |
| **Sent:** | Wednesday, August 07, 2013 8:42 AM |
| **To:** | 'Paul Hirst'; Jeffrey S. Whittington |
| **Cc:** | john@mcleodlawgroup.com; Miriam Gregory |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |

Paul,

Thanks for the email- clarification noted.  Jeff is traveling today and tomorrow.  We are available this Friday to discuss further, if day works on your end.

Thanks, Rick

Richard A. Pretti  I  **KAUFMAN BORGEEST & RYAN LLP**
120 Broadway  I  New York, NY 10271
direct: 212.994.6541  I  fax: 212.980.9291
vcard  I  email  I  website

**From:** Paul Hirst [mailto:pchirst@mcleodlawgroup.com]
**Sent:** Monday, August 05, 2013 7:49 PM
**To:** Jeffrey S. Whittington
**Cc:** john@mcleodlawgroup.com; Miriam Gregory; Richard A. Pretti
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Mr. Whittington,

Having received no response to John McLeod's email below, we assume that you agree that there is nothing more to discuss about the three issues on which Ironwood intends to seek summary adjudication.

That said, we wanted to clarify one item: the date of tender to Liberty.  It has been brought to our attention that notice of the Cobb claim was provided to Liberty on May 15, 2012 – not August 12, 2012 as identified in this firm's July 8 letter to you and your July 16 letter to this firm.  (A copy of the May 15 notice of claim and Liberty's May 16 acknowledgement are attached.)  Accordingly, it is Ironwood's position that Liberty's duty to defend was triggered as of May 15, 2012 – not August 12, 2012.  As such, on the issue of reimbursement for the defense fees and costs incurred by Ironwood from the date of notice (May 15, 2012) through the date Liberty withdrew from Ironwood's defense (February 26, 2013), Ironwood is seeking to recover about $57,944.36 (excluding pre-judgment interest).  (As an aside, investigation is ongoing and Ironwood reserves the right to adjust the amount that it is seeking on this reimbursement issue.)  And on the issue of Liberty's ongoing duty to defend, Ironwood is seeking to recover all of the post-tender defense fees and costs incurred by Ironwood from May 15, 2012 to the conclusion of the underlying Cobb matter.

Since Liberty has refused to reimburse and/or pay any defense fees and costs in connection with this matter, we assume that being advised of the foregoing will not alter Liberty's position on any of the three issues raised during the meet and confer process.  But, we wanted to make you aware of this development in case you would like to discuss this matter further.

If you would like to further discuss, please contact our office by August 7.

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101

Exhibit _____ 2 \
Page _____ \

(619) 236-9938 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

---

**From:** John McLeod [mailto:john@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 5:29 PM
**To:** 'Jeffrey S. Whittington'; 'Dan Rylaarsdam'
**Cc:** 'Miriam Gregory'; 'Richard A. Pretti'; 'Paul C. Hirst'
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

We are equally perplexed by your position.  We have demanded that (1) Liberty reimburse the fees and costs incurred by Ironwood in the defense of the pending case from the date of tender through the date that Liberty withdrew from the defense, (2) Liberty re-assume the defense of Ironwood in the pending case and (3) Liberty return the privileged materials that were inadvertently forwarded to it.  On behalf of Liberty, you have patently refused to do any of these things.  What, exactly, is left to discuss?

John J. McLeod, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938, Ext. 102 (telephone)
619.236.9943 (facsimile)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Wednesday, July 17, 2013 1:56 PM
**To:** 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Dan,

I must admit to being perplexed by your email below.  You sent a meet and confer letter wherein you stated Ironwood's position, but indicated your desire to have a productive discussion about the issues raised therein.  I responded yesterday with a letter outlining Liberty's position and likewise indicated our desire to have a productive discussion about such issues, but noted that I will be out on vacation starting tomorrow.  Yet you respond below by saying that since Liberty is unwilling to change its position, no further discussion seems warranted, but that I should let you know if I feel otherwise.  I imagine that I could have responded to your letter by saying "well, you seem set in your ways, so there's no point in responding."  I did not.  Regardless, as I indicated in my letter, I am open to further participation in a good faith meet and confer process, however, it will just need to take place when I get back from vacation.  I do agree, however, that a letter writing campaign doesn't seem productive at this point.


Best regards,
Jeffrey Whittington

---

**From:** Dan Rylaarsdam [mailto:drylaarsdam@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 1:35 PM
**To:** Jeffrey S. Whittington
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Exhibit ____ 21
Page ____ 2

Mr. Whittington,

We are in receipt of your July 16 letter to this firm, which responds to this firm's July 8 meet and confer letter regarding Ironwood's intent to seek summary adjudication of the three issues set forth therein.  Since your letter indicates that you will be on vacation from July 18 to July 26, we wanted to take this earliest opportunity to briefly follow up with you before you leave on the 18th.  (As an aside, we note that your letter was sent via email and was received well after regular business hours (at about 9:57 p.m.).)  Consequently, this is the first opportunity we have had to respond.)

While we appreciate the detailed explanation for Liberty's position set forth in your July 16 letter, it is apparent that Liberty is not willing to change its position vis-à-vis its duty to reimburse the post-tender defense fees and costs incurred by Ironwood in the underlying Cobb lawsuit or its duty to defend Ironwood in the Cobb suit.  It is also apparent that Liberty is unwilling to change its position and return the privileged invoices that were inadvertently disclosed to Liberty.  Accordingly, neither a further letter writing campaign nor a discussion of these issues seems warranted given the apparent hardline positions that Liberty has adopted.

Moreover, based on your July 16 letter, it appears as though the parties have reached a point where they will have to "agree to disagree" on these issues pending judicial resolution.  That said, if you would like to discuss these issues, we would invite you to please contact our office before you leave on vacation.  If we do not hear back from you by July 18, we will assume that Liberty is not willing to reconsider the positions outlined in your July 16 letter and Ironwood will proceed accordingly.

Thank you for your prompt attention to this matter.


Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Tuesday, July 16, 2013 9:57 PM
**To:** john@mcleodlawgroup.com; 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti
**Subject:** Ironwood Country Club v. Liberty Insurance

Gentlemen, attached please find correspondence of today's date.

Best regards,
Jeffrey Whittington

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit ___21___
Page ____3____

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

4

Exhibit _____ 21 _____
Page _____ 4 _____

# EXHIBIT 22

**Paul Hirst**

| | |
|---|---|
| **From:** | Paul Hirst <pchirst@mcleodlawgroup.com> |
| **Sent:** | Friday, August 09, 2013 12:06 PM |
| **To:** | 'Richard A. Pretti'; 'Jeffrey S. Whittington' |
| **Cc:** | john@mcleodlawgroup.com; 'Miriam Gregory' |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |

Rick,

My apologies for not getting back to you sooner. Would later this afternoon (after 3:00 p.m.) work for you folks? Otherwise, are you available on Monday?

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

**From:** Richard A. Pretti [mailto:rpretti@kbrlaw.com]
**Sent:** Wednesday, August 07, 2013 8:42 AM
**To:** 'Paul Hirst'; Jeffrey S. Whittington
**Cc:** john@mcleodlawgroup.com; Miriam Gregory
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Paul,

Thanks for the email- clarification noted. Jeff is traveling today and tomorrow. We are available this Friday to discuss further, if day works on your end.

Thanks, Rick

Richard A. Pretti  |  **KAUFMAN BORGEEST & RYAN LLP**
120 Broadway  |  New York, NY 10271
direct: 212.994.6541  |  fax: 212.980.9291
vcard  |  email  |  website

**From:** Paul Hirst [mailto:pchirst@mcleodlawgroup.com]
**Sent:** Monday, August 05, 2013 7:49 PM
**To:** Jeffrey S. Whittington
**Cc:** john@mcleodlawgroup.com; Miriam Gregory; Richard A. Pretti
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Mr. Whittington,

Having received no response to John McLeod's email below, we assume that you agree that there is nothing more to discuss about the three issues on which Ironwood intends to seek summary adjudication.

That said, we wanted to clarify one item: the date of tender to Liberty. It has been brought to our attention that notice of the Cobb claim was provided to Liberty on May 15, 2012 – not August 12, 2012 as identified in this firm's July 8 letter to you and your July 16 letter to this firm. (A copy of the May 15 notice of claim and Liberty's May 16 acknowledgement are attached.) Accordingly, it is Ironwood's position that Liberty's duty to defend was triggered as of May 15, 2012 – not

1

Exhibit _____ 22 _____
Page _____ 1 _____

August 12, 2012. As such, on the issue of reimbursement for the defense fees and costs incurred by Ironwood from the date of notice (May 15, 2012) through the date Liberty withdrew from Ironwood's defense (February 26, 2013), Ironwood is seeking to recover about $57,944.36 (excluding pre-judgment interest). (As an aside, investigation is ongoing and Ironwood reserves the right to adjust the amount that it is seeking on this reimbursement issue.) And on the issue of Liberty's ongoing duty to defend, Ironwood is seeking to recover all of the post-tender defense fees and costs incurred by Ironwood from May 15, 2012 to the conclusion of the underlying Cobb matter.

Since Liberty has refused to reimburse and/or pay any defense fees and costs in connection with this matter, we assume that being advised of the foregoing will not alter Liberty's position on any of the three issues raised during the meet and confer process. But, we wanted to make you aware of this development in case you would like to discuss this matter further.

If you would like to further discuss, please contact our office by August 7.

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

---

**From:** John McLeod [mailto:john@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 5:29 PM
**To:** 'Jeffrey S. Whittington'; 'Dan Rylaarsdam'
**Cc:** 'Miriam Gregory'; 'Richard A. Pretti'; 'Paul C. Hirst'
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

We are equally perplexed by your position. We have demanded that (1) Liberty reimburse the fees and costs incurred by Ironwood in the defense of the pending case from the date of tender through the date that Liberty withdrew from the defense, (2) Liberty re-assume the defense of Ironwood in the pending case and (3) Liberty return the privileged materials that were inadvertently forwarded to it. On behalf of Liberty, you have patently refused to do any of these things. What, exactly, is left to discuss?

John J. McLeod, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938, Ext. 102 (telephone)
619.236.9943 (facsimile)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Wednesday, July 17, 2013 1:56 PM
**To:** 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Dan,

I must admit to being perplexed by your email below. You sent a meet and confer letter wherein you stated Ironwood's position, but indicated your desire to have a productive discussion about the issues raised therein. I responded yesterday with a letter outlining Liberty's position and likewise indicated our desire to

Exhibit _____ 2 2
Page _____ 2

have a productive discussion about such issues, but noted that I will be out on vacation starting tomorrow.  Yet you respond below by saying that since Liberty is unwilling to change its position, no further discussion seems warranted, but that I should let you know if I feel otherwise.  I imagine that I could have responded to your letter by saying "well, you seem set in your ways, so there's no point in responding."  I did not.  Regardless, as I indicated in my letter, I am open to further participation in a good faith meet and confer process, however, it will just need to take place when I get back from vacation.  I do agree, however, that a letter writing campaign doesn't seem productive at this point.

Best regards,
Jeffrey Whittington

---

**From:** Dan Rylaarsdam [mailto:drylaarsdam@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 1:35 PM
**To:** Jeffrey S. Whittington
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Mr. Whittington,

We are in receipt of your July 16 letter to this firm, which responds to this firm's July 8 meet and confer letter regarding Ironwood's intent to seek summary adjudication of the three issues set forth therein.  Since your letter indicates that you will be on vacation from July 18 to July 26, we wanted to take this earliest opportunity to briefly follow up with you before you leave on the 18th.  (As an aside, we note that your letter was sent via email and was received well after regular business hours (at about 9:57 p.m.).)  Consequently, this is the first opportunity we have had to respond.)

While we appreciate the detailed explanation for Liberty's position set forth in your July 16 letter, it is apparent that Liberty is not willing to change its position vis-à-vis its duty to reimburse the post-tender defense fees and costs incurred by Ironwood in the underlying Cobb lawsuit or its duty to defend Ironwood in the Cobb suit.  It is also apparent that Liberty is unwilling to change its position and return the privileged invoices that were inadvertently disclosed to Liberty.  Accordingly, neither a further letter writing campaign nor a discussion of these issues seems warranted given the apparent hardline positions that Liberty has adopted.

Moreover, based on your July 16 letter, it appears as though the parties have reached a point where they will have to "agree to disagree" on these issues pending judicial resolution.  That said, if you would like to discuss these issues, we would invite you to please contact our office before you leave on vacation.  If we do not hear back from you by July 18, we will assume that Liberty is not willing to reconsider the positions outlined in your July 16 letter and Ironwood will proceed accordingly.

Thank you for your prompt attention to this matter.


Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Tuesday, July 16, 2013 9:57 PM

Exhibit  22
Page  3

**To:** john@mcleodlawgroup.com; 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti
**Subject:** Ironwood Country Club v. Liberty Insurance

Gentlemen, attached please find correspondence of today's date.

Best regards,
Jeffrey Whittington

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit __22__
Page __4__

# EXHIBIT 23

**Paul Hirst**

| | |
|---|---|
| **From:** | Paul Hirst |
| **Sent:** | Tuesday, December 17, 2013 12:04 PM |
| **To:** | Jeffrey S. Whittington <jwhittington@kbrlaw.com> (jwhittington@kbrlaw.com) |
| **Cc:** | John McLeod; Richard A. Pretti (rpretti@kbrlaw.com); Miriam Gregory (mgregory@kbrlaw.com) |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |
| **Importance:** | High |

Jeff,

As the parties were unable to resolve this matter following last month's mediation, please be advised that Ironwood intends to move forward with its previously-discussed motion for summary adjudication.  Ironwood believes that the parties satisfied the "meet and confer" requirement of LR 7-3 back in July 2013.  But, if you believe that there is anything left for us to discuss, we would ask that you please contact us before the end of this week.

Thanks,

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938, Ext. 104 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

**From:** John McLeod [mailto:john@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 5:29 PM
**To:** 'Jeffrey S. Whittington'; 'Dan Rylaarsdam'
**Cc:** 'Miriam Gregory'; 'Richard A. Pretti'; 'Paul C. Hirst'
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

We are equally perplexed by your position.  We have demanded that (1) Liberty reimburse the fees and costs incurred by Ironwood in the defense of the pending case from the date of tender through the date that Liberty withdrew from the defense, (2) Liberty re-assume the defense of Ironwood in the pending case and (3) Liberty return the privileged materials that were inadvertently forwarded to it.  On behalf of Liberty, you have patently refused to do any of these things.  What, exactly, is left to discuss?

John J. McLeod, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938, Ext. 102 (telephone)
619.236.9943 (facsimile)
www.mcleodlawgroup.com

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Wednesday, July 17, 2013 1:56 PM
**To:** 'Dan Rylaarsdam'

Exhibit   23
Page   1

Cc: Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
Subject: RE: Ironwood Country Club v. Liberty Insurance

Dan,

I must admit to being perplexed by your email below.  You sent a meet and confer letter wherein you stated Ironwood's position, but indicated your desire to have a productive discussion about the issues raised therein.  I responded yesterday with a letter outlining Liberty's position and likewise indicated our desire to have a productive discussion about such issues, but noted that I will be out on vacation starting tomorrow.  Yet you respond below by saying that since Liberty is unwilling to change its position, no further discussion seems warranted, but that I should let you know if I feel otherwise.  I imagine that I could have responded to your letter by saying "well, you seem set in your ways, so there's no point in responding."  I did not.  Regardless, as I indicated in my letter, I am open to further participation in a good faith meet and confer process, however, it will just need to take place when I get back from vacation.  I do agree, however, that a letter writing campaign doesn't seem productive at this point.

Best regards,
Jeffrey Whittington

From: Dan Rylaarsdam [mailto:drylaarsdam@mcleodlawgroup.com]
Sent: Wednesday, July 17, 2013 1:35 PM
To: Jeffrey S. Whittington
Cc: Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
Subject: RE: Ironwood Country Club v. Liberty Insurance

Mr. Whittington,

We are in receipt of your July 16 letter to this firm, which responds to this firm's July 8 meet and confer letter regarding Ironwood's intent to seek summary adjudication of the three issues set forth therein.  Since your letter indicates that you will be on vacation from July 18 to July 26, we wanted to take this earliest opportunity to briefly follow up with you before you leave on the 18th.  (As an aside, we note that your letter was sent via email and was received well after regular business hours (at about 9:57 p.m.).)  Consequently, this is the first opportunity we have had to respond.)

While we appreciate the detailed explanation for Liberty's position set forth in your July 16 letter, it is apparent that Liberty is not willing to change its position vis-à-vis its duty to reimburse the post-tender defense fees and costs incurred by Ironwood in the underlying Cobb lawsuit or its duty to defend Ironwood in the Cobb suit.  It is also apparent that Liberty is unwilling to change its position and return the privileged invoices that were inadvertently disclosed to Liberty.  Accordingly, neither a further letter writing campaign nor a discussion of these issues seems warranted given the apparent hardline positions that Liberty has adopted.

Moreover, based on your July 16 letter, it appears as though the parties have reached a point where they will have to "agree to disagree" on these issues pending judicial resolution.  That said, if you would like to discuss these issues, we would invite you to please contact our office before you leave on vacation.  If we do not hear back from you by July 18, we will assume that Liberty is not willing to reconsider the positions outlined in your July 16 letter and Ironwood will proceed accordingly.

Thank you for your prompt attention to this matter.

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570

Exhibit ___23___
Page ___2___

San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Tuesday, July 16, 2013 9:57 PM
**To:** john@mcleodlawgroup.com; 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti
**Subject:** Ironwood Country Club v. Liberty Insurance

Gentlemen, attached please find correspondence of today's date.

Best regards,
Jeffrey Whittington

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit _23_
Page _3_

EXHIBIT 24

## Paul Hirst

| | |
|---|---|
| **From:** | Jeffrey S. Whittington <jwhittington@kbrlaw.com> |
| **Sent:** | Friday, December 20, 2013 12:37 PM |
| **To:** | Paul Hirst |
| **Cc:** | John McLeod; Richard A. Pretti; Miriam Gregory |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |

Paul,

Thank you for your email.  While the grounds for Ironwood's anticipated Motion for Summary Judgment ("MSJ") have been discussed, what has not been discussed is Judge Phillips' Standing Order (Docket #5) that a party may only move for summary judgment once and that any such MSJ by Ironwood is premature.  Specifically, the Standing Order states as follows:

**Motions for Summary Judgment or Partial Summary Judgment**:  No party may file more than one motion pursuant to Fed. R. Civ. P. 56 regardless of whether such motion is denominated as a motion for summary judgment or summary adjudication.

No discovery has taken place in this matter beyond the exchange of Initial Disclosures.  Given the defenses that Liberty has raised, any MSJ by Ironwood is unquestionably premature.  See *Rocklin Park Place Condominium Owners Assoc. v. Liberty Ins. U'wtrs, Inc.*, (E.D. Cal., Sept. 6, 2013) 2:12-cv-02247-TLN-CKD ("*Rocklin Park Place*"); *Atmel Corp. v. St. Paul* (N.D. Cal. 2006) 416 F.Supp.2d 802 ("*Atmel*").  Given the significant likelihood that Ironwood's MSJ will be deemed premature, with the result likely being that Ironwood would attempt to refile it later following the conclusion of discovery (if Ironwood still believes it is viable), filing the MSJ now appears to be necessarily violative of the Court's Standing Order.

In *Rocklin Park Place*, the plaintiff/insured sought summary judgment from the court that the defendant/insurer wrongfully refused to defend the underlying action.  The insurer argued that plaintiff was not entitled to summary judgment until the insurer's rescission defense was resolved.  The affirmative defense of rescission was based on its allegations that the insured failed to disclose very important facts, despite direct inquiry in the application for the policy, which is exactly the situation here between Ironwood and Liberty.  The *Rocklin Park Place* court relied on *Atmel*, which stated that, "because rescission is retroactive to the time that the representation becomes false, if [the insurer] is entitled to rescission, then it never owed [the insured] a duty to defend."  *Atmel, supra.*

The *Rocklin Park Place* Court held that it could only find that, "because [the insurer's] rescission defense could potentially void the policy, this is not the proper juncture for summary adjudication of this issue….The court cannot, however, make any determination that Defendant breached the contract by failing to defend the [underlying] action if the [Policy] is potentially void." *Rocklin Park Place, supra.*

Based on the foregoing, I think it's clear that any such MSJ is premature at this juncture.

Thank you Paul.  Best regards,

Jeffrey S. Whittington  **I  KAUFMAN BORGEEST & RYAN LLP**
23975 Park Sorrento, Suite 370  I  Calabasas, CA 91302
direct: 818.961.8006  I  fax: 818.880.0993
vcard  I  email  I  website

Exhibit ___24___
Page _____

**From:** Paul Hirst [mailto:pchirst@mcleodlawgroup.com]
**Sent:** Tuesday, December 17, 2013 12:04 PM
**To:** Jeffrey S. Whittington
**Cc:** John McLeod; Richard A. Pretti; Miriam Gregory
**Subject:** RE: Ironwood Country Club v. Liberty Insurance
**Importance:** High

Jeff,

As the parties were unable to resolve this matter following last month's mediation, please be advised that Ironwood intends to move forward with its previously-discussed motion for summary adjudication. Ironwood believes that the parties satisfied the "meet and confer" requirement of LR 7-3 back in July 2013. But, if you believe that there is anything left for us to discuss, we would ask that you please contact us before the end of this week.

Thanks,

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938, Ext. 104 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

---

**From:** John McLeod [mailto:john@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 5:29 PM
**To:** 'Jeffrey S. Whittington'; 'Dan Rylaarsdam'
**Cc:** 'Miriam Gregory'; 'Richard A. Pretti'; 'Paul C. Hirst'
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

We are equally perplexed by your position. We have demanded that (1) Liberty reimburse the fees and costs incurred by Ironwood in the defense of the pending case from the date of tender through the date that Liberty withdrew from the defense, (2) Liberty re-assume the defense of Ironwood in the pending case and (3) Liberty return the privileged materials that were inadvertently forwarded to it. On behalf of Liberty, you have patently refused to do any of these things. What, exactly, is left to discuss?

John J. McLeod, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938, Ext. 102 (telephone)
619.236.9943 (facsimile)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Wednesday, July 17, 2013 1:56 PM
**To:** 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Dan,

Exhibit _24_
Page _2_

I must admit to being perplexed by your email below.  You sent a meet and confer letter wherein you stated Ironwood's position, but indicated your desire to have a productive discussion about the issues raised therein.  I responded yesterday with a letter outlining Liberty's position and likewise indicated our desire to have a productive discussion about such issues, but noted that I will be out on vacation starting tomorrow.  Yet you respond below by saying that since Liberty is unwilling to change its position, no further discussion seems warranted, but that I should let you know if I feel otherwise.  I imagine that I could have responded to your letter by saying "well, you seem set in your ways, so there's no point in responding."  I did not.  Regardless, as I indicated in my letter, I am open to further participation in a good faith meet and confer process, however, it will just need to take place when I get back from vacation.  I do agree, however, that a letter writing campaign doesn't seem productive at this point.

Best regards,
Jeffrey Whittington

**From:** Dan Rylaarsdam [mailto:drylaarsdam@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 1:35 PM
**To:** Jeffrey S. Whittington
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Mr. Whittington,

We are in receipt of your July 16 letter to this firm, which responds to this firm's July 8 meet and confer letter regarding Ironwood's intent to seek summary adjudication of the three issues set forth therein.  Since your letter indicates that you will be on vacation from July 18 to July 26, we wanted to take this earliest opportunity to briefly follow up with you before you leave on the 18th.  (As an aside, we note that your letter was sent via email and was received well after regular business hours (at about 9:57 p.m.).)  Consequently, this is the first opportunity we have had to respond.)

While we appreciate the detailed explanation for Liberty's position set forth in your July 16 letter, it is apparent that Liberty is not willing to change its position vis-à-vis its duty to reimburse the post-tender defense fees and costs incurred by Ironwood in the underlying Cobb lawsuit or its duty to defend Ironwood in the Cobb suit.  It is also apparent that Liberty is unwilling to change its position and return the privileged invoices that were inadvertently disclosed to Liberty.  Accordingly, neither a further letter writing campaign nor a discussion of these issues seems warranted given the apparent hardline positions that Liberty has adopted.

Moreover, based on your July 16 letter, it appears as though the parties have reached a point where they will have to "agree to disagree" on these issues pending judicial resolution.  That said, if you would like to discuss these issues, we would invite you to please contact our office before you leave on vacation.  If we do not hear back from you by July 18, we will assume that Liberty is not willing to reconsider the positions outlined in your July 16 letter and Ironwood will proceed accordingly.

Thank you for your prompt attention to this matter.

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

Exhibit _____24_____
Page _____3_____

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Tuesday, July 16, 2013 9:57 PM
**To:** john@mcleodlawgroup.com; 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti
**Subject:** Ironwood Country Club v. Liberty Insurance

Gentlemen, attached please find correspondence of today's date.

Best regards,
Jeffrey Whittington

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit ___24___
Page ___4___

# EXHIBIT 25

**Paul Hirst**

| | |
|---|---|
| **From:** | Jeffrey S. Whittington <jwhittington@kbrlaw.com> |
| **Sent:** | Friday, December 20, 2013 1:05 PM |
| **To:** | John McLeod; Paul Hirst |
| **Cc:** | Richard A. Pretti; Miriam Gregory |
| **Subject:** | Ironwood v. Liberty |
| **Attachments:** | 2407089_1.pdf |

Gentlemen, attached please find correspondence requesting your agreement to stipulate to Liberty amending its answer.

Best regards,

Jeffrey S. Whittington  **I  KAUFMAN BORGEEST & RYAN LLP**
23975 Park Sorrento, Suite 370  I  Calabasas, CA 91302
direct: 818.961.8006  I  fax: 818.880.0993
vcard  I  email  I  website

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit ___25___
Page ___1___



23975 PARK SORRENTO, CALABASAS, CA 91302
TEL: 818.880.0992   FAX: 818.880.0993   WWW.KBRLAW.COM

December 20, 2013

JEFFREY S. WHITTINGTON
DIRECT: 818.961.8006
JWHITTINGTON@KBRLAW.COM

<u>VIA EMAIL ONLY</u>

John J. McLeod, Esq.
Paul Hirst, Esq.
McLeod Law Group, APC
701 B Street, Suite 1570
San Diego, California 92101

Re:   Ironwood Country Club v. Liberty Insurance Underwriters, Inc.
      U.S.D.C. Central District Case No: 13-00996-VAP (DTBx)
      KBR No.        :        381.006

Gentlemen:

As you know, we represent Liberty Insurance Underwriters, Inc. ("Liberty"), in this matter.  We write to request Ironwood Country Club's written consent to stipulate for Liberty to amend its Answer.  The Scheduling Order provides that the "Last Day to Stipulate or File a Motion to Amend Pleadings" is December 31, 2013.  Accordingly, Liberty is within the Scheduling Order's deadline.  The proposed amendment to Liberty's Answer is as follows:

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

74.   Plaintiff made material misrepresentations and/or concealed information in its application for insurance that defendant relied upon to its detriment.  Based upon these misrepresentations, concealed information and/or plaintiff's fraudulent inducement of defendant, the Policy is voidable, and/or subject to reformation or rescission.

The applicable law provides that: "[L]eave to Amend [under Rule 15[1]] should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates an undue delay."  See *Martinez v. Newport Beach*, (9th Cir. 1997) 125 F.3d 777, 785.  Additionally, in *Eminence Capital, LLC v. Aspeon, Inc.*, (9th Cir. 2003) 316 F.3d 1048 and *DCD*

---

[1]  FRCP Rule 15 (a)(2) provides: "*Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

2409089

Exhibit _____ 25
Page _____ 2

*Programs. Ltd. v. Leighton* (9th Cir. 1987) 833 F.2d 183, 185, it was held that the policy of freely granting leave to amend a pleading is to be applied with extreme liberality.

The proposed amendment to Liberty's Answer is not futile, sought in bad faith, or being done to cause any undue delay in the litigation.  Based upon the foregoing, please advise whether Ironwood will so stipulate so as to avoid the time and expense of unnecessary motion practice. If so, we will forward a proposed stipulation under separate cover.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

Jeffrey S. Whittington

# EXHIBIT 26

## Paul Hirst

| | |
|---|---|
| **From:** | Paul Hirst |
| **Sent:** | Monday, December 23, 2013 11:32 AM |
| **To:** | Jeffrey S. Whittington <jwhittington@kbrlaw.com> (jwhittington@kbrlaw.com) |
| **Cc:** | John McLeod; Richard A. Pretti (rpretti@kbrlaw.com); Miriam Gregory (mgregory@kbrlaw.com) |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |

Jeff,

We respectfully disagree with Liberty's contention that Ironwood's motion for summary adjudication is premature.  Indeed, California law is directly to the contrary.  (See, e.g., *Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963.)  For all the reasons previously discussed, neither Ironwood nor Liberty need to conduct any discovery on the three discrete issues that will be the subject of Ironwood's motion.  And since Liberty's answer in this action does not include rescission as an affirmative defense, the cases cited in support of your email below are inapplicable.  Indeed, after receiving your email below, we received a second email from you, which attached a letter requesting for the very first time that Ironwood stipulate to Liberty amending its answer to add rescission as an affirmative defense.  We will respond to this request under separate cover.  Needless to say, though, the timing of the request seems dubious at best.

Accordingly, please be advised that Ironwood intends to move forward with its motion for summary adjudication without further delay.


Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938, Ext. 104 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Friday, December 20, 2013 12:37 PM
**To:** Paul Hirst
**Cc:** John McLeod; Richard A. Pretti; Miriam Gregory
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Paul,

Thank you for your email.  While the grounds for Ironwood's anticipated Motion for Summary Judgment ("MSJ") have been discussed, what has not been discussed is Judge Phillips' Standing Order (Docket #5) that a party may only move for summary judgment once and that any such MSJ by Ironwood is premature.  Specifically, the Standing Order states as follows:

**Motions for Summary Judgment or Partial Summary Judgment**:  No party may file more than one motion pursuant to Fed. R. Civ. P. 56 regardless of whether such motion is denominated as a motion for summary judgment or summary adjudication.

Exhibit _____ 26 _____
Page _____ ( _____

No discovery has taken place in this matter beyond the exchange of Initial Disclosures. Given the defenses that Liberty has raised, any MSJ by Ironwood is unquestionably premature. See *Rocklin Park Place Condominium Owners Assoc. v. Liberty Ins. U'wtrs, Inc.*, (E.D. Cal., Sept. 6, 2013) 2:12-cv-02247-TLN-CKD ("*Rocklin Park Place*"); *Atmel Corp. v. St. Paul* (N.D. Cal. 2006) 416 F.Supp.2d 802 ("*Atmel*"). Given the significant likelihood that Ironwood's MSJ will be deemed premature, with the result likely being that Ironwood would attempt to refile it later following the conclusion of discovery (if Ironwood still believes it is viable), filing the MSJ now appears to be necessarily violative of the Court's Standing Order.

In *Rocklin Park Place*, the plaintiff/insured sought summary judgment from the court that the defendant/insurer wrongfully refused to defend the underlying action. The insurer argued that plaintiff was not entitled to summary judgment until the insurer's rescission defense was resolved. The affirmative defense of rescission was based on its allegations that the insured failed to disclose very important facts, despite direct inquiry in the application for the policy, which is exactly the situation here between Ironwood and Liberty. The *Rocklin Park Place* court relied on *Atmel*, which stated that, "because rescission is retroactive to the time that the representation becomes false, if [the insurer] is entitled to rescission, then it never owed [the insured] a duty to defend." *Atmel, supra.*

The *Rocklin Park Place* Court held that it could only find that, "because [the insurer's] rescission defense could potentially void the policy, this is not the proper juncture for summary adjudication of this issue….The court cannot, however, make any determination that Defendant breached the contract by failing to defend the [underlying] action if the [Policy] is potentially void." *Rocklin Park Place, supra.*

Based on the foregoing, I think it's clear that any such MSJ is premature at this juncture.

Thank you Paul. Best regards,

Jeffrey S. Whittington   I   **KAUFMAN BORGEEST & RYAN LLP**
23975 Park Sorrento, Suite 370   I   Calabasas, CA 91302
direct: 818.961.8006   I   fax: 818.880.0993
vcard   I   email   I   website

---

**From:** Paul Hirst [mailto:pchirst@mcleodlawgroup.com]
**Sent:** Tuesday, December 17, 2013 12:04 PM
**To:** Jeffrey S. Whittington
**Cc:** John McLeod; Richard A. Pretti; Miriam Gregory
**Subject:** RE: Ironwood Country Club v. Liberty Insurance
**Importance:** High

Jeff,

As the parties were unable to resolve this matter following last month's mediation, please be advised that Ironwood intends to move forward with its previously-discussed motion for summary adjudication. Ironwood believes that the parties satisfied the "meet and confer" requirement of LR 7-3 back in July 2013. But, if you believe that there is anything left for us to discuss, we would ask that you please contact us before the end of this week.

Thanks,

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938, Ext. 104 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

Exhibit _____ 20
Page _____ 2

**From:** John McLeod [mailto:john@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 5:29 PM
**To:** 'Jeffrey S. Whittington'; 'Dan Rylaarsdam'
**Cc:** 'Miriam Gregory'; 'Richard A. Pretti'; 'Paul C. Hirst'
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

We are equally perplexed by your position.  We have demanded that (1) Liberty reimburse the fees and costs incurred by Ironwood in the defense of the pending case from the date of tender through the date that Liberty withdrew from the defense, (2) Liberty re-assume the defense of Ironwood in the pending case and (3) Liberty return the privileged materials that were inadvertently forwarded to it.  On behalf of Liberty, you have patently refused to do any of these things.  What, exactly, is left to discuss?

John J. McLeod, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938, Ext. 102 (telephone)
619.236.9943 (facsimile)
www.mcleodlawgroup.com

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Wednesday, July 17, 2013 1:56 PM
**To:** 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Dan,

I must admit to being perplexed by your email below.  You sent a meet and confer letter wherein you stated Ironwood's position, but indicated your desire to have a productive discussion about the issues raised therein.  I responded yesterday with a letter outlining Liberty's position and likewise indicated our desire to have a productive discussion about such issues, but noted that I will be out on vacation starting tomorrow.  Yet you respond below by saying that since Liberty is unwilling to change its position, no further discussion seems warranted, but that I should let you know if I feel otherwise.  I imagine that I could have responded to your letter by saying "well, you seem set in your ways, so there's no point in responding."  I did not.  Regardless, as I indicated in my letter, I am open to further participation in a good faith meet and confer process, however, it will just need to take place when I get back from vacation.  I do agree, however, that a letter writing campaign doesn't seem productive at this point.

Best regards,
Jeffrey Whittington

**From:** Dan Rylaarsdam [mailto:drylaarsdam@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 1:35 PM
**To:** Jeffrey S. Whittington
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Mr. Whittington,

Exhibit ___26___
Page ___3___

We are in receipt of your July 16 letter to this firm, which responds to this firm's July 8 meet and confer letter regarding Ironwood's intent to seek summary adjudication of the three issues set forth therein. Since your letter indicates that you will be on vacation from July 18 to July 26, we wanted to take this earliest opportunity to briefly follow up with you before you leave on the 18th. (As an aside, we note that your letter was sent via email and was received well after regular business hours (at about 9:57 p.m.).) Consequently, this is the first opportunity we have had to respond.)

While we appreciate the detailed explanation for Liberty's position set forth in your July 16 letter, it is apparent that Liberty is not willing to change its position vis-à-vis its duty to reimburse the post-tender defense fees and costs incurred by Ironwood in the underlying <u>Cobb</u> lawsuit or its duty to defend Ironwood in the <u>Cobb</u> suit. It is also apparent that Liberty is unwilling to change its position and return the privileged invoices that were inadvertently disclosed to Liberty. Accordingly, neither a further letter writing campaign nor a discussion of these issues seems warranted given the apparent hardline positions that Liberty has adopted.

Moreover, based on your July 16 letter, it appears as though the parties have reached a point where they will have to "agree to disagree" on these issues pending judicial resolution. That said, if you would like to discuss these issues, we would invite you to please contact our office before you leave on vacation. If we do not hear back from you by July 18, we will assume that Liberty is not willing to reconsider the positions outlined in your July 16 letter and Ironwood will proceed accordingly.

Thank you for your prompt attention to this matter.


Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
<u>drylaarsdam@mcleodlawgroup.com</u> (e-mail)
<u>www.mcleodlawgroup.com</u>

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Tuesday, July 16, 2013 9:57 PM
**To:** john@mcleodlawgroup.com; 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti
**Subject:** Ironwood Country Club v. Liberty Insurance

Gentlemen, attached please find correspondence of today's date.

Best regards,
Jeffrey Whittington

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message

Exhibit ___26___
Page ___4___

(including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit ___26___
Page _____5_____

# EXHIBIT 27

**Paul Hirst**

| | |
|---|---|
| **From:** | Jeffrey S. Whittington <jwhittington@kbrlaw.com> |
| **Sent:** | Monday, December 23, 2013 11:59 AM |
| **To:** | Paul Hirst |
| **Cc:** | John McLeod; Richard A. Pretti; Miriam Gregory |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |

Paul,

Liberty's tenth affirmative defense already states that Ironwood made material misrepresentations and that Liberty detrimentally relied upon them, i.e., the elements of rescission.  To the extent you are suggesting that you or Ironwood somehow were not on notice in this regard, *that* seems dubious.  The misrepresentations made by your client in applying for the policy are a part of this case; therefore, your reliance on *Haskel* – a case that did not involve rescission – is misplaced.

JSW

**From:** Paul Hirst [mailto:pchirst@mcleodlawgroup.com]
**Sent:** Monday, December 23, 2013 11:32 AM
**To:** Jeffrey S. Whittington
**Cc:** John McLeod; Richard A. Pretti; Miriam Gregory
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Jeff,

We respectfully disagree with Liberty's contention that Ironwood's motion for summary adjudication is premature.  Indeed, California law is directly to the contrary.  (See, e.g., *Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963.)  For all the reasons previously discussed, neither Ironwood nor Liberty need to conduct any discovery on the three discrete issues that will be the subject of Ironwood's motion.  And since Liberty's answer in this action does not include rescission as an affirmative defense, the cases cited in support of your email below are inapplicable.  Indeed, after receiving your email below, we received a second email from you, which attached a letter requesting for the very first time that Ironwood stipulate to Liberty amending its answer to add rescission as an affirmative defense.  We will respond to this request under separate cover.  Needless to say, though, the timing of the request seems dubious at best.

Accordingly, please be advised that Ironwood intends to move forward with its motion for summary adjudication without further delay.


Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938, Ext. 104 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com


**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Friday, December 20, 2013 12:37 PM
**To:** Paul Hirst

Exhibit _____27_____
Page _____1_____

**Cc:** John McLeod; Richard A. Pretti; Miriam Gregory
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Paul,

Thank you for your email. While the grounds for Ironwood's anticipated Motion for Summary Judgment ("MSJ") have been discussed, what has not been discussed is Judge Phillips' Standing Order (Docket #5) that a party may only move for summary judgment once and that any such MSJ by Ironwood is premature. Specifically, the Standing Order states as follows:

**Motions for Summary Judgment or Partial Summary Judgment**: No party may file more than one motion pursuant to Fed. R. Civ. P. 56 regardless of whether such motion is denominated as a motion for summary judgment or summary adjudication.

No discovery has taken place in this matter beyond the exchange of Initial Disclosures. Given the defenses that Liberty has raised, any MSJ by Ironwood is unquestionably premature. See *Rocklin Park Place Condominium Owners Assoc. v. Liberty Ins. U'wtrs, Inc.*, (E.D. Cal., Sept. 6, 2013) 2:12-cv-02247-TLN-CKD ("*Rocklin Park Place*"); *Atmel Corp. v. St. Paul* (N.D. Cal. 2006) 416 F.Supp.2d 802 ("*Atmel*"). Given the significant likelihood that Ironwood's MSJ will be deemed premature, with the result likely being that Ironwood would attempt to refile it later following the conclusion of discovery (if Ironwood still believes it is viable), filing the MSJ now appears to be necessarily violative of the Court's Standing Order.

In *Rocklin Park Place*, the plaintiff/insured sought summary judgment from the court that the defendant/insurer wrongfully refused to defend the underlying action. The insurer argued that plaintiff was not entitled to summary judgment until the insurer's rescission defense was resolved. The affirmative defense of rescission was based on its allegations that the insured failed to disclose very important facts, despite direct inquiry in the application for the policy, which is exactly the situation here between Ironwood and Liberty. The *Rocklin Park Place* court relied on *Atmel*, which stated that, "because rescission is retroactive to the time that the representation becomes false, if [the insurer] is entitled to rescission, then it never owed [the insured] a duty to defend." *Atmel, supra.*

The *Rocklin Park Place* Court held that it could only find that, "because [the insurer's] rescission defense could potentially void the policy, this is not the proper juncture for summary adjudication of this issue....The court cannot, however, make any determination that Defendant breached the contract by failing to defend the [underlying] action if the [Policy] is potentially void." *Rocklin Park Place, supra.*

Based on the foregoing, I think it's clear that any such MSJ is premature at this juncture.

Thank you Paul. Best regards,

Jeffrey S. Whittington  **I  KAUFMAN BORGEEST & RYAN LLP**
23975 Park Sorrento, Suite 370  I  Calabasas, CA 91302
direct: 818.961.8006  I  fax: 818.880.0993
vcard  I  email  i  website

---

**From:** Paul Hirst [mailto:pchirst@mcleodlawgroup.com]
**Sent:** Tuesday, December 17, 2013 12:04 PM
**To:** Jeffrey S. Whittington
**Cc:** John McLeod; Richard A. Pretti; Miriam Gregory
**Subject:** RE: Ironwood Country Club v. Liberty Insurance
**Importance:** High

Jeff,

Exhibit ___27___
Page ___2___

As the parties were unable to resolve this matter following last month's mediation, please be advised that Ironwood intends to move forward with its previously-discussed motion for summary adjudication. Ironwood believes that the parties satisfied the "meet and confer" requirement of LR 7-3 back in July 2013. But, if you believe that there is anything left for us to discuss, we would ask that you please contact us before the end of this week.

Thanks,

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938, Ext. 104 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

**From:** John McLeod [mailto:john@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 5:29 PM
**To:** 'Jeffrey S. Whittington'; 'Dan Rylaarsdam'
**Cc:** 'Miriam Gregory'; 'Richard A. Pretti'; 'Paul C. Hirst'
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

We are equally perplexed by your position. We have demanded that (1) Liberty reimburse the fees and costs incurred by Ironwood in the defense of the pending case from the date of tender through the date that Liberty withdrew from the defense, (2) Liberty re-assume the defense of Ironwood in the pending case and (3) Liberty return the privileged materials that were inadvertently forwarded to it. On behalf of Liberty, you have patently refused to do any of these things. What, exactly, is left to discuss?

John J. McLeod, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938, Ext. 102 (telephone)
619.236.9943 (facsimile)
www.mcleodlawgroup.com

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Wednesday, July 17, 2013 1:56 PM
**To:** 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Dan,

I must admit to being perplexed by your email below. You sent a meet and confer letter wherein you stated Ironwood's position, but indicated your desire to have a productive discussion about the issues raised therein. I responded yesterday with a letter outlining Liberty's position and likewise indicated our desire to have a productive discussion about such issues, but noted that I will be out on vacation starting tomorrow. Yet you respond below by saying that since Liberty is unwilling to change its position, no further discussion seems warranted, but that I should let you know if I feel otherwise. I imagine that I could have responded to your letter by saying "well, you seem set in your ways, so there's no point in responding." I did not. Regardless, as I indicated in my letter, I am open to further participation in a good faith meet and confer

Exhibit ___27___
Page ___3___

process, however, it will just need to take place when I get back from vacation.  I do agree, however, that a letter writing campaign doesn't seem productive at this point.

Best regards,
Jeffrey Whittington

---

**From:** Dan Rylaarsdam [mailto:drylaarsdam@mcleodlawgroup.com]
**Sent:** Wednesday, July 17, 2013 1:35 PM
**To:** Jeffrey S. Whittington
**Cc:** Miriam Gregory; Richard A. Pretti; john@mcleodlawgroup.com; Paul C. Hirst
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Mr. Whittington,

We are in receipt of your July 16 letter to this firm, which responds to this firm's July 8 meet and confer letter regarding Ironwood's intent to seek summary adjudication of the three issues set forth therein.  Since your letter indicates that you will be on vacation from July 18 to July 26, we wanted to take this earliest opportunity to briefly follow up with you before you leave on the 18th.  (As an aside, we note that your letter was sent via email and was received well after regular business hours (at about 9:57 p.m.).)  Consequently, this is the first opportunity we have had to respond.)

While we appreciate the detailed explanation for Liberty's position set forth in your July 16 letter, it is apparent that Liberty is not willing to change its position vis-à-vis its duty to reimburse the post-tender defense fees and costs incurred by Ironwood in the underlying Cobb lawsuit or its duty to defend Ironwood in the Cobb suit.  It is also apparent that Liberty is unwilling to change its position and return the privileged invoices that were inadvertently disclosed to Liberty.  Accordingly, neither a further letter writing campaign nor a discussion of these issues seems warranted given the apparent hardline positions that Liberty has adopted.

Moreover, based on your July 16 letter, it appears as though the parties have reached a point where they will have to "agree to disagree" on these issues pending judicial resolution.  That said, if you would like to discuss these issues, we would invite you to please contact our office before you leave on vacation.  If we do not hear back from you by July 18, we will assume that Liberty is not willing to reconsider the positions outlined in your July 16 letter and Ironwood will proceed accordingly.

Thank you for your prompt attention to this matter.

Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938 (x 104) (telephone)
619.236.9943 (facsimile)
drylaarsdam@mcleodlawgroup.com (e-mail)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Tuesday, July 16, 2013 9:57 PM
**To:** john@mcleodlawgroup.com; 'Dan Rylaarsdam'
**Cc:** Miriam Gregory; Richard A. Pretti
**Subject:** Ironwood Country Club v. Liberty Insurance

Gentlemen, attached please find correspondence of today's date.

Exhibit ___27___
Page ___4___

Best regards,
Jeffrey Whittington

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit  27
Page  5

# EXHIBIT 28

1 | Jeffrey S. Whittington, Esq./SBN 236028
Email: jwhittington@KBRlaw.com
2 | Miriam Gregory, Esq./SBN 281083
Email: mgregory@KBRlaw.com
3 | KAUFMAN BORGEEST & RYAN LLP
23975 Park Sorrento, Suite 370
4 | Calabasas, CA 91302
Telephone: (818) 880-0992
5 | Facsimile: (818) 880-0993

RECEIVED OCT 0 1 2013

6

7 | Attorneys for Defendant Liberty
Insurance Underwriters, Inc.

8

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

11

12 | IRONWOOD COUNTRY CLUB,                )   Case No. 13-00996-VAP (DTBx)

13 |      Plaintiffs,             )

14 | vs.                                    )   **INITIAL DISCLOSURES OF
                                            )   DEFENDANT LIBERTY
15 |                                        )   INSURANCE
                                            )   UNDERWRITERS, INC.**
16 | LIBERTY INSURANCE                      )
UNDERWRITERS, INC. and DOES 1          )
17 | through 100,                           )

18 |      Defendants.          )

19

20

21

22

23

24

25 |     In accordance with Federal Rule of Civil Procedure 26(a)(1) Defendant

26 | Liberty Insurance Underwriters, Inc. ("Liberty" and/or "Defendant"), by and

27 | through its undersigned counsel, submits the following Initial Disclosure

28 | Statement.

---

1

**INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.**

Printed on Recycled Paper
2353772

Exhibit _____ 28
Page _____ 1

1       By making these disclosures, Liberty does not represent that it is
2  identifying every document, tangible thing, or witness possibly relevant to
3  this lawsuit, nor does Liberty waive its rights to object to the production of
4  any documents or tangible thing on the basis of any privilege, the work
5  product doctrine, relevancy, undue burden, or any other valid objection.
6  Rather, Liberty's disclosures represent its good faith effort to identify
7  information subject to the disclosure requirements of Fed. R. Civ. P.26(a)(1).

8       By identifying any documents, or categories of documents, or by
9  identifying any persons likely to have relevant knowledge pursuant to their
10  duties, Liberty does not waive any objections it now has or hereafter may
11  have as to the admissibility of evidence at any proceeding of such documents,
12  the proposed knowledge of witnesses, or testimony so produced or disclosed.
13  Liberty objects and does not disclose to the extent the disclosures might
14  otherwise call for attorney-client privileged information or attorney work
15  product or otherwise privileged information.

16       These Initial Disclosures are made based on the information reasonably
17  available to Liberty at this time and may be supplemented as Liberty
18  discovers additional witnesses and/or documents upon which it may rely.

19

20  **I.**    **INDIVIDUALS    LIKELY    TO    HAVE    DISCOVERABLE**
21      **INFORMATION**

22       The following individuals are likely to have discoverable information
23  that Liberty may use to support its defenses, unless solely for impeachment:

24      1.    Christine J. Testaverde, former Claims Counsel for Liberty.
25          Ms. Testaverde may have knowledge of facts related to her
26          conversations with individuals associated with and/or
27          representing Ironwood Country Club ("ICC") as well as facts

28  / / /

**INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.**

Printed on Recycled Paper
2353772

Exhibit __28__
Page __2__

related to the insurance policy at issue and the basis for Liberty's decision to disclaim coverage for the underlying claim at issue.

2.    Seon Choi, AVP Specialty Casualty Claims, Liberty.

Ms. Choi may have knowledge of facts related to her conversations with individuals associated with and/or representing ICC as well as facts related to the insurance policy at issue and the basis for Liberty's decision to disclaim coverage for the underlying claim at issue.

3.    Lydia Magat, Chief Financial Officer of ICC.

Ms. Magat is expected to have knowledge concerning the facts and circumstances regarding ICC's submission of the defense invoices at issue, the facts and circumstances regarding ICC's decision to obtain a policy of insurance, and the facts and circumstances regarding ICC's determination to cease repayment of the loan at issue in the underlying suit. Ms. Magat's contact information is expected to be in the possession of Plaintiff's Counsel.

4.    Alan Lux of Tanenbaum Harber of CA, Inc., insurance broker for ICC.

Mr. Lux is expected to have knowledge concerning the facts and circumstances regarding ICC's submission of the defense invoices at issue and demand for payment of such invoices from Liberty, the facts and circumstances regarding ICC's decision to obtain a policy of insurance, the submission of ICC's application for insurance to Liberty, and the facts and circumstances regarding ICC's determination to cease repayment of the loan at issue in the underlying suit. Mr. Lux's contact information is expected to be in the possession of Plaintiff's Counsel.

---

3

**INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.**

Printed on Recycled Paper
2353772

Exhibit _____ 28

Page _____ 3

5.     Josh Tanner, Chief Operating Officer/General Manager of ICC.

Mr. Tanner is expected to have knowledge concerning the facts and circumstances regarding ICC's submission of the defense invoices at issue, the facts and circumstances regarding ICC's decision to obtain a policy of insurance, and the facts and circumstances regarding ICC's determination to cease repayment of the loan at issue in the underlying suit. Mr. Tanner is also expected to have knowledge concerning the circumstances of Ironwood's retainer of Mr. Gerstel's services. Mr. Tanner's contact information is expected to be in the possession of Plaintiff's Counsel.

6.     Bryan Gerstel of Green Bryant & French LLP, counsel for ICC.

Mr. Gerstel is expected to have knowledge and information regarding ICC's decision to obtain a policy of insurance, the submission of ICC's application for insurance to Liberty, the creation of invoices for work performed with respect to the underlying matter, the creation of Memo(s) regarding the underlying matter, and the facts and circumstances regarding ICC's determination to cease repayment of the loan at issue in the underlying suit. Mr. Gerstel's contact information is expected to be in the possession of Plaintiff's Counsel.

7.     Ken Delf, President of ICC in January, 2012.

Mr. Delf is expected to have knowledge concerning the facts and circumstances regarding ICC's submission of the defense invoices at issue, the facts and circumstances regarding ICC's decision to obtain a policy of insurance, and the facts and circumstances regarding ICC's determination to cease repayment of the loan at issue in the underlying suit. Mr. Delf is also

---

4

**INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.**

Printed on Recycled Paper
2353772

Exhibit _28_
Page _4_

1    expected to have knowledge concerning the circumstances of
2    ICC's retainer of Mr. Gerstel as counsel for ICC.   Mr. Delf's
3    contact information is expected to be in the possession of
4    Plaintiff's Counsel.

5    8.    Robert Manion, Board President of ICC.

6    Mr. Manion is expected to have knowledge concerning the facts
7    and circumstances regarding ICC's submission of the defense
8    invoices at issue, the facts and circumstances regarding ICC's
9    decision to obtain a policy of insurance, and the facts and
10   circumstances regarding ICC's determination to cease repayment
11   of the loan at issue in the underlying suit.  Mr. Manion is also
12   expected to have knowledge concerning the circumstances of
13   ICC's retainer of Mr. Gerstel's services.  Mr. Manion's contact
14   information is expected to be in the possession of Plaintiff's
15   Counsel.

16   9.    Dale Echols, Director of Administrative Services at ICC.

17   Ms. Echols is expected to have knowledge concerning the facts
18   and circumstances regarding ICC's submission of the defense
19   invoices at issue, the facts and circumstances regarding ICC's
20   decision to obtain a policy of insurance, and the facts and
21   circumstances regarding ICC's determination to cease repayment
22   of the loan at issue in the underlying suit.  Ms. Echols is also
23   expected to have knowledge concerning the circumstances of
24   ICC's retainer of Mr. Gerstel's services.  Ms. Echol's contact
25   information is expected to be in the possession of Plaintiff's
26   Counsel.

27   10.   Barbara Sue Seal, former ICC Board member.

28   Ms. Seal is expected to have knowledge concerning the facts and

5

**INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.**

Printed on Recycled Paper
2353772

Exhibit ___
Page ___

28

circumstances regarding ICC's submission of the defense invoices at issue, the facts and circumstances regarding ICC's decision to obtain a policy of insurance, and the facts and circumstances regarding ICC's determination to cease repayment of the loan at issue in the underlying suit. Ms. Seal is also expected to have knowledge concerning the circumstances of ICC's retainer of Mr. Gerstel's services. Ms. Seal's contact information is expected to be in the possession of Plaintiff's Counsel.

11. Al Olson, former ICC Board member.

Mr. Olson is expected to have knowledge concerning the facts and circumstances regarding ICC's submission of the defense invoices at issue, the facts and circumstances regarding ICC's decision to obtain a policy of insurance, and the facts and circumstances regarding ICC's determination to cease repayment of the loan at issue in the underlying suit. Mr. Olson is also expected to have knowledge concerning the circumstances of ICC's retainer of Mr. Gerstel's services. Mr. Olson's contact information is expected to be in the possession of Plaintiff's Counsel.

12. Mike Flood, former ICC Board member.

Mr. Flood is expected to have knowledge concerning the facts and circumstances regarding ICC's submission of the defense invoices at issue, the facts and circumstances regarding ICC's decision to obtain a policy of insurance, and the facts and circumstances regarding ICC's determination to cease repayment of the loan at issue in the underlying suit. Mr. Flood is also expected to have knowledge concerning the circumstances of

INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.

Printed on Recycled Paper

2353772

Exhibit _____ 28

Page _____ 6

ICC's retainer of Mr. Gerstel's services.   Mr. Flood's contact information is expected to be in the possession of Plaintiff's Counsel.

13.   William S. Cobb, Jr., former member of ICC.

Mr. Cobb is expected to have knowledge concerning ICC's determination to cease repayment of the loan at issue in the underlying suit.   Mr. Cobb may be contacted through his attorney of record, Slovak Baron Empey Murphy & Pinkney, 1800 East Tahquitz Canyon Way, Palm Springs, CA 92262, Tel.: (760) 322-2275.

14.   Patrick J. Keeley, current member of ICC.

Mr. Keeley is expected to have knowledge concerning ICC's determination to cease repayment of the loan at issue in the underlying suit.   Mr. Keeley may be contacted through his attorney of record, Slovak Baron Empey Murphy & Pinkney, 1800 East Tahquitz Canyon Way, Palm Springs, CA 92262, Tel.: (760) 322-2275.

15.   Helen H. Riedstra, current member ICC.

Ms. Riedstra is expected to have knowledge concerning ICC's determination to cease repayment of the loan at issue in the underlying suit. Ms. Riedstra may be contacted through her attorney of record, Slovak Baron Empey Murphy & Pinkney, 1800 East Tahquitz Canyon Way, Palm Springs, CA 92262, Tel.: (760) 322-2275.

16.   Elizabeth Richards, former member of ICC.

Ms. Richards is expected to have knowledge concerning ICC's determination to cease repayment of the loan at issue in the underlying suit. Ms. Richards may be contacted through her

---

7

**INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.**

Printed on Recycled Paper

2353772

Exhibit _28_

Page _7_

attorney of record, Slovak Baron Empey Murphy & Pinkney, 1800 East Tahquitz Canyon Way, Palm Springs, CA 92262, Tel.: (760) 322-2275.

17.   Robin A. Schmitt, ARC Excess and Surplus , LLC, 1122 Franklin    Ave. PO Box 9240, Garden City, NY 11530-9240, (516) 408-  5727.

Ms. Schmitt is expected to have knowledge regarding ICC's determination to obtain a policy of insurance with Liberty.

18.   DeAnn Huttle, ARC Excess and Surplus , LLC, 1122 Franklin Ave. PO Box 9240, Garden City, NY 11530-9240, (516) 408-5727.

Ms. Huttle is expected to have knowledge regarding ICC's determination to obtain a policy of insurance with Liberty.

19.   Todd Weber, Assistant VP, Liberty International Underwriters, 1 S. Wacker Dr., Suite 2200, Chicago, IL 60606, (312) 857-9034.

Mr. Weber is expected to have knowledge regarding the circumstances surrounding Liberty's offer of insurance to ICC.

20.   Any person identified in any document produced by any party in this matter.

21.   Any witness necessary for rebuttal.

22.   Any expert witness identified pursuant to Rule 26.

23.   Any person necessary to lay foundation or authenticate documents.

Other current and/or former board members of ICC may be identified, depending upon what information is learned during discovery.

///

///

///

---

8

**INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.**

28
8

**II.   DESCRIPTION OF DOCUMENTS THAT LIBERTY MAY USE TO SUPPORT ITS DEFENSES**

Liberty identifies the following documents which it has in its possession, custody, and/or control which it may use to support its claims:

1.   Bryan R. Gerstel's Statements for Legal Services.

2.   Liberty Nonprofit Executive Advantage Policy, Policy Number DOCH216747-211, which includes the application and all documentation submitted therewith.

3.   The underwriting file for Liberty Insurance Underwriters Inc. Nonprofit Executive Advantage Policy, Policy Number DOCH216747-211.

4.   The Claim File for Liberty Policy Number DOCH216747-211, Claim Number CHISPC000006429.

5.   Any other document or other tangible thing that may be relevant to the matters at issue in this civil action.

6.   Any document or other tangible thing for the purpose of impeachment or rebuttal.

7.   Any demonstrative exhibit necessary to elicit testimony of any witness.

8.   Any documents necessary for rebuttal.

Liberty reserves the right to object to the production of any document within the categories of documents described herein on any basis permitted by the Federal Rules of Civil Procedure and the Local Rules for the Central District of California.   In particular, certain documents included within the foregoing categories may not be discoverable because they are protected from disclosure by privileges, including the attorney-client privilege and work product privilege, or for other reasons.

/ / /

---

9

**INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.**

Printed on Recycled Paper

2353772

Exhibit _____ 28

Page _____ 9

1    Other documents may be identified, depending upon what information
2  is learned during discovery.

3

4  **III.    ANTICIPATED DISCOVERY DISPUTE**

5    During the meet and confer process that preceded these Initial
6  Disclosures, Liberty indicated that it will seek to use in support of its claims
7  and defenses: (1) certain invoices that ICC submitted to Liberty for
8  reimbursement; (2) a memorandum referenced in such invoices ("the
9  Memo"); and (3) ICC's Board of Directors meeting notes on the issues
10 outlined in the memorandum referenced in such invoices ("the Notes").  ICC
11 has advised that it will contend that the aforementioned documents and/or
12 materials are protected from disclosure by the attorney-client privilege and/or
13 the attorney work product doctrine.  Accordingly, ICC has advised that it will
14 not produce and will seek a protective order to prevent Liberty from obtaining
15 and/or using these documents in this litigation. Conversely, Liberty has
16 advised ICC that should such documents and/or materials not be produced,
17 then Liberty will move to compel said production.

18    Thus, the parties anticipate a discovery dispute to be forthcoming
19 subsequent to initiation of the discovery process.

20

21 **IV.    DAMAGES CLAIMED**

22    Liberty does not assert a claim for damages and has therefore produced
23 no calculation of damages.

24

25 **V.    INSURANCE AGREEMENTS**

26    Not applicable at this time.  Liberty reserves the right to supplement
27 these disclosures at such time that it becomes available and/or relevant.

28 ///

---

**10**

**INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.**

Printed on Recycled Paper
2353772

Exhibit _____ 28

Page _____ 10

1    Liberty expressly reserves the right to supplement, amend, or modify

2  these disclosures up and until and including the time of trial when and if

3  Liberty becomes aware of any new or additional information.

4

5    I certify to the best of my knowledge, information, and belief, formed

6  after reasonable inquiry, that the above disclosure is complete and correct as

7  of today's date.

8

9                          Respectfully submitted,

10
   Dated:  September 30, 2013        KAUFMAN BORGEEST & RYAN LLP
11

12                       By:   /s/ Jeffrey S. Whittington
                               Jeffrey S. Whittington, Esq.
13                             Attorney for Defendant
14                             Liberty  Insurance  Underwriters,  Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

__INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.__
Printed on Recycled Paper
2353772

Exhibit _____ 28
Page _____ 11

# PROOF OF SERVICE
## CASE NAME: Ironwood v. Liberty Insurance

I declare as follows:

I am employed in the County of Los Angeles, California. I am over the age of 18 years, and not a party to the within action; my business address is Kaufman Borgeest & Ryan LLP, 23975 Park Sorrento, Suite 370, Calabasas, California 91302. I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

On September 30, 2013, I served a true and correct copy, with all exhibits, of the following document(s) described as follows:

## INITIAL DISCLOSURES OF DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.

[X]   On the interested parties in the within action by placing the above documents in the United States mail for Express Mail delivery at 23975 Park Sorrento, Suite 370, Calabasas, California 91302 in a sealed envelope, with Express Mail postage thereon fully prepaid; by depositing copies of the above documents in a box or other facility regularly maintained by Federal Express, with delivery fees paid by the sender's account.   (Code of Civil Procedure § 1013(c).)   *(Overnight Delivery Service)*

[ ]   On the party or parties named below, by following ordinary business practice, placing a true copy thereof enclosed in a sealed envelope, for collection and mailing with a United States Postal Service, where it would be deposited for first class delivery, postage fully prepaid, in the United States Postal Service, that same day in the ordinary course of business, addressed as set forth below. *(Regular Office Deposit)*

---

**1**
**PROOF OF SERVICE**

2353772
Exhibit _____ 28
Page _____ 12

The following is the procedure in which service of this document was effected:

[X]   Federal Express, Priority Overnight

John J. McLeod, Esq.
Daniel H. Rylaarsdam, Esq.
McLEOD LAW GROUP, APC
701 B. Street, Suite 1570
San Diego, California 92101

I certify under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct and that this declaration was executed on September 30, 2013, at Calabasas, California.

By: _____          By:   _____Laila Z. Possani_____
       Signature of Declarant                              Name of Declarant

Exhibit  28
Page  13

From: (818) 880-0992     Origin ID: JSNA
Laila Z. Possani
Kaufman Borgeest Ryan LLP
23975 Park Sorrento
Suite 370
Calabasas, CA 91302



Ship Date: 30SEP13
ActWgt: 1.0 LB
CAD: 8305062/INET3430

RECEIVED OCT 0 1 2013

Delivery Address Bar Code



SHIP TO: (619) 236-9938     BILL SENDER

**John J. McLeod, Esq.**
**McLEOD LAW GROUP, APC**
**701 B. Street, Suite 1570**

**SAN DIEGO, CA 92101**

Ref # 381-008 / Ironwood
Invoice #
PO #
Dept #



TUE - 01 OCT 10:30A
PRIORITY OVERNIGHT

TRK# 7968 0566 3331
0201

92101
CA-US
SAN

**WT SDMA**

51AG1/AB1B/HA9E

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# EXHIBIT 29

## Paul Hirst

| | |
|---|---|
| **From:** | Paul Hirst |
| **Sent:** | Friday, August 30, 2013 11:29 AM |
| **To:** | Jeffrey S. Whittington |
| **Cc:** | John McLeod |
| **Subject:** | RE: Ironwood Country Club v. Liberty Insurance |
| **Attachments:** | Joint Discovery Plan Report (revised by MLG) - 083013 draft.doc; Exhibit A Schedule of Pretrial and Trial Dates - 082713.pdf; Form ADR 1 - 082713.pdf |
| | |
| **Importance:** | High |

Jeff,

Hope you are feeling better.  Your proposed motion schedule works for us.

As for the Joint Report, attached is a redline draft reflecting this firm's proposed additional changes.  As you will see, we accepted the vast majority of your proposed changes, with just a few minor tweaks here and there.  We also deleted the inadvertent reference to "general liability policies" on pages 1 and 2.

Please let us know if you believe any additional changes are necessary.  Once we hear back from you, our office will finalize the Joint Report and file it with the court.  (As an aside, from your silence, I assume that the attachments (Exhibit A: Schedule of Pretrial and Trail Dates and ADR Form 1) are acceptable for filing with the Joint Report.   If not, please let us know.)  If you can get back to us before 4:00 p.m. today, I will endeavor to file the Joint Report today and have a chambers copy delivered to Judge Phillips on Tuesday.

As always, if you would like to discuss, please call.

Thanks,

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938, Ext. 104 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Thursday, August 29, 2013 11:40 AM
**To:** 'Paul Hirst'; john@mcleodlawgroup.com; Richard A. Pretti; Miriam Gregory
**Cc:** Richard A. Pretti; Miriam Gregory
**Subject:** Ironwood Country Club v. Liberty Insurance
**Importance:** High

Paul,

Thanks for your email and preparing the Joint Report.

Regarding the motion schedule, we're in agreement with one slight modification, which is to make the last day for parties to file oppositions 10/25/13 instead of 10/28/13, so instead of Monday the 28th, it would be Friday the

1

Exhibit   29
Page   1

25th. Slightly less time for the Oppositions, but slightly more time for the Replies. Accordingly, the proposed schedule would be as follows (let me know if this works):

- 9/30/13 – stipulated date for parties to make initial disclosures per Rule 26(a)
- 10/14/13 – parties to file competing motions
- 10/25/13 – last day for parties to file oppositions
- 11/4/13 – last day for parties to file replies
- 11/18/13 at 2:00 p.m. – hearing on competing motions.

One area of inquiry that I had was with respect to the discovery that Ironwood expects to take (pps 1-2), you make reference to Liberty's underwriting and claim manuals for general liability policies. Given the facts and claims in this case, was that intentional? If so, I would want to meet and confer with you in advance of the hearing on that issue.

As you will see from the redline version attached, we struck the language in section I.D. regarding the return/destruction of documents that are claimed to be privileged. We have provided alternative language, but ultimately I anticipate it will need to be discussed with the judge.

Finally, we also cannot agree to modifying the Standing Order so as to allow up to three (3) Rule 56 motions. Accordingly, we have deleted such language.

I'm out sick today, but should be available to discuss tomorrow or Tuesday.

Best regards,
Jeffrey Whittington

**From:** Paul Hirst [mailto:pchirst@mcleodlawgroup.com]
**Sent:** Tuesday, August 27, 2013 3:07 PM
**To:** Jeffrey S. Whittington
**Cc:** john@mcleodlawgroup.com; Richard A. Pretti; Miriam Gregory
**Subject:** RE: Ironwood Country Club v. Liberty Insurance
**Importance:** High

Jeff,

Attached is an initial draft of the Joint Report, as well as both attachments thereto. We look forward to receiving your revised draft by Noon on Thursday. (As an aside, thank you very much for sending me the working draft while I was out of the office last week. It provided a good starting point.)

In the meantime, as for the schedule for the "competing motions," we have no objection to pushing back the hearing date to November 18. However, let's also modify the balance of the proposed schedule as highlighted below:

- 9/30/13 – stipulated date for parties to make initial disclosures per Rule 26(a)
- 10/14/13 – parties to file competing motions
- 10/28/13 – last day for parties to file oppositions
- 11/4/13 – last day for parties to file replies
- 11/18/13 at 2:00 p.m. – hearing on competing motions.

If you would like to discuss, please call.

Thanks,

Paul C. Hirst, Esq.

2

Exhibit _____ 29
Page _____ 2

McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Tuesday, August 20, 2013 1:39 PM
**To:** 'Paul Hirst'
**Cc:** 'john@mcleodlawgroup.com'; Richard A. Pretti; Miriam Gregory
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Gentlemen, ,

As per the court, if the Monday motion day is a holiday, they next hear motions on the following Monday (November 18). So November 12 (or any day that week) is out. I have a trial scheduled to start November 18 (but if it goes, I'll probably still be in trial the following Monday as well and will need to figure something out regardless). So, I would modify my proposed schedule below such that the hearing date would be November 18. In this regard, I also propose having reply briefs due on November 4.

- 9/23/13 – stipulated date for parties to make initial disclosures per Rule 26(a)
- 10/7/13 – parties to file competing motions
- 10/21/13 – last day for parties to file oppositions
- 11/4/13 – last day for parties to file replies
- 11/18/13 at 2:00 p.m. – hearing on competing motions.

Best regards,
Jeffrey Whittington

**From:** Jeffrey S. Whittington
**Sent:** Tuesday, August 20, 2013 12:03 PM
**To:** 'Paul Hirst'
**Cc:** john@mcleodlawgroup.com; Richard A. Pretti; Miriam Gregory
**Subject:** RE: Ironwood Country Club v. Liberty Insurance

Paul/John,

It was our pleasure as well. Paul, I hope you are enjoying your vacation.

I've attached our working draft per your request, hope it is helpful (with full disclaimer that it is definitely a "working draft").

Regarding your proposed schedule for the initial disclosures and subsequent motions, I'm out of state the week of November 4, but then November 11 is Veterans Day, so we're checking what days that week (if any) the court hears motions. I would propose:

- 9/23/13 – stipulated date for parties to make initial disclosures per Rule 26(a)
- 10/7/13 – parties to file competing motions
- 10/21/13 – last day for parties to file oppositions (I built in an extra week here for oppositions)
- 10/28/13 – last day for parties to file replies

3

Exhibit ___29___
Page ___3___

- 11/12/13 at 2:00 p.m. – hearing on competing motions (we're checking with the court if they hear motions this week).

Let me know if this works on your end.

Thanks and regards,

Jeffrey S. Whittington   I   **KAUFMAN BORGEEST & RYAN LLP**
23975 Park Sorrento, Suite 370   I   Calabasas, CA 91302
direct: 818.961.8006   I   fax: 818.880.0993
vcard   I   email   I   website

---

**From:** Paul Hirst [mailto:pchirst@mcleodlawgroup.com]
**Sent:** Friday, August 16, 2013 3:05 PM
**To:** Jeffrey S. Whittington
**Cc:** john@mcleodlawgroup.com; Richard A. Pretti; Miriam Gregory
**Subject:** Ironwwood Country Club v. Liberty Insurance

Jeff,

It was a pleasure speaking with you folks during this morning's Rule 26(f) conference.  We look forward to meeting you in person on September 9.

You asked us to send you a proposed schedule for the initial disclosures required by Rule 26(a), as well as the subsequent competing motions we discussed regarding the privilege issue (i.e., Liberty's motion to compel and Ironwood's motion for a protective order).  We would propose the following:

- 9/23/13 – stipulated date for parties to make initial disclosures per Rule 26(a)
- 10/7/13 – parties to file competing motions
- 10/11/13 – last day for parties to file oppositions (October 14 is a Court Holiday)
- 10/21/13 – last day for parties to file replies
- 11/4/13 at 2:00 p.m. – hearing on competing motions

Please let us know if the foregoing schedule is agreeable.  Also, as we discussed, the parties will work together to schedule a mediation with either the magistrate judge (if available) or a private mediator sometime *after* the competing motions are filed and *before* the hearing date.

In the meantime, as for the Joint Report that we must submit in advance of the scheduling conference of September 9, please allow this to confirm the schedule we discussed.

- 8/27/13 – 5:00 p.m. – our office will forward to you an initial draft of the report
- 8/29/13 – Noon – your office will forward us a revised draft
- 8/30/13 (or 9/3/13, if necessary) – parties to file report

Lastly, as for the report, you mentioned that you have a working draft that you were using as a reference during our call.  Since I will be out of the office next week, would you mind sending us the working draft so that we can use it as a starting point for the initial draft?   If not, no worries. Just thought it might help expedite the process when I return to the office on August 26.

If you would like to further discuss, please call.

Exhibit _____ 29
Page _____ 4

Thanks,

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit 29
Page 5

# EXHIBIT 30

## Paul Hirst

| | |
|---|---|
| **From:** | Paul Hirst |
| **Sent:** | Thursday, October 31, 2013 3:39 PM |
| **To:** | Jeffrey S. Whittington <jwhittington@kbrlaw.com> (jwhittington@kbrlaw.com) |
| **Cc:** | John McLeod; Richard A. Pretti (rpretti@kbrlaw.com); Miriam Gregory (mgregory@kbrlaw.com) |
| **Subject:** | RE: Ironwood v. Liberty |

Jeff,

We are very concerned about this unfortunate turn of events and the possible ramifications vis-à-vis the mediation scheduled for November 20.  As you know, the purpose of filing the joint stipulation was to tee up the privilege issue in advance of the mediation so that both parties would be facing some potential downside risk shortly thereafter.  The idea being that both sides would have a greater incentive to settle the case with the threat of a decision on the privilege issue looming.  Now, with the joint stipulation having not been filed today, that additional incentive may very well be in jeopardy.

Indeed, with the upcoming Thanksgiving holiday, the next available hearing date for the joint stipulation would be December 5.  This would be the last possible hearing date if we are going to salvage our plans to tee up the privilege issue before the mediation, as it would give us a deadline of November 14 (21 days prior) to file the joint stipulation and November 21 to file supplemental briefs (we would need to stipulate to filing supplemental briefs a few days earlier so that they are on file prior to the mediation on the 20th).  Indeed, if the joint stipulation is not filed by November 14 (either under seal or otherwise), we believe that the chances of resolving this matter during the November 20 mediation could very well be diminished.

We would ask that you please give us an update regarding your efforts to obtain the requisite court approval to file the joint stipulation under seal.  Do you expect to be in position to file the joint stipulation under seal by November 14?  Please be advised that if the joint stipulation is not filed by November 14 (whether under seal or otherwise), Ironwood will treat all prior arrangements regarding the filing of dispositive motions as being no longer in effect.  So, we would urge Liberty to proceed with all due speed in its efforts to obtain the requisite court approval for filing under seal.

If you would like to discuss, please call.


Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938, Ext. 104 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Thursday, October 31, 2013 2:24 PM
**To:** Paul Hirst
**Cc:** John McLeod; Richard A. Pretti; Miriam Gregory
**Subject:** RE: Ironwood v. Liberty

Paul,

1

Exhibit ___30___
Page ___1___

Thank you for your efforts in this regard.  Unfortunately, on behalf of Liberty, we cannot and will not consent to the filing of the Joint Stipulation with the significant redactions as you have set forth below.

Best regards,

Jeffrey S. Whittington   |   **KAUFMAN BORGEEST & RYAN LLP**
23975 Park Sorrento, Suite 370   |   Calabasas, CA 91302
direct: 818.961.8006   |   fax: 818.880.0993
vcard   |   email   |   website

---

**From:** Paul Hirst [mailto:pchirst@mcleodlawgroup.com]
**Sent:** Thursday, October 31, 2013 2:22 PM
**To:** Jeffrey S. Whittington; Miriam Gregory
**Cc:** John McLeod; Richard A. Pretti
**Subject:** RE: Ironwood v. Liberty
**Importance:** High

Jeff,

Attached are "final" (from our perspective) merged versions of the notice, joint stipulation and proposed order.  (As an aside, we have removed all of Ironwood's arguments on the applicability of the work product doctrine.  The attached version focuses exclusively on the attorney-client privilege.  Accordingly, we took the liberty of removing Liberty's arguments on the work product doctrine, too.  If you would like us to re-insert Liberty's arguments on the work product doctrine , please let us know and we will gladly do so.)  We would ask that you please review and let us know if you have any additional changes.  We will also need whatever exhibits you folks are attaching to the joint stipulation – so please send them to us as soon as possible.  We would ask that you please get back to us by 3:30 p.m. so that we can finalize everything and file electronically today.

To that end, please note that we have redacted those portions of the joint stipulation that quote the billing statements.  And, the attached version of the joint stipulation includes footnote explanation that Liberty will be seeking approval from the court to file an un-redacted version under seal.  This will allow us to stay on track with regards to teeing up the privilege issue in advance of the November 20 mediation.

Please call if you would like to discuss.

Thanks,

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938, Ext. 104 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

---

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Thursday, October 31, 2013 9:35 AM
**To:** Paul Hirst; Miriam Gregory
**Cc:** John McLeod; Richard A. Pretti
**Subject:** RE: Ironwood v. Liberty 381.006 Second Exchange

Exhibit _____30_____
Page _____2_____

Paul, thanks.  In light of the issues regarding the seal, we will not be able to file the Joint Stipulation today.  We will keep you posted.

Jeff

**From:** Paul Hirst [mailto:pchirst@mcleodlawgroup.com]
**Sent:** Wednesday, October 30, 2013 6:37 PM
**To:** Miriam Gregory
**Cc:** John McLeod; Jeffrey S. Whittington; Richard A. Pretti
**Subject:** RE: Ironwood v. Liberty 381.006 Second Exchange
**Importance:** High

Miriam,

Thank you  - attached is our second exchange.  Since our second version is not in your merged format, let's touch base first thing tomorrow morning so we can discuss how best to finalize the documents prior to filing.  I will be in the office by 9:00 a.m.  Please call me to discuss.

In the meantime, you indicate that you folks will be filing the materials under seal tomorrow.  Do you mean the entire joint stipulation, or just the privileged materials?  Also, don't we need prior approval from the court to file documents under seal?

Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
(619) 236-9938, Ext. 104 (telephone)
(619) 236-9943 (facsimile)
www.mcleodlawgroup.com

**From:** Miriam Gregory [mailto:mgregory@kbrlaw.com]
**Sent:** Wednesday, October 30, 2013 6:02 PM
**To:** Paul Hirst
**Cc:** John McLeod; Jeffrey S. Whittington; Richard A. Pretti
**Subject:** Ironwood v. Liberty 381.006 Second Exchange

Hi Paul,

As agreed, here is our second exchange. Enclosed, you will find drafts of: (1) Merged Joint Stipulation; (2) Merged Proposed Orders; and (3) Merged Notice of Hearing

As you can see in the merged Joint Stipulation, I have included Liberty's portions into the version that Ironwood submitted on Monday. I changed a few things around to make the brief read more clearly.  Please note that there is a three-page limit to the introduction. Also, please note that I added the section on proposed methods of resolution pursuant to LR 37-2.1.

We have yet to receive your second exchange. As we will be filing the materials tomorrow, please have your comments to us no later than 10:00 a.m. so that we can timely file the materials with the court. As we are filing the materials under seal, we will have to file the materials traditionally, as opposed to electronically.

Thank you,
Miriam

3

Exhibit ___30___
Page ____3____

Miriam Gregory  I  **KAUFMAN BORGEEST & RYAN LLP**
23975 Park Sorrento, Suite 370  I  Calabasas, CA 91302
direct: 818.961.8028  I  fax: 818.880.0993
vcard  I  email  I  website

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message (including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit ___30___
Page ___4___

# EXHIBIT 31



KAUFMAN BORGEEST & RYAN LLP

23975 PARK SORRENTO, CALABASAS, CA 91302
TEL: 818.880.0992   FAX: 818.880.0993   WWW.KBRLAW.COM

November 11, 2013

JEFFREY S. WHITTINGTON
DIRECT: 818.961.8006
JWHITTINGTON@KBRLAW.COM

<u>VIA EMAIL ONLY</u>

John J. McLeod, Esq.
Paul C. Hirst, Esq.
McLeod Law Group, APC
701 B Street, Suite 1570
San Diego, California 92101

| Re: | Insured | : | Ironwood Country Club ("Ironwood") |
| | Policy No. | : | DOCH216747-211 |
| | Claimant | : | William S. Cobb, Jr., et al. |
| | KBR No. | : | 381.006 |

Dear Counsel:

Please allow this to serve as Liberty Insurance Underwriter, Inc.'s ("Liberty") attempt to meet and confer regarding the recent issues raised by your office concerning the filing of the Joint Stipulation and use of the Pre-tender Invoices for the Joint Stipulation and mediation scheduled for November 20, 2013.[1]

At the outset, we direct your attention to the recent email exchange between counsel and, in particular, Mr. McLeod's statement in his October 30, 2013, email (sent 6:09 PM EST):

> I think that there are significant downside risks associated with your client's planned public disclosure of the insured's privileged information. I don't expect you to agree with me; but, I do think it is my duty to caution you (and through you, Liberty) that it is assuming (in our view and the view of Ironwood) significant liability if it [Liberty] intentionally discloses in a public filing Ironwood's privileged information, which was at the very least provided to Liberty in confidence. Ironwood's concerns (and Liberty's associated liability) is made all the more significant given that the underlying third party liability case is still pending. Thus, by publicly disclosing the insured's privileged information that was provided to Liberty in confidence by the insured in a manner which makes that information publicly available to the Cobb plaintiffs,

---

[1] The Pre-tender Invoices include the June 30, 2011, September 6, 2011, October 13, 2011, December 8, 2011, March 5, 2012, April 3, 2012, and May 1, 2012, invoices of the law firm of Green Bryant & French.

Exhibit ___31___
Page ___1___

> Liberty is subjecting its insured to substantial potential prejudice. Again, so there is no doubt, Ironwood objects to the disclosure of the invoices in a public filing, will not file a motion which includes such privileged information and hereby reserves all of its rights as against Liberty and its counsel arising out of Liberty's planned public disclosure of Ironwood's privileged and confidential information.

As a practical matter, and as we have discussed at length, we believe that the entries contained in the Pre-tender Invoices are absolutely necessary for the Magistrate Judge to analyze the arguments advanced by Liberty in the draft Joint Stipulation.[2]  At a minimum, the entries are critical to Liberty's argument concerning Ironwood's waiver of the attorney-client privilege with regard to the Memo referenced within the Pre-tender Invoices.  Moreover, it will prevent Liberty (and really, Ironwood as well) from obtaining a full and fair assessment of the attorney-client privilege issue as to these documents, this will, in turn, prevent a full and fair assessment of the coverage issues at the upcoming mediation.  Therefore, and as we previously advised, Liberty would be unable to move forward with the Joint Stipulation unless the Pre-tender Invoices were included for consideration.

With the foregoing in mind, you had proposed that Liberty either file its portion of the Joint Stipulation under seal, or file the quoted portions of the Pre-tender Invoices under seal.  Since your office had agreed to file the Joint Stipulation, we advised that we did not object to your filing it under seal.  On behalf of Ironwood, however, you refused to take any part whatsoever in filing the Joint Stipulation under seal or in filing anything with the court that contains what you contend to be Ironwood's privileged and confidential information (notwithstanding that such issue has not yet been adjudicated and, indeed, would have been the *exact* subject matter of the Joint Stipulation).

Instead, you stated that Liberty had "two choices:" either that your office would file the Joint Stipulation but redact all verbatim references that you believe were improperly included; or, this office file the Joint Stipulation with Liberty "assum[ing] all responsibility for protecting the privileged and confidential information of [Ironwood], as well as all responsibility that flows from the (again, in our view) wrongful publication of privileged and confidential information."  On behalf of Liberty, we first inquired as to whether it was your expectation that the Pre-tender Invoices would not be part of the Joint Stipulation?  As set forth above, we indicated that Liberty does not believe there is any way for the Magistrate Judge to realistically make a ruling without the specific documents about which he is ruling.  We also noted that there is no court order in place preventing Liberty from disclosing the Pre-tender Invoices.[3]  Finally, we indicated that, since it is Ironwood that wants to prevent "further" disclosure of the Pre-tender Invoices, it only seems fair that your office would facilitate that on behalf of Ironwood.

While Liberty continues to believe that Ironwood has the responsibility to file any such motion, your emails raise a critical issue that filing a motion to seal does not address.

As indicated, while we do not agree with Ironwood's arguments regarding privilege, we must take seriously the points you raise in the quoted material above regarding the potential of additional liability to our client, Liberty, specifically, any actions may impact upon the underlying

---

[2]  Also, to the extent, Ironwood objects to the use of the Pre-tender Invoices in the mediation, this also will impact Liberty's ability to advance its position in that proceeding.  Please note that Liberty still intends to attend the mediation, but will refrain from sharing the Pre-tender Invoices with the mediator.

[3]  Ironwood has never sought such relief despite the significant passage of time for them to do so.

KAUFMAN BORGEEST & RYAN LLP

Cobb v. Ironwood litigation and/or Ironwood's potential exposure in that proceeding. In this regard, many of the factual issues and/or findings that will or may be involved in the coverage action (Ironwood v. Liberty) will also be at issue in the Cobb v. Ironwood litigation. Accordingly, Liberty believes that a stay of the Ironwood v. Liberty coverage action is necessary so as to avoid any impact of this proceeding as to the Ironwood's potential exposure in the Cobb lawsuit. In this regard, please accept this as our attempt to meet and confer, as required by Local Rule 7-3, prior to filing such motion.

A motion to stay the coverage litigation is necessary based on the fact that its attendant discovery proceedings turn on facts that will be litigated in the underlying Cobb v. Ironwood litigation. As such, in order to "eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate..." *Northland Ins. Co. v. Briones,* (2000) 81 Cal.App.4th 796, 803–04. More pointedly, maintaining the instant coverage action will inevitably implicate each of the concerns that favor a stay being entered in the present coverage suit:

> *First,* the insurer, who is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit; *second,* such a circumstance requires the insured to fight a two front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions this effectively undercuts one of the primary reasons for purchasing liability insurance; and *third,* there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by the results in the former.

*David Kleis, Inc. v. Superior Ct.,* (1995) 37 Cal.App.4th 1035, 1044–45.

Here, we note that the Plaintiffs in the Cobb v. Ironwood litigation will seek to establish their claim(s) that Ironwood is in breach of the Statement of Information/Loan Agreement, and will therefore seek discovery on the facts and circumstances behind Ironwood's decision not to pay assessments to forfeiting members. To that end, Plaintiffs in the Cobb v. Ironwood litigation will necessarily seek discovery regarding the timing and substance of discussions, correspondence, etc., that Ironwood held concerning such decision.

Likewise, the foregoing circumstances are and will remain a focal point in the coverage action, inasmuch as Liberty will necessarily pursue a similar line of inquiry in discovery. Liberty will seek to establish the facts and circumstances surrounding such decision, as well as obtain any and all communications between Ironwood, its members, and the underlying plaintiffs in this regard. Of course, Liberty will also explore whether Ironwood was aware of or had knowledge or information as to any act, error, omission, fact, or circumstances that may give rise to a Claim.

Thus, any sort of meaningful discovery in the Ironwood v. Liberty coverage litigation may prejudicially affect Ironwood's defense efforts in the Cobb v. Ironwood litigation, which compels Liberty to seek a stay of the coverage litigation until such time that the underlying litigation has concluded.

KAUFMAN BORGEEST & RYAN LLP

2385034

Exhibit ___31___
Page ___3___

Please advise as to whether you intend to join in our motion to stay the coverage litigation, or if you would like to continue this meet and confer effort.  Based upon the foregoing, however, please be advised that Liberty cannot and will not proceed with the Joint Stipulation at this time. Thank you for your attention to this matter.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

Jeffrey S. Whittington

2385034

Exhibit ___31___
Page ___4___

# EXHIBIT 32

**Paul Hirst**

| | |
|---|---|
| **From:** | John McLeod |
| **Sent:** | Wednesday, November 13, 2013 11:07 AM |
| **To:** | Jeffrey S. Whittington |
| **Cc:** | Richard A. Pretti; Miriam Gregory; Paul Hirst |
| **Subject:** | RE: Ironwood Country Club v. Liberty Ins. |

Jeff:

The following is intended to respond to your letter of November 11, which was e-mailed to our office after hours on the 11th.

First, this will confirm that Liberty has refused to go forward with the joint stipulation re discovery dispute. As you know, as part of that motion, Ironwood was moving for a protective order, barring Liberty from using the pre-tender invoices and precluding Liberty from obtaining copies of the Memorandum. That issue remains in dispute. Ironwood intends to go forward with the motion. Additionally, as you know, this approach was agreed to by the parties and we both represented to the Court that the parties would proceed in this fashion. Moreover, the entire Scheduling Order was based around the parties moving for such relief and having these issues determined up front. Liberty's refusal to proceed with the joint stipulation (unless Ironwood agrees to file the motion with verbatim excerpts of the very materials Ironwood seeks to be deemed privileged or, alternatively, unless Ironwood assumes responsibility for filing such privileged materials under seal, even though Ironwood is not relying on any such excerpts) is not well taken.

Second, Liberty has now suggested for the first time that this case should be stayed. In doing so, Liberty has both grossly misapprehended the scope of the evidence on which Liberty is allowed to rely to support its refusal to defend Ironwood in the underlying Cobb action and the underlying bases for Liberty's threatened stay motion. The following shall constitute Ironwood's good faith attempt to meet and confer with Liberty concerning the issues it has raised for the first time in your letter of November 11. Ironwood invites Liberty's response to the issues raised herein, so that Ironwood can more fully assess Liberty's concerns and to work with Liberty to find a possible informal resolution of the same.

As to the permissible scope of discovery in this case, Liberty argues that it is entitled to discovery of additional documents or to obtain testimony to support its coverage defenses in this case. (It is this prospect of future discovery that underlies Liberty's entire stay proposition.) Liberty is wrong; Liberty is not entitled to such discovery. As a matter of law, the only relevant matters that are considered in determining whether Liberty owes a defense are: (1) the terms of the policy; (2) the allegations of the third party's complaint against the Ironwood; and (3) the extrinsic facts known to Liberty from any source. *Montrose Chem. Corp. of Calif. v. Superior Court* (1993) 6 Cal.4th 287, 295-296. Furthermore, and more to the point, determining the existence of a duty to defend turns upon the facts known by the insurer <u>at the time of the inception of a third party lawsuit</u>. *Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963, 974. Liberty, therefore, cannot use subsequently discovered facts to justify by hindsight its earlier refusal to defend. See, e.g., *Mullen v. Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163, 173-174; *Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.* (1998) 68 Cal.App.4th 1030, 1044. And subsequently discovered facts do not retrospectively apply to justify Liberty's earlier refusal to defend. *Wausau Underwriters, supra,* 68 Cal.App.4th at 1047. Consequently, in determining Liberty's duty to defend Ironwood in the underlying Cobb action, the only potentially relevant information, documents and/or materials are those on which Liberty relied at the time it withdrew coverage and refused to defend Ironwood. Thus, the discovery that Liberty purportedly seeks to take (to the extent described in your November 11 letter) is far beyond that permitted under the law. Or, to put this another way, the discovery Liberty seeks is not reasonably calculated to lead to the discovery of admissible evidence, because the only evidence that is admissible in this duty to defend case is the information/documentation that Liberty had in its possession at the time that it denied coverage and withdrew from Ironwood's defense. As such, Liberty's claim that this case should be stayed is based entirely on a false premise, which is that Liberty can obtain discovery regarding the matters described in your November 11 letter.

1

Exhibit ___32___
Page ___1___

Additionally, regarding Liberty's proposed motion to stay the instant coverage case until the conclusion of the pending *Cobb* matter, Liberty has misapprehended the bases for such a motion. Preliminarily, Ironwood is not aware of any California authority, which permits an insurer to stay an insured's coverage case. Neither of the two cases cited by Liberty stand for this proposition. As such, please provide the legal authority on which Liberty relies to support its implicit contention that an insurer can obtain a stay of the insured's coverage case.

Second, in this case, Liberty is not providing (and has never provided) a defense to Ironwood in the *Cobb* action. As such, a stay would have the highly prejudicial effect of compelling the insured, Ironwood, to defend the *Cobb* action through trial, using only its own resources. That would contradict the entire purpose of the duty to defend under an insurance policy. As held by the California Supreme Court:

"The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of insureds' expectations on this score."

*Montrose Chem. Corp. of Calif. v. Superior Court* (1993) 6 Cal.4[th] 287, 295-296.

Your letter of November 11 fails to address this issue of central importance to Liberty's insured, Ironwood. After all, the fact that Ironwood filed this action now, rather than waiting until conclusion of the Cobb Action, evidences the concern that Ironwood has with the prospect of having to try to mount and fund its own defense without the assistance of the superior resources of Liberty. **Given that fact, Ironwood requires some clarification from Liberty. As part of the proposed stay of the instant coverage case, is Liberty offering to fund the defense of its insured, Ironwood, in the** ***Cobb*** **Action? Please advise immediately if Liberty is willing to do so, as that would obviously impact some of the very issues and concerns being raised here.**

Ironwood is not aware of any legal authority (and Liberty has not cited any) that stands for the proposition that a motion to stay can be used to compel an insured, like Ironwood, to face and defend the third party claim on its own and without resort to insurance resources for which Ironwood paid a substantial premium. Indeed, California courts have seemingly held the very opposite:

"In a case where there is no potential conflict between the coverage issues and the issues in the third party action, the carrier may obtain an early trial date in the coverage action and, if it wins, that is the end of its duty to defend. Where that cannot be done, however, the carrier gets to keep paying and paying and paying."

*Montrose Chemical Corp. of Calif., supra*, 25 Cal.App.4[th] at 910.

Here, as set forth in your November 11 letter, Liberty contends that there is a conflict between the coverage issues in this case and the issues in the Cobb Action. The problem here of course is that Liberty is not paying for Ironwood's defense. Liberty acknowledged its duty to pay. Liberty subsequently agreed to pay for Ironwood's defense counsel. But, then it refused to do so and subsequently withdrew its agreement to defend Ironwood. Thus, for the entirety of the Cobb Action, Ironwood has had to pay for its entire defense. By doing so, Liberty has created the problem in which it finds itself. It cannot justify (much less carry its burden of proof) on its coverage defenses without discovery in this case; but, Liberty says in your November 11 letter that it cannot obtain that discovery without subjecting Ironwood to potentially significant prejudice in the Cobb Action. It is, therefore, with no degree of irony that Liberty now suggests that the coverage case be stayed (to the sole prejudice of its insured, Ironwood), because Liberty cannot now prove its coverage arguments. Unfortunately for Liberty, that is not the law. At best, Liberty's arguments (if established) would only support a stay of the litigation (and any permissible discovery) as to only Liberty's coverage arguments, but not a stay of Ironwood's claims for a defense and for damages arising out of Liberty's failure to afford Ironwood an immediate and entire defense in the Cobb Action, including *Brandt* fees and punitive damages.

Exhibit _32_
Page _2_

Directly on point to this very issue is *Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4[th] 963. The *Haskel* court summarized the issue before it as follows:

"This case raises the question of just how that rule [requiring an insurer provide an immediate defense upon tender] impacts upon the right of an insurer, who has denied any defense obligation, to conduct discovery on an insured's motion for summary adjudication of the defense issue. A corollary problem is whether, and under what circumstances, an insured can obtain a stay of such discovery pending resolution of the underlying third party action. ...

We conclude that Haskel was entitled to have its summary adjudication motion considered and, if (1) a showing of a potential for coverage under the several policies is made, and (2) the insurers do not produce undisputed evidence which conclusively eliminates any possibility of coverage, the motion should be granted. We also conclude that Haskel is entitled to a stay of prejudicial discovery."

*Haskel, Inc.*, *supra*, 33 Cal.App.4[th] at 968.

In this case, of course, Liberty has already acknowledged that the claims asserted against Ironwood in the Cobb Action are potentially covered. Liberty's sole basis for withdrawing from the defense is a coverage argument that Liberty now acknowledges it cannot prove without conducting discovery (to which it is not entitled). Thus, by suggesting that this case needs to be stayed, Liberty has effectively admitted that it has no evidence (or at least the undisputed evidence that conclusively eliminates any possibility of coverage) to support its current coverage position and, thus, no evidence to support its abandonment of Ironwood's defense in this case. That, of course, is *per se* bad faith. In any event, it is now clear that Liberty must defend Ironwood in the Cobb Action, that it must do so immediately and entirely and, because of its wrongful refusal to defend Ironwood up to this point in time, Liberty must pay defense counsel at his entire hourly rate (and not at the partial rate previously agreed to by Liberty before it abandoned the insured's defense). Indeed, by wrongfully failing to fund any portion of Ironwood's defense and wrongfully and unreasonably abandoning the defense of Ironwood in the Cobb Action, Liberty is precluded from relying on section 2860 and the hourly rate limitations set forth therein. *Intergulf Develop. v. Superior Court* (2010) 183 Cal.App.4th 16; *Janopaul + Block Cos., LLC v. Superior Court* (2011) 200 Cal.App.4th 1239. Thus, Liberty is obligated to fund the entirety of Ironwood's defense of the Cobb Action and is liable for, among other things, the fees and costs incurred by Ironwood in this case in order to obtain coverage that was unreasonably withheld (i.e., *Brandt* fees).

Indeed, in suggesting that it needs discovery in order to defeat Ironwood's claim for a defense, Liberty places itself in exactly the same position as the carriers in *Haskel*, which in turn makes the following observation by the *Haskel* court particularly apt here:

"The insurers were either aware of such [*undisputed* extrinsic evidence which *conclusively* establishes that there is no potential for coverage] or they were not; they did not need discovery from Haskel to determine the existence of that evidence. The insurers, if they wanted to defeat Haskel's summary adjudication motion, should have set forth such conclusive evidence in a proper opposition to the motion. If, on the other hand, they did not have such conclusive evidence, then they could not successfully oppose Haskel's claim for an immediate judicial recognition of the fact that a defense obligation *then* existed."

*Haskel, Inc.*, *supra*, 33 Cal.App.4[th] at 977 (emphasis in original).

Here, Liberty is either aware of evidence to support its denial or it is not. And, if it does not have that evidence now (without additional discovery), then Liberty acted wrongfully in refusing to defend Ironwood and in abandoning Ironwood's defense in the Cobb Action. And, importantly to all of the issues raised in your November 11 letter, Liberty cannot seek discovery to try to justify, after-the-fact its denial of coverage and abandonment of Ironwood.

On this point, it is with no small degree of irony that Liberty decides to rely on the *Briones* case to support its claim for a stay. First, the *Briones* court never directly addressed whether or not to impose a stay. Instead, it notes that the trial court refused to stay the declaratory relief action, but did stay all discovery as to the named insured. *Northland Ins. Co.*

3

Exhibit 32
Page 7

*v. Briones* (2000) 81 Cal.App.4[th] 796, 803. Given that fact, the insurer filed a summary judgment motion, seeking a coverage determination based solely on the terms of the policy and the allegations in the third party complaint. *Id.* Thus, if *Briones* stands for anything, it is that Ironwood is free to obtain the judgment it seeks, which is based primarily on the allegations against Ironwood in the Cobb Action and the terms of the Liberty policy.

In summary, Liberty is not entitled to the very discovery that it contends threatens Ironwood's ability to defend itself in the Cobb Action. As to the proposed stay motion, Liberty has no right or standing to seek a stay of the coverage case. Moreover, Liberty's supposed need for additional discovery pertains to issues that are wholly irrelevant to Ironwood's claims for a defense of the Cobb Action and the cases clearly establish that Ironwood is entitled to seek a determination of that defense duty up-front. And, all of Ironwood's sought-for damages flow from Liberty's bad faith refusal to and/or abandonment of Ironwood's defense, including Ironwood's claims for *Brandt* fees and for punitive damages. Thus, none of the issues raised by Liberty support a stay of the claims asserted by Ironwood. At best (and without acknowledging one way or the other whether they do), Liberty's concerns would seem to compel a stay of this coverage litigation as to only Liberty's coverage arguments and that such stay should remain in place until after the conclusion of the Cobb Action. So, perhaps we should discuss, as part of this meet and confer process, a stipulation whereby Ironwood shall continue pursuing all of its claims against Liberty in this case and Liberty's coverage arguments (and discovery relating to them, to the extent such discovery is permissible, if at all) shall be stayed until after conclusion of the Cobb Action. Please let me know your thoughts about that possible alternative, which would seem to address Liberty's concerns and avoid the substantial prejudice that would otherwise be imposed on Ironwood if this case were stayed and it had to fund its own defense through trial of the Cobb Action.

Additionally, as part of this meet and confer process, Ironwood would invite Liberty to provide a more detailed analysis of the issues addressed above and its thoughts concerning the same.

John J. McLeod
McLEOD LAW GROUP, APC
701 B Street, Suite 1570
San Diego, California 92101
619.236.9938, Ext 102 (telephone)
619.236.9943 (facsimile)
www.mcleodlawgroup.com

**From:** Jeffrey S. Whittington [mailto:jwhittington@kbrlaw.com]
**Sent:** Monday, November 11, 2013 6:16 PM
**To:** Paul Hirst; John McLeod
**Cc:** Richard A. Pretti; Miriam Gregory
**Subject:** Ironwood Country Club v. Liberty Ins.

Paul/John,

Attached please find correspondence of today's date regarding our request to meet and confer on a motion to stay the coverage litigation pending the outcome of the underlying Cobb v. Ironwood litigation.

Best regards,

Jeffrey S. Whittington   |   **KAUFMAN BORGEEST & RYAN LLP**
23975 Park Sorrento, Suite 370   |   Calabasas, CA 91302
direct: 818.961.8006   |   fax: 818.880.0993
vcard   |   email   |   website

This electronic message contains information that may be privileged, confidential or otherwise protected from disclosure. The information contained herein is intended for the addressee only. If you are not the addressee, any disclosure, copying, distribution or use of the contents of this message

Exhibit ___32___
Page ___4___

(including any attachments) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

Exhibit ___32___
Page ___5___

# EXHIBIT 33



**KAUFMAN BORGEEST & RYAN LLP**

23975 PARK SORRENTO, CALABASAS, CA 91302
TEL: 818.880.0992   FAX: 818.880.0993   WWW.KBRLAW.COM

November 19, 2013

JEFFREY S. WHITTINGTON
DIRECT: 818.961.8006
JWHITTINGTON@KBRLAW.COM

<u>VIA EMAIL ONLY</u>

John J. McLeod, Esq.
Paul Hirst, Esq.
McLeod Law Group, APC
701 B Street, Suite 1570
San Diego, California 92101

Re:   Ironwood Country Club v. Liberty Insurance Underwriters, Inc.
         U.S.D.C. Central District Case No: 13-00996-VAP (DTBx)
         KBR No.      :      381.006

Gentlemen:

As you know, we represent Liberty Insurance Underwriters, Inc. ("Liberty"), in this matter. Thank you for your email of November 13, 2013, responding to our letter of November 11, 2013, wherein we requested a "meet and confer" regarding Liberty's intent to move for a stay of the coverage litigation.

At the outset, we note that your response mischaracterizes or misapprehends several important aspects of Liberty's position with respect to its coverage position and defenses, as well as with respect to the Joint Stipulation, and Liberty's well-founded basis for a motion to stay the coverage litigation.  In addition, we disagree with your unsupported position that an insurer is somehow not permitted to seek a stay of a coverage action.  Furthermore, a significant portion of your email re-asserts your arguments concerning Ironwood's central claim in the litigation, i.e., whether Liberty has a duty to defend Ironwood in the Cobb litigation.  While your responsive email studiously avoids consideration of Liberty's available and highly relevant coverage defenses, we see no need to address such arguments given that the purpose of this "meet and confer" effort is to discuss the legitimate bases for a stay of the coverage litigation in light of the significant overlap of facts as acknowledged in your several emails of October 30, 2013.  Liberty will, however, respond to the responsive portions of your email in a further effort to meet and confer.

Preliminarily, and with respect to the Joint Stipulation, while it is no doubt convenient to simply say that "Liberty has refused to go forward with the Joint Stipulation," in truth, it was Ironwood's preemptive conduct – refusing to include the Pre-tender Invoices – that wholly altered the underlying bases for the Joint Stipulation.  Such conduct effectively precluded the ability to use the Joint Stipulation – as it was conceived – as a tool to resolve the key issue of whether the Pre-tender Invoices (and Memo referenced therein) are protected by the attorney-client privilege.  Indeed, the court cannot reasonably be expected to rule on whether privilege has

NEW YORK CITY          WESTCHESTER          LONG ISLAND          NEW JERSEY          LOS ANGELES

Exhibit ___33___
Page ___1___

attached to a particular document, e.g., the Memo, without *seeing* the document. Ironwood's *desire* that the court not review the key piece of information needed to make a ruling is certainly understandable from Ironwood's tactical perspective. But there can be no doubt that it prevents the court from getting a full picture of the privilege issue and how it pertains to the Pre-tender Invoices and the Memo. We understand that Ironwood does not wish the court to see it even just to rule on it. But, quite frankly, if that was your position, it should have been disclosed at the outset. Conversely, it was Liberty's very understandable expectation that the court would actually see the document(s) about which it was ruling.

In any event, Liberty disagrees with moving forward with the Joint Stipulation in the manner that you have unilaterally prescribed given that it will necessarily preclude Liberty's arguments concerning the attorney-client privilege of the Pre-tender Invoices and Memo. It remains Liberty's position that the Pre-tender Invoices are not privileged, nor were they, for instance, "accidentally" provided by your firm to our firm. On the contrary, Ironwood intentionally provided them to its broker, and the broker then provided them directly to Liberty for payment.[1]

Ultimately, however, when your refusal to include the Pre-tender Invoices was finally raised and discussed, the significant factual overlap between the Cobb litigation and the coverage litigation was dramatically brought into view by your overt warnings that Liberty must tread carefully in the prosecution of its defense(s) in the coverage litigation. Indeed, your warnings regarding the serious repercussions and consequences to Ironwood (and therefore to Liberty) if Liberty were to disclose the content of the Pre-tender Invoices were quite clear. Such warnings, in conjunction with your unwillingness to file the Joint Stipulation under seal (or even join in such action) underscores Ironwood's unwillingness to allow a full-blown discussion of this issue with the court. Therefore, and based on the foregoing, Liberty cannot proceed with the Joint Stipulation given that, at a minimum, there was not an agreement as to its subject matter. Whether some other Joint Stipulation can be submitted is the subject of another meet and confer.

Regarding Liberty's intended motion for a stay of the coverage litigation, you make several references to the fact that Liberty has now "for the first time" advised Ironwood of its intent. However, there is no restriction on when a party must move for a stay in a litigation; plus, we raised the issue – necessarily – in response to your warnings as set forth above. Additionally, the ability to seek and/or obtain a stay is not a right for just the insured in a coverage action, nor is there any limitation to seek a stay when the policy in question (in the coverage action) is duty to defend. We note that you have not cited any case law to support your proposition that insurer's are not allowed to seek or obtain a stay and/or should be prevented from doing so when the policy is duty to defend.

As for your suggestion that an insurer is somehow not permitted to move for a stay, that is patently false. The power to issue a \stay derives from a federal district court's power to control its docket and ensure that cases before it are justly determined. *Levya v. Certified Grocers of Cal., Ltd.* (9th Cir. 1979) 593 F.2d 857, 864–65, *cert. denied,* (1979) 444 U.S. 827. Indeed, "a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings

---

[1] Indeed, the email to Liberty from Ironwood's broker identifies the request for payment as being for the "bills and payments made so far to Bryan Gerstel on the Ironwood claim." The invoices, as we all know, pre-dated the Application for the Liberty policy.

which bear upon the case." *Id.* at 863–64. "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* A federal district court has broad discretion in deciding whether to issue a stay. *Fed. Sav. & Loan Ins. Corp. v. Molinaro* (9th Cir.1989) 889 F.2d 899, 902.

Ironwood also suggests that, somehow, a stay of the coverage litigation would prejudice Ironwood. This is so, you suggest, because it would require Ironwood to defend itself in the Cobb litigation. This is nonsensical. As you are of course aware, Ironwood is already defending itself in the Cobb litigation; a stay would not change that. While you obviously disagree as to the merits of Liberty's coverage position and defenses, they nonetheless exist as a matter of fact. But more importantly, Liberty is entitled to defend its coverage position and prosecute its coverage defenses. That will necessarily include going well beyond the simple "policy and pleadings" scope of discovery to which you claim Liberty is limited. In this regard, your reliance on *Montrose*[2] is misplaced as this is not simply a "duty to defend" case as you suggest. On the contrary, it is a misrepresentation/rescission/reformation case, and Liberty is entitled to the full range of discovery permissible under the FRCP and FRE to prove that Ironwood made material misrepresentations to Liberty in its Application for the Policy.

Upon considering the points raised by you in the recent exchange of communications, it is beyond clear that the facts needed by Liberty in support of its coverage defenses are very similar – if not identical – to those that plaintiff will investigate and seek discovery upon in the Cobb litigation. In this regard, Liberty has several defenses in this matter, which include, but are not limited to Section 6.2 of the Policy, which provides:

> The Insureds agree that if the Application contains any statements or representations that are untrue, this Policy shall be void as to the Insured Organization and any Insured Person who knew the facts that were not truthfully disclosed, provided that such knowledge shall not be imputed to any other Insured Person;

Regarding Ironwood's false representation to Liberty on Question 14 of the Application, the text below provides that:

> IT IS UNDERSTOOD AND AGREED THAT IF ANYONE FOR WHOM THIS INSURANCE IS SOUGHT HAS ANY KNOWLEDGE OF ANY SUCH ACT, ERROR, OMISSION, FACT OR CIRCUMSTANCE, ANY CLAIM EMANATING THEREFROM SHALL BE EXCLUDED FROM COVERAGE UNDER THE PROPOSED INSURANCE.

Liberty is entitled to all relevant discovery to support its position with regard to these defenses and is not operating on a false premise in this regard.

Furthermore, in the event the Policy is rescinded, voided, or reformed (to add an endorsement excluding coverage for claims that arise from the business decision to no repay the loans),

---

[2] *Montrose Chem. Corp. of Calif. v. Sup. Ct.* (1993) 6 Cal.4th 287.

Liberty cannot be found to have breached any defense duty as the duty would have not have existed in the first place.

The very information that goes to the heart of Liberty's coverage defenses will also be at issue with regard to Ironwood's potential liability in the underlying matter.   It is reasonable to expect that once discovery moves forward in the underlying litigation, Cobb will submit interrogatories, document requests and/or deposition notices of Ironwood Board members inquiring into Ironwood's decision not to pay back the loans. At the same time, discovery in the coverage action will focus on these very issues.  Therefore, in the course of proving its case that Ironwood misrepresented itself to Liberty (e.g., by proving Ironwood's "prior knowledge"), and as you have already indicated you intend to do, Liberty will be accused of aiding Cobb's case against Ironwood, and that Liberty has prejudiced Ironwood's position in the underlying litigation.  In other words, the scope of information sought and obtained by Liberty regarding how, when, why, where and who made the decision will be identical to the scope of information that Cobb will be seeking in his litigation against Ironwood.

Ultimately, your reliance on *Montrose* does not support your position regarding a stay of the coverage litigation; indeed, it is the exact opposite:

> To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action. See, e.g., *California Ins. Guarantee Assn. v. Sup. Court* (1991) 231 Cal.App.3d 1617, 1627-1628; *General of America Ins. Co. v. Lilly* (1968) 258 Cal.App.2d 465, 471. For example, when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious. This is the classic situation in which the declaratory relief action should be stayed.

As *Montrose* demonstrates, the critical issue is *not* who initiated the coverage action, or who is seeking the stay, or if the policy is duty to defend; instead the critical issue is the potential prejudice that can occur if two actions involving overlapping facts are allowed to proceed concurrently.

Given that the mediation is scheduled for tomorrow, November 20, we believe it makes sense to meet and confer either in person at the mediation or telephonically afterwards in accordance with Local Rule 7-3.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

*Jeff Whittington*

Jeffrey S. Whittington

KAUFMAN BORGEEST & RYAN LLP