Jeffrey S. Whittington, Esq./SBN 236028
Email: jwhittington@KBRlaw.com
Miriam M. Gregory, Esq./SBN 281083
KAUFMAN BORGEEST & RYAN LLP
23975 Park Sorrento, Suite 370
Calabasas, CA 91302
Telephone: (818) 880-0992
Facsimile: (818) 880-0993

Attorneys for Defendant,
Liberty Insurance Underwriters, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

IRONWOOD COUNTRY CLUB,

        Plaintiffs,

   vs.

LIBERTY INSURANCE
UNDERWRITERS, INC. and DOES 1
through 100,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.13-00996-VAP(DTBx)

**DEFENDANT LIBERTY
INSURANCE UNDERWRITERS,
INC.'S OPPOSITION TO
PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL
SUMMARY JUDGEMENT**

Hearing Date:  February 24, 2014
Hearing Time:  2:00 p.m.
Courtroom:     2

Complaint Filed: May 1, 2013
Trial Date:      August 5, 2014

Filed concurrently with:
1. Statement of Genuine Disputes
   and Statement of Undisputed
   Facts
2. Evidentiary Objections to
   Ironwood's Motion for Partial
   Summary Judgment
3. Declaration of Jeffrey S.
   Whittington;
4. Declaration of Seon Choi
5. [Proposed] Order

DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT

2449992

1  **TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS**

2  **OF RECORD:** PLEASE TAKE NOTICE that Defendant, LIBERTY

3  INSURANCE UNDERWRITERS, INC. ("Liberty"), hereby opposes Plaintiff,

4  IRONWOOD COUNTRY CLUB'S ("Ironwood") Motion for Partial Summary

5  Judgment ("Motion").

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION                                                                     1

II.   STATEMENT OF FACTS                                                    2

III.  LEGAL ARGUMENTS                                                        7

    A.   STANDARD FOR (PARTIAL) SUMMARY JUDGEMENT      7

    B.   IRONWOOD IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT GIVEN LIBERTY'S AFFIRMATIVE DEFENSE OF RESCISSION                                                                     9

        1.   THE MOTION SHOULD BE DENIED AS THERE EXISTS A MATERIAL FACTUAL DISPUTE AS TO WHICH APPLICATION IS APPLICABLE                           13

        2.   LIBERTY IS ENTITLED TO DISCOVERY                       14

    C.   THE PRE-TENDER INVOICES ARE NOT SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE                                      15

        1.   The Attorney-Client Privileged Does Not Apply to Ironwood's Pre-Tender Invoices                                    15

        2.   Ironwood's Disclosure of the Invoices Was Not "Inadvertent" and Ironwood Has Waived the Attorney Client Privilege                                                             17

1        D.      LIBERTY'S DENIAL OF COVERAGE WAS PROPER AND

2                LIBERTY HAS NO DUTY TO DEFEND IRONWOOD       21

3 IV.    CONCLUSION                                            25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). ....................................7

*Advanced Micro Devices v. Great Amer. Surplus Lines Ins. Co.* (1988) 199
  Cal.App.3d 791 ..........................................................................................23

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)...............................8

*Atmel Corp. v. St. Paul* (N.D. Cal. 2006) 416 F.Supp.2d 802............................9

*Baxter Travenol Laboratories, Inc. v. Abbott Laboratories,* (N.D.Ill.1987) 117
  F.R.D. 119, 121 .........................................................................................20

*California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998) ..............................7

*Celotex Corp. v. Catrett*, (1986) 477 U.S. 317, 323 (1986) ..............................8

*Central Die Casting & Mfg. Co., Inc. v. Tokheim Corp.,* (N.D.Ill.1994) 1994
  WL 444796...................................................................................................20

*Clarke v. Am. Commerce Nat. Bank* (9th Cir. 1992) 974 F.2d 127...................15

*Endurance American Specialty Ins. Co. v.  WFP Securities Corp.*, (Sept. 28,
  2012) 2012 WL 7808097 ...........................................................................12

*First Nat'l Bank v. Cities Serv. Co.,* (1968) 391 U.S. 253, 289. .......................8

*Fisher v. United States,* (1976) 425 U.S. 391, 403.........................................16

*Flores v. Albertson's, Inc.,* (C.D. Cal. Apr. 9, 2004) 2004 WL 3639290 .........18

*Grey v. Superior Court*, (1976) 62 Cal. App. 3d 698.......................................18

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

1   *Haskel, Inc. v. Superior Court,* (1995) 33 Cal. App.4th 963,............................12

2   *In re Grand Jury Investigation of Ocean Transportation,* (D.C.Cir.1979) 604

3    F.2d 672, 674–675, *cert. denied,* (1979) 444 U.S. 915) ................................20

4   *In re Grand Jury Witness* (9th Cir. 1982) 695 F.2d 359, 362 ..........................16

5   *Lazar v. Mauney*, (N.D. Ga. 2000) 192 F.R.D. 324, 330 .................................20

6   *Local 851 of Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*,

7    (E.D.N.Y. 1998) 36 F. Supp. 2d 127, 133 .......................................................20

8   *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, (S.D.N.Y. 1985) 104

9    F.R.D. 103, 105 ..............................................................................................20

10  *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir., 1998) .........................................9

11  *Matsushita v. Zenith Ratio Corp.,* (1986) 475 U.S. 574, 587.............................8

12  *Montrose Chemical Corp. v. Sup. Ct. (Canadian Universal Ins. Co.)* (1993) 6

13   Cal.4th 287 ........................................................................................................21

14  *National Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496 (9th Cir. 1997) ..11

15  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.* (9th Cir. 2000) 210 F.3d 1099,

16   1102-03...............................................................................................................8

17  *Resure, Inc. v. Superior Court,* (1996) 42 Cal.App.4th 156, 158-159 ..............23

18  *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363 ...........................................15

19  *Roberts v. Superior Court* (1973) 9 Cal.3d 330, 342-343 ................................18

20

---

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

*Rocklin Park Place Condominium Owners Assoc. v. Liberty Ins. U'wtrs, Inc.*,
   (E.D. Cal., Sept. 6, 2013) 2013 WL 4828154 .................................................9

*S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 .........................9

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d
   626, 630 (9th Cir.1987) .................................................................................8

*Tornay v. United States,* (9th Cir. 1988). 840 F.2d 1424, 1426 .......................16

*U.S. ex rel. Bagley v. TRW, Inc.* (C.D. Cal. 2001) 204 F.R.D. 170, 177...........18

*Weil v. Investment/Indicators, Research & Management, Inc.* (9th Cir. 1981)
   647 F.2d 18, 25 ...........................................................................................15

*Wells Fargo Bank v. Superior Court* (2000) 22 Cal. 4th 201, 208 ..................15

*Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co*., (1976) 64 Cal.
   App. 3d 261, 269-70,....................................................................................24

**Statutes**

Cal. Evid.Code § 917(a)                                                                    15

Fed.R.Civ.P. 56(c)                                                                          7

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In opposition to Ironwood's Motion, Liberty submits this Memorandum of Points and Authorities along with the Documents filed concurrently herewith. Essentially, Ironwood demands that this Court grant its Motion based on Ironwood's Complaint and a series of self-serving Declarations submitted as "evidence" in support of its Motion.  Ironwood must rely on these Declarations for its Motion as the only discovery completed to date is the Initial Disclosures; no other discovery has been conducted or completed.[1]

Indeed, several of the so-called "Undisputed Facts" contained in Ironwood's SUF Facts involve purely legal conclusions or hearsay internal conversations between Ironwood personnel and/or its insurance broker.  Furthermore, many of these "Undisputed Facts" actually *support* Liberty's claim that Ironwood was aware of facts or circumstances that may give rise to a Claim when Ironwood submitted the Application.   Since no discovery has taken place (although Liberty absolutely intends to take such discovery), it is simply premature for Ironwood to ask this Court to definitively state as a matter of law that there are no genuine issues of material fact.  Indeed, Ironwood's decision to file its Motion *before*

---

[1] See Declaration of Jeffrey S. Whittington at ¶¶ 3, 5.

1    discovery takes place, and to preventing the court from a full and fair opportunity

2    to actually consider legitimate evidence in this matter is quite remarkable.

3           Furthermore, Ironwood made material misrepresentations in its Application

4    for insurance that Liberty relied upon to its detriment in issuing the Policy (the

5    *prima facie* case for rescission), and is the subject of one of Liberty's affirmative

6    defenses.   Based on the available information, there are key material facts in

7    dispute that necessitates denial of Ironwood's Motion.   Lastly, coverage was

8    properly denied based upon Sections 6.1 and 6.2 and the Application of the Policy

9    as the Pre-Tender Invoices show that Ironwood had knowledge or information of

10   an act, fact, or circumstances that may give rise to a Claim when it had completed

11   its Application for the insurance.

12   **II.     STATEMENT OF FACTS**

13          On or about October 5, 2011, Ironwood submitted to Liberty an Application

14   for Nonprofit Executive Advantage Policy ("the Application").[2]   In reliance upon

15   the truthfulness of the statements made in the Application, Liberty issued Policy

16   DOCH216747-211 to Ironwood ("the Policy"), with such Application being

17   incorporated into the Policy.[3]   The Application expressly permits Liberty to

18   exclude coverage for those claims that emanate from any act, error, omission, fact

19

20

---

[2] See Decl. of Seon Choi ("Choi"), ¶ 3, Exhibit A; Liberty's SUF #2; and Liberty's SGD #2.
[3] See Declarations Page and p. 7, item 23.1 of the Policy attached to Pltf's Decl. of Joshua Tanner ("Tanner") ¶ 7, Ex. 2; Decl. Alan Lux ("Lux") ¶ 9, Ex. 1; Pltf's SUF, No. 3.

---

1    or circumstance of which Ironwood had prior knowledge.[4]   The Policy also

2    provides that should the Application contain any untrue statements or

3    representations, Liberty has the right to void the coverage or rescind the policy.[5]

4        On May 7, 2012, former Ironwood member William S. Cobb ("Cobb") (and

5    underlying plaintiff) issued a demand letter to Robert Manion ("Manion") of

6    Ironwood challenging Ironwood's decision not to repay former/departing members

7    of Ironwood certain $25,500 Land Assessments.[6]   On May 16, 2012, Liberty

8    acknowledged receipt of the May 7, 2012, demand letter, identifying it as a

9    "potential claim" under the Policy.[7]   On August 21, 2012, Cobb and three other

10    former club members filed suit against Ironwood in Riverside County Superior

11    Court-Indio Branch, Case No. INC 1205888 ("Cobb lawsuit").  Pltf's Request for

12    Judicial Notice ("RJN"), Ex. 1.

---

[4] See Ex. A to Choi Decl., p. 2.

[5]  See p. 3, item 6.2 of the Policy at Tanner Decl. ¶ 7, Ex. 2; Lux Decl. ¶ 9, Ex. 1 in Pltf's SUF. No 3.  Section 6 of the Policy, Application Representations and Severability, states:

> 6.1  The Insureds represent that the statements and representations contained in the Application are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insured under this Policy.  This Policy is issued in reliance upon the truth of such statements and representations.
>
> 6.2   The Insureds agree that if the Application contains any statements or representations that are untrue, this Policy shall be void as to the Insured Organization and any Insured Person who knew the facts that were not truthfully disclosed, provided that such knowledge shall not be imputed to any other Insured Person.

[6] See Manion Decl. ¶ 10, Ex. 2; Tanner Decl. ¶ 14, Ex. 4; Pltf's SUF, No 21.

[7] See Tanner Decl. ¶ 15; Lux Decl. ¶ 12, Ex. 2; Pltf's SUF, No 25.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

1    On September 13, 2012,  Lydia Magat of Ironwood forwarded invoices to

2  Lux (Ironwood's insurance broker) for services rendered by Ironwood's counsel,

3  Bryan Gerstel, Esq. ("Gerstel"), of Green Bryant & French LLP, with a message

4  reading, "[P]er Josh [Tanner], for reimbursement."  Tanner, Ironwood's GM/COO

5  was copied on the email.  That same day, Lux sent Liberty an email stating, "[A]s

6  you requested, here are the bills and payments made so far to Bryan Gerstel *on the*

7  *Ironwood claim*." (emphasis supplied).[8]   On September 26, 2012, Lux emailed

8  Liberty asking the claims examiner whether she had reviewed the invoices as Lux

9  wanted to let Tanner know how much of the invoices would be applied toward the

10  Policy's retention. See Tanner Decl. ¶ 20, Ex. 7.

11    By letter dated October 25, 2012, Liberty acknowledged receipt of the Cobb

12  lawsuit and agreed to provide a defense to Ironwood *subject to a reservation of*

13  *rights and pending an investigation and response to its information request* (a fact

14  that Ironwood conveniently and repeatedly neglects to mention).[9]   In particular,

15  Liberty's rights were specifically reserved pursuant to Question 6. [actually

16  question 14], Prior Knowledge, of the Application and Sections 6.1 and 6.2 of the

17  Policy.  Liberty also reserved the right to void the Policy pursuant to Sections 6.1

18  and 6.2 of the Policy, referencing Question 14 of the Application:

19    Does anyone for whom insurance is sought have any

20

---

[8] Tanner Decl. ¶ 17, Ex. 5; Lux Decl. ¶ 18; Pltf's SUF, No 29.
[9] See Tanner Decl. ¶ 27, Ex. 5; Lux Decl. ¶ 21, Ex. 8; Gerstel Decl. ¶ 11; Pltf's SUF, No. 37.

> knowledge or information of any act, error, omission, fact, or circumstances which may give rise to a Claim which may fall within the scope of the proposed insurance?

Liberty confirmed that Ironwood, through its GM/COO Tanner, had responded "No" to Question 14 on the Application.[10]  See Choi Decl., Ex. A, p. 2.  Liberty also confirmed that Ironwood had submitted invoices to Liberty for payment for services rendered by Ironwood's counsel in connection with the Cobb lawsuit.  Specifically, Liberty notified Ironwood that Gerstel's invoice of September 6, 2011, included an entry: "*telecom Tanner re additional information on Insurance and sales of memberships.*" (emphasis supplied).[11]  Furthermore, Liberty advised that Gerstel's invoice of October 13, 2011,[12] contained an entry that demonstrated Ironwood's "prior knowledge" as follows:

> Review and analyze legal issues and facts re: Assessment, Mistake of Fact and Law issues, Estoppel, Class action issues and Liability; Declaratory Relief issues and Liability; *Insurance issues re potential claims and coverage*; Transferability of assessment rights; *Contractual liability for assessment payments by forfeiting members*; *potential for present member claims*;

---

[10] Liberty also specifically reminded Ironwood that the Application provides that:

> IT IS UNDERSTOOD AND AGREED THAT IF ANYONE FOR WHOM THIS INSURANCE IS SOUGHT HAS ANY KNOWLEDGE OF ANY SUCH ACT, ERROR, OMISSION, FACT OR CIRCUMSTANCE, ANY CLAIM EMANATING THEREFROM SHALL BE EXCLUDED FROM COVERAGE UNDER THE PROPOSED INSURANCE.

[11] See Tanner Decl., ¶ 27, Ex. 5, p.6; Lux Decl., ¶ 21, Ex. 8, p.10; McLeod Decl., Ex. 16, p. 4.

[12]  The submitted invoices include the June 30, 2011, September 6, 2011, October 13, 2011, December 8, 2011, March 5, 2012, April 3, 2012 and May 1, 2012 invoices from Green Bryant & French ("the Pre-Tender Invoices").  See Gerstel Decl. ¶ 11; Tanner Decl. ¶ 20.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

1    analysis of statues, case law Club documentation re:
2    issues; *prepare Memo to Board of Directors on these issues*. (emphasis added).[13]

3    In light of the foregoing entries, Liberty reserved all of its right under the

4    Policy to "invoke the provisions of the Application quoted above;" Liberty also

5    requested a copy of a Memo to the Board (hereinafter the "Memo"), and a detailed

6    explanation of certain specific entries contained in the Pre-tender Invoices.[14]

7    On December 10, 2012, coverage counsel for Ironwood refused to provide

8    Liberty with the Memo and, instead, advised that certain invoices that had been

9    submitted to Liberty for payment by the COO/GM of Ironwood and its broker had

10    been done so by mistake.  Liberty responded to Ironwood's counsel's letters by

11    letter dated January 11, 2013, noting multiple reasons why Ironwood's submission

12    of the Pre-tender Invoices was no "mistake".[15]  On February 7, 2013, McLeod re-

13    iterated Ironwood's demand for the return of the purportedly "mistakenly"

14    provided Pre-tender Invoices.[16]  On February 26, 2013, and in light of Ironwood's

15    refusal to provide any explanation for its patently false answer of "NO" on

16    Question 14 of the Application, Liberty advised Ironwood that it was *denying*

17

18    [13]   See Tanner Decl., ¶ 27, Ex. 5, p.7; Lux Decl., ¶ 21, Ex. 8, p.11; McLeod Decl., Ex. 7, p. 3 and Ex. 16, p. 4.  There are other entries contained in the Pre-tender Invoices for services provided
19    prior to October 5, 2011, that also support Liberty's claim that Ironwood had knowledge of acts, facts, or circumstances that may lead to a claim.  Liberty reserved its rights to rely on these other entries in support of its argument on coverage, reformation and/or rescission.
20    [14]  See Lux Decl., Ex. 8, pages 6-7; Tanner Decl., Ex. 5, pages 6-7.
[15]  See Pltf's Decl. of John M. McLeod ("McLeod"), Ex. 1, 2 and 3.
[16]  See McLeod Decl., Ex. 5, pages 4, 5 and 6.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**
2449992

1    *coverage* for the Claim as it had reserved its right to do.[17]  Liberty also specifically

2    *reserved the right to rescind* the Policy.[18]

3    **III.   LEGAL ARGUMENTS**

4       **A.   STANDARD FOR (PARTIAL) SUMMARY JUDGMENT**

5       The same standards for a motion for summary judgment apply to a motion for

6    partial summary judgment.  See *California v. Campbell*, 138 F.3d 772, 780 (9th Cir.

7    1998).   Federal Rule of Civil Procedure 56(c) provides for summary judgment:

8   
9
10

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).[19]

11       A party is entitled to summary judgment when it shows there is no genuine

12    issue at to any material facts and that it is entitled to judgment as a matter of law.

13    See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The party seeking

14    summary judgment bears the initial burden of informing the court of the basis for

15    its motion and of identifying the portions of the pleadings, discovery, and

16    declarations (if any) that demonstrate an absence of a genuine issue of material

---

[17] Liberty noted Ironwood's refusal of Liberty's offer to enter into a confidentiality agreement and to provide the earlier requested information regarding the entries in question and copy of the Memo.  Liberty advised that this refusal further confirmed that Ironwood and its Board were aware of the facts and circumstances (prior to the completing the Application) that ultimately gave rise to the Cobb Complaint.  *Id.*

[18] See McLeod Decl., Ex. 7, p. 2-4.

[19] The Court may notice that Ironwood failed to set forth the standard for summary judgment in its Motion.  Liberty suspects that this was done intentionally in order to avoid highlighting the fact that Ironwood has failed to satisfy such standard.  The appropriate standard is set forth within.

1  fact.  *Celotex Corp. v. Catrett*, (1986) 477 U.S. 317, 323 (1986).

2      Should the moving party meet such burden, the burden shifts to the party

3  resisting the motion, who "must set forth specific facts showing that there is a

4  genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256

5  (1986).[20]   When making its determination, the court must view all inferences

6  drawn from the underlying facts in a light most favorable to the non-moving party.

7  *See Matsushita v. Zenith Ratio Corp.,* (1986) 475 U.S. 574, 587.[21]

8      If a moving party fails to carry its burden of production, then "the non-

9  moving party has no obligation to produce anything, even if the non-moving party

10 would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v.*

11 *Fritz Cos.* (9th Cir. 2000) 210 F.3d 1099, 1102-03.  To establish the existence of a

12 factual dispute, the opposing party need not establish the fact conclusively in its

13 favor, but only needs to show *the need to resolve the differing versions of truth* at

14 trial.  *First Nat'l Bank v. Cities Serv. Co.,* (1968) 391 U.S. 253, 289.  The [non-

15 moving party] can defeat summary judgment by demonstrating the evidence, taken

16 as a whole, could lead a rational trier of fact to find in its favor.  *S. California Gas*

17

18 _____

[20] A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense.  *T.W. Electrical Service, Inc. v. Pacific*

19 *Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

[21]"Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ... ruling on a motion for summary

20 judgment." *Anderson,* 477 U.S. at 255.  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the non-moving party.  See *Anderson* at 248-49.

_____

8

1   *Co. v. City of Santa Ana*, 336 F.3d 885, 888, citing *Margolis v. Ryan,* 140 F.3d

2   850, 852 (9th Cir., 1998).

3       **B.      IRONWOOD IS NOT ENTITLED TO PARTIAL SUMMARY
              JUDGMENT GIVEN LIBERTY'S AFFIRMATIVE DEFENSE
4             OF RESCISSION**

        Liberty has raised the defense of rescission, reformation and/or voiding of the

5   Policy.   See Docket Doc. # 34, pgs 18-19. California law is clear that when a

6   rescission defense is raised by an insurer, an Insured's motion for summary

7   adjudication for a defense or coverage is premature. See *Rocklin Park Place*

8   *Condominium Owners Assoc. v. Liberty Ins. U'wtrs, Inc.*, (E.D. Cal., Sept. 6, 2013)

9   2013 WL 4828154; and *Atmel Corp. v. St. Paul* (N.D. Cal. 2006) 416 F.Supp.2d

10  802.  In *Atmel*, an insured filed a motion for partial summary judgment for its breach

11  of contract and bad faith refusal to defend claims against St. Paul.  St. Paul had raised

12  rescission as an affirmative defense in its answer.   The *Atmel* court noted that, if St.

13  Paul was entitled to rescission, then the policy would be void *ab initio,* and St. Paul

14  would have never owed Atmel a duty to defend *in the first instance*.  The *Atmel* court

15  found that, since Atmel's enforcement of its rights under the policy (including the

16  duty to defend) and St. Paul's rescission of the policy were being decided in the same

17  proceeding, it would be premature for the court to rule on Atmel's motion for partial

18  summary judgment.  *Id*. at 807.

19      Similarly, in *Rocklin*, an insured sought partial summary judgment on its claim

20  that Liberty Insurance Underwriters, Inc. (hereinafter "LIU"), breached the duty to

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

1   defend.   LIU argued that Rocklin was not entitled to summary judgment until LIU's

2   rescission defense was resolved.   LIU's rescission defense was based on allegations

3   that the insured failed to disclose important facts, despite direct inquiry in the

4   application for the policy (which is exactly the situation here between Ironwood and

5   Liberty).   The *Rocklin* court denied Rocklin's partial summary judgment motion,

6   relying on *Atmel*, which stated that, "…because rescission is retroactive to the time

7   that the representation becomes false, if [the insurer] is entitled to rescission, then it

8   never owed [the insured] a duty to defend." *Rocklin* at *4 citing *Atmel, supra,* at 807.

9   The *Rocklin* Court held that it could only find that, "because [the insurer's] rescission

10  defense could potentially void the policy, this is not the proper juncture for summary

11  adjudication of this issue….The court cannot, however, make any determination that

12  Defendant breached the contract by failing to defend the [underlying] action if the

13  [Policy] is potentially void." *Rocklin* at *4.

14       Ironwood argues that *Atmel* and *Rocklin* are factually distinguishable because

15  the insureds there sought partial summary judgment on the insurer's rescission claim

16  and not the duty to defend.   Pltf's P&A, p. 14.  But Ironwood misrepresents the facts

17  of both *Atmel* and *Rocklin* because the defense obligation issue was present in both

18  cases.    In *Rocklin*, the motion specifically asked the court to rule on whether the

19  insurer had breached its duty to defend. *Rocklin, supra,* at *1.  In *Atmel*, St. Paul

20  moved for summary judgment on rescission as well as all claims alleged in the

_____

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

CASE 5:13-cv-00996-VAP-DTB   Document 36   Filed 02/03/14   Page 18 of 33   Page ID #:2103

coverage complaint, which included whether St. Paul breached the duty to defend. *Atmel, supra,* at 804, 807. Further, even if it were accurate that *Atmel* and *Rocklin* involved only the rescission claim (which it is not), this difference is inconsequential given the reasoning of *Atmel* and *Rocklin* noted above. Namely, both motions for summary judgment were ***denied as premature*** because, if the carriers' rescission defense were successful, the policies would be void *ab initio*.

Ironwood also grandly argues that the *Rocklin* and *Atmel* decisions "turn California law regarding duty to defend on its head." See Pltf's P&A, p. 15. In particular, Ironwood argues that the duty to defend is "immediate" (citing to *Buss, Montrose I* and *Gray)* and that the holdings of *Atmel* and *Rocklin* are contrary thereto. *Rocklin,* however, addressed this very argument (i.e., that the duty to defend is "immediate") when it *rejected* Rocklin's argument that *National Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496 (9th Cir. 1997) not *Atmel*, governed the dispute in *Rocklin*.[22] The *Rocklin* Court rejected application of *National Steel* because it did not involve a claim of rescission. *National Steel,* along with *Montrose I, Gray* and *Buss* did not involve a rescission issue.[23]

---

[22] The insured in *National Steel,* in line with *Montrose I* and *Gray*, had argued that the existence of the duty to defend turns upon facts known to the insurer at inception of the lawsuit and that the insurer has no duty to defend if, at the time of its decision, it can prove that the claim cannot fall within policy coverage. See *National Steel* at 499.

[23] Ironwood likewise makes a "parade of horribles" argument that every insurer will simply run to the courthouse to assert claims of rescission to avoid summary judgment. It is speculative nonsense to argue what any party to any litigation will do. Ultimately, however, it is an irrelevant argument since rescission is legitimately being asserted by Liberty, and California law

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2444992

1      Ironwood also seeks to rely upon *Endurance American Specialty Ins. Co. v.*

2   *WFP Securities Corp*., (Sept. 28, 2012) 2012 WL 7808097, (citing *Haskel, Inc. v.*

3   *Superior Court,* (1995) 33 Cal. App.4th 963, which held that the insured was entitled

4   to summary judgment on their duty to defend claim despite Endurance's claim of

5   rescission.  *Endurance* is factually distinguishable, however, because the insurer did

6   not present evidence in support of its rescission claim or in its opposition to WFP's

7   partial summary judgment motion.  Endurance instead made reference to sworn

8   testimony that it still needed to conduct discovery to establish the foundational

9   requirements for this documentation.  *Endurance* at 3.  In the matter at hand,

10  evidence supporting Liberty's rescission claim, i.e., the entries contained in the Pre-

11  tender Invoices, are contained in the exhibits to this Motion.

12      Ultimately, *Atmel* and *Rocklin* are far better supported in the law because, if

13  the rescission defense is proven, the policy will be deemed to have never existed.  On

14  the other hand, if the *Endurance* Court's reasoning were to be adopted, insureds will

15  benefit from their misrepresentations and be provided with the benefit of a defense to

16  which it was never entitled in the first instance.  Given that rescission is an equitable

17  defense, a party should not be permitted to benefit from its misrepresentations as

18  Ironwood wishes to do here.  Moreover, insurers will then be in the position of

19

20

---

provides that summary judgment is unavailable until it has been resolved.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

1  having to recoup defense costs paid out on a policy that, as a matter of law, _never_

2  _existed in the first place_.[24]

### 1.    THE MOTION SHOULD BE DENIED AS THERE EXISTS A MATERIAL FACTUAL DISPUTE AS TO WHICH APPLICATION IS APPLICABLE

Liberty repeatedly advised Ironwood that coverage was denied based upon the material misrepresentation made in the Application by Ironwood in response to Question 14.[25]   In this regard, Tanner, Ironwood's GM/COO who completed the Application on Ironwood's behalf, provides in his Declaration that "… I am not aware of who, if anyone, provided a 'no' response to Question #14."  Tanner Decl. ¶ 14.   Additionally, the Application submitted by Ironwood in support of its Motion has a blank in response to Question 14 and the "Submitting Producer Name" both blank.   See Tanner Decl. ¶ 6, Ex. 1, page 2, 5.   The Application contained in Liberty's file, however, has "NO" checked off for Question 14 and the "Submitting Producer Name" section completed.   See Choi Decl. ¶ 3, Ex. A, p. 2, 5; and Liberty UF/GD # 2.   Given that the misrepresentation on the Application is the basis for Liberty's denial of coverage and as well as its rescission defense, a dispute of this material fact _on its own_ justifies denial of Ironwood's Motion.   It is critical for discovery to move forward on this threshold, but material, issue.

---

[24] For the same reasons noted above, Ironwood's claim for reimbursement of the defense costs already incurred must be also denied too as no future or past defense costs would be owed if the Policy is found to be void _ab initio_.

[25] See McLeod Decl., Ex. 7, p. 2-3; Ex. 9, p. 1; and Ex. 12, p. 1.

## 2.   <u>LIBERTY IS ENTITLED TO DISCOVERY</u>

Fed R. Civ. P. 56 (d) provides that, "When Facts Are Unavailable to the Nonmovant":

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (**1**) defer considering the motion or deny it;
> (**2**) allow time to obtain affidavits or declarations or to take discovery; or
> (**3**) issue any other appropriate order.

No discovery has taken place in this matter beyond the exchange of Initial Disclosures.  See Whittington Decl. ¶¶ 3, 5. Ironwood's Motion is based on its Complaint and self-serving hearsay internal conversations regarding the Land Assessment issue and related communications with Gerstel contained in the Declarations of Ironwood personnel, its broker, and its attorney Gerstel, whose invoice entries are at the heart of the dispute, and which Ironwood describes as "evidence" and "facts."  To the extent that the Court will rely on these statements to decide this Motion, Liberty should have the opportunity to conduct formal discovery on these discussions to oppose the Motion.[26]

---

[26] Indeed, Ironwood spends several paragraphs posing various hypotheticals regarding Question 14 and how it would apply under different scenarios regarding Ironwood's decision-making process concerning the decision not to repay the Land Assessments.  While these hypotheticals may be interesting to ponder, it dramatically highlights the point that discovery and depositions need to be conducted in order to be able to confirm the *actual discussions* and/or the decision-making process itself.

## C.   THE PRE-TENDER INVOICES ARE NOT SUBJECT TO THE  ATTORNEY-CLIENT PRIVILEGE

In California, evidentiary privileges are statutorily created, with such privileges to be strictly construed; the party asserting the privilege has the burden of demonstrating that the communications fall within such privilege. *Wells Fargo Bank v. Superior Court* (2000) 22 Cal. 4th 201, 208; Cal. Evid.Code § 917(a).   The attorney-client privilege ("ACP"), is a privilege held by the client that protects from disclosure confidential communications between the client and an attorney.[27]   In order to establish that the ACP applies to a given communication, the party asserting the privilege must affirmatively demonstrate that the privilege has not been waived. *Weil v. Investment/Indicators, Research & Management, Inc.* (9th Cir. 1981) 647 F.2d 18, 25.   Where a party discloses attorney-client communications to a third party, privilege is waived unless the party can show that the third party was present to further the interest of the party or that disclosure to the third party was reasonably necessary for the transmission of the information.  Cal. Evid. Code § 952.

### 1.   The Attorney-Client Privileged Does Not Apply to Ironwood's Pre-Tender Invoices

Under California law, in order for the ACP to apply to the pre-tender invoices at issue, Ironwood must show that such invoices, which were intentionally submitted to Liberty for payment by Ironwood's broker at the

---

[27] This privilege applies "…when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." *Clarke v. Am. Commerce Nat. Bank* (9th Cir. 1992) 974 F.2d 127. "Confidential communication" is defined as including legal opinion formed and advice given by the attorney in the course of an attorney-client relationship. *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

1    request of Ironwood's GM/COO, somehow constitute confidential

2    communications between Ironwood and its counsel.  *Wells Fargo, supra* 22 Cal.

3    4th at 208; *see also* Cal. Evid.Code § 917(a).  Because the ACP has the effect of

4    withholding relevant information from the fact-finder, it is applied only when

5    necessary to achieve its limited purpose of encouraging full and frank disclosure

6    by the client to his or her attorney.  *Fisher v. United States,* (1976) 425 U.S. 391,

7    403; *Tornay v. United States,* (9th Cir. 1988). 840 F.2d 1424, 1426.  Lastly,

8    Ironwood must show that the invoices contain such detail that they reveal the

9    client's litigation strategy or the nature of services provided by the attorney.  *In re*

10   *Grand Jury Witness* (9th Cir. 1982) 695 F.2d 359, 362.

11        Ironwood is unable to make these requisite showings.  First, the pre-tender

12   invoices are not confidential in nature.   In fact, they contain no indication

13   whatsoever that they were intended to be private communications and, indeed,

14   were simply sent to Ironwood's broker to be sent to Liberty for payment.

15   Furthermore, protection of these invoices is not necessary to allow for full and

16   frank communications between Ironwood and its counsel.  An invoice, by its very

17   nature, is simply a bill for services *already* rendered.  Moreover, the relevant entry

18   found within the October 13, 2011, Pre-tender invoice, does not in any way reveal

19   Ironwood's litigation strategy, nor could it given Ironwood's oft-repeated

20   statement that the Cobb litigation was not yet in suit.  As Liberty relied upon in its

1   coverage letters, the entry states:

2   Review and analyze legal issues and facts re:
    Assessment, Mistake of Fact and Law issues, Estoppel,
3   Class Action issues and Liability; Declaratory Relief
    issues and liability; Insurance issues re potential claims
4   and coverage; Transferability of assessment rights;
    Contractual liability for assessment payments by
5   forfeiting members; potential for present member claims;
    analysis of statues, case law Club documentation re:
6   issues; prepare Memo to Board of Directors on these
    issues.  See Tanner Decl., Ex. 5, p.7; Lux Decl., Ex. 8,
7   p.11; McLeod Decl., Ex. 7, p. 3 and Ex. 16, p. 4.

8       This entry was made _nearly a year_ before the eventual onset of litigation in

9   August 2012 and does not remotely indicate Ironwood's litigation strategy in that

10  respect.   This entry simply sets forth what services Mr. Gerstel provided to

11  Ironwood, and the topics discussed with Ironwood and contained within the

12  Memo he prepared for Ironwood.  The invoices make no reference to any sort of

13  strategy and as such, do not meet the requirements necessary for ACP protection.

14          2.    **Ironwood's Disclosure of the Invoices Was Not
                  "Inadvertent" and Ironwood Has Waived the Attorney
15                Client Privilege**

16      Any claimed privilege was waived when Ironwood voluntarily submitted

    the invoices _directly to Liberty_ for reimbursement.  Ironwood submitted the Pre-
17
    tender Invoices at issue to its broker, Lux, who then submitted them to Liberty for
18
    reimbursement. Once Liberty reviewed these invoices and inquired into their
19
    nature – with Ironwood retaining new counsel – it was only _then_ that Ironwood
20
    asserted for the first time that its disclosure of the subject invoices was inadvertent

1    and requested their return.

2        Courts in the Central District have adopted a five-factor test to determine

3    whether a party's disclosure was inadvertent.  See *Flores v. Albertson's, Inc.,*

4    (C.D. Cal. Apr. 9, 2004) 2004 WL 3639290.  The factors to be considered are:  (1)

5    the reasonableness of the precautions to prevent inadvertent disclosure; (2) the

6    time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the

7    disclosure; and (5) the "overriding issue of fairness."  *U.S. ex rel. Bagley v. TRW,*

8    *Inc.* (C.D. Cal. 2001) 204 F.R.D. 170, 177 (internal citations omitted).[28]

9        *Each* of the foregoing factors operates *against* the idea that Ironwood's

10   submission was an inadvertent disclosure.  With regard to the first factor, literally

11   no precautions were undertaken because the invoices were specifically,

12   voluntarily, and purposely provided to Liberty for payment.    Therefore, as

13   Ironwood intentionally submitted these invoices with a request for payment, the

14   first factor entirely supports Liberty.[29]

15       As to the second factor, it was not until Liberty had reviewed the submitted

16   _____

[28]  The factors need not all be met, but instead offer a framework to help determine if the
production of documents constitutes a form of waiver as to the documents' confidentiality.
*Bagley, supra* 204 F.R.D. at 178.

17   [29]  Ironwood relies on *Roberts v. Superior Court* (1973) 9 Cal.3d 330, 342-343 ("*Roberts*"), and
*Grey v. Superior Court*, (1976) 62 Cal. App. 3d 698, for the propositions that waivers of the
attorney-client privilege are narrowly construed (*Roberts*), that the waiver must be a voluntary

18   and knowing act that is done with sufficient awareness of the relevant circumstances and likely
consequences (*Roberts*), and that any waiver of the attorney-client privilege must be intentional
and the privilege cannot be waived by inadvertent disclosure of protected information.  First,

19   *Roberts* and *Grey* do not concern attorney-client privilege issues, but instead are patient-
psychotherapist and patient-physician privilege cases.  Second, and most importantly, they are

20   factually distinguishable as they did not concern voluntary disclosure of invoices for payment.

_____

18

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

1 invoices and inquired about the content therein that Ironwood first claimed that

2 these invoices were inadvertently disclosed.  On December 10, 2012, nearly three

3 (3) months after submitting the pre-tender invoices to Liberty that Ironwood acted

4 to rectify its alleged error.  But in truth, Ironwood was not attempting to rectify an

5 error at all so much as it was attempting to hide the information contained therein

6 from Liberty.  As such, the second factor also entirely supports Liberty.

7 The third factor, scope of discovery, analyzes the amount of material that a

8 party produced wherein the party inadvertently disclosed a privileged document.

9 Here, Ironwood voluntarily submitted a total of thirty-five (35) pages of invoices

10 to Liberty, which included the Pre-tender Invoices totaling 15 pages.[30]  Since the

11 scope of discovery in this matter is very limited in nature, this factor decidedly

12 supports Liberty's position.

13 The fourth factor, extent of disclosure, also favors Liberty. Among the

14 thirty-five pages of invoices that Ironwood submitted to Liberty, Ironwood

15 produced invoices for seven months, totaling 15 pages, that it now claims were

16 inadvertently produced. In other words, more than 40% of the documents that

17 Ironwood *voluntarily submitted* to Liberty were allegedly inadvertently disclosed.

18 In comparison with many inadvertent productions described in the reported cases,

19

20

---

[30] Thus, this was not a situation where, for instance, a party responds to a discovery request with thousands (or tens or hundreds of thousands) of documents and accidentally includes a privileged communication. *See Bagley supra* where the court finds the potential for inadvertent disclosure more likely in production of approximately 200,000 documents. *Bagley* at 180-81.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

1    this ratio is extraordinarily large, and as such, this factor strongly favors Liberty.[31]

2         Further, with regard to the last factor, fairness dictates that the production

3    of the invoices establishes a waiver.  Liberty examined the invoices that Ironwood

4    provided so as to determine the amount of reimbursement and/or the status of

5    Ironwood's deductible.  But in doing so, Liberty learned information that revealed

6    that Ironwood had knowledge of "facts or circumstances which may give rise to a

7    Claim" and based thereon, formed its coverage position and its litigation stance.[32]

8    Liberty received these invoices through no fault of its own; as the invoices did not

9    contain any indication that they were privileged communications, Liberty relied

10   on these invoices in its declination of coverage.  It would be unfair to uphold the

11   ACP and require return of the Pre-tender Invoices and allow Ironwood to hide

12   behind the cloak of privilege that was only alleged to apply three months after the

---

[31] *Compare Lazar v. Mauney*, (N.D. Ga. 2000) 192 F.R.D. 324, 330 (concluding that the privilege was not waived when three privileged documents were produced along with about 1,000 other documents) and *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, (S.D.N.Y. 1985) 104 F.R.D. 103, 105 (concluding that privilege was not waived when 22 privileged documents were mistakenly produced along with 16,000 other documents) with *Local 851 of Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, (E.D.N.Y. 1998) 36 F. Supp. 2d 127, 133 (concluding that the privilege was waived when one privileged document was filed along with six other exhibits to a motion).

[32] If the receiving party uses inadvertently produced privileged documents extensively, even without the producing party's knowledge, that can increase the likelihood of a finding of waiver. *See Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, (N.D.Ill.1987) 117 F.R.D. 119, 121 (explaining that "[w]here prior to the assertion of the privilege, the documents have been examined and used by the opposing party, it may be unfair and unrealistic to uphold the privilege," and holding that a waiver occurred where the receiving party repeatedly used and relied on the documents in its court filings) (citing *In re Grand Jury Investigation of Ocean Transportation*, (D.C.Cir.1979) 604 F.2d 672, 674–675, *cert. denied*, (1979) 444 U.S. 915); *Central Die Casting & Mfg. Co., Inc. v. Tokheim Corp.*, (N.D.Ill.1994) 1994 WL 444796, at 5 (finding a waiver of the privilege where the receiving party used the inadvertently produced document in its motion for summary judgment).

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

1   fact.  Additionally, it would be counter-intuitive to deem the Pre-tender Invoices

2   as subject to attorney-client privilege but any post-tender invoices *not* subject to

3   attorney-client privilege.

4         **D.**    **LIBERTY'S DENIAL OF COVERAGE WAS PROPER AND LIBERTY HAS NO DUTY TO DEFEND**

5                  **IRONWOOD**

6        Ironwood relies entirely on the statements contained in the Declarations of

7   Lux, Tanner and Manion in support of its argument that the coverage limitations

8   contained in Question 14 and Sections 6.1 and 6.2 of Policy do not apply to

9   exclude coverage.  See Pltf's P&A, p. 7-9.  Based on the issues of fact (and

10  evidentiary objections) contained in Ironwood's Declarations as identified by

11  Liberty, this is sufficient to deny Ironwood's Motion.  Under California law, an

12  insurer is allowed to consider all facts that it learns from its investigation.  In

13  determining whether there is a duty to defend, an insurer is not limited to the facts

14  alleged in the underlying complaint, but may make the determination "from the

15  total facts it learns from all sources."  See *State Farm Mut. Auto. Ins. Co. v. Flynt,*

16  *supra,* 17 Cal.App.3d at 548; accord, *Gray v. Zurich Insurance Co., supra,* 65

17  Cal.2d at 274.  An insurer may refuse to defend where extrinsic evidence

18  conclusively establishes that no potential for coverage exists. *Montrose Chemical*

19  *Corp. v. Sup. Ct. (Canadian Universal Ins. Co.)* (1993) 6 Cal.4th 287.

20       Ironwood would like to believe that, because the formal Board position was

not taken until January 2012 (after the Policy inception), it did not have the

1  requisite "knowledge of facts or circumstances which may give rise to a Claim"

2  when the Application was completed.[33]    This is a remarkably narrow

3  interpretation of the Application inquiry.  Ironwood had solicited opinions from its

4  counsel regarding the potential exposure and availability of insurance coverage for

5  the eventual claims that would come as a result of that decision as evidenced by

6  Gerstel's entries.  The plain language of the Application inquiry does not remotely

7  require that a Claim have _in fact been made_, or that a Claim will _certainly be_

8  _made_.  Rather, Ironwood was contemplating and evaluating a decision to decline

9  to pay members/former members more than $25,000 _each_.  Ironwood knew, with

10  unquestionable certainty that the affected persons would absolutely object to such

11  a decision, and thus that Claims "may" be made.  It is therefore no wonder that

12  Ironwood is seeking return of the Pre-tender Invoices given what they reveal.

13  After meeting with Gerstel, Ironwood obtained the Liberty Application and – in

14  no uncertain terms – blatantly misrepresented to Liberty as to whether there were

15  any facts or circumstances that may give rise to a Claim.[34]

16

17

18

19

20

---

[33]  In fact, Ironwood admits in its Motion that it had multiple discussions internally and with its counsel on the Land Assessment issue prior to the Application.  See Pltf's P&A, p. 2.  Indeed, by waiting to have the vote in January 2012, Ironwood itself ensured that any claim that would be made would be after the inception of the Policy (which was the first one issued by Liberty), giving the appearance that everything occurred post-Policy inception.  The issue, however, is Ironwood's knowledge of act, fact or circumstance that _may_ give rise to a Claim, with the invoice entries clearly demonstrating that such knowledge existed at the time the Application was completed.

[34]  Ironwood's citation to Liberty's use of the word "apparently" lacks merit and in no way suggests that Liberty was somehow making a "concession" that the opposite might also be true, as Ironwood contends.  In any event in response to inquiries by Ironwood, Liberty confirmed its

1       Accordingly, given the applicability of the Application exclusion and

2   Sections 6.1 and 6.2 of the Policy referenced above, there is no conceivable theory

3   that the allegations against Ironwood could potentially be covered (and thus no

4   duty to defend Ironwood) as such Claims are excluded and/or coverage is void

5   based on Ironwood's negative response to whether it had knowledge of an act, fact

6   or circumstance that may give rise to a Claim.

7       Ironwood relies upon *Resure, Inc. v. Superior Court,* (1996) 42 Cal.App.4[th]

8   156, 158-159 ("*Resure*"), where the application question asked for a list of all

9   "claims" and "occurrences" that might give rise to claims for the prior five years and

10  the insured responded: "[A]pplicant will issue statement of no loss."[35]  *Resure* at 159.

11  It should be noted that the question in the *Resure* application is far, far different from

12  the one contained in the Liberty Application, where Ironwood was asked about

13  knowledge or information of any act, error, omission, fact, or circumstance that may

14  give rise to a claim.  Question 14 in Liberty's Application is a much broader inquiry.

15      In *Advanced Micro Devices v. Great Amer. Surplus Lines Ins. Co.* (1988) 199

16  Cal.App.3d 791 ("*AMD*"), the application question asked, "[A]t the time of

17  signature, are you aware of any circumstances which could give rise to a claim under

---

18  position in the correspondence dated March 13, 2013 and April 19, 2013 noted above.

[35]  In actuality, there were four pending lawsuits against the insured when it had completed its
19  application.  The *Resure* court, however, never addressed the issue of whether a misrepresentation
or concealment had been made as that issue and/or question was not before the *Resure* court.  The
*Resure* court had only recounted these facts to show the facts that were before the trial court when it
20  had denied summary judgment for Resure.  The issue on appeal was whether Resure was barred by
Insurance Code § 650 from bringing its rescission action.

23
**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

1   the policy," to which AMD had answered "no."   Again, Question 14 is a much

2   broader inquiry, but the reasoning in *AMD* supports Liberty's position in any event.

3   The *AMD* court discredited certain self-serving affidavits (that also contradicted

4   earlier testimony) submitted by AMD and found that the policy's prior knowledge

5   exclusion applied.   The *AMD* court reasoned that AMD had knowledge of the

6   contamination at issue before the inception of the policy, but that AMD was only

7   uncertain as to its extent.   It was further reasoned that at the time the insurance

8   coverage incepted, AMD could not have reasonably doubted that it faced a costly

9   cleanup project. *AMD* at 801-802.

10   In accordance with *AMD,* the Pre-tender Invoices contain entries that show

11   Ironwood had knowledge or information of acts, facts or circumstances that may lead

12   to a claim when it engaged Gerstel to analyze the issues of potential liability,

13   damages and insurance coverage concerning Ironwood's decision on the Land

14   Assessments issue.   The *AMD* court found that AMD could not reasonably doubt that

15   it faced a cleanup project given the evidence of knowledge of a leak.   Likewise,

16   Ironwood also could not reasonably doubt that a claim may be made once it

17   announced that it would not be repaying the Land Assessments.

18   In *Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co*., (1976) 64

19   Cal. App. 3d 261, 269-70, the application asked: "[I]s the Applicant aware of any

20   circumstances which may result in any claim against him, his predecessors in

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

1  business, or any of the present or past partners or officers? ("no" was checked off).

2  The *Williamson & Vollmer* court held that Williamson & Vollmer's negative answer

3  to the question in the application amounted to a misrepresentation and concealment

4  of material facts in light of circumstances known to Williamson & Vollmer at the

5  time.[36]   Again, Question 14 in Liberty's Application is a much broader inquiry.

6  Also, the fact that the *Williamson & Vollmer* decision is based on a letter received by

7  the insured does not mean that other forms of evidence cannot also be found to

8  constitute a material misrepresentation or concealment of fact by an insured.

9  **IV.    CONCLUSION**

10       Based upon the foregoing facts and authorities, Liberty respectfully

11  requests that the Court deny Ironwood's Motion for Partial Summary Judgment.

12

13                                   Respectfully submitted,

14  Dated:  February 3, 2014          KAUFMAN BORGEEST & RYAN LLP

15                          By:    _____/s/ Jeffrey S. Whittington_____
                                   Jeffrey S. Whittington, Esq.
16                                 Miriam Gregory, Esq.
                                   Attorneys for Defendant,
17                                 Liberty Insurance Underwriters, Inc.

18

19

20
---

[36] Williamson & Vollmer (an engineering company) had received a pre-application letter from an architect on a project which advised that the architect intended to hold Williamson & Vollmer responsible for damages arising from erroneously approved shop drawings.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**
2449992

**PROOF OF SERVICE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**
**CASE NAME: Ironwood v. Liberty Insurance**

I declare as follows:

I am employed in the County of Los Angeles, California.  I am over the age of 18 years, and not a party to the within action; my business address is 23975 Park Sorrento, Suite 370, Calabasas, California 91302.  I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

On February 3, 2014, I served a true and correct copy, with all exhibits, of the following document(s) described as follows:

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGEMENT**

[ ]    On the interested parties in the within action by placing the above documents in the United States mail for Express Mail delivery at 23975 Park Sorrento, Suite 370, Calabasas, California 91302 in a sealed envelope, with Express Mail postage thereon fully prepaid; by depositing copies of the above documents in a box or other facility regularly maintained by Federal Express, with delivery fees paid by the sender's account. (Code of Civil Procedure § 1013(c).)  *(Overnight Delivery Service)*

[ ]    On the interested parties in the within action by faxing a true and correct copy of the above documents to the facsimile number listed below.  *(Fax Service)*

[X]    On the party or parties named below, by following ordinary business practice, placing a true copy thereof enclosed in a sealed envelope, for collection and mailing with a United States Postal Service, where it would be deposited for first class delivery, postage fully prepaid, in the United States Postal Service, that same day in the ordinary course of business, addressed as set forth below. *(Regular Office Deposit)*

John J. McLeod, Esq.
Paul Hirst, Esq.
McLEOD LAW GROUP, APC
701 B. Street, Suite 1570
San Diego, California 92101

I certify under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct and that this declaration was executed on February 3, 2014, at Calabasas, California.

By:     ___/s/ Jesica Isaac_____          By:     _____Jesica Isaac_____
          Signature of Declarant                              Name of Declarant