1  John J. McLeod, Esq., State Bar No. 174169
   john@mcleodlawgroup.com
2  Paul C. Hirst, Esq., State Bar No. 234460
   pchirst@mcleodlawgroup.com
3  McLEOD LAW GROUP, A.P.C.
   701 B Street, Suite 1570
4  San Diego, California 92101
   Telephone: (619) 236-9938
5  Facsimile: (619) 236-9943

6  Attorneys for Plaintiff,
   IRONWOOD COUNTRY CLUB
7

8              **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

10  IRONWOOD COUNTRY CLUB,            CASE NO. 13-00996-VAP (DTBx)

11
                                      **REPLY TO DEFENDANT'S**
12          Plaintiff,                **OPPOSITION TO PLAINTIFF'S**
        v.                            ***AMENDED* MOTION FOR PARTIAL**
13                                    **SUMMARY JUDGMENT**

14  LIBERTY INSURANCE
    UNDERWRITERS, INC. and DOES 1     Hearing Date:   February 24, 2014
15  through 100,                      Hearing Time:   2:00 p.m.
                                      Courtroom:      Hon. Virginia A. Phillips
16          Defendants.

17
                                      Date Complaint Filed: May 1, 2013
18                                    Trial Date: August 5, 2014

19
                                      Filed concurrently with:
20                                        1. *Response to Statement of Genuine*
21                                           *Issues; and*
                                          2. *Objections to Evidence.*
22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    I.     INTRODUCTION............................................................................1

3    II.    THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT .................1

4    III.   LIBERTY'S AFFIRMATIVE DEFENSE OF RESCISSION DOES

5           NOT MAKE THIS MOTION PREMATURE...............................................3

6    IV.    LIBERTY IS NOT ENTITLED TO DISCOVERY TO FISH FOR

7           EVIDENCE TO CONCOCT A HINDSIGHT JUSTIFICATION FOR

8           BREACHING ITS DUTY TO DEFEND......................................................7

9    V.     LIBERTY HAS A DUTY TO DEFEND IRONWOOD IN THE

10          UNDERLYING ACTION.....................................................................10

11   VI.    LIBERTY MUST REIMBURSE IRONWOOD FOR DEFENSE

12          FEES AND COSTS............................................................................12

13   VII.   THE PRE-TENDER INVOICES ARE SUBJECT TO THE

14          ATTORNEY-CLIENT PRIVILEGE AND MUST BE

15          RETURNED TO IRONWOOD................................................................12

16   VIII.  CONCLUSION..................................................................................19

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3

*Assoc. Elec. & Gas Ins. Servs., Ltd. v. Rigas*, 382 F. Supp. 2d 685 (E.D. Pa. 2004)..............6

4

*Atmel Corp. v. St. Paul* 416 F. Supp. 2d 802 (N.D. Cal. 2006).............................4, 5, 6

5

*Bible v. Rio Props, Inc.*, 246 F.R.D. 614, 617 (C.D. Cal. 2007)................................13

6

*Central Die Casting & Mfg. Co., Inc. v. Tokheim Corp.*,

7

1994 U.S. Dist. LEXIS 11411 (N.D. Ill. 1994).................................................17

8

*Compare Lazr v. Mauney*, 192 F. R.D. 324 (N.D. Ga. 2000).................................17

9

*Endurance American Specialty Ins. Co. v. WFP Securities Corp.*, 2012 U.S. Dist. LEXIS

10

153864, 9-10, 11-cv-2611 JAH (KSC) (S.D. Cal., Sept. 28, 2012)....................3, 4, 5, 6, 7

11

*Fisher v. United States*, 425 U.S. 391 (1976)................................................13

12

*Flores v. Albertson's, Inc.*, 2004 U.S. Dist. LEXIS 29083,

13

CV 01-0515 PA (SHx) (C.D. Cal., April 9, 2004).............................................17

14

*Garcia v. Progressive Choice Ins. Co.*, 2012 U.S. Dist. LEXIS 105932,

15

11-CV-466-BEN(NLS) (S.D. Cal. 2012) ....................................................13, 15

16

*In re Grand Jury Witness*, 695 F.2d 359 (9th Cir. 1982)......................................14

17

*In Re Worldcom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455 (S.D.N.Y. 2005).........................5

18

*National Railroad Passenger Corp. v. ERC Frankona Ruckvericherungs-AG*,

19

2005 U.S. Dist. LEXIS 43490, Civil Action No. 03-2420  (D.D.C., June 24, 2005)..........5, 6

20

*National Union Fire Ins. Co. v. Brown*, 787 F. Supp. 1424 (S.D. Fla. 1991)....................6

21

*Rocklin Park Place Condominium Owners Assoc. v. Liberty Ins. U'wtrs, Inc.*,

22

2013 U.S. Dist. LEXIS 127669, 2:12-cv-02247-TLN-CKD (E.D. Cal., Sept. 6, 2013)...4, 5, 6

23

*Tornay v. United States*, 840 F.2d 1424 (9th Cir. 1988)....................................13, 14

24

*U.S. ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170 (C.D. Cal. 2001).............................17

25

*Weil v. Investment/Indicators, Research & Management, Inc.*,

26

647 F.2d 18, 25 (9th Cir. 1981)...........................................................13

27

*/ / /*

28

*/ / /*

Reply ISO Ironwood's *Amended* Motion for Partial Summary Judgment

**State Cases**

*Advanced Micro Devices v. Great Am. Surplus Lines Ins. Co.*,

199 Cal. App. 3d 791, 245 Cal. Rptr. 44 (1988)…………………………………………10, 11

*Bank of America, N.A. v. Superior Court*, 212 Cal. App. 4th 1076,

151 Cal. Rptr. 3d 526 (2013)………………………………………………………………...18

*City & County of San Francisco v. Superior Court*, 37 Cal. 2d 227, 231 P.2d 26 (1951)…..14

*Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 732,

101 Cal. Rptr. 3d 758 (2009)………………………………………………………………14

*Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963,

39 Cal. Rptr. 2d 520 (1995)…………………………………………………………3, 7, 8, 9

*MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 3 Cal. Rptr. 3d 228 (2003)……………11, 12

*Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287,

24 Cal. Rptr. 2d 467 (1993)……………………………………….....................................4

*Mullen v. Glens Falls Ins. Co.*, 73 Cal. App. 3d 163, 140 Cal. Rptr. 605 (1977)……………8

*Resure, Inc. v. Superior Court*, 42 Cal. App. 4th 156, 49 Cal. Rptr. 2d 354 (1996)……..10, 11

*Roberts v. Superior Court*, 9 Cal. 3d 330, 107 Cal. Rptr. 309 (1973)………………….....15

*State Compensation Ins. Fund v. WPS, Inc.*, 70 Cal.App.4th 644,

82 Cal. Rptr. 2d 799 (1999)………………………………………………………………..17

*State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 109 Cal. Rptr. 811 (1973)…….11

*Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.*,

68 Cal. App. 4th 1030, 80 Cal. Rptr. 2d 688 (1998)……………………………………….8

*Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.*,

64 Cal. App. 3d 261, 134 Cal. Rptr. 427 (1976)…………………………………………10, 11

**Federal Statutes and Rules**

Fed. R. Civ. Proc. 56 …………………………………………………………………………1, 2

Fed. R. Evid. 501 ……………………………………………………………………………13

Local Rule 56-3 …………………………………………………………………………………2

Reply ISO Ironwood's *Amended* Motion for Partial Summary Judgment

ot> ot>ot>ot>

ot>ot>ot>ot>ot>

**State Statutes and Rules**

Cal. Evid. Code, § 917(a)……………………………………………………..15

Cal. Evid. Code, § 952 …………………………………………………………..14

Cal. Evid. Code, § 953(a) …………………………………………………………16

Cal. Evid. Code, § 954 …………………………………………………………..14

Reply ISO Ironwood's *Amended* Motion for Partial Summary Judgment

1    Ironwood Country Club ("Ironwood") respectfully submits the following reply
2    to defendant Liberty Insurance Underwriters, Inc.'s ("Liberty") late-filed opposition[1] to
3    Ironwood's *amended* motion for partial summary judgment pursuant to Rule 56 of the
4    Federal Rules of Civil Procedure.  Unless otherwise defined herein, the capitalized
5    terms are as defined in Ironwood's *amended* motion for partial summary judgment.

6    **I.    INTRODUCTION**

7          Liberty's opposition fails to set forth any legal or factual basis for the Court to
8    deny Ironwood's motion.  It is telling that, on the one hand, Liberty's lead "argument"
9    is a perfunctory, two-page discussion of the standard for partial summary judgment.
10   Yet, on the other hand, Liberty only references the second issue on which Ironwood
11   seeks summary judgment (Liberty's obligation to reimburse Ironwood for defense fees
12   and costs) in one lonely footnote. Even more telling, Liberty fails to dispute any of the
13   material facts in Ironwood's motion.  Thus, Ironwood respectfully submits that the
14   motion should be granted.

15   **II.    THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT**

16         Liberty concedes in its opposition that Ironwood's motion must be granted if
17   there is no genuine issue as to any material fact and Ironwood is entitled to judgment as
18   a matter of law.  As follows, the material facts are undisputed and Ironwood's motion
19   should therefore be granted.

20         As set forth in Ironwood's response to Liberty's statement of genuine issues filed
21   concurrently herewith ("RSUF"), of the 73 facts supporting Ironwood's motion, Liberty

---

[1] Pursuant to this Court's Standing Order, Liberty's opposition should have been filed by 4:00 p.m. on February 3, 2014. Liberty filed its opposition at 5:59 p.m. (Doc. No. 36), which was approximately two hours late.  (Liberty emailed an unfinished version of its opposition to Ironwood on February 3 at 4:05 p.m.)  This is the *third* time in this case that Liberty has violated the Standing Order and filed documents after 4:00 p.m., having filed its motion for leave to amend on December 30, 2013 at 6:19 p.m. (Doc. No. 26) and its reply in support of that same motion on January 13, 2014 at 4:42 p.m. (Doc. No. 32). This Court's January 16, 2014 order granting Liberty's motion for leave to amend (Doc. No. 33) noted that Liberty's motion had been filed approximately two hours late and warned Liberty that the Court may reject future tardy filings.  Yet, Liberty has continued this practice.

freely admits that 33 are "undisputed," including Nos. 1-3, 20-21, 23-28, 32-33, 36, 50, 53, 56-59, and 61-73.  Liberty argues that the other 40 are "disputed."  *Id.*  However, Liberty offers no declaration or other written evidence contradicting the proffered facts.  The Federal Rules of Civil Procedure, the Local Rules, and this Court's Standing Order are clear about this:  if a party fails to dispute a fact properly by offering a declaration or other written evidence filed in opposition to a summary judgment motion that contradicts the proffered fact, the Court will deem the fact undisputed for purposes of the motion.  Standing Order, p. 5, ll. 19-22; Fed R. Civ. P. 56(e)(2); L.R. 56-3.  Of the 40 facts that Liberty contends are "disputed," it offers no such declaration or other written evidence controverting any of them.  For example, with respect to Nos. 4-19, 22, 29-31, 34-35, 38-49, 51-52, 54-55, and 60, Liberty states that it "lacks sufficient information to form a belief as to the truth or falsity of the asserted fact" and offers no declaration of other written evidence controverting the proffered fact.  Similarly, as for No. 40, Liberty states that it is "a conclusion of law" without offering any controverting evidence.  And, as for No. 37, Liberty contends that the proffered fact ("[o]n October 25, 2012, Liberty sent a letter to Ironwood confirming its agreement to defend Ironwood in the Cobb matter through Mr. Gerstel's firm") is disputed.  However, Liberty's response to No. 37 does <u>not</u> actually dispute the asserted fact.  Instead, Liberty expands upon the fact by setting forth additional information purportedly contained in the October 25, 2012 letter.  Having failed to properly dispute any of these 40 facts, Ironwood respectfully submits that the Court must deem each fact undisputed for purposes of this motion.  As such, each and every fact supporting Liberty's motion is undisputed.

In a desperate effort to create at least one genuine issue, Liberty argues that there is a factual dispute as to whether or not Ironwood provided a "no" response to Question No. 14 on the Application.  As noted in Ironwood's motion, though, whether or not Ironwood provided a "no" response to Question No. 14 is <u>not</u> a material fact for purposes of this motion.  While Ironwood's response to Question No. 14 will almost

1   certainly be material to other issues being litigated later on in this case, those issues are

2   not before the Court on this motion.  And, for all the reasons discussed herein and in

3   Ironwood's moving papers, even if Ironwood responded "no" to Question No. 14,

4   Ironwood is still entitled to an order in its favor on the three discrete issues that are the

5   subject of this motion.

6   **III.    LIBERTY'S AFFIRMATIVE DEFENSE OF RESCISSION DOES NOT**

7   **MAKE THIS MOTION PREMATURE**

8       Liberty claims that its rescission defense makes this motion premature.  Liberty

9   is wrong.  Liberty's affirmative defense of rescission does not preclude this Court from

10   deciding Liberty's duty to defend Ironwood.  Federal courts that have correctly applied

11   California law on the duty to defend have rejected Liberty's argument.  *Endurance*

12   *American Specialty Ins. Co. v. WFP Securities Corp.*, 2012 U.S. Dist. LEXIS 153864,

13   17-21, 11-cv-2611 JAH (KSC) (S.D. Cal., Sept. 28, 2012).  In fact, notwithstanding

14   Liberty's attempt to distinguish the case, it is very similar to the facts of this case.

15   There, the insured sought summary judgment on the duty to defend, just as Ironwood

16   does here.  *Id*.  And, in that case, the insurer – just like Liberty – argued that its

17   rescission defense precluded such judgment.  *Id*.  The court rejected the insurer's

18   argument, citing *Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963 and explaining

19   that the duty to defend turns on the facts known to the insurer at the inception of the

20   third party lawsuit and not on the ultimate issue of coverage.  *Id.*  The *Endurance* court

21   held that the insured was entitled to summary judgment on their duty to defend claim,

22   notwithstanding the insurer's rescission defense.  *Id.* at 32.

23       In its opposition, Liberty attempts to distinguish *Endurance* by asserting that the

24   insurer in that case did not present evidence in support of its rescission claim.

25   However, Liberty is no different.  Specifically, in *Endurance*, the court described the

26   insurer's lack of evidence as follows:

27       …the duty to defend turns upon the 'facts known by the insurer
        at the inception of the third party lawsuit' not on the ultimate
28       issue of coverage.  See *Haskel, Inc.*, 33 Cal.App.4th at 974.

> Endurance provides no evidence demonstrating that at the time it made its decision it could prove there was no potential for coverage under its policy, therefore, the rescission argument does not preclude judgment on the duty to defend claim. *Endurance*, 2012 U.S. Dist. LEXIS at 21.

Here, just like the insurer in *Endurance*, Liberty has not provided evidence demonstrating that at the time it denied coverage it could prove there was no potential for coverage under its policy. To the contrary, Liberty repeatedly complains – both in its opposition and its statement of genuine issues – that it should have the opportunity to conduct formal discovery on the facts at issue in Ironwood's motion. In begging to conduct discovery, Liberty admits that it lacks evidence to support its coverage denial – both now and at the time Liberty made its decision. Accordingly, Liberty is no different than the evidence-lacking insurer in *Endurance* and its effort to distinguish *Endurance* is unavailing.

As Ironwood predicted in its motion, Liberty cites *Rocklin Park Place Condominium Owners Assoc. v. Liberty Ins. Underwriters, Inc.*, 2013 U.S. Dist. LEXIS 127669, 2:12-cv-02247-TLN-CKD (E.D. Cal., Sept. 6, 2013) and *Atmel Corp. v. St. Paul* 416 F. Supp. 2d 802 (N.D. Cal. 2006), arguing that by merely asserting a rescission claim, Liberty can avoid its insured's summary judgment on the duty to defend. Liberty's argument is misplaced. Both cases are contrary to well-established California law on the immediacy of the duty to defend. After all, the practical effect of the *Rocklin Park Place* and *Atmel* decisions is to allow insurance companies to shirk their defense obligations by merely alleging rescission. No California court has ever so held. And, in fact, neither *Rocklin Park Place* nor *Atmel* considered the myriad of California cases that have clearly held that the duty to defend is immediate and that insurers can only avoid that duty if they have conclusive evidence to the affect that there is no such duty. *See, e.g., Montrose Chem. Corp. v. Superior Court* ("*Montrose I*"), 6 Cal. 4th 287, 295-96, 24 Cal. Rptr. 2d 467, 471-72 (1993). Here, Liberty has no evidence, much less conclusive evidence, that it has no duty to defend Ironwood.

/ / /

Reply ISO Ironwood's *Amended* Motion for Partial Summary Judgment

But, Liberty goes even further.  Liberty actually claims – without citing any supporting additional authority from California or any other jurisdiction – that these two cases "are far better supported in the law" than *Endurance*.  Nothing could be further from the truth.  Not only are *Rocklin Park Place* and *Atmel* completely at odds with California law, courts around the country – including those in Liberty's own home state of New York – have consistently held that until a rescission claim is adjudicated, an insurance policy remains in effect and the insurer's duties and obligations are enforceable.

For example, in *In Re Worldcom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455 (S.D.N.Y. 2005), an insured director under a D&O liability policy sought defense fees and costs in connection with ongoing securities litigation.  *Id.* at 458-59.  The insurer asserted a rescission defense based on the submission of allegedly false information with the insurance application.  *Id.*  After explaining New York law on the "heavy" duty to defend, and after noting that the burden of establishing a material misrepresentation is on the insurer (both of which are consistent with California law), the court concluded that the duty to defend and pay defense costs is enforceable until the issue of rescission is adjudicated.  *Id.* at 464-65.  The court also pointed out that, after surveying the law of several jurisdictions, it found that where an insured has challenged the right of an insurer to rescind its policy, courts have enforced the obligation of insurers to perform under the policies and to defend or pay defense costs.  *Id.* at 466.

Similarly, in *National Railroad Passenger Corp. v. ERC Frankona Ruckvericherungs-AG*, 2005 U.S. Dist. LEXIS 43490, Civil Action No. 03-2420 (D.D.C., June 24, 2005), the insured filed a motion for partial summary judgment seeking a declaratory judgment that the insurer remained bound by the contractual obligations imposed by its insurance policies pending resolution of the insurer's rescission claims.  *Id.* at 2.  The court explained that "the law in this and other jurisdictions clearly favors holding insurers to their contractual obligations pending judicial resolution of rescission claims."  *Id.* at 6.  In rejecting the insurer's arguments,

1  the court emphasized "the myriad cases, in this and other jurisdictions, establishing that
2  insurers are bound by their policies while their rescission claims are litigated." *Id.* at 8-
3  9.   And, in holding that the insurer remained bound by the duties imposed by its
4  policies pending resolution of the rescission issue, the court pointed out that the
5  "abundant case law is complemented by a number of policy concerns" and that
6  "[insurers] do not function as courts of law . . . [t]he whole point to the insurance
7  coverage duty… is to afford insureds some security and peace of mind when claims
8  contemplated by the policy are brought." *Id.* at 9-10 (internal citation omitted).

9  　　　In yet another example, the court in *Assoc. Elec. & Gas Ins. Servs., Ltd. v. Rigas*,
10  382 F. Supp. 2d 685 (E.D. Pa. 2004) was asked to decide whether the insurers had an
11  obligation to pay defense costs before adjudication of the insurers' claim of lack of
12  coverage or rescission.  *Id.* at 689.  The court noted that a number of cases in other
13  jurisdictions "reflect a consistent position that, because a contract is in effect until the
14  issue of rescission is adjudicated, an insurer is bound by the obligations in that contract
15  to advance defense costs until the contract is found to be rescinded." *Id.* at 691.  The
16  court went on to reject the insurers' argument that defense costs need not be advanced
17  pending the litigation of the rescission claim.  *Id.* at 692.

18  　　　Indeed, the above cases from other jurisdictions are but a few of the many cases
19  from around the country holding that an insurer's duties and obligations under its
20  policy remain in effect until the rescission claim is fully litigated.  *See, e.g., National*
21  *Union Fire Ins. Co. v. Brown*, 787 F. Supp. 1424 (S.D. Fla. 1991) (insurer must pay
22  insured's defense costs until rescission claim fully litigated).  These cases are entirely
23  consistent with the court's holding in *Endurance* and patently inconsistent with *Rocklin*
24  *Park Place* and *Atmel*.  As such, Liberty's claim that *Rocklin Park Place* and *Atmel*
25  "are far better supported in the law" should be rejected.

26  　　　Notwithstanding the myriad of cases from around the country that undermine
27  Liberty's claim that *Rocklin Park Place* and *Atmel* "are far better supported in the law,"
28  Liberty argues that insurers should not be put in a position of having to recoup defense

1  costs paid out on a policy should they prevail on their rescission claim.  Of course, this
2  argument assumes that the insurer will prevail on its rescission claim.  What if the
3  insurer loses?  Then the insured will have been severely damaged.  It is just that kind of
4  damage that Ironwood seeks to avoid or at least minimize by this motion.  It would be
5  much more unfair to put the insured in the position of having to recoup defense fees
6  and costs that it advanced if the insurer eventually does not prevail on its rescission
7  claim, especially given the vastly superior resources of insurance companies.  And,
8  especially where, as here, the insurer has no uncontroverted evidence to support its
9  rescission claim.  Moreover, Liberty's policy argument is contrary to well-established
10  California law on the immediacy of the duty to defend (which are cited at length in
11  Ironwood's moving papers) and should be rejected.

12  **IV.  <u>LIBERTY IS NOT ENTITLED TO DISCOVERY TO FISH FOR</u>**
13  **<u>EVIDENCE TO CONCOCT A HINDSIGHT JUSTIFICATION FOR</u>**
14  **<u>BREACHING ITS DUTY TO DEFEND</u>**

15  Liberty complains that it needs to conduct formal discovery to oppose
16  Ironwood's motion.  Opposition, p. 14.  However, Liberty offers no authority in support
17  of its argument that it should be allowed to conduct discovery to obtain the facts it
18  needs to justify its opposition.  This is because California courts have already rejected
19  this very same argument and made it clear that insurers cannot avoid a determination of
20  their duty to defend by claiming that they need more discovery.  *See, e.g.*, *Haskel*, 33
21  Cal. App. 4th at 977 (insurer not entitled to discovery prior to summary judgment on
22  the duty to defend because they were either aware of undisputed extrinsic evidence
23  which conclusively established that there was no potential for coverage or they were
24  not).  So, too, have federal courts applying California law.  *See, e.g.*, *Endurance*, 2012
25  U.S. Dist. LEXIS 153864, 9-10 (explaining that the duty to defend is not analyzed after
26  discovery).  Thus, Liberty's bid for more time to conduct discovery is a non-starter.
27  Indeed, Liberty's argument is not well taken, given its patent delays in conducting such
28  discovery in this case and even after this motion was filed.  Liberty has had more than a

month since Ironwood filed the instant motion on December 30, 2013 to conduct discovery, but has not done so.  Having failed to conduct any discovery since Ironwood filed this motion, Liberty's stated need to conduct discovery does not pass the straight-face test.

Moreover, as Liberty is well aware, the <u>only</u> relevant matters that are considered in determining whether Liberty owes a defense are: (1) the terms of the policy; (2) the allegations of the third party's complaint against Ironwood; and (3) the extrinsic facts known to Liberty <u>at the time of the inception of a third party lawsuit</u>.  *Haskel*, 33 Cal. App. 4th at 974.  As a matter of law, Liberty cannot use subsequently discovered facts to justify by hindsight its earlier refusal to defend. *See, e.g.*, *Mullen v. Glens Falls Ins. Co.*, 73 Cal. App. 3d 163, 173-74, 140 Cal. Rptr. 605, 611-12 (1977); *Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.*, 68 Cal. App. 4th 1030, 1044, 80 Cal. Rptr. 2d 688, 696-97 (1998).  And subsequently discovered facts do not retrospectively apply to justify Liberty's earlier refusal to defend. *Wausau*, 68 Cal. App. 4th at 1047.  Consequently, for purposes of this motion, in determining Liberty's duty to defend Ironwood, the only potentially relevant information, documents and/or materials are those on which Liberty relied at the time it withdrew coverage and refused to defend Ironwood. Liberty cannot rely on any other newly-discovered facts to justify its prior refusal to defend Ironwood in the Cobb matter.

Directly on point to this very circumstance is *Haskel*, 33 Cal. App. 4th 963.  It is telling that Liberty ignored this case in its opposition.  The court in *Haskel* summarized the issue as follows:

> This case raises the question of just how that rule [requiring an insurer provide an immediate defense upon tender] impacts upon the right of an insurer, who has denied any defense obligation, to conduct discovery on an insured's motion for summary adjudication of the defense issue…. We conclude that Haskel was entitled to have its summary adjudication motion considered and, if (1) a showing of a potential for coverage under the several policies is made, and (2) the insurers do not produce undisputed evidence which conclusively eliminates any possibility of coverage, the motion should be granted. *Id.*

at 968-69.

In this case, it is undisputed that the claims asserted against Ironwood in the Cobb action are potentially covered.  RSUF, ¶ 37.  Liberty's sole basis for withdrawing from the defense is a coverage argument that Liberty now acknowledges it cannot prove without conducting discovery (to which it is not entitled).  By requesting an opportunity to conduct discovery to oppose Ironwood's motion, Liberty is effectively admitting that it has no evidence (or at least uncontroverted evidence that conclusively eliminates any possibility of coverage, as required under California law) to support its current coverage position and, thus, no evidence to support its abandonment of Ironwood's defense in this case.

Indeed, in suggesting that it needs discovery in order to defeat Ironwood's claim for a defense, Liberty places itself in exactly the same position as the carriers in *Haskel*, which, in turn, makes the following observation by the *Haskel* court particularly apt:

> The insurers were either aware of such [undisputed extrinsic evidence which conclusively establishes that there is no potential for coverage] or they were not; they did not need discovery from Haskel to determine the existence of that evidence.…  If, on the other hand, they did not have such conclusive evidence, then they could not successfully oppose Haskel's claim for an immediate judicial recognition of the fact that a defense obligation then existed.  *Id.* at 977.

Here, Liberty is either aware of evidence to support its coverage denial or it is not.  And, if it does not have that evidence now (without additional discovery), then Liberty acted wrongfully in refusing to defend Ironwood and in abandoning Ironwood's defense in the Cobb action.  For all the reasons set forth above, Liberty cannot seek discovery to try to justify, after-the-fact, its denial of coverage and abandonment of Ironwood. Liberty's argument that a ruling on this motion must be put off until after discovery has been conducted should be rejected.

/ / /

/ / /

/ / /

Reply ISO Ironwood's *Amended* Motion for Partial Summary Judgment

**V.**   **LIBERTY HAS A DUTY TO DEFEND IRONWOOD IN THE UNDERLYING ACTION**

After admitting that it lacks sufficient evidence and needs to conduct discovery to support its denial of coverage, Liberty does an about-face and claims that its coverage denial was proper.  Opposition, p. 21-25.  As acknowledged in its opposition, Liberty's sole basis for withdrawing coverage and abandoning Ironwood's defense is the alleged "no" response to Question No. 14 on the Liberty Application, which asked whether Ironwood was aware of an "act, error, omission, fact, or circumstance" that could give rise to a later claim.  Liberty contends that the billing entries set forth in the Pre-Tender Invoices show that prior to the October 2011 application for the Liberty policy, Ironwood was aware of facts and circumstances which might give rise to a claim.  Liberty thus concludes that Ironwood lied on its application and that the Question No. 14 Exclusion applies and bars all coverage for the underlying Cobb action.

In its opposition, Liberty does not cite a single authority to support its claim that a prospective insured is required to disclose the fact that it is talking about doing something or talking about changing a business practice that, if done, might lead to a later claim.  Liberty also does not cite a single authority to support its claim that Question No. 14 requires a prospective insured to disclose what the insured was merely talking about doing, if at all, in the future.  The only authority that Liberty cites in its opposition is the very same authority discussed in Ironwood's motion – *Advanced Micro Devices v. Great Am. Surplus Lines Ins. Co.*, 199 Cal. App. 3d 791, 245 Cal. Rptr. 44 (1988); *Resure, Inc. v. Superior Court*, 42 Cal. App. 4th 156, 159, 49 Cal. Rptr. 2d 354, 355 (1996); and *Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.*, 64 Cal. App. 3d 261, 269-70, 134 Cal. Rptr. 427, 431 (1976).  However, Liberty's attempt to twist and contort these cases into somehow supporting its position is unavailing.

/ / /

Reply ISO Ironwood's *Amended* Motion for Partial Summary Judgment

Indeed, as set forth in Liberty's opposition, these cases involved situations where a wrongful act or accident giving rise to the claim had <u>already</u> occurred or a demand letter and threat of future litigation had <u>already</u> been received prior to the submission of the insurance application. For example, in *Advanced Micro Devices*, the undisputed evidence showed that the insured had actual knowledge that the wrongful act (contamination) had <u>already</u> occurred before submitting an insurance application that denied being aware of any circumstance that might give rise to a claim. 199 Cal. App. 3d at 794-801.  In *Resure*, the insureds had <u>already</u> be named as defendants in at least four lawsuits at the time they submitted an insurance application denying any prior claims or occurrences during the past five years. 42 Cal. App. 4th at 158-59. And, in *Williamson & Vollmer*, the insured had <u>already</u> received a demand letter notifying it of deficiencies in its work before submitting an insurance application denying that it was aware of any circumstances that might give rise to a claim. 64 Cal. App. 3d at 267-69.

In stark contrast to these cases, Ironwood's alleged wrongful act (the January 2012 vote to change on of its business practices) had <u>not</u> already taken place when Ironwood submitted the Liberty Application three months earlier.  Also, the May 2012 demand letter from Cobb was not received until several months <u>after</u> submission of the Application.  And that demand letter sought relief for the January 2012 vote and not for anything Ironwood was discussing or considering before then.  Accordingly, Liberty's effort to distinguish these cases is not well-taken, especially since Liberty cites no authority of its own to support its position regarding Question No. 14.

Instead of supporting its position with legal authority, Liberty complains that Ironwood has taken a "remarkably narrow interpretation of the Application inquiry." Opposition p. 22, ll. 2-3.  Yet, such a "narrow interpretation" is exactly what is required under California law, where Liberty must apply and construe exclusions and limitations on coverage narrowly and in favor of Ironwood (*See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 101-02, 109 Cal. Rptr. 811, 816 (1973)) and where any doubt with respect to coverage must be resolved in Ironwood's favor (*MacKinnon v.*

1   *Truck Ins. Exch.*, 31 Cal. 4th 635, 656, 3 Cal. Rptr. 3d 228, 245 (2003)).  In short,

2   Liberty's argument that the Application should be broadly construed is contrary to

3   California law and should be rejected.

4   **VI.   LIBERTY MUST REIMBURSE IRONWOOD FOR DEFENSE FEES AND**

5   **COSTS**

6          While expressly reserving all of its rights under California law to seek additional

7   defense fees and costs incurred by Ironwood (including the difference between the

8   discounted hourly rate ($275) and Mr. Gerstel's full hourly rate ($425)), Ironwood's

9   motion seeks an order that Liberty must immediately reimburse Ironwood for the fees

10  and costs Ironwood incurred (at the discounted hourly rate of $275 and after subtracting

11  Ironwood's payment of the $10,000 retention under the Liberty policy) in defense of

12  the Cobb Lawsuit from May 15, 2012 (the date that Ironwood gave notice to Liberty) to

13  February 26, 2013 (the date that Liberty withdrew from Ironwood's defense in the

14  Cobb Lawsuit).  In its opposition, Liberty fails to offer any substantive discussion of

15  this issue.  Instead, Liberty offers a mere footnote stating its unsubstantiated conclusion

16  that Ironwood's claim for reimbursement should be denied.  Opposition, p. 13, fn. 24.

17         Given Liberty's complete and utter failure to provide any controverting facts or

18  authority, it is undisputed that, by using the discounted $275 hourly rate that Liberty

19  agreed to pay for Ironwood's defense, the amount of defense fees and costs unpaid by

20  Liberty from May 15, 2012 through February 26, 2013 totals $56,569.36 after

21  subtracting the $10,000 retention payment made by Ironwood.  RSUF, Nos. 62-71.

22  Ironwood therefore respectfully submits that the Court should order Liberty to

23  immediately reimburse Ironwood the sum of $56,569.36.

24  **VII.  THE PRE-TENDER INVOICES ARE SUBJECT TO THE ATTORNEY-**

25  **CLIENT PRIVILEGE AND MUST BE RETURNED TO IRONWOOD**

26         Liberty's opposition argues that the Pre-Tender Invoices are not subject to the

27  attorney-client privilege.  However, the authority cited in support of this argument

28  demonstrates, at best, Liberty's fundamental misunderstanding of the law or, at worst, a

deliberate attempt to mislead the Court.  Federal Rule of Evidence 501 requires that federal common law govern issues of evidentiary privileges in cases arising under federal law, and that state law applies to claims governed by state law.  Fed. R. Evid. 501.  In a federal action based on diversity jurisdiction, as here, state law governs privilege claims. *Bible v. Rio Props, Inc.*, 246 F.R.D. 614, 617 (C.D. Cal. 2007) (citing Fed. R. Evid. 501).  Thus, California law – not federal common law – applies to the privilege claims at issue in this case.

Liberty's opposition completely ignores the foregoing, as almost all of the cases cited by Liberty in its opposition apply federal common law.  For example, Liberty cites *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) for the proposition that a party asserting the attorney-client privilege must affirmatively demonstrate that the privilege has not been waived.  Opposition, p. 15, ll. 7-11.  *Weil* applied federal common law and, thus, is not applicable to this case. Under California law, waiver of statutory privileges, including the attorney-client privilege, is narrowly construed.  *Garcia v. Progressive Choice Ins. Co.*, 2012 U.S. Dist. LEXIS 105932, 9, 11-CV-466-BEN(NLS) (S.D. Cal. 2012) (applying California law regarding attorney-client privilege).  And, contrary to the federal common law applied in *Weil*, California law places the burden of proof on the opponent of the privilege claim to establish that the communication was not confidential or that the privilege does not for other reasons apply. *Id.* at 8.

Here, for all the reasons set forth herein and in Ironwood's moving papers, Liberty has not and cannot meet its burden to establish that the Pre-Tender Invoices were not confidential or that the attorney-client privilege does not for other reasons apply.  Instead, Liberty goes on to argue that, because the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to their attorney.  Opposition, p. 16, ll. 3-7.  In support of this argument, Liberty cites *Fisher v. United States*, 425 U.S. 391 (1976) and *Tornay v. United States*,

840 F.2d 1424 (9th Cir. 1988), both of which applied federal common law and, thus, neither of which apply in this case.  Indeed, contrary to Liberty's argument, the California Supreme Court has recognized that while the application of the privilege may result in the suppression of relevant evidence, the California legislature has nonetheless determined that such concerns are outweighed by the importance of preserving the attorney-client relationship.  *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 732, 101 Cal. Rptr. 3d 758, 763.  As a result, the privilege "is absolute and disclosure may not be ordered without regard to relevance, necessity or any particular circumstances peculiar to the case." *Id.*  Thus, under California law, the attorney-client privilege applies even when the information sought is relevant and even when it prevents disclosure of information prejudicial to the party asserting the privilege.    And, while Ironwood's moving papers discuss *Costco* in detail, any reference to the case, much less a discussion of its applicability, is conspicuously absent from Liberty's opposition.

Liberty next contends that Ironwood must show that the Pre-Tender Invoices contain such detail that they reveal the client's litigation strategy or nature of services provided by the attorney.  Opposition, p. 16, ll. 8-10.  In support of this contention, Liberty cites *In re Grand Jury Witness*, 695 F.2d 359 (9th Cir. 1982), which, like most of the other cases cited by Liberty, applied federal common law and is therefore inapplicable.  And, as badly as Liberty might try to stretch the boundaries of reality, California law simply does not construe the attorney-client privilege so narrowly.

Instead, the broad scope of the attorney-client privilege under California law protects any confidential communication between the attorney and client.  Cal. Evid. Code, § 954.  A "confidential communication" means information transmitted between the attorney and their client in the course of the attorney-client relationship and in confidence.  Cal. Evid. Code, § 952.  A "communication" is broadly construed to refer to <u>any</u> means of conveying information.  *City & County of San Francisco v. Superior Court*, 37 Cal. 2d 227, 235-36, 231 P.2d 26, 30 (1951).  And, any and all

1  communications between an attorney and their client are presumed to have been made

2  in confidence, thereby shifting the burden to the opposing party to establish the

3  communication was somehow not confidential.  Cal. Evid. Code, § 917(a).  Thus,

4  Liberty has the burden to establish that the Pre-Tender Invoices are not subject to the

5  attorney-client privilege.

6         Here, Liberty has not and cannot meet its burden.  It is undisputed that the Pre-

7  Tender Invoices constitute information transmitted between an attorney (Mr. Gerstel)

8  and his client (Ironwood).  RSUF, Nos. 40-49.  It is also undisputed that the Pre-Tender

9  Invoices contain attorney-client communications describing legal services performed

10  by Mr. Gerstel for Ironwood on various matters unrelated to the defense of the Cobb

11  matter.  RSUF, No. 40.  Furthermore, it is undisputed that Ironwood and Mr. Gerstel

12  have always kept the Pre-Tender Invoices and their contents confidential in the normal

13  course of their attorney-client relationship.  RSUF, No. 41.  As such, it is undisputed

14  that the Pre-Tender Invoices constitute information transmitted between an attorney

15  (Mr. Gerstel) and his client (Ironwood) in the course of the attorney-client relationship

16  and in confidence.  The Pre-Tender Invoices are absolutely protected by the attorney-

17  client privilege.

18         Liberty next argues that Ironwood waived the attorney-client privilege by

19  submitting them to Ironwood for reimbursement.  However, waiver of a statutory

20  privilege is narrowly construed under California law.  *Garcia*, 2012 U.S. Dist. LEXIS

21  105932 at 9; *Roberts v. Superior Court*, 9 Cal. 3d 330, 343, 107 Cal. Rptr. 309 (1973).[2]

22  The waiver must be a voluntary and knowing act that is done with sufficient awareness

23  of the relevant circumstances and likely consequences.  *Roberts*, 9 Cal. 3d at 343.

24  Thus, any waiver of the attorney-client privilege must be intentional and the privilege

25  cannot be waived by inadvertent disclosure.

26

27  [2] Liberty claims that *Roberts* is not applicable because it discussed the patient-psychotherapist

28  privilege.  However, this privilege and the attorney-client privilege are each statutorily created under California law and, thus, the discussion of waiver in *Roberts* applies equally to both privileges.

1    Here, there was no voluntary and knowing waiver that was done with sufficient
2    awareness of the relevant circumstances and likely consequences.  Instead, the Pre-
3    Tender Invoices were inadvertently disclosed to Liberty.  As Liberty admits in its
4    opposition, Ironwood's insurance broker, Mr. Lux, sent the Pre-Tender Invoices to
5    Liberty with an email indicating that they reflected the payments made to defense
6    counsel, Mr. Gerstel, "on the Ironwood claim."  Opposition, p. 4, ll. 6-7.  Yet, the Pre-
7    Tender Invoices did not include any entries concerning the "Ironwood claim."  This
8    serves to underscore the fact that the Pre-Tender Invoices were mistakenly and
9    inadvertently submitted to Liberty.  Given that it is undisputed that the Pre-Tender
10   Invoices do not include any billing entries related to the defense of the Cobb claim
11   (RSUF, No. 39), and given that the Pre-Tender Invoices were wrongly stated to concern
12   the Cobb claim, it was clearly and indisputably by innocent mistake that the Pre-Tender
13   Invoices were submitted to Liberty with the Post-Tender Invoices (which actually
14   contain entries concerning the Cobb claim).

15       Furthermore, even if Mr. Tanner was sufficiently aware of the relevant
16   circumstances and likely consequences of disclosing the Pre-Tender Invoices to Liberty
17   (he was not) so as to arguably constitute a "voluntary and knowing waiver," the fact of
18   the matter is that Ironwood (and not Mr. Tanner) is the holder of the privilege.  Cal.
19   Evid. Code, § 953(a).  Any such waiver would require authorization from Ironwood's
20   Board, which Mr. Tanner neither asked for nor received.  RSUF, Nos. 43-46.

21       Moreover, the undisputed facts do not support a finding that Ironwood intended
22   to waive the attorney-client privilege.  Ironwood and Mr. Gerstel always kept Mr.
23   Gerstel's invoices and their contents confidential in the normal course of its attorney-
24   client relationship and the Pre-Tender Invoices were not provided to Liberty with any
25   intention of waiving the attorney-client privilege.  RSUF, Nos. 41-42.  And, when
26   Ironwood realized that the Pre-Tender Invoices had been inadvertently disclosed to
27   Liberty, Ironwood took immediate steps to have Liberty return the invoices and destroy
28   any and all copies in their possession.  RSUF, No. 57.  In short, given the

1    circumstances of this case, Liberty cannot reasonably maintain that Ironwood
2    intentionally waived the privilege – especially when the scope of the privilege is so
3    broadly applied and the waiver doctrine so narrowly construed.

4         Liberty next argues that Ironwood's disclosure of the Pre-Tender Invoices to
5    Liberty was not inadvertent.  In support of this argument, Liberty relies on authority
6    applying Georgia law (*Compare Lazr v. Mauney*, 192 F. R.D. 324 (N.D. Ga. 2000)) and
7    Illinois law (*Central Die Casting & Mfg. Co., Inc. v. Tokheim Corp.*, 1994 U.S. Dist.
8    LEXIS 11411 (N.D. Ill. 1994)), as well as numerous cases applying federal common
9    law.  Opposition, p. 20, fns. 31 and 32.  Liberty also cites *Flores v. Albertson's, Inc.*,
10   2004 U.S. Dist. LEXIS 29083, CV 01-0515 PA (SHx) (C.D. Cal., April 9, 2004) and
11   *U.S. ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170 (C.D. Cal. 2001) and claims that that
12   "[c]ourts in the central district have adopted a five-factor test for determining whether a
13   party's disclosure was inadvertent."  Opposition, p. 18, ll. 2-8.  However, both of these
14   cases applied federal common law.  Thus, while courts in the central district may very
15   well have adopted this five-factor test for determining inadvertent disclosure under
16   federal common law, this test is simply not applicable, because California law and not
17   federal common law controls.  Under California law, courts asked to determine whether
18   there has been an inadvertent disclosure of privileged information examine both the
19   subjective intent of the holder of the privilege and the relevant surrounding
20   circumstances for any manifestation of the holder's consent to disclose the information.
21   *State Compensation Ins. Fund v. WPS, Inc.*, 70 Cal.App.4th 644, 652-53, 82 Cal. Rptr.
22   2d 799, 805 (1999).

23        Here, for all the reasons discussed above, it is undisputed that Ironwood's
24   subjective intent was not to waive the attorney-client privilege and the relevant
25   surrounding circumstances do not show any manifestation of Ironwood's consent to
26   disclose the privileged information.  To the contrary, as Liberty admits in its
27   opposition, Ironwood's insurance broker, Mr. Lux, sent the Pre-Tender Invoices to
28   Liberty with an email indicating that they reflected the payments made to defense

1  counsel, Mr. Gerstel, "on the Ironwood claim."  Opposition, p. 4, ll. 6-7.  However, it is
2  undisputed that the Pre-Tender Invoices do not include any billing entries related to the
3  defense of the Cobb claim.  RSUF, No. 39.  Thus, Mr. Lux's email underscores the fact
4  that the Pre-Tender Invoices were mistakenly and inadvertently submitted to Liberty.
5  Thus, when applying California law in lieu of the inapplicable five-factor test discussed
6  in Liberty's opposition, it is clear that Ironwood's disclosure of the Pre-Tender Invoices
7  to Liberty was inadvertent.

8      Lastly, Liberty argues that it would be counter-intuitive to deem the Pre-Tender
9  Invoices as subject to the attorney-client privilege but not the Post-Tender Invoices.
10  Opposition, p. 21, ll. 1-3.  This is an intellectually dishonest argument.  The Post-
11  Tender invoices fall within the tripartite relationship between defense counsel, the
12  insurer and the insured, which is created once an insurer, as Liberty did here, agrees to
13  provide a defense to its insured.  *Bank of America, N.A. v. Superior Court*, 212 Cal.
14  App. 4th 1076, 1090, 151 Cal. Rptr. 3d 526, 536 (2013).  Thus, Liberty's "counter-
15  intuitive" argument is rubbish.

16      In an effort to end-run the attorney-client privilege applicable to the Pre-Tender
17  Invoices, Liberty's opposition resorts to inadmissible hearsay by quoting portions of its
18  own self-serving letters that purport to quote the very billing entries in dispute (i.e., the
19  billing entries that Ironwood contends are privileged).  Opposition, p. 5, ll. 12-15; p. 6,
20  ll. 1-2; 17, ll. 2-7.  As set forth in Ironwood's objections to evidence filed concurrently
21  herewith, Ironwood objects to and moves to strike any and all portions of Liberty's
22  opposition that purport to quote the privileged billing entries contained in the Pre-
23  Tender Invoices.

24      Moreover, Ironwood has repeatedly demanded that Liberty return the Pre-Tender
25  Invoices. RSUF, No. 57.  Liberty has refused, has stated in its initial disclosures that it
26  intends to use the Pre-Tender Invoices to support its defenses in this coverage action
27  (RSUF, Nos. 58-59), and has now resorted to the public filing of a document that
28  purports to quote the very billing entries in dispute.  As such, Ironwood respectfully

Reply ISO Ironwood's *Amended* Motion for Partial Summary Judgment

1  submits that good cause exists for an order directing Liberty to immediately return to
2  Ironwood any and all copies (digital, paper or otherwise) of the Pre-Tender Invoices
3  and prohibiting Liberty from using said invoices in any way and for any purpose in this
4  action.

5  **VIII.**  **<u>CONCLUSION</u>**

6       Based upon the foregoing, Ironwood respectfully requests that the Court grant
7  Ironwood's *amended* motion for partial summary judgment and order as follows: (1)
8  Liberty has a duty to defend Ironwood in the underlying Cobb Lawsuit; (2) Liberty
9  must immediately reimburse Ironwood the sum of $56,569.36 for the fees and costs
10 Ironwood incurred (at the agreed-upon hourly rate of $275 and after subtracting
11 Ironwood's payment of the $10,000 retention under the Liberty policy) in defense of
12 the Cobb Lawsuit from May 15, 2012 (the date that Ironwood gave notice to Liberty) to
13 February 26, 2013 (the date that Liberty withdrew from Ironwood's defense in the
14 Cobb Lawsuit); and (3) Liberty must immediately return to Ironwood any and all
15 copies (digital, paper or otherwise) of the Pre-Tender Invoices and Liberty is prohibited
16 from using said invoices in any way and for any purpose in this action.

17 DATED: February 10, 2014          McLEOD LAW GROUP, A.P.C.

18

19                                 By: ___/s/ Paul C. Hirst_____
20                                    John J. McLeod, Esq.
21                                    Paul C. Hirst, Esq.
                                      Attorneys for Plaintiff, Ironwood Country
22                                    Club

23

24

25

26

27

28

19

Reply ISO Ironwood's *Amended* Motion for Partial Summary Judgment