# EXHIBIT "A"

**Jeffrey S. Whittington**

| | |
|---|---|
| **From:** | Jeffrey S. Whittington |
| **Sent:** | Monday, February 03, 2014 4:05 PM |
| **To:** | John McLeod; 'Paul Hirst' |
| **Subject:** | Ironwood v. Liberty - Opposition to Motion for PSJ |
| **Attachments:** | DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGEMENT.pdf; DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN SUPPORT OF OPPOSITION.pdf; DEFENDANT'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF.pdf; ironwood country club  declaration of Sean Choi.pdf; DECLARATION OF JEFFREY S. WHITTINGTON PURSUANT TO FED. R. CIV. P. 56(d) IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.pdf; [PROPOSED] ORDER REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARYJUDGMENT.pdf |

John/Paul,

Attached please find Liberty's briefing in Opposition to Ironwood's Motion for Partial Summary Judgment.  We are having formatting issues that are preventing our filing of these documents, so I wanted you to have them now.

Jeffrey S. Whittington  I  **KAUFMAN BORGEEST & RYAN LLP**
23975 Park Sorrento, Suite 370  I  Calabasas, CA 91302
direct: 818.961.8006  I  fax: 818.880.0993
vcard  I  email  I  website

1

Jeffrey S. Whittington, Esq./SBN 236028
Email: jwhittington@KBRlaw.com
Miriam M. Gregory, Esq./SBN 281083
KAUFMAN BORGEEST & RYAN LLP
23975 Park Sorrento, Suite 370
Calabasas, CA 91302
Telephone: (818) 880-0992
Facsimile: (818) 880-0993

Attorneys for Defendant,
Liberty Insurance Underwriters, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| IRONWOOD COUNTRY CLUB,<br><br>        Plaintiffs,<br><br>    vs.<br><br>LIBERTY INSURANCE UNDERWRITERS, INC. and DOES 1 through 100,<br>        Defendants. | Case No.13-00996-VAP(DTBx)<br><br>**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGEMENT**<br><br>Hearing Date:  February 24, 2014<br>Hearing Time:  2:00 p.m.<br>Courtroom:     2<br><br>Complaint Filed: May 1, 2013<br>Trial Date:      August 5, 2014<br><br>Filed concurrently with:<br>1.  Statement of Genuine Disputes and Statement of Undisputed Facts<br>2.  Evidentiary Objections to Ironwood's Motion for Partial Summary Judgment<br>3.  Declaration of Jeffrey S. Whittington;<br>4.  Declaration of Seon Choi<br>5.  [Proposed] Order |

1

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:** PLEASE TAKE NOTICE that Defendant, LIBERTY INSURANCE UNDERWRITERS, INC. ("Liberty"), hereby opposes Plaintiff, IRONWOOD COUNTRY CLUB'S ("Ironwood") Motion for Partial Summary Judgment ("Motion").

# TABLE OF CONTENTS

Page

I.  INTRODUCTION                                                                1

II.  STATEMENT OF FACTS                                                         4

III.  LEGAL ARGUMENTS                                                           7

    A.  STANDARD FOR (PARTIAL) SUMMARY JUDGEMENT

    B.  IRONWOOD IS NOT ENTITLED TO PARTIAL SUMMARY
       JUDGMENT GIVEN LIBERTY'S AFFIRMATIVE DEFENSE
       OF RESCISSION                                                      9

       1.  THE MOTION SHOULD BE DENIED AS THERE
          EXISTS A MATERIAL FACTUAL DISPUTE AS TO
          WHICH APPLICATION IS APPLICABLE                            13

       2.  LIBERTY IS ENTITLED TO DISCOVERY                            14

    C.  THE PRE-TENDER INVOICES ARE NOT SUBJECT TO THE
       ATTORNEY-CLIENT PRIVILEGE                                          15

       1.  The Attorney-Client Privileged Does Not Apply to
          Ironwood's Pre-Tender Invoices                             15

       2.  Ironwood's Disclosure of the Invoices Was Not
          "Inadvertent" and Ironwood Has Waived the Attorney
          Client Privilege                                           17

    D.  LIBERTY'S DENIAL OF COVERAGE WAS PROPER AND
       LIBERTY HAS NO DUTY TO DEFEND IRONWOOD                             21

IV.  CONCLUSION

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

# **TABLE OF AUTHORITIES**

DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT

2449992

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

In opposition to Ironwood's Motion, Liberty submits this Memorandum of Points and Authorities along with the Documents filed concurrently herewith. Essentially, Ironwood demands that this Court grant its Motion based on Ironwood's Complaint and a series of self-serving Declarations submitted as "evidence" in support of its Motion.  Ironwood must rely on these Declarations for its Motion as the only discovery completed to date is the Initial Disclosures; no other discovery has been conducted or completed.[1]

Indeed, several of the so-called "Undisputed Facts" contained in Ironwood's SUF Facts involve purely legal conclusions or hearsay internal conversations between Ironwood personnel and/or its insurance broker.  Furthermore, many of these "Undisputed Facts" actually *support* Liberty's claim that Ironwood was aware of facts or circumstances that may give rise to a Claim when Ironwood submitted the Application.   Since no discovery has taken place (although Liberty absolutely intends to take such discovery), it is simply premature for Ironwood to ask this Court to definitively state as a matter of law that there are no genuine issues of material fact.  Indeed, Ironwood's decision to file its Motion *before*

---

[1] See Declaration of Jeffrey S. Whittington at ¶¶ 3, 5.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

discovery takes place, and to preventing the court from a full and fair opportunity to actually consider legitimate evidence in this matter is quite remarkable.

Furthermore, Ironwood made material misrepresentations in its Application for insurance that Liberty relied upon to its detriment in issuing the Policy (the *prima facie* case for rescission), and is the subject of one of Liberty's affirmative defenses.   Based on the available information, there are key material facts in dispute that necessitates denial of Ironwood's Motion.   Lastly, coverage was properly denied based upon Sections 6.1 and 6.2 and the Application of the Policy as the Pre-Tender Invoices show that Ironwood had knowledge or information of an act, fact, or circumstances that may give rise to a Claim when it had completed its Application for the insurance.

## II.   STATEMENT OF FACTS

On or about October 5, 2011, Ironwood submitted to Liberty an Application for Nonprofit Executive Advantage Policy ("the Application").[2]   In reliance upon the truthfulness of the statements made in the Application, Liberty issued Policy DOCH216747-211 to Ironwood ("the Policy"), with such Application being incorporated into the Policy.[3]   The Application expressly permits Liberty to exclude coverage for those claims that emanate from any act, error, omission, fact

---

[2] See Decl. of Seon Choi ("Choi"), ¶ 3, Exhibit A; Liberty's SUF #2; and Liberty's SGD #2.
[3] See Declarations Page and p. 7, item 23.1 of the Policy attached to Pltf's Decl. of Joshua Tanner ("Tanner") ¶ 7, Ex. 2; Decl. Alan Lux ("Lux") ¶ 9, Ex. 1; Pltf's SUF, No. 3.

or circumstance of which Ironwood had prior knowledge.[4]   The Policy also provides that should the Application contain any untrue statements or representations, Liberty has the right to void the coverage or rescind the policy.[5]

On May 7, 2012, former Ironwood member William S. Cobb ("Cobb") (and underlying plaintiff) issued a demand letter to Robert Manion ("Manion") of Ironwood challenging Ironwood's decision not to repay former/departing members of Ironwood certain $25,500 Land Assessments.[6]   On May 16, 2012, Liberty acknowledged receipt of the May 7, 2012, demand letter, identifying it as a "potential claim" under the Policy.[7]   On August 21, 2012, Cobb and three other former club members filed suit against Ironwood in Riverside County Superior Court-Indio Branch, Case No. INC 1205888 ("Cobb lawsuit").   Pltf's Request for Judicial Notice ("RJN"), Ex. 1.

---

[4] See Ex. A to Choi Decl., p. 2.
[5] See p. 3, item 6.2 of the Policy at Tanner Decl. ¶ 7, Ex. 2; Lux Decl. ¶ 9, Ex. 1 in Pltf's SUF, No 3.  Section 6 of the Policy, Application Representations and Severability, states:

> 6.1  The Insureds represent that the statements and representations contained in the Application are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insured under this Policy.  This Policy is issued in reliance upon the truth of such statements and representations.
>
> 6.2   The Insureds agree that if the Application contains any statements or representations that are untrue, this Policy shall be void as to the Insured Organization and any Insured Person who knew the facts that were not truthfully disclosed, provided that such knowledge shall not be imputed to any other Insured Person.

[6] See Manion Decl. ¶ 10, Ex. 2; Tanner Decl. ¶ 14, Ex. 4; Pltf's SUF, No 21.
[7] See Tanner Decl. ¶ 15; Lux Decl. ¶ 12, Ex. 2; Pltf's SUF, No 25.

---

DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT

2449992

On September 13, 2012,  Lydia Magat of Ironwood forwarded invoices to Lux (Ironwood's insurance broker) for services rendered by Ironwood's counsel, Bryan Gerstel, Esq. ("Gerstel"), of Green Bryant & French LLP, with a message reading, "[P]er Josh [Tanner], for reimbursement."  Tanner, Ironwood's GM/COO, was copied on the email.  That same day, Lux sent Liberty an email stating, "[A]s you requested, here are the bills and payments made so far to Bryan Gerstel *on the Ironwood claim*." (emphasis supplied).[8]   On September 26, 2012, Lux emailed Liberty asking the claims examiner whether she had reviewed the invoices as Lux wanted to let Tanner know how much of the invoices would be applied toward the Policy's retention. See Tanner Decl. ¶ 20, Ex. 7.

By letter dated October 25, 2012, Liberty acknowledged receipt of the Cobb lawsuit and agreed to provide a defense to Ironwood *subject to a reservation of rights and pending an investigation and response to its information request* (a fact that Ironwood conveniently and repeatedly neglects to mention).[9]   In particular, Liberty's rights were specifically reserved pursuant to Question 6. [actually question 14], Prior Knowledge, of the Application and Sections 6.1 and 6.2 of the Policy.  Liberty also reserved the right to void the Policy pursuant to Sections 6.1 and 6.2 of the Policy, referencing Question 14 of the Application:

Does anyone for whom insurance is sought have any

---

[8] Tanner Decl. ¶ 17, Ex. 5; Lux Decl. ¶ 18; Pltf's SUF, No 29.
[9] See Tanner Decl. ¶ 27, Ex. 5; Lux Decl. ¶ 21, Ex. 8; Gerstel Decl. ¶ 11; Pltf's SUF, No. 37.

DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT

2449992

> knowledge or information of any act, error, omission,
> fact, or circumstances which may give rise to a Claim
> which may fall within the scope of the proposed
> insurance?

Liberty confirmed that Ironwood, through its GM/COO Tanner, had responded

"No" to Question 14 on the Application.[10]  See Choi Decl., Ex. A, p. 2.  Liberty

also confirmed that Ironwood had submitted invoices to Liberty for payment for

services rendered by Ironwood's counsel in connection with the Cobb lawsuit.

Specifically, Liberty notified Ironwood that Gerstel's invoice of September 6,

2011, included an entry: "*telecom Tanner re additional information on Insurance*

*and sales of memberships.*" (emphasis supplied).[11]  Furthermore, Liberty advised

that Gerstel's invoice of October 13, 2011,[12] contained an entry that demonstrated

Ironwood's "prior knowledge" as follows:

> Review and analyze legal issues and facts re:
> Assessment, Mistake of Fact and Law issues, Estoppel,
> Class action issues and Liability; Declaratory Relief
> issues and Liability; *Insurance issues re potential claims*
> *and coverage*; Transferability of assessment rights;
> *Contractual liability for assessment payments by*
> *forfeiting members; potential for present member claims*;

---

[10] Liberty also specifically reminded Ironwood that the Application provides that:

> IT IS UNDERSTOOD AND AGREED THAT IF ANYONE FOR
> WHOM THIS INSURANCE IS SOUGHT HAS ANY
> KNOWLEDGE OF ANY SUCH ACT, ERROR, OMISSION,
> FACT OR CIRCUMSTANCE, ANY CLAIM EMANATING
> THEREFROM SHALL BE EXCLUDED FROM COVERAGE
> UNDER THE PROPOSED INSURANCE.

[11] See Tanner Decl., ¶ 27, Ex. 5, p.6; Lux Decl., ¶ 21, Ex. 8, p.10; McLeod Decl., Ex. 16, p. 4.

[12]  The submitted invoices include the June 30, 2011, September 6, 2011, October 13, 2011, December 8, 2011, March 5, 2012, April 3, 2012 and May 1, 2012 invoices from Green Bryant & French ("the Pre-Tender Invoices").  See Gerstel Decl. ¶ 11; Tanner Decl. ¶ 20.

---

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

analysis of statues, case law Club documentation re: issues; *prepare Memo to Board of Directors on these issues*. (emphasis added).[13]

In light of the foregoing entries, Liberty reserved all of its right under the Policy to "invoke the provisions of the Application quoted above;" Liberty also requested a copy of a Memo to the Board (hereinafter the "Memo"), and a detailed explanation of certain specific entries contained in the Pre-tender Invoices.[14]

On December 10, 2012, coverage counsel for Ironwood refused to provide Liberty with the Memo and, instead, advised that certain invoices that had been submitted to Liberty for payment by the COO/GM of Ironwood and its broker had been done so by mistake.  Liberty responded to Ironwood's counsel's letters by letter dated January 11, 2013, noting multiple reasons why Ironwood's submission of the Pre-tender Invoices was no "mistake".[15]  On February 7, 2013, McLeod re-iterated Ironwood's demand for the return of the purportedly "mistakenly" provided Pre-tender Invoices.[16]  On February 26, 2013, and in light of Ironwood's refusal to provide any explanation for its patently false answer of "NO" on Question 14 of the Application, Liberty advised Ironwood that it was *denying*

---

[13] See Tanner Decl., ¶ 27, Ex. 5, p.7; Lux Decl., ¶ 21, Ex. 8, p.11; McLeod Decl., Ex. 7, p. 3 and Ex. 16, p. 4.  There are other entries contained in the Pre-tender Invoices for services provided prior to October 5, 2011, that also support Liberty's claim that Ironwood had knowledge of acts, facts, or circumstances that may lead to a claim.  Liberty reserved its rights to rely on these other entries in support of its argument on coverage, reformation and/or rescission.

[14] See Lux Decl., Ex. 8, pages 6-7; Tanner Decl., Ex. 5, pages 6-7.

[15] See Pltf's Decl. of John M. McLeod ("McLeod"), Ex. 1, 2 and 3.

[16] See McLeod Decl., Ex. 5, pages 4, 5 and 6.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

*coverage* for the Claim as it had reserved its right to do.[17]  Liberty also specifically *reserved the right to rescind* the Policy.[18]

## III.   LEGAL ARGUMENTS

### A.   STANDARD FOR (PARTIAL) SUMMARY JUDGMENT

The same standards for a motion for summary judgment apply to a motion for partial summary judgment.  See *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).   Federal Rule of Civil Procedure 56(c) provides for summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).[19]

A party is entitled to summary judgment when it shows there is no genuine issue at to any material facts and that it is entitled to judgment as a matter of law.  See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the pleadings, discovery, and declarations (if any) that demonstrate an absence of a genuine issue of material

---

[17] Liberty noted Ironwood's refusal of Liberty's offer to enter into a confidentiality agreement and to provide the earlier requested information regarding the entries in question and copy of the Memo.  Liberty advised that this refusal further confirmed that Ironwood and its Board were aware of the facts and circumstances (prior to the completing the Application) that ultimately gave rise to the Cobb Complaint. *Id.*

[18] See McLeod Decl., Ex. 7, p. 2-4.

[19] The Court may notice that Ironwood failed to set forth the standard for summary judgment in its Motion.  Liberty suspects that this was done intentionally in order to avoid highlighting the fact that Ironwood has failed to satisfy such standard.  The appropriate standard is set forth within.

---

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

fact. *Celotex Corp. v. Catrett*, (1986) 477 U.S. 317, 323 (1986).

Should the moving party meet such burden, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).[20]   When making its determination, the court must view all inferences drawn from the underlying facts in a light most favorable to the non-moving party. See *Matsushita v. Zenith Ratio Corp.*, (1986) 475 U.S. 574, 587.[21]

If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.* (9th Cir. 2000) 210 F.3d 1099, 1102-03.  To establish the existence of a factual dispute, the opposing party need not establish the fact conclusively in its favor, but only needs to show *the need to resolve the differing versions of truth* at trial.  *First Nat'l Bank v. Cities Serv. Co.*, (1968) 391 U.S. 253, 289.  The [non-moving party] can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in its favor.  *S. California Gas*

---

[20] A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense.  *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

[21] "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ... ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255.  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the non-moving party. See *Anderson* at 248-49.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

*Co. v. City of Santa Ana*, 336 F.3d 885, 888, citing *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir., 1998).

**B.      IRONWOOD IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT GIVEN LIBERTY'S AFFIRMATIVE DEFENSE OF RESCISSION**

Liberty has raised the defense of rescission, reformation and/or voiding of the Policy.   See Docket Doc. # 34, pgs 18-19. California law is clear that when a rescission defense is raised by an insurer, an Insured's motion for summary adjudication for a defense or coverage is premature. See *Rocklin Park Place Condominium Owners Assoc. v. Liberty Ins. U'wtrs, Inc.*, (E.D. Cal., Sept. 6, 2013) 2013 WL 4828154; and *Atmel Corp. v. St. Paul* (N.D. Cal. 2006) 416 F.Supp.2d 802.  In *Atmel*, an insured filed a motion for partial summary judgment for its breach of contract and bad faith refusal to defend claims against St. Paul.  St. Paul had raised rescission as an affirmative defense in its answer.   The *Atmel* court noted that, if St. Paul was entitled to rescission, then the policy would be void *ab initio,* and St. Paul would have never owed Atmel a duty to defend *in the first instance*.  The *Atmel* court found that, since Atmel's enforcement of its rights under the policy (including the duty to defend) and St. Paul's rescission of the policy were being decided in the same proceeding, it would be premature for the court to rule on Atmel's motion for partial summary judgment. *Id.* at 807.

Similarly, in *Rocklin*, an insured sought partial summary judgment on its claim that Liberty Insurance Underwriters, Inc. (hereinafter "LIU"), breached the duty to

---

DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT

2449992

defend.   LIU argued that Rocklin was not entitled to summary judgment until LIU's rescission defense was resolved.  LIU's rescission defense was based on allegations that the insured failed to disclose important facts, despite direct inquiry in the application for the policy (which is exactly the situation here between Ironwood and Liberty).  The *Rocklin* court denied Rocklin's partial summary judgment motion, relying on *Atmel*, which stated that, "…because rescission is retroactive to the time that the representation becomes false, if [the insurer] is entitled to rescission, then it never owed [the insured] a duty to defend." *Rocklin* at *4 citing *Atmel, supra,* at 807. The *Rocklin* Court held that it could only find that, "because [the insurer's] rescission defense could potentially void the policy, this is not the proper juncture for summary adjudication of this issue….The court cannot, however, make any determination that Defendant breached the contract by failing to defend the [underlying] action if the [Policy] is potentially void." *Rocklin* at *4.

Ironwood argues that *Atmel* and *Rocklin* are factually distinguishable because the insureds there sought partial summary judgment on the insurer's rescission claim and not the duty to defend.  Pltf's P&A, p. 14. But Ironwood misrepresents the facts of both *Atmel* and *Rocklin* because the defense obligation issue was present in both cases.    In *Rocklin*, the motion specifically asked the court to rule on whether the insurer had breached its duty to defend. *Rocklin, supra,* at *1.  In *Atmel*, St. Paul moved for summary judgment on rescission as well as all claims alleged in the

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

coverage complaint, which included whether St. Paul breached the duty to defend. *Atmel, supra,* at 804, 807. Further, even if it were accurate that *Atmel* and *Rocklin* involved only the rescission claim (which it is not), this difference is inconsequential given the reasoning of *Atmel* and *Rocklin* noted above. Namely, both motions for summary judgment were ***denied as premature*** because, if the carriers' rescission defense were successful, the policies would be void *ab initio.*

Ironwood also grandly argues that the *Rocklin* and *Atmel* decisions "turn California law regarding duty to defend on its head." See Pltf's P&A, p. 15. In particular, Ironwood argues that the duty to defend is "immediate" (citing to *Buss, Montrose I* and *Gray)* and that the holdings of *Atmel* and *Rocklin* are contrary thereto. *Rocklin,* however, addressed this very argument (i.e., that the duty to defend is "immediate") when it ***rejected*** *Rocklin's* argument that *National Steel Corp. v. Golden Eagle Ins. Co.,* 121 F.3d 496 (9th Cir. 1997) not *Atmel,* governed the dispute in *Rocklin.*[22] The *Rocklin* Court rejected application of *National Steel* because it did not involve a claim of rescission. *National Steel,* along with *Montrose I, Gray* and *Buss* did not involve a rescission issue.[23]

---

[22] The insured in *National Steel,* in line with *Montrose I* and *Gray*, had argued that the existence of the duty to defend turns upon facts known to the insurer at inception of the lawsuit and that the insurer has no duty to defend if, at the time of its decision, it can prove that the claim cannot fall within policy coverage. See *National Steel* at 499.

[23] Ironwood likewise makes a "parade of horribles" argument that every insurer will simply run to the courthouse to assert claims of rescission to avoid summary judgment. It is speculative nonsense to argue what any party to any litigation will do. Ultimately, however, it is an irrelevant argument since rescission is legitimately being asserted by Liberty, and California law

Ironwood also seeks to rely upon *Endurance American Specialty Ins. Co. v. WFP Securities Corp.*, (Sept. 28, 2012) 2012 WL 7808097, (citing *Haskel, Inc. v. Superior Court,* (1995) 33 Cal. App.4th 963, which held that the insured was entitled to summary judgment on their duty to defend claim despite Endurance's claim of rescission. *Endurance* is factually distinguishable, however, because the insurer did not present evidence in support of its rescission claim or in its opposition to WFP's partial summary judgment motion.   Endurance instead made reference to sworn testimony that it still needed to conduct discovery to establish the foundational requirements for this documentation.   *Endurance* at 3.   In the matter at hand, evidence supporting Liberty's rescission claim, i.e., the entries contained in the Pre-tender Invoices, are contained in the exhibits to this Motion.

Ultimately, *Atmel* and *Rocklin* are far better supported in the law because, if the rescission defense is proven, the policy will be deemed to have never existed. On the other hand, if the *Endurance* Court's reasoning were to be adopted, insureds will benefit from their misrepresentations and be provided with the benefit of a defense to which it was never entitled in the first instance.   Given that rescission is an equitable defense, a party should not be permitted to benefit from its misrepresentations as Ironwood wishes to do here.   Moreover, insurers will then be in the position of

provides that summary judgment is unavailable until it has been resolved.

DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT

2449992

having to recoup defense costs paid out on a policy that, as a matter of law, _never existed in the first place_.[24]

## 1. THE MOTION SHOULD BE DENIED AS THERE EXISTS A MATERIAL FACTUAL DISPUTE AS TO WHICH APPLICATION IS APPLICABLE

Liberty repeatedly advised Ironwood that coverage was denied based upon the material misrepresentation made in the Application by Ironwood in response to Question 14.[25]  In this regard, Tanner, Ironwood's GM/COO who completed the Application on Ironwood's behalf, provides in his Declaration that "… I am not aware of who, if anyone, provided a 'no' response to Question #14." Tanner Decl. ¶ 14.   Additionally, the Application submitted by Ironwood in support of its Motion has a blank in response to Question 14 and the "Submitting Producer Name" both blank.   See Tanner Decl. ¶ 6, Ex. 1, page 2, 5.   The Application contained in Liberty's file, however, has "NO" checked off for Question 14 and the "Submitting Producer Name" section completed.   See Choi Decl. ¶ 3, Ex. A, p. 2, 5; and Liberty UF/GD # 2.   Given that the misrepresentation on the Application is the basis for Liberty's denial of coverage and as well as its rescission defense, a dispute of this material fact _on its own_ justifies denial of Ironwood's Motion.   It is critical for discovery to move forward on this threshold, but material, issue.

---

[24] For the same reasons noted above, Ironwood's claim for reimbursement of the defense costs already incurred must be also denied too as no future or past defense costs would be owed if the Policy is found to be void _ab initio_.
[25] See McLeod Decl., Ex. 7, p. 2-3; Ex. 9, p. 1; and Ex. 12, p. 1.

## 2.   LIBERTY IS ENTITLED TO DISCOVERY

Fed. R. Civ. P. 56 (d) provides that, "When Facts Are Unavailable to the Nonmovant":

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> **(1)** defer considering the motion or deny it;
> **(2)** allow time to obtain affidavits or declarations or to take discovery; or
> **(3)** issue any other appropriate order.

No discovery has taken place in this matter beyond the exchange of Initial Disclosures. See Whittington Decl. ¶¶ 3, 5. Ironwood's Motion is based on its Complaint and self-serving hearsay internal conversations regarding the Land Assessment issue and related communications with Gerstel contained in the Declarations of Ironwood personnel, its broker, and its attorney Gerstel, whose invoice entries are at the heart of the dispute, and which Ironwood describes as "evidence" and "facts."  To the extent that the Court will rely on these statements to decide this Motion, Liberty should have the opportunity to conduct formal discovery on these discussions to oppose the Motion.[26]

---

[26] Indeed, Ironwood spends several paragraphs posing various hypotheticals regarding Question 14 and how it would apply under different scenarios regarding Ironwood's decision-making process concerning the decision not to repay the Land Assessments.  While these hypotheticals may be interesting to ponder, it dramatically highlights the point that discovery and depositions need to be conducted in order to be able to confirm the *actual discussions* and/or the decision-making process itself.

## C.    THE PRE-TENDER INVOICES ARE NOT SUBJECT TO THE  ATTORNEY-CLIENT PRIVILEGE

In California, evidentiary privileges are statutorily created, with such privileges to be strictly construed; the party asserting the privilege has the burden of demonstrating that the communications fall within such privilege. *Wells Fargo Bank v. Superior Court* (2000) 22 Cal. 4th 201, 208; Cal. Evid.Code § 917(a).   The attorney-client privilege ("ACP"), is a privilege held by the client that protects from disclosure confidential communications between the client and an attorney.[27]   In order to establish that the ACP applies to a given communication, the party asserting the privilege must affirmatively demonstrate that the privilege has not been waived. *Weil v. Investment/Indicators, Research & Management, Inc.* (9th Cir. 1981) 647 F.2d 18, 25.   Where a party discloses attorney-client communications to a third party, privilege is waived unless the party can show that the third party was present to further the interest of the party or that disclosure to the third party was reasonably necessary for the transmission of the information.  Cal. Evid. Code § 952.

### 1.    The Attorney-Client Privileged Does Not Apply to Ironwood's Pre-Tender Invoices

Under California law, in order for the ACP to apply to the pre-tender invoices at issue, Ironwood must show that such invoices, which were intentionally submitted to Liberty for payment by Ironwood's broker at the

---

[27] This privilege applies "…when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." *Clarke v. Am. Commerce Nat. Bank* (9th Cir. 1992) 974 F.2d 127. "Confidential communication" is defined as including legal opinion formed and advice given by the attorney in the course of an attorney-client relationship. *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**
2449992

request of Ironwood's GM/COO, somehow constitute confidential communications between Ironwood and its counsel. *Wells Fargo, supra* 22 Cal. 4th at 208; see also Cal. Evid.Code § 917(a). Because the ACP has the effect of withholding relevant information from the fact-finder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney. *Fisher v. United States,* (1976) 425 U.S. 391, 403; *Tornay v. United States,* (9th Cir. 1988). 840 F.2d 1424, 1426. Lastly, Ironwood must show that the invoices contain such detail that they reveal the client's litigation strategy or the nature of services provided by the attorney. *In re Grand Jury Witness* (9th Cir. 1982) 695 F.2d 359, 362.

Ironwood is unable to make these requisite showings. First, the pre-tender invoices are not confidential in nature. In fact, they contain no indication whatsoever that they were intended to be private communications and, indeed, were simply sent to Ironwood's broker to be sent to Liberty for payment. Furthermore, protection of these invoices is not necessary to allow for full and frank communications between Ironwood and its counsel. An invoice, by its very nature, is simply a bill for services *already* rendered. Moreover, the relevant entry found within the October 13, 2011, Pre-tender invoice, does not in any way reveal Ironwood's litigation strategy, nor could it given Ironwood's oft-repeated statement that the Cobb litigation was not yet in suit. As Liberty relied upon in its

DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT
2449992

coverage letters, the entry states:

> Review and analyze legal issues and facts re: Assessment, Mistake of Fact and Law issues, Estoppel, Class Action issues and Liability; Declaratory Relief issues and liability; Insurance issues re potential claims and coverage; Transferability of assessment rights; Contractual liability for assessment payments by forfeiting members; potential for present member claims; analysis of statues, case law Club documentation re: issues; prepare Memo to Board of Directors on these issues.  See Tanner Decl., Ex. 5, p.7; Lux Decl., Ex. 8, p.11; McLeod Decl., Ex. 7, p. 3 and Ex. 16, p. 4.

This entry was made *nearly a year* before the eventual onset of litigation in August 2012 and does not remotely indicate Ironwood's litigation strategy in that respect.  This entry simply sets forth what services Mr. Gerstel provided to Ironwood, and the topics discussed with Ironwood and contained within the Memo he prepared for Ironwood.  The invoices make no reference to any sort of strategy and as such, do not meet the requirements necessary for ACP protection.

### 2. Ironwood's Disclosure of the Invoices Was Not "Inadvertent" and Ironwood Has Waived the Attorney Client Privilege

Any claimed privilege was waived when Ironwood voluntarily submitted the invoices *directly to Liberty* for reimbursement.  Ironwood submitted the Pre-tender Invoices at issue to its broker, Lux, who then submitted them to Liberty for reimbursement. Once Liberty reviewed these invoices and inquired into their nature – with Ironwood retaining new counsel – it was only *then* that Ironwood asserted for the first time that its disclosure of the subject invoices was inadvertent

---

DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT

2449992

and requested their return.

Courts in the Central District have adopted a five-factor test to determine whether a party's disclosure was inadvertent.   See *Flores v. Albertson's, Inc.,* (C.D. Cal. Apr. 9, 2004) 2004 WL 3639290.   The factors to be considered are:  (1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the "overriding issue of fairness."  *U.S. ex rel. Bagley v. TRW, Inc.* (C.D. Cal. 2001) 204 F.R.D. 170, 177 (internal citations omitted).[28]

*Each* of the foregoing factors operates *against* the idea that Ironwood's submission was an inadvertent disclosure.  With regard to the first factor, literally no precautions were undertaken because the invoices were specifically, voluntarily, and purposely provided to Liberty for payment.   Therefore, as Ironwood intentionally submitted these invoices with a request for payment, the first factor entirely supports Liberty.[29]

As to the second factor, it was not until Liberty had reviewed the submitted

---

[28] The factors need not all be met, but instead offer a framework to help determine if the production of documents constitutes a form of waiver as to the documents' confidentiality. *Bagley, supra* 204 F.R.D. at 178.

[29] Ironwood relies on *Roberts v. Superior Court* (1973) 9 Cal.3d 330, 342-343 ("*Roberts*"), and *Grey v. Superior Court*, (1976) 62 Cal. App. 3d 698, for the propositions that waivers of the attorney-client privilege are narrowly construed (*Roberts*), that the waiver must be a voluntary and knowing act that is done with sufficient awareness of the relevant circumstances and likely consequences (*Roberts*), and that any waiver of the attorney-client privilege must be intentional and the privilege cannot be waived by inadvertent disclosure of protected information.  First, *Roberts* and *Grey* do not concern attorney-client privilege issues, but instead are patient-psychotherapist and patient-physician privilege cases.  Second, and most importantly, they are factually distinguishable as they did not concern voluntary disclosure of invoices for payment.

---

23

DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT

2449992

invoices and inquired about the content therein that Ironwood first claimed that these invoices were inadvertently disclosed.  On December 10, 2012, nearly three (3) months after submitting the pre-tender invoices to Liberty that Ironwood acted to rectify its alleged error.  But in truth, Ironwood was not attempting to rectify an error at all so much as it was attempting to hide the information contained therein from Liberty.  As such, the second factor also entirely supports Liberty.

The third factor, scope of discovery, analyzes the amount of material that a party produced wherein the party inadvertently disclosed a privileged document. Here, Ironwood voluntarily submitted a total of thirty-five (35) pages of invoices to Liberty, which included the Pre-tender Invoices totaling 15 pages.[30]  Since the scope of discovery in this matter is very limited in nature, this factor decidedly supports Liberty's position.

The fourth factor, extent of disclosure, also favors Liberty.  Among the thirty-five pages of invoices that Ironwood submitted to Liberty, Ironwood produced invoices for seven months, totaling 15 pages, that it now claims were inadvertently produced. In other words, more than 40% of the documents that Ironwood _voluntarily submitted_ to Liberty were allegedly inadvertently disclosed. In comparison with many inadvert productions described in the reported cases,

---

[30] Thus, this was not a situation where, for instance, a party responds to a discovery request with thousands (or tens or hundreds of thousands) of documents and accidentally includes a privileged communication.*See Bagley supra* where the court finds the potential for inadvertent disclosure more likely in production of approximately 200,000 documents. *Bagley* at 180-81.

this ratio is extraordinarily large, and as such, this factor strongly favors Liberty.[31]

Further, with regard to the last factor, fairness dictates that the production of the invoices establishes a waiver.  Liberty examined the invoices that Ironwood provided so as to determine the amount of reimbursement and/or the status of Ironwood's deductible.  But in doing so, Liberty learned information that revealed that Ironwood had knowledge of "facts or circumstances which may give rise to a Claim" and based thereon, formed its coverage position and its litigation stance.[32]  Liberty received these invoices through no fault of its own; as the invoices did not contain any indication that they were privileged communications, Liberty relied on these invoices in its declination of coverage.  It would be unfair to uphold the ACP and require return of the Pre-tender Invoices and allow Ironwood to hide behind the cloak of privilege that was only alleged to apply three months after the

---

[31] *Compare Lazar v. Mauney*, (N.D. Ga. 2000) 192 F.R.D. 324, 330 (concluding that the privilege was not waived when three privileged documents were produced along with about 1,000 other documents) and *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, (S.D.N.Y. 1985) 104 F.R.D. 103, 105 (concluding that privilege was not waived when 22 privileged documents were mistakenly produced along with 16,000 other documents) with *Local 851 of Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, (E.D.N.Y. 1998) 36 F. Supp. 2d 127, 133 (concluding that the privilege was waived when one privileged document was filed along with six other exhibits to a motion).

[32] If the receiving party uses inadvertently produced privileged documents extensively, even without the producing party's knowledge, that can increase the likelihood of a finding of waiver. *See Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, (N.D.Ill.1987) 117 F.R.D. 119, 121 (explaining that "[w]here prior to the assertion of the privilege, the documents have been examined and used by the opposing party, it may be unfair and unrealistic to uphold the privilege," and holding that a waiver occurred where the receiving party repeatedly used and relied on the documents in its court filings) (citing *In re Grand Jury Investigation of Ocean Transportation*, (D.C.Cir.1979) 604 F.2d 672, 674–675, *cert. denied*, (1979) 444 U.S. 915); *Central Die Casting & Mfg. Co., Inc. v. Tokheim Corp.*, (N.D.Ill.1994) 1994 WL 444796, at 5 (finding a waiver of the privilege where the receiving party used the inadvertently produced document in its motion for summary judgment).

---

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

fact. Additionally, it would be counter-intuitive to deem the Pre-tender Invoices as subject to attorney-client privilege but any post-tender invoices _not_ subject to attorney-client privilege.

### D. LIBERTY'S DENIAL OF COVERAGE WAS PROPER AND LIBERTY HAS NO DUTY TO DEFEND IRONWOOD

Ironwood relies entirely on the statements contained in the Declarations of Lux, Tanner and Manion in support of its argument that the coverage limitations contained in Question 14 and Sections 6.1 and 6.2 of Policy do not apply to exclude coverage. See Pltf's P&A, p. 7-9. Based on the issues of fact (and evidentiary objections) contained in Ironwood's Declarations as identified by Liberty, this is sufficient to deny Ironwood's Motion. Under California law, an insurer is allowed to consider all facts that it learns from its investigation. In determining whether there is a duty to defend, an insurer is not limited to the facts alleged in the underlying complaint, but may make the determination "from the total facts it learns from all sources." See *State Farm Mut. Auto. Ins. Co. v. Flynt, supra,* 17 Cal.App.3d at 548; accord, *Gray v. Zurich Insurance Co., supra,* 65 Cal.2d at 274. An insurer may refuse to defend where extrinsic evidence conclusively establishes that no potential for coverage exists. *Montrose Chemical Corp. v. Sup. Ct. (Canadian Universal Ins. Co.)* (1993) 6 Cal.4th 287.

Ironwood would like to believe that, because the formal Board position was not taken until January 2012 (after the Policy inception), it did not have the

26
DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT

2449992

requisite "knowledge of facts or circumstances which may give rise to a Claim" when the Application was completed.[33]     This is a remarkably narrow interpretation of the Application inquiry.  Ironwood had solicited opinions from its counsel regarding the potential exposure and availability of insurance coverage for the eventual claims that would come as a result of that decision as evidenced by Gerstel's entries.  The plain language of the Application inquiry does not remotely require that a Claim have *in fact been made*, or that a Claim will *certainly be made*.  Rather, Ironwood was contemplating and evaluating a decision to decline to pay members/former members more than $25,000 *each*.  Ironwood knew, with unquestionable certainty that the affected persons would absolutely object to such a decision, and thus that Claims "may" be made.  It is therefore no wonder that Ironwood is seeking return of the Pre-tender Invoices given what they reveal.  After meeting with Gerstel, Ironwood obtained the Liberty Application and – in no uncertain terms – blatantly misrepresented to Liberty as to whether there were any facts or circumstances that may give rise to a Claim.[34]

---

[33]   In fact, Ironwood admits in its Motion that it had multiple discussions internally and with its counsel on the Land Assessment issue prior to the Application.  See Pltf's P&A, p. 2.  Indeed, by waiting to have the vote in January 2012, Ironwood itself ensured that any claim that would be made would be after the inception of the Policy (which was the first one issued by Liberty), giving the appearance that everything occurred post-Policy inception.  The issue, however, is Ironwood's knowledge of act, fact or circumstance which *may* give rise to a Claim, with the invoice entries clearly demonstrating that such knowledge existed at the time the Application was completed.

[34]   Ironwood's citation to Liberty's use of the word "apparently" lacks merit and in no way suggests that Liberty was somehow making a "concession" that the opposite might also be true, as Ironwood contends.  In any event in response to inquiries by Ironwood, Liberty confirmed its

Accordingly, given the applicability of the Application exclusion and Sections 6.1 and 6.2 of the Policy referenced above, there is no conceivable theory that the allegations against Ironwood could potentially be covered (and thus no duty to defend Ironwood) as such Claims are excluded and/or coverage is void based on Ironwood's negative response to whether it had knowledge of an act, fact or circumstance that may give rise to a Claim.

Ironwood relies upon *Resure, Inc. v. Superior Court,* (1996) 42 Cal.App.4[th] 156, 158-159 ("*Resure*"), where the application question asked for a list of all "claims" and "occurrences" that might give rise to claims for the prior five years and the insured responded: "[A]pplicant will issue statement of no loss."[35] *Resure* at 159. It should be noted that the question in the *Resure* application is far, far different from the one contained in the Liberty Application, where Ironwood was asked about knowledge or information of any act, error, omission, fact, or circumstance that may give rise to a claim. Question 14 in Liberty's Application is a much broader inquiry.

In *Advanced Micro Devices v. Great Amer. Surplus Lines Ins. Co.* (1988) 199 Cal.App.3d 791 ("*AMD*"), the application question asked, "[A]t the time of signature, are you aware of any circumstances which could give rise to a claim under

---

position in the correspondence dated March 13, 2013 and April 19, 2013 noted above.
[35] In actuality, there were four pending lawsuits against the insured when it had completed its application. The *Resure* court, however, never addressed the issue of whether a misrepresentation or concealment had been made as that issue and/or question was not before the *Resure* court. The *Resure* court had only recounted these facts to show the facts that were before the trial court when it had denied summary judgment for Resure. The issue on appeal was whether Resure was barred by Insurance Code § 650 from bringing its rescission action.

---

28

DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT

2449992

the policy," to which AMD had answered "no."   Again, Question 14 is a much broader inquiry, but the reasoning in *AMD* supports Liberty's position in any event. The *AMD* court discredited certain self-serving affidavits (that also contradicted earlier testimony) submitted by AMD and found that the policy's prior knowledge exclusion applied.   The *AMD* court reasoned that AMD had knowledge of the contamination at issue before the inception of the policy, but that AMD was only uncertain as to its extent.   It was further reasoned that at the time the insurance coverage incepted, AMD could not have reasonably doubted that it faced a costly cleanup project. *AMD* at 801-802.

In accordance with *AMD*, the Pre-tender Invoices contain entries that show Ironwood had knowledge or information of acts, facts or circumstances that may lead to a claim when it engaged Gerstel to analyze the issues of potential liability, damages and insurance coverage concerning Ironwood's decision on the Land Assessments issue. The *AMD* court found that AMD could not reasonably doubt that it faced a cleanup project given the evidence of knowledge of a leak.   Likewise, Ironwood also could not reasonably doubt that a claim may be made once it announced that it would not be repaying the Land Assessments.

In *Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.*, (1976) 64 Cal. App. 3d 261, 269-70, the application asked: "[I]s the Applicant aware of any circumstances which may result in any claim against him, his predecessors in

business, or any of the present or past partners or officers? ("no" was checked off).
The *Williamson & Vollmer* court held that Williamson & Vollmer's negative answer
to the question in the application amounted to a misrepresentation and concealment
of material facts in light of circumstances known to Williamson & Vollmer at the
time.[36]   Again, Question 14 in Liberty's Application is a much broader inquiry.
Also, the fact that the *Williamson & Vollmer* decision is based on a letter received by
the insured does not mean that other forms of evidence cannot also be found to
constitute a material misrepresentation or concealment of fact by an insured.

## IV.   CONCLUSION

Based upon the foregoing facts and authorities, Liberty respectfully
requests that the Court deny Ironwood's Motion for Partial Summary Judgment.

Respectfully submitted,

Dated:  February 3, 2014          KAUFMAN BORGEEST & RYAN LLP

By:      _____/s/ Jeffrey S. Whittington_____
Jeffrey S. Whittington, Esq.
Miriam Gregory, Esq.
Attorneys for Defendant,
Liberty Insurance Underwriters, Inc.

---

[36] Williamson & Vollmer (an engineering company) had received a pre-application letter from an
architect on a project which advised that the architect intended to hold Williamson & Vollmer
responsible for damages arising from erroneously approved shop drawings.

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56
MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

**PROOF OF SERVICE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**
**CASE NAME: Ironwood v. Liberty Insurance**

I declare as follows:

I am employed in the County of Los Angeles, California. I am over the age of 18 years, and not a party to the within action; my business address is 23975 Park Sorrento, Suite 370, Calabasas, California 91302. I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

On May 28, 2013, I served a true and correct copy, with all exhibits, of the following document(s) described as follows:

## DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S NOTICE OF INTERESTED PARTIES

[ ]   On the interested parties in the within action by placing the above documents in the United States mail for Express Mail delivery at 23975 Park Sorrento, Suite 370, Calabasas, California 91302 in a sealed envelope, with Express Mail postage thereon fully prepaid; by depositing copies of the above documents in a box or other facility regularly maintained by Federal Express, with delivery fees paid by the sender's account. (Code of Civil Procedure § 1013(c).) *(Overnight Delivery Service)*

[ ]   On the interested parties in the within action by faxing a true and correct copy of the above documents to the facsimile number listed below. *(Fax Service)*

[X]   On the party or parties named below, by following ordinary business practice, placing a true copy thereof enclosed in a sealed envelope, for collection and mailing with a United States Postal Service, where it would be deposited for first class delivery, postage fully prepaid, in the United States Postal Service, that same day in the ordinary course of business, addressed as set forth below. *(Regular Office Deposit)*

John J. McLeod, Esq.
Paul Hirst, Esq.
McLEOD LAW GROUP, APC
701 B. Street, Suite 1570
San Diego, California 92101

I certify under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct and that this declaration was executed on May 28, 2013, at Calabasas, California.

By: _____          By: _____Sharyn Waldrop_____
        Signature of Declarant                              Name of Declarant

---

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

2449992

1  Jeffrey S. Whittington, Esq./SBN 236028
   Email: jwhittington@KBRlaw.com
2  Miriam Gregory, Esq./SBN 281083
   Email: mgregory@KBRlaw.com
3  KAUFMAN BORGEEST & RYAN LLP
   23975 Park Sorrento, Suite 370
4  Calabasas, CA 91302
   Telephone: (818) 880-0992
5  Facsimile: (818) 880-0993

6  Attorneys for Defendant
   Liberty Insurance Underwriters, Inc.

7

## UNITED STATES DISTRICT COURT

8  ## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

9

   IRONWOOD COUNTRY CLUB,          ) Case No. 5:13-CV-00996-VAP (DTB)
10                                 )
           Plaintiffs,             ) **DEFENDANT'S STATEMENT OF**
11                                 ) **GENUINE ISSUES IN OPPOSITION TO**
       vs.                         ) **MOTION FOR PARTIAL SUMMARY**
                                   ) **JUDGMENT AND STATEMENT OF**
12                                 ) **UNDISPUTED ADDITIONAL**
   LIBERTY INSURANCE               ) **MATERIAL FACTS IN SUPPORT OF**
   UNDERWRITERS, INC. and DOES     ) **OPPOSITION**
13 1 through 100,                  )
                                   ) **HEARING DATE:    February 24, 2014**
           Defendants.             ) **HEARING TIME:    2:00 p.m.**
14                                 ) **COURTROOM:       2**
                                   )
15                                 ) Discovery Cut-Off:
                                   ) Pre-Trial Conference:
16                                 ) Trial Date:
                                   )
17                                 ) FILED CONCURRENTLY WITH:
                                   )  1.  Defendant's Points and Authorities in
18                                 )      Opposition to Plaintiff's Motion for Partial
                                   )      Summary Judgment
19                                 )  2.  Evidentiary Objections to Plaintiff's Motion for
                                   )      Partial Summary Judgment
                                   )  3.  Declaration of Jeffrey S. Whittington;
20                                 )  4.  Declaration of Seon Choi
                                   )  5.  [Proposed] Order

---

**1**
**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
SUMMARYJUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

Defendant, Liberty Insurance Underwriters, Inc. ("Liberty") respectfully submits this Statement of Genuine Issues pursuant to Central District Local Rule 56-2 in support of Liberty's Opposition to the Motion for Partial Summary Judgment filed by Plaintiff, Ironwood Country Club ("Ironwood"). Facts 1 through 73 below correspond to the facts and supporting evidence presented in the Statement of Undisputed Facts ("SUF") filed by the moving party. These facts are followed by additional material facts and supporting evidence showing genuine issues of fact.

| PL.'S "SUF" NO. | FACT | SUPPORTING EVIDENCE | LIBERTY'S RESPONSE |
|---|---|---|---|
| 1 | In July 2011, Ironwood's GM/COO, Joshua Tanner ("Tanner"), began working with Ironwood's insurance broker, Alan Lux ("Lux"), to purchase a policy providing Directors & Officers Liability coverage for the policy period of October 1, 2011 to October 1, 2012. | Decl. Joshua Tanner ¶¶ 3-4; Decl. Alan Lux ¶¶ 4-5. | For purposes of Liberty's Opposition ("Opposition") to Ironwood's Motion for Partial Summary Judgment ("M/PSJ") only, the statement is undisputed. |
| 2 | On or about October 5, 2011, Ironwood submitted to Liberty an "Application for Nonprofit Executive Advantage Policy" ("Liberty Application"). | Decl. Joshua Tanner ¶ 5, Ex. 1; Decl. Alan Lux ¶ 7. | Liberty agrees that Ironwood Submitted an "Application for Non-Profit Executive Advantage Policy." Disputed, however, with respect to whether Ironwood submitted a response to Question 14 in the Liberty Application. *See* Liberty's Separate Statement of Undisputed Facts, #1. |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARYJUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | |
|---|---|---|---|
| 3 | Liberty thereafter issued a "Nonprofit Executive Advantage Policy" to Ironwood, policy number DOCH216747-211, for the policy period of October 1, 2011 to October 1, 2012 ("Policy"). | Decl. Joshua Tanner ¶ 7, Ex. 2; Decl. Alan Lux ¶ 9, Ex. 1. | Undisputed. |
| 4 | In 1999, Ironwood's club members approved an assessment of $25,500 per member ("Assessment"). | Decl. Robert C. Manion ¶ 3; Decl. Joshua Tanner ¶ 8. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 5 | The Assessment was to be repaid to a member when they subsequently sold their membership. | Decl. Robert C. Manion ¶ 4; Decl. Joshua Tanner ¶ 8. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 6 | Members sold their memberships by placing them on a resale list. | Decl. Robert C. Manion ¶ 4; Decl. Joshua Tanner ¶ 8. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 7 | In addition to members selling their memberships, some members had forfeited their membership to the club rather than have it sold to an incoming member. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 8 | The forfeited memberships became club property. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | have not conducted discovery other than their Rule 26(a) exchange. |
|---|---|---|---|
| 9 | The forfeited memberships that became club property were called Treasury memberships. | Decl. of Robert C. Manion ¶ 4; Decl. Joshua Tanner ¶ 8. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 10 | For several years prior to 2010, Ironwood had a business practice of selling these Treasury memberships to incoming new members. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 11 | Ironwood would then repay the Assessment to the forfeiting member when the Treasury sale occurred, which was usually years after the member forfeited it. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 12 | For several years prior to 2010, Ironwood's Boards had been intermittently discussing the nature and terms of this business practice. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 13 | In 2010, the Board was discussing the nature and terms of Ironwood's business practice of repaying the Assessment to a forfeiting member when the Treasury membership was sold. | Decl. of Robert C. Manion ¶ 4; Decl. of Joshua Tanner ¶ 8. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | |
|---|---|---|---|
| 14 | In discussing whether or not to cease repaying the Assessment to forfeiting members, the Board consulted with many individuals, including Ironwood's counsel, Bryan Gerstel. | Decl. of Robert C. Manion ¶ 5; Decl. of Joshua Tanner ¶ 9. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 15 | Prior to January 2012, the matter of changing Ironwood's business practice of repaying the Assessment to forfeiting members was never presented to the Board for a vote. | Decl. of Robert C. Manion ¶ 5; Decl. of Joshua Tanner ¶ 9. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 16 | Prior to January 2012, Ironwood was not aware of any fact or circumstance that might give rise to a claim against Ironwood as a result of the Board considering making a change to Ironwood's practice of repaying the Assessment to forfeiting members. | Decl. Robert C. Manion ¶¶ 5 and 8-9; Decl. Joshua Tanner ¶¶ 9 and 12-13. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 17 | Prior to January 2012, the Board was not aware of any fact or circumstance that might give rise to a claim against the Board as a result of the Board considering making a change to Ironwood's practice of repaying the Assessment to forfeiting members. | Decl. of Robert C. Manion ¶¶ 5 and 8-9; Decl. Joshua Tanner ¶¶ 9 and 12-13. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |

DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARYJUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN

2451618

| | 18 | On January 19, 2012, during a regularly scheduled board meeting, the Board for the first time voted on whether to cease Ironwood's business practice of repaying the Assessment to forfeiting members. | Decl. of Robert C. Manion ¶ 6; Decl. of Joshua Tanner ¶ 10. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. The evidence cited by Ironwood does not support the fact asserted that the vote held on January 19, 2012 was the first time the Board voted on the issue. *See* Liberty's Objections to Evidence Nos.  7-8. |
| | 19 | The Board voted to stop that business practice immediately. | Decl. of Robert C. Manion ¶ 6; Decl. of Joshua Tanner ¶ 10. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| | 20 | On January 24, 2012, the Board's President sent a letter to Ironwood's members summarizing the decisions that were made during the January 19, 2012, Board meeting, including the vote to stop repaying the Assessment to forfeiting members. | Decl. of Robert C. Manion ¶ 7, Ex. 1; Decl. of Joshua Tanner ¶ 11, Ex. 3. | Undisputed. |
| | 21 | On May 7, 2012, William S. Cobb, Jr. ("Cobb"), sent a letter to Ironwood regarding the Board's January 19, 2012 vote to stop repaying the Assessment to forfeiting members. | Decl. of Robert C. Manion ¶ 10, Ex. 2; Decl. of Joshua Tanner ¶ 14, Ex. 4. | Undisputed. |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | |
|---|---|---|---|
| 22 | Cobb's May 7, 2012, letter was the first claim of which Ironwood was aware regarding the January 19, 2012, vote to stop repaying the Assessment to forfeiting members. | Decl. of Robert C. Manion ¶ 10; Decl. of Joshua Tanner ¶ 14. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 23 | Ironwood forwarded Cobb's May 7, 2012, letter to its insurance broker, Lux. | Decl. of Joshua Tanner ¶ 15; Decl. of Alan Lux ¶ 10. | Undisputed. |
| 24 | On May 15, 2012, Lux caused Cobb's May 7, 2012, letter to be forwarded Liberty. | Decl. of Joshua Tanner ¶ 15; Decl. of Alan Lux ¶ 11. | Undisputed. |
| 25 | On May 16, 2012, Liberty acknowledged receipt of Cobb's claim. | Decl. of Joshua Tanner ¶ 15; Decl. Alan Lux ¶ 12, Ex. 2. | Undisputed. |
| 26 | On August 21, 2012, Cobb filed a lawsuit against Ironwood regarding many of the same issues set forth in his May 7, 2012 demand letter. | Request for Judicial Notice ¶ 1, Ex. 1; Decl. of Joshua Tanner ¶ 16; Decl. of Alan Lux ¶ 16. | Undisputed. |
| 27 | On or about September 13, 2012, Liberty informed Ironwood's insurance broker, Mr. Lux, that it would defend Ironwood in the Cobb matter. | Decl. of Joshua Tanner ¶ 17; Decl. of Alan Lux ¶ 17. | Undisputed. |
| 28 | Liberty requested copies of the bills that Ironwood had received for legal fees and costs in connection with the Cobb matter. | Decl. of Joshua Tanner ¶ 17; Decl. of Alan Lux ¶ 17. | Undisputed. |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARYJUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | |
|---|---|---|---|
| 29 | On September 13, 2012, Ironwood's insurance broker, Mr. Lux, asked Mr. Tanner to send him all of Ironwood's invoices for legal fees and costs in connection with the Cobb claim. | Decl. of Joshua Tanner ¶ 17; Decl. of Alan Lux ¶ 18. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 30 | Mr. Lux did not tell Mr. Tanner to limit the scope of invoices to only those for legal fees that post-dated the May 15, 2012 notice to Liberty. | Decl. of Joshua Tanner ¶ 17; Decl. of Alan Lux ¶ 18. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 31 | Mr. Tanner did not understand that Liberty was only asking for the invoices reflecting legal fees and costs incurred in defense of the Cobb claim. | Decl. of Joshua Tanner ¶ 19. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 32 | As a result, the invoices that Ironwood sent to its insurance broker, Mr. Lux, included invoices dating back to June 2011. | Decl. of Joshua Tanner ¶¶ 19-20; Decl. of Bryan R. Gerstel ¶ 11. | Undisputed. |
| 33 | On September 13, 2013, Mr. Lux forwarded to Liberty the invoices that he received from Ironwood, including invoices dating back to June 2011. | Decl. of Alan Lux ¶ 18, Ex. 5. | Undisputed. |
| 34 | Mr. Lux did not review Ironwood's invoices before forwarding them to Liberty. | Decl. of Alan Lux ¶ 18. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | | exchange. |
|---|---|---|---|---|
| | 35 | Around the time that Liberty agreed to defend Ironwood, Liberty agreed to pay Ironwood's counsel, Mr. Gerstel, to defend Ironwood in the Cobb matter. | Decl. of Alan Lux ¶ 19; Ex. 6; Decl. of Bryan R. Gerstel ¶ 8. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| | 36 | On September 25, 2012, Mr. Gerstel sent a letter to Ms. Testaverde confirming that Liberty had agreed to pay his firm to defend Ironwood at the hourly rate of $275. | Decl. of Bryan R. Gerstel ¶ 9, Ex. 5. | Undisputed. |
| | 37 | On October 25, 2012, Liberty sent a letter to Ironwood confirming its agreement to defend Ironwood in the Cobb matter through Mr. Gerstel's firm. | Decl. of Joshua Tanner ¶ 27, Ex. 5; Decl. of Alan Lux ¶ 21, Ex. 8; Decl. of Bryan R. Gerstel ¶ 11. | Disputed. Liberty's correspondence of October 25, 2012, confirmed Liberty's agreement to defend *subject to a reservation of rights* pending Liberty's investigation and Ironwood's response to Liberty's information request. Particularly, Liberty's rights were reserved pursuant to:<br>• Exclusion 4.3 - no coverage for any Claim based upon, arising out of or in any way related to any error, misstatement, misleading statement, act, or omission, neglect or breach of duty which has been reported or noticed under a prior policy;<br>• Exclusion 4.9 - no coverage for any Claim based upon, arising out of or in any way related to any Insureds gaining in fact of any |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARYJUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | |
|---|---|---|---|
| | | | personal profit, remuneration or advantage not legally entitled;<br>• Section 5.2 - no coverage for any Loss in connection with any Claim for any actual or alleged liability of any Insured under any contract or agreement, express or implied, written or oral, except for employment-related obligations which would have attached absent such contract or agreement;<br>• Section 12. Other Insurance; and<br>• Question 6. [actually question 14], Prior Knowledge, of the insurance application.<br>Liberty also reserved the right to void coverage pursuant to Sections 6.1 and 6.2 of the Policy. See Pltf's Decl. Joshua Tanner ¶ 27, Ex. 5, page; Decl. of Alan Lux ¶ 21, Ex. 8; and Decl. of Bryan R. Gerstel ¶ 11. |
| 38 | After Ironwood received the October 25, 2013, letter from Liberty, Mr. Gerstel learned that Ironwood's insurance broker, Mr. Lux, sent Liberty copies of the following invoices that Mr. Gerstel had previously issued to Ironwood: invoice dated June 30, | Decl. of Bryan R. Gerstel ¶11; Decl. of Joshua Tanner ¶ 20. | Disputed. Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |

| | | | | |
|---|---|---|---|---|
| | | 2011 (for work performed throughout June 2011), invoice dated September 6, 2011 (for work performed throughout July 2011 and August 2011), invoice dated October 13, 2011 (for work performed throughout September 2011), invoice dated December 8, 2011 (for work performed throughout November 2011), invoice dated March 5, 2012 (for work performed throughout February 2012), invoice dated April 3, 2012 (for work performed throughout March 2012), and invoice dated May 1, 2012 (for work performed throughout April 2012) (collectively the "Pre-Tender Invoices"). | | |
| | 39 | The Pre-Tender Invoices do not include any billing entries related to the defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 12; Decl. of Joshua Tanner ¶ 21. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| | 40 | The Pre-Tender Invoices contain attorney-client Communications describing work performed by Mr. Gerstel for Ironwood on various matters unrelated to the defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 12; Decl. of Joshua Tanner ¶ 21. | Disputed. This is a conclusion of law. |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| 41 | Mr. Gerstel and Ironwood have always kept the Pre-Tender Invoices and their contents confidential in the normal course of their attorney-client relationship. | Decl. of Bryan R. Gerstel ¶ 13; Decl. of Joshua Tanner ¶ 21. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 42 | The Pre-Tender Invoices were not provided to Liberty with any intention of waiving the attorney-client privilege. | Decl. of Joshua Tanner ¶ 21. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange.  This is also a conclusion of law. |
| 43 | Ironwood's General Manager and Chief Operating Officer, Mr. Tanner, does not have authority to waive any privileges, including the attorney-client privilege, on behalf of Ironwood. | Decl. of Joshua Tanner ¶ 26; Decl. of Robert C. Manion, ¶ 12. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange.  This is also a conclusion of law. |
| 44 | Any such waiver would require authorization from Ironwood's Board. | Decl. of Joshua Tanner ¶ 26; Decl. of Robert C. Manion, ¶ 12. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange.  This is also a conclusion of law. |
| 45 | Mr. Tanner did not ask for authority from the Board to waive any privileges applicable to the Pre-Tender Invoices. | Decl. of Joshua Tanner ¶ 26; Decl. of Robert C. Manion, ¶ 12. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | | |
|---|---|---|---|---|
| 1 | 46 | Mr. Tanner did not obtain authority from the Board to waive any privileges applicable to the Pre-Tender Invoices. | Decl. of Joshua Tanner ¶ 26; Decl. of Robert C. Manion, ¶ 12. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange.  This is also a conclusion of law. |
| 5 | 47 | The Pre-Tender Invoices were sent to Liberty without Mr. Gerstel's knowledge. | Decl. of Bryan R. Gerstel ¶ 13. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 9 | 48 | The Pre-Tender Invoices were sent to Liberty without Mr. Gerstel's authorization. | Decl. of Bryan R. Gerstel ¶ 13. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 12 | 49 | If Mr. Gerstel had been asked to submit the Pre-Tender Invoices to Liberty, he would have refused to do so. | Decl. of Bryan R. Gerstel ¶¶ 13-14. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange.  This is also a conclusion of law. |
| 16 | 50 | In addition to the Pre-Tender Invoices, Mr. Lux, sent Liberty copies of the following the following invoices that Mr. Gerstel had previously issued to Ironwood: invoice dated June 4, 2012 (for work performed throughout May 2012), invoice dated July | Decl. of Bryan R. Gerstel ¶ 16; Decl. of Joshua Tanner ¶ 23. | Undisputed. |

| | | | | |
|---|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | | 2, 2012 (for work performed throughout June 2012), invoice dated August 10, 2012 (for work performed throughout July 2012), and invoice dated September 1, 2012 (for work performed throughout July 2012) (collectively the "Post-Tender Invoices"). | | |
| 7<br>8<br>9<br>10 | 51 | Of the invoices that Mr. Lux sent to Liberty, the Post-Tender Invoices are the only invoices that include billing entries related to the defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 16; Decl. of Joshua Tanner ¶ 23. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange.  This is also a conclusion of law. |
| 11<br>12<br>13<br>14 | 52 | Of the invoices that Mr. Lux sent to Liberty, the Post-Tender Invoices are the only invoices that should have been submitted in response to Liberty's request for invoices related to the Cobb matter. | Decl. of Joshua Tanner ¶ 25. | Disputed.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange.  This is also a conclusion of law. |
| 15<br>16<br>17<br>18<br>19<br>20 | 53 | In addition to the Pre-Tender Invoices and Post-Tender Invoices, Mr. Lux also sent Liberty copies of the following invoices that the Lavely & Singer firm had previously issued to Ironwood: invoice dated June 30, 2012 (for work performed throughout June 2012) and invoice dated July 31, 2012 (for work | Decl. of Bryan R. Gerstel ¶ 17; Decl. of Joshua Tanner ¶ 24. | Undisputed. |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | | |
|---|---|---|---|---|
| 1<br>2 | | performed throughout July 2012) (collectively "Lavely & Singer Invoices"). | | |
| 3<br>4<br>5<br>6 | 54 | Ironwood did not retain the Lavely & Singer firm to assist Mr. Gerstel with the defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 17; Decl. of Joshua Tanner ¶ 24. | Disputed. Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. . |
| 7<br>8<br>9 | 55 | The Lavely & Singer Invoices do not include any billing entries related to the defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 17; Decl. of Joshua Tanner ¶ 24. | Disputed. Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 10<br>11<br>12<br>13<br>14 | 56 | Beginning on or about December 10, 2012, Ironwood made several written requests that Liberty return the bills that pre-date the May 15, 2012, notice to Liberty. | Decl. of Joshua Tanner ¶ 22; Decl. of Bryan R. Gerstel ¶ 15; Decl. of John J. McLeod ¶¶ 3, 4, 7, 8, 12 & 15, Exs. 1, 2, 5, 6, 10 & 13. | Undisputed. |
| 15<br>16<br>17<br>18<br>19<br>20 | 57 | Beginning on or about December 10, 2012, Ironwood made several written requests that Liberty destroy any copies that have been made of the bills that predate the May 15, 2012, notice to Liberty. | Decl. of Joshua Tanner ¶ 22; Decl. of Bryan R. Gerstel ¶ 15; Decl. of John J. McLeod ¶¶ 3, 4, 7, 8, 12 & 15, Exs. 1, 2, 5, 6, 10 & 13. | Undisputed. |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARYJUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | |
|---|---|---|---|
| 58 | From December 10, 2012, to the present, Liberty has not returned any bills to Ironwood. | Decl. of Joshua Tanner ¶ 22; Decl. of Bryan R. Gerstel ¶ 15; Decl. of John J. McLeod ¶¶ 3, 4, 7, 8, 12 & 15, Exs. 1, 2, 5, 6, 10 & 13. | Undisputed. |
| 59 | From December 10, 2012, to the present, Liberty has not agreed to destroy copies of any of the bills. | Decl. of Joshua Tanner ¶ 22; Decl. of Bryan R. Gerstel ¶ 15; Decl. of John J. McLeod ¶¶ 3, 4, 7, 8, 12 & 15, Exs. 1, 2, 5, 6, 10 & 13. | Undisputed. |
| 60 | On or about February 21, 2013, Ironwood paid its defense counsel, Mr. Gerstel, $10,000.00 to satisfy the $10,000.00 retention under the Liberty Policy. | Decl. of Joshua Tanner ¶ 28, Ex. 6; Decl. of Bryan R. Gerstel ¶ 22, Ex. 11. | Disputed. Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. This is also a conclusion of law. |
| 61 | On February 26, 2013, Liberty informed Ironwood that it was denying coverage in connection with the Cobb matter. | Decl. of Bryan R. Gerstel ¶ 23; Decl. of John J. McLeod ¶ 9, Ex. 7. | Undisputed. Liberty's correspondence of February 26, 2013, not only denied coverage but also reserved its right to rescind the Policy. See McLeod ¶ 9, Ex. 7, page 4. |
| 62 | In May 2012, Ironwood's counsel spent 12 hours assisting Ironwood in defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 4, Ex. 1. | Undisputed that the invoice reflects 12 hours was billed. Defendant lacks sufficient information to form a belief of |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | |
|---|---|---|---|
| | | | the truth or falsity as to the remainder of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 63 | In June 2012, Ironwood's counsel spent 7 hours assisting Ironwood in defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶ 5, Ex. 2. | Undisputed that the invoice reflects 7 hours was billed. Defendant lacks sufficient information to form a belief of the truth or falsity as to the remainder of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 64 | In July 2012, Ironwood's counsel spent 19.25 hours assisting Ironwood in defense of the Cobb claim. | Decl. of Bryan R. Gerstel ¶¶ 6-7, Exs. 3 & 4. | Undisputed that the invoice reflects 19.25 hours was billed. Defendant lacks sufficient information to form a belief of the truth or falsity of the remainder of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 65 | In August 2012 and September 2012, the defense fees and costs incurred through Mr. Gerstel's firm totaled $4,853.75 after subtracting $137.50 for one billing entry that pre-dated the May 15, 2012 notice to Liberty. | Decl. of Bryan R. Gerstel ¶ 10, Ex. 6. | Undisputed that the invoice totaled $4,853.75 after subtracting $137.50.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the remainder of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 66 | In October 2012, the defense fees and costs incurred through Mr. Gerstel's firm totaled $5,036.96. | Decl. of Bryan R. Gerstel ¶ 18, Ex. 7. | Undisputed that the invoice totaled $5,036.96. Defendant lacks sufficient information to form a belief of the truth or falsity of the remainder of the asserted fact as the Parties have not conducted discovery other |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | | than their Rule 26(a) exchange. |
|---|---|---|---|---|
| 67 | In November 2012, the defense fees and costs incurred through Mr. Gerstel's firm totaled $5,752.44. | Decl. of Bryan R. Gerstel ¶ 19, Ex. 8. | | Undisputed that the invoice totaled $5,752.44. Defendant lacks sufficient information to form a belief of the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 68 | In December 2012, the defense fees and costs incurred through Mr. Gerstel's firm totaled $2,147.53. | Decl. of Bryan R. Gerstel ¶ 20, Ex. 9. | | Undisputed that the invoice totaled $2,147.53. Defendant lacks sufficient information to form a belief of the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 69 | In January 2013, the defense fees and costs incurred through Mr. Gerstel's firm totaled $17,389.50. | Decl. of Bryan R. Gerstel ¶ 21, Ex. 10. | | Undisputed that the invoice totaled $17,389.50.  Defendant lacks sufficient information to form a belief of the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 70 | In February 2013, the defense fees and costs incurred through Mr. Gerstel's firm totaled $20,870.43 after subtracting $357.50 for four billing entries that postdated February 26, 2013. | Decl. of Bryan R. Gerstel ¶ 24, Ex. 12. | | Undisputed that the invoice totaled $4,853.75 after subtracting $137.50. Defendant lacks sufficient information to form a belief of the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange. |
| 71 | Using the $275 hourly rate that Liberty agreed to pay for Ironwood's defense, the amount of defense fees and costs unpaid by Liberty from May 15, | Decl. of Bryan R. Gerstel ¶ 27, Exs. 1-4 & 6-12. | | Undisputed.  Defendant lacks sufficient information to form a belief regarding the purpose of the payment of $10,000 by Ironwood as the Parties have not conducted discovery other |

**18**
**DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN**

2451618

| | | | | |
|---|---|---|---|---|
| | | 2012, through February 26, 2013 totals $56,569.36 after subtracting the $10,000 retention payment made by Ironwood. | | than their Rule 26(a) exchange |
| | 72 | Beginning on or about January 29, 2013, Ironwood made several written requests that Liberty pay Ironwood any unpaid defense fees and costs incurred after the date of notice to Liberty. | Decl. of John J. McLeod ¶¶ 6, 7, 10 & 12, Exs. 4, 5, 8 & 10. | Undisputed. |
| | 73 | To date, Liberty has not paid any money to Ironwood in connection with the Cobb matter. | Decl. of Joshua Tanner ¶ 29; Decl. of Bryan R. Gerstel ¶27. | Undisputed. |

Liberty also respectfully submits the following additional material facts and supporting evidence in support of its Opposition to Ironwood's Motion for Partial Summary Judgment.

| DEF'S SUF NO. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 1. | On or about October 5, 2011, Liberty received from Ironwood an "Application for Nonprofit Executive Advantage Policy," dated October 5, 2011, and signed by the Chief Operating Officer, which had the answer "No" marked in response to Question 14. | Declaration of Seon Choi, ¶ 3, Ex. A. |
| 2. | Question 14 of the Application for Nonprofit Executive Advantage Policy asks: **Does anyone for whom insurance is sought have any knowledge or information of any act, error, omission, fact, or circumstances which** | Declaration of Seon Choi, ¶ 3, Ex. A. |

| | | | |
|---|---|---|---|
| | | may give rise to a **Claim** which may fall within the scope of the proposed insurance? | |
| 3. | | By letter dated October 25, 2012, Liberty reserved its rights, in part, pursuant to: <br> • Question 6. [actually question 14], Prior Knowledge, of the insurance application and Sections 6.1 and 6.2 of the Policy; and <br> • Liberty also reserved its rights to void coverage pursuant to Sections 6.1 and 6.2 of the Policy. | Decl. Joshua Tanner ¶ 27, Ex. 5, pages 6-7 ; Decl. of Alan Lux ¶ 21, Ex. 8, pages 10-11, as referenced in Pltf's SUF, No. 37. |
| 4. | | Section 6 of the Policy, Application Representations and Severability, states: <br> **6.1** The Insureds represent that the statements and representations contained in the Application are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insured under this Policy. This Policy is issued in reliance upon the truth of such statements and representations. <br> **6.2** The Insureds agree that if the Application contains any statements or representations that are untrue, this Policy shall be void as to the Insured Organization and any Insured Person who knew the facts that were not truthfully disclosed, provided that such knowledge shall not be imputed to any other Insured Person. | Decl. of Joshua Tanner ¶ 7, Ex. 2; Decl. of Alan Lux ¶ 9, Ex. 1, as referenced in Pltf's SUF, No. 3. |
| 5. | | Liberty's October 25, 2012 correspondence further noted that the Application further provided that: <br> IT IS UNDERSTOOD AND AGREED THAT IF ANYONE FOR WHOM THIS INSURANCE IS SOUGHT HAS ANY KNOWLEDGE OF ANY SUCH ACT, ERROR, OMISSION, FACT OR CIRCUMSTANCE, ANY CLAIM | Decl. Joshua Tanner ¶ 27, Ex. 5, pages 6-7 ; Decl. of Alan Lux ¶ 21, Ex. 8, pages 10-11, as referenced in Pltf's SUF, No. 37. |

2451618

| | | | |
|---|---|---|---|
| 1 2 | | EMANATING THEREFROM SHALL BE EXCLUDED FROM COVERAGE UNDER THE PROPOSED INSURANCE. | |
| 3 4 5 6 | 6. | Liberty's October 25, 2012, correspondence further noted that the invoices that Ironwood submitted to Liberty for payment for services rendered by Ironwood's counsel in connection with the Cobb Claim contained entries that demonstrated the basis for a coverage defense based on Ironwood's "prior knowledge." | Decl. Joshua Tanner ¶ 27, Ex. 5, pages 6-7 ; Decl. of Alan Lux ¶ 21, Ex. 8, pages 10-11, as referenced in Pltf's SUF, No. 37. |
| 7 8 9 10 11 12 13 14 | 7. | Liberty's October 25, 2012, correspondence specifically noted that Gerstel's invoice dated October 13, 2011, contained an entry: "Review and analyze legal issues and facts re: Assessment, Mistake of Fact and Law issues, Estoppel, Class action issues and Liability; Declaratory Relief issues and Liability; Insurance issues re potential claims and coverage; Transferability of assessment rights; Contractual liability for assessment payments by forfeiting members; potential for present member claims; analysis of statues, case law Club documentation re: issues; prepare Memo to Board of Directors on these issues." | Decl. Joshua Tanner ¶ 27, Ex. 5, pages 6-7 ; Decl. of Alan Lux ¶ 21, Ex. 8, pages 10-11, as referenced in Pltf's SUF, No. 37. |
| 15 16 17 | 8. | Liberty's October 25, 2012, correspondence specifically noted that Gerstel's invoice dated September 6, 2011, contained the following entry: "telecom Tanner re additional information on Insurance and sales of memberships." | Decl. Joshua Tanner ¶ 27, Ex. 5, pages 6-7 ; Decl. of Alan Lux ¶ 21, Ex. 8, pages 10-11, as referenced in Pltf's SUF, No. 37. |
| 18 19 20 | 9. | Liberty's October 25, 2012, correspondence requested the Memo that Gerstel drafted to Ironwood with respect to the issues outlined in the September 6, 2011, entry. | Decl. Joshua Tanner ¶ 27, Ex. 5, pages 6-7 ; Decl. of Alan Lux ¶ 21, Ex. 8, pages 10-11, as referenced in Pltf's SUF, No. 37. |

DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN

2451618

| 10. | Liberty's October 25, 2012, correspondence requested a detailed explanation for the analysis outlined in the October 13, 2011, entry. | Decl. Joshua Tanner ¶ 27, Ex. 5, pages 6-7 ; Decl. of Alan Lux ¶ 21, Ex. 8, pages 10-11, as referenced in Pltf's SUF, No. 37. |
| 11. | By letter dated February 26, 2013, Liberty advised Ironwood that, following further investigation, it was supplementing its prior coverage letters to deny coverage for the Claim. | Decl. of John J. McLeod ¶ 9, Ex. 7 as referenced in Pltf's SUF, No. 61. |
| 12. | Liberty's February 26, 2013, correspondence referred back to Liberty's October 25, 2012, reservation of rights letter and explained that n coverage was unavailable based upon the Insured's response of "NO" to question 14 of the Application and Sections 6.1 and 6.2 of the Policy and the entries contained in the October 13, 2011, invoice. | Decl. of John J. McLeod ¶ 9, Ex. 7, as referenced in Pltf's SUF, No. 61. |
| 13. | Liberty's February 26, 2013, correspondence stated that Ironwood's response to question 14 was false based upon Gerstel's invoice entries and that the Insured was aware as early as July and August of 2011 of facts and circumstances which might give rise to Claim by Mr. Cobb and/or other members. | Decl. of John J. McLeod ¶ 9, Ex. 7 as referenced in Pltf's SUF, No. 61. |
| 14. | Liberty's February 26, 2013, correspondence confirmed Ironwood's refusal of Liberty's offer to enter into a confidentiality agreement so to provide the requested information regarding the entries in question and copy of the Memo, and advised that such refusal confirmed that Ironwood and its Board were aware of the facts and circumstances (prior to the completing the Application) that gave rise to the Cobb Complaint. | Decl. of John J. McLeod ¶ 9, Ex. 7 as referenced in Pltf's SUF, No. 61. |

| | | |
|---|---|---|
| 15. | Liberty's February 26, 2013, correspondence also specifically reserved the right to rescind the Policy. | Decl. of John J. McLeod, ¶ 9, Ex. 7, pages 2 – 4, as referenced in Pltf's SUF, No. 61. |

Dated:  February 3, 2013

KAUFMAN BORGEEST & RYAN LLP

By:       /s/ Jeffrey S. Whittington

Jeffrey S. Whittington, Esq.
Miriam Gregory, Esq.
Attorney for Defendant,
Liberty Insurance Underwriters, Inc.

## PROOF OF SERVICE
### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION
### CASE NAME: Ironwood v. Liberty Insurance

I declare as follows:

I am employed in the County of Los Angeles, California. I am over the age of 18 years, and not a party to the within action; my business address is 23975 Park Sorrento, Suite 370, Calabasas, California 91302. I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

On February 3, 2014, I served a true and correct copy, with all exhibits, of the following document(s) described as follows:

## DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT AND STATEMENT OF UNDISPUTED ADDITIONAL MATERIAL FACTS IN SUPPORT OF OPPOSITION

[ ]     On the interested parties in the within action by placing the above documents in the United States mail for Express Mail delivery at 23975 Park Sorrento, Suite 370, Calabasas, California 91302 in a sealed envelope, with Express Mail postage thereon fully prepaid; by depositing copies of the above documents in a box or other facility regularly maintained by Federal Express, with delivery fees paid by the sender's account. (Code of Civil Procedure § 1013(c).) *(Overnight Delivery Service)*

[ x ]     On the interested parties in the within action by faxing a true and correct copy of the above documents to the facsimile number listed below. *(Fax Service)*

[x]     via service through the CM/ECF system. *(eService)*

John J. McLeod, Esq.
Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B. Street, Suite 1570
San Diego, California 92101
john@mcleodlawgroup.com
pchirst@mcleodlawgroup.com

I certify under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct and that this declaration was executed on February 3, 2014, at Calabasas, California.

By:     ___/s/ Jesica Isaac_____          By:     ___Jesica Isaac_____
        Signature of Declarant                        Name of Declarant

---

1   Jeffrey S. Whittington, Esq./SBN 236028
    Email: jwhittington@KBRlaw.com
2   Miriam Gregory, Esq./SBN 281083
    Email: mgregory@KBRlaw.com
3   KAUFMAN BORGEEST & RYAN LLP
    23975 Park Sorrento, Suite 370
4   Calabasas, CA 91302
    Telephone: (818) 880-0992
5   Facsimile: (818) 880-0993

6   Attorneys for Defendant
    Liberty Insurance Underwriters, Inc.

7

8                   **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

10  IRONWOOD COUNTRY CLUB,          ) Case No. 5:13-CV-00996-VAP (DTB)
                                     )
11              Plaintiffs,          ) **DEFENDANT'S OBJECTIONS TO**
                                     ) **EVIDENCE SUBMITTED BY**
         vs.                         ) **PLAINTIFF**
12                                   )
                                     )
13  LIBERTY INSURANCE                ) **HEARING DATE:     February 24, 2014**
    UNDERWRITERS, INC. and DOES      ) **HEARING TIME:     2:00 p.m.**
14  1 through 100,                   ) **COURTROOM:        2**
                                     )
            Defendants.              )
15                                   ) Discovery Cut-Off:
                                     ) Pre-Trial Conference:
16                                   ) Trial Date:
                                     )
17                                   ) FILED CONCURRENTLY WITH:
                                     ) 1.  Defendant's    Points    and   Authorities    in
                                     )     Opposition to Plaintiff's Motion for Partial
18                                   )     Summary Judgment
                                     ) 2.  Statement of Genuine Disputes and Statement of
                                     )     Undisputed Facts
19                                   ) 3.  Declaration of Jeffrey S. Whittington;
                                     ) 4.  Declaration of Seon Choi
20                                   ) 5.  [Proposed] Order

---

**1**
**DEFENDANT'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF**
2451621

Defendant, Liberty Insurance Underwriters, Inc. ("Liberty") hereby objects to, and requests to strike, the following evidence presented by plaintiff, Ironwood Country Club ("Ironwood") in connection with Ironwood's Motion for Partial Summary Judgment set for hearing on February 24, 2014, before this Court.

**A. Declaration of Joshua Tanner in Support of Motion for Partial Summary Judgment, dated December 20, 2013.**

1. Pg. 2, ¶6, lines 9-12. "I have conferred with the other members of Ironwood's management team, including Ironwood's Controller, Lydia Magat, as well as with Mr. Lux. However, I am not aware of who, if anyone, provided a 'no' response to Question #14." This evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802).

2. Pgs. 2-3, ¶8. The evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802).

3. Pg. 3, Lines 3-6 of ¶ 8: "I am informed and believe that dating back several years before my employment with the club, the previous Boards had been intermittently discussing the nature and terms of this business practice." This evidence is objected to on the grounds it lacks foundation (FRE 602).

4. Pg. 3, ¶9. The evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802). Pg. 3, Lines 7-10 of ¶ 9: "I am informed and believe that this included consultations with many individuals, including past Presidents, myself and other members of Ironwood's management team, and Ironwood's counsel, Bryan

1  Gerstel," and lines Pg. 3, 13-15: "I am informed and believe that no Board made any

2  decision on this issue prior to January 2012." This evidence is also objected to on the

3  grounds it lacks foundation (FRE 602).

4  5.      Pg. 3, ¶10. The evidence is objected to on the grounds that it is inadmissible

5  hearsay. (FRE 802).     Pg. 3, Lines 25-27 of ¶ 10, "I am informed and believe that this

6  was the first time any Board ever voted on the issue of whether to change this business

7  practice." This evidence is also objected to on the grounds that it lacks foundation.

8  (FRE 602).

9  6.      Pg. 4, ¶12.  The evidence is objected to on the grounds that it is inadmissible

10 hearsay. (FRE 802).

11 7.      Pg. 4, ¶13.  The evidence is objected to on the grounds that it is inadmissible

12 hearsay. (FRE 802).     Pg. 4, Lines 18-19 of ¶ 13, "I am informed and believe that the

13 Board, too, had no such knowledge or information. Indeed, the decision to change that

14 business practice was not made until January 19, 2012 – more than three months after

15 October 5, 2011." This evidence is also objected to on the grounds that it lacks

16 foundation. (FRE 602).

17 8.      Pgs. 4-5, ¶15. The evidence is objected to on the grounds that it is inadmissible

18 hearsay. (FRE 802).     Pg. 4, Lines 27-28 of ¶ 15, "I am informed and believe that, on

19 or about May 15, 2012, Mr. Lux caused Mr. Cobb's May 7, 2012 demand letter to be

20 forwarded to Liberty..." This evidence is also objected to on the grounds that it lacks

1   foundation. (FRE 602).

2   9.      Pg. 5, ¶16.  This evidence is objected to on the grounds that it lacks foundation.

3   (FRE 602).

4   10.     Pg. 5, ¶17.   The evidence is objected to on the grounds that it constitutes

5   inadmissible hearsay. (FRE 802).      Pg. 5, Lines 9-11 of ¶ 17, "It was my

6   understanding that Liberty had requested the invoices for purposes of processing them

7   for reimbursement to Ironwood after deducting the $10,000 retention under the

8   Policy."  This evidence is also objected to on the grounds that it lacks foundation.

9   (FRE 602).

10  11.     Pg. 5, ¶18.   The evidence is objected to on the grounds that it constitutes

11  inadmissible hearsay. (FRE 802).

12  12.     Pg. 5, ¶19.   The evidence is objected to on the grounds that it constitutes

13  inadmissible hearsay. (FRE 802).

14  13.     Pg. 5-6, ¶20.   The evidence is objected to on the grounds that it constitutes

15  inadmissible hearsay. (FRE 802).

16  14.     Pg. 6, ¶21.   The evidence is objected to on the grounds that it constitutes

17  improper lay witness and/or expert testimony. (FRE 701 and 702).

18  15.     Pg. 6, ¶22.  The evidence is objected to on the grounds that it lacks foundation.

19  (FRE 602).

20  16.     Pg. 6, ¶23. The evidence is objected to on the grounds that it constitutes

---

**4**

**DEFENDANT'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF**

2451621

1  improper lay witness and/or expert testimony. (FRE 701 and 702) and inadmissible

2  hearsay. (FRE 802).

3  17.    Pg. 7, ¶24. The evidence is objected to on the grounds that it constitutes

4  improper lay witness and/or expert testimony (FRE 701 and 702) and inadmissible

5  hearsay (FRE 802).

6  18.    Pg. 7, ¶25. The evidence is objected to on the grounds that it constitutes

7  improper lay witness and/or expert testimony (FRE 701 and 702) and inadmissible

8  hearsay (FRE 802).

9  19.    Pg. 7, ¶26. The evidence is objected to on the grounds that it constitutes

10  improper lay witness and/or expert testimony (FRE 701 and 702) and inadmissible

11  hearsay (FRE 802).

12  20.    Pg. 7, ¶28. The evidence is objected to on the grounds that it constitutes

13  inadmissible hearsay. (FRE 802).

14    **B.    Declaration of Robert C. Manion in Support of Motion for Partial Summary Judgment, dated December 26, 2013.**

15

16  1.    Pg. 1, ¶2.  The evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802).

17

18  2.    Pg. 1, ¶3.  The evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802).

19

20  3.    Pg. 1, ¶4.  The evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802).

4.      Pgs. 1-2, ¶4.  The evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802).   Pg. 2,  Lines 6-8 of ¶4, "I am informed and believe that dating back several years before my initial three-year term began, previous Boards had been intermittently discussing the nature and terms of this business practice."   This is evidence is also objected to on the grounds it lacks foundation. (FRE 602).

5.      Pg. 2, ¶5.  The evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802).

6.      Pgs. 2-3, ¶6.  The evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802).  Pg. 3, ¶6, Lines 2-3, "I am informed and believe that this was the first time any Board ever voted on the issue of whether to change this business practice."   The evidence is also objected to on the grounds that it lacks foundation. (FRE 602).

7.      Pg. 3, ¶7. The evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802).

8.      Pg. 3, ¶8. The evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802).

9.      Pg. 3, ¶9. The evidence is objected to on the grounds that it is inadmissible hearsay. (FRE 802).   Pg. 3, Lines 18-20 of ¶ 9, "I am informed and believe that Mr. Tanner caused to be submitted an insurance application to Liberty Insurance

**DEFENDANT'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF**

2451621

1   Underwriters, Inc. on or about October 5, 2011." The evidence is also objected to on

2   the grounds that it lacks foundation. (FRE 602).

3   10.   Pg. 4, ¶10.  The evidence is objected to on the grounds that it is inadmissible

4   hearsay. (FRE 802).

5   11.   Pg. 4, ¶11.  The evidence is objected to on the grounds that it lacks foundation.

6   (FRE 602).

7   12. Pg. 4, ¶12, lines 8-11.   The evidence is objected to on the grounds that it is

8   inadmissible hearsay. (FRE 802).  The evidence is also objected to on the grounds that

9   it constitutes improper lay witness and/or expert testimony. (FRE 701 and 702).

10        **C.    Declaration of Alan Lux in Support of Motion for Partial
            Summary Judgment, dated December 23, 2013.**

11
12   1.   Pg. 2-4, ¶¶1-18.  The evidence is objected to on the grounds that it constitutes

     inadmissible hearsay. (FRE 802).

13
14   2.   Pg. 4, ¶19.  Pg. 4, Lines 19-21 of ¶ 19: "I am informed and believe that sometime

     shortly thereafter, Ms. Testaverde spoke to Ironwood's counsel, Bryan Gerstel, and

15   agreed to pay Mr. Gerstel's firm to defend Ironwood in the Cobb matter."   This

16   evidence is also objected to on the grounds that it lacks foundation and constitutes

17   inadmissible hearsay. (FRE 602); (FRE 802).

18   \\\

19   \\\

20

_____

**D.**   **Declaration of Bryan R. Gerstel in Support of Motion for Partial Summary Judgment, dated December 17, 2013.**

1.   Pg. 1, ¶2, Lines 11-13: "I am informed and believe that on or about May 7, 2012, Ironwood received a demand letter from William Cobb, who is now one of the plaintiffs in the Cobb Lawsuit ("Cobb Pre-Lawsuit Claim")."   This evidence is objected to on the grounds that it lacks foundation and constitutes inadmissible hearsay. (FRE 602); (FRE 802).

2.   Pg. 3, ¶¶ 8-9.   The evidence is objected to on the grounds that it constitutes inadmissible hearsay. (FRE 802).

3.   Pg. 4, ¶ 12.   The evidence is objected to on the grounds that it constitutes inadmissible hearsay. (FRE 802).

4.   Pg. 4, ¶ 13.   The evidence is objected to on the grounds that it constitutes inadmissible hearsay. (FRE 802).

5.   Pg. 4, ¶ 14.   The evidence is objected to on the grounds that it constitutes inadmissible hearsay. (FRE 802).

6.   Pg. 4-5, ¶ 15.   The evidence is objected to on the grounds that it constitutes inadmissible hearsay. (FRE 802).

7.   Pg. 5, ¶ 16.   The evidence is objected to on the grounds that it constitutes inadmissible hearsay. (FRE 802).

8.   Pg. 5, ¶17, lines 19-21.   The evidence is objected to on the grounds that it constitutes inadmissible hearsay and lacks foundation. (FRE602); (FRE 802).

9.   Pg. 6-7, ¶22.   The evidence is objected to on the grounds that it constitutes inadmissible hearsay. (FRE 802).   Pg. 6, Lines 23-25 of ¶ 22 "I am informed and believe that Ironwood made this payment so as to satisfy the $10,000.00 retention under the insurance policy that is at issue in the above-entitled action."   The evidence is also objected to on the grounds that it lacks foundation. (FRE 602).

10.   Pg. 7-8, ¶¶ 25-27.   The evidence is objected to on the grounds that it constitutes inadmissible hearsay. (FRE 802).


        Liberty will respectfully request this Court at the hearing on the motion to sustain the above objections and strike the evidence referred to above.


Dated:  February 3, 2014                    KAUFMAN BORGEEST & RYAN LLP

                                   By:     /s/ Jeffrey S. Whittington
                                           Jeffrey S. Whittington, Esq.
                                           Miriam Gregory, Esq.
                                           Attorney for Defendant,
                                           Liberty Insurance Underwriters, Inc.

**DEFENDANT'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF**
2451621

**PROOF OF SERVICE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**
**CASE NAME: Ironwood v. Liberty Insurance**

I declare as follows:

I am employed in the County of Los Angeles, California.  I am over the age of 18 years, and not a party to the within action; my business address is 23975 Park Sorrento, Suite 370, Calabasas, California 91302.  I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

On February 3, 2014, I served a true and correct copy, with all exhibits, of the following document(s) described as follows:

**DEFENDANT'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF**

[ ]   On the interested parties in the within action by placing the above documents in the United States mail for Express Mail delivery at 23975 Park Sorrento, Suite 370, Calabasas, California 91302 in a sealed envelope, with Express Mail postage thereon fully prepaid; by depositing copies of the above documents in a box or other facility regularly maintained by Federal Express, with delivery fees paid by the sender's account.  (Code of Civil Procedure § 1013(c).)  *(Overnight Delivery Service)*

[x]   On the interested parties in the within action by faxing a true and correct copy of the above documents to the facsimile number listed below.  *(Fax Service)*

[x]   via service through the CM/ECF system. *(eService)*

John J. McLeod, Esq.
Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B. Street, Suite 1570
San Diego, California 92101
john@mcleodlawgroup.com
pchirst@mcleodlawgroup.com

I certify under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct and that this declaration was executed on February 3, 2014, at Calabasas, California.

By:  _____/s/ Jesica Isaac_____          By:  _____Jesica Isaac_____
     Signature of Declarant                              Name of Declarant

1  Jeffrey S. Whittington, Esq./SBN 236028
   Email: jwhittington@KBRlaw.com
2  Miriam Gregory, Esq./SBN 281083
   Email: mgregory@KBRlaw.com
3  KAUFMAN BORGEEST & RYAN LLP
   23975 Park Sorrento, Suite 370
4  Calabasas, CA 91302
   Telephone: (818) 880-0992
5  Facsimile: (818) 880-0993

6  Attorneys for Defendant
   Liberty Insurance Underwriters, Inc.

7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

10 IRONWOOD COUNTRY CLUB,          ) Case No. 5:13-CV-00996-VAP (DTB)
                                    )
11           Plaintiffs,            ) DECLARATION OF SEON CHOI IN
                                    ) SUPPORT OF DEFENDANT'S
12     vs.                          ) OPPOSITION TO PLAINTIFF'S
                                    ) MOTION FOR PARTIAL SUMMARY
13 LIBERTY INSURANCE               ) JUDGMENT
   UNDERWRITERS, INC. and DOES     )
14 1 through 100,                  )
                                    ) HEARING DATE:    February 24, 2014
15           Defendants.           ) HEARING TIME:    2:00 p.m.
                                    ) COURTROOM:       2
16                                  )
                                    ) Discovery Cut-Off:
17                                  ) Pre-Trial Conference:
                                    ) Trial Date:
18                                  )
                                    ) FILED CONCURRENTLY WITH:
19                                  ) 1. Memorandum of Points and Authorities
                                    ) 2. Statement of Genuine Disputes and
20                                  )    Statement of Undisputed Facts
                                    ) 3. Evidentiary Objections to Ironwood's
                                    )    Motion for Partial Summary Judgment
                                    ) 4. Declaration of Jeffrey S. Whittington;
                                    ) 5. [Proposed] Order

---

1

DECLARATION OF SEON CHOI IN SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

2451687

## DECLARATION OF SEON CHOI

I, Seon Choi, do hereby declare and state as follows:

1.  I am an Assistant Vice President at Liberty International Underwriters, Inc., the Defendant in the instant litigation.

2.  Based upon my review of the claim file set up with respect to this matter, the following Exhibits are true and correct copies of the documents maintained by Liberty in the normal and ordinary course of business.

3.  Attached hereto as **Exhibit A** is a true and correct copy of the Application for Insurance with Liberty that Ironwood Country Club ("Ironwood") submitted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This declaration was executed on February 3, 2014, in New York, New York.

By: _____

Seon Choi, Declarant

DECLARATION OF SEON CHOI IN SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

2451687

# EXHIBIT   A



**LIBERTY INSURANCE UNDERWRITERS INC.**
55 Water Street, 18th Floor
New York, New York 10041
(a member of the Liberty Mutual Group and hereinafter "the Insurer")
Liberty Insurance Underwriters Inc.'s toll free number is: 800-677-9163

# APPLICATION FOR
# NONPROFIT EXECUTIVE ADVANTAGE POLICY

THIS IS AN APPLICATION FOR A CLAIMS-MADE POLICY. THE POLICY FOR WHICH THIS APPLICATION IS MADE COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR DISCOVERY PERIOD, IF APPLICABLE, AND REPORTED TO THE INSURER AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN 90 DAYS AFTER THE END OF THE POLICY PERIOD. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

UNLESS AMENDED BY ENDORSEMENT, AMOUNTS INCURRED AS DEFENSE COSTS SHALL BE IN ADDITION TO THE LIMIT OF LIABILITY AND SHALL NOT BE APPLIED TO THE APPLICABLE RETENTION.

THE POLICY PROVIDES THE DUTY ON THE PART OF THE INSURER TO DEFEND.

*Instructions*
- *Please complete all questions.*
- *The term "Insured Organization" means the parent organization whose directors and officers are proposed to be Insured under the Nonprofit Executive Advantage Policy for which this Application is made, along with any other entities in which such parent organization has or controls the right to elect more than 50% of the Board of Directors or other governing body of such entity if such right exists.*

1. Name of the **Insured Organization**: Ironwood Country Club

2. Address of the **Insured Organization**: 73-735 Irontree Drive
   City: Palm Desert  County: Riverside     State: CA  Zip Code: 92260

3. Individual at **Insured Organization** designated to receive correspondence and notices from the Insurer:
   Joshua Tanner              General Manager/COO
   (Name)                        (Title)

   Telephone: (760) 346-0551  Fax: (760) 766-1098  E-Mail Address: jtanner@ironwoodcountryclub.com

4. **Insured Organization's** nature of operations: Golf and Country Club

5. a) Tax status: o Exempt under Section 501(c) 7  or  o Taxable  b) Date organized  12/03/1984

   c) Number of Employees: 100(Full time) 60 (Seasonal)  d) Annual Salary/Wages Expense $ 3,900,000

   e) Total Assets $41,468,000

6. a) What was the employee turnover rate in the last 12 months?  3%

   b) Did this exceed the historical average of the prior 3 years?.................................................. o Yes ✓ No

7. Have there been any changes in Senior Management for reasons other than death, retirement at normal retirement age or term limitations.......... ....................................................................................... o Yes  ☒No

8. Has the **Insured Organization** had in the past 12 months, or does it contemplate within the next 12 months consolidation, merger, sale or divestiture of a portion of its business? ..................................... o Yes  ☒ No
   If "Yes", was there, or will there be, a reduction in employees as a result?.................. *N.A.*......... o Yes  o No
   If "Yes", what was, or will be, the reduction as a percentage of prior employee count? *N/A*  o Yes  o No

9. Does the **Insured Organization** provide any of the following? :
   a) Promote, sponsor or provide any type of insurance to its members? ................................ o Yes  ☒No
   b) Provide standard setting, disciplinary or peer review activities? ................................ o Yes  ☒No
   c) Engage in any labor negotiations? ...... ...................................................................... o Yes  ☒No
   d) Engage in any experimentation, research or product development? ................................ o Yes  ☒No
   e) Provide any other professional services? ................................................................. o Yes  ☒No
   f) Engage in any business transactions with **Insured Persons** or businesses they control?...... o Yes  ☒No
   If "Yes" for any of the above, please attach full details.

10. Has the **Insured Organization** previously held or does it now have any directors and officers liability insurance or similar insurance?................. .................................................................☒Yes  o No
    If "Yes", please provide the following details:

| Insurer | Policy Type | Deductible/Retention | Period From/To | Premium |
|---------|-------------|----------------------|----------------|---------|
| *Philadelphia Ins.* | *D&O/EPLI* | *$25,000* | *10/11 – 10/1/1* | |

11. Attach full details of any claim, notice of circumstance, or wrongful act which has been the subject of notice under such insurance in the last 5 years (if none, check the box).......................................... o None

12. Has any Insurer declined, cancelled, or refused to renew any directors and officers liability insurance or similar insurance within the past 5 years? .................................................................... ☒Yes  o No
    If "Yes", please attach full details.
    **Do not complete questions #13 and #14 if this is a renewal policy with the same limit of liability with a member of the Liberty Mutual Group.**

13. During the last 5 years has the **Insured Organization** or any of its directors, officers, or employees been involved in any litigation that could have a material impact on the **Insured Organization**?..o Yes  o No
    If "Yes", please attach full details.

14. Does anyone for whom insurance is sought have any knowledge or information of any act, error, omission, fact, or circumstance which may give rise to a **Claim** which may fall within the scope of the proposed insurance? ....................................................................................................................... o Yes  ☒No
    If "Yes", please attach full details.

> IT IS UNDERSTOOD AND AGREED THAT IF ANYONE FOR WHOM THIS INSURANCE IS SOUGHT HAS ANY KNOWLEDGE OF ANY SUCH ACT, ERROR, OMISSION, FACT, OR CIRCUMSTANCE, ANY CLAIM EMANATING THEREFROM SHALL BE EXCLUDED FROM COVERAGE UNDER THE PROPOSED INSURANCE.

**RENEWAL STATEMENT (Applicable to renewal polices only)** – It is agreed that this Renewal Application is a supplement to the Application(s) attached to the current Policy and said Applications, together with this Renewal Application, constitute the complete Application which shall be the basis of the contract should a Policy be issued and will be attached to and become part of the Policy.

**REQUIRED INFORMATION:** Risks exceeding $300,000 in salaries OR $1,000,000 in assets must submit a financial statement.

Signing this Application does not bind the undersigned to purchase or the Insurer to sell any insurance policy. If a policy is issued, this Application and its attachments shall be the basis of such policy and shall be deemed attached to and shall form part of such policy.

The undersigned, on behalf of all prospective Insureds, declares that the statements in this Application and its attachments are true and accurate. If there are material changes to any statements in this Application or its

LIU100DO110020507                      2 of 4

attachments prior to the inception date of the policy, the undersigned shall immediately notify the Insurer of such changes. Upon receipt of such notification, the Insurer shall have the right to modify or withdraw any outstanding terms or proposal.

**NOTICE TO ARKANSAS RESIDENTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO COLORADO RESIDENTS:** It is unlawful to knowingly provide false, incomplete, or misleading facts, or information to an insurance company for the purpose of defrauding or attempting to defraud the company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant with regard to settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance with the department of regulatory agencies.

**NOTICE TO FLORIDA RESIDENTS:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**NOTICE TO KENTUCKY RESIDENTS:**
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**NOTICE TO MAINE RESIDENTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**NOTICE TO NEW JERSEY RESIDENTS:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**NOTICE TO NEW MEXICO RESIDENTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

**NOTICE TO NEW YORK RESIDENTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**NOTICE TO OHIO RESIDENTS:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**NOTICE TO OKLAHOMA RESIDENTS:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**NOTICE TO OREGON RESIDENTS:** Any person who knowingly, and with intent to defraud or solicit another to defraud an insurer: (1) by submitting an application, or (2) by filing a claim containing a false statement as to any material fact, may be violating state law.

**NOTICE TO PENNSYLVANIA RESIDENTS** Any person who knowingly and with intent to defraud any insurance company or other person files and application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**NOTICE TO TENNESSEE RESIDENTS:** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines and denial of insurance benefits

This Application must be currently dated and signed by a member of the governing board of the organization.

Signed: _____     Title: <u>Chief Operating Officer</u>

Date: _____ 10/5/11 _____

**Submitting Producer Name**

_Tanenbaum-Harber of Ca. Inc._
Agency Name

_11610 Iberia Place #200   San Diego, Ca. 92128_
Agency Address

_____
License Number (FL Producers Only)

1  Jeffrey S. Whittington, Esq./SBN 236028
   Email: jwhittington@KBRlaw.com
2  Miriam Gregory, Esq./SBN 281083
   Email: mgregory@KBRlaw.com
3  KAUFMAN BORGEEST & RYAN LLP
   23975 Park Sorrento, Suite 370
4  Calabasas, CA 91302
   Telephone: (818) 880-0992
5  Facsimile: (818) 880-0993

6  Attorneys for Defendant
   Liberty Insurance Underwriters, Inc.

7

                    UNITED STATES DISTRICT COURT
8
          CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

9
   IRONWOOD COUNTRY CLUB,            )  Case No. 5:13-CV-00996-VAP (DTB)
10                                   )
              Plaintiffs,            )  **DECLARATION OF JEFFREY S.**
11                                   )  **WHITTINGTON PURSUANT TO FED.**
        vs.                          )  **R. CIV. P. 56(d) IN SUPPORT OF**
                                     )  **DEFENDANT'S OPPOSITION TO**
12                                   )  **PLAINTIFF'S MOTION FOR PARTIAL**
   LIBERTY INSURANCE                 )  **SUMMARY JUDGMENT**
   UNDERWRITERS, INC. and DOES       )
13 1 through 100,                    )  **HEARING DATE:**   **February 24, 2014**
                                     )  **HEARING TIME:**   **2:00 p.m.**
              Defendants.            )  **COURTROOM:**      **2**
14                                   )
                                     )
15                                   )  Discovery Cut-Off:
                                     )  Pre-Trial Conference:
                                     )  Trial Date:
16                                   )
                                     )  FILED CONCURRENTLY WITH:
17                                   )  1. Defendant's Points and Authorities in
                                     )     Opposition to Plaintiff's Motion for Partial
                                     )     Summary Judgment
18                                   )  2. Evidentiary Objections to Plaintiff's Motion for
                                     )     Partial Summary Judgment
                                     )  3. Defendant's Statement of Genuine Issues
19                                   )     and Statement of Undisputed Facts;
                                     )  4. Declaration of Seon Choi
20                                   )  5. [Proposed] Order
                                     )

─────────────────────────────────────────────────────────
                                  1
   DECLARATION OF JEFFREY S. WHITTINGTON PURSUANT TO FED. R. CIV. P. 56(d) IN SUPPORT OF
   DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

2451685

## DECLARATION OF JEFFREY S. WHITTINGTON

1. I am an attorney in good standing duly licensed to practice law in the State of California. I am a partner with the law firm of Kaufman Borgeest & Ryan LLP, attorneys of record for defendant, Liberty Insurance Underwriters, Inc. ("Liberty"). I have personal knowledge of the matters set forth herein and if called upon to testify under oath, I could and would competently do so. I make this declaration in support of Liberty's Opposition to Ironwood Country Club's ("Ironwood") Motion for Partial Summary Judgment ("Motion for PSJ").

2. On December 17, 2013, Ironwood advised me, via email, that it believed that the Parties satisfied the "meet and confer" requirement of L.R. 7-3 *in July 2013,* and as such, intended to file a motion for partial summary judgment on the duty to defend issue.

3. On December 20, 2013, I advised Ironwood that filing a motion for summary judgment on the defense duty issue was premature under California law as discovery had not yet begun and issues of fact existed with respect to the critical issue of whether Ironwood had made material misrepresentations in its application of insurance with Liberty, and consequently, whether Liberty owed Ironwood a defense in the Cobb Lawsuit, the exact issue upon which Ironwood is currently seeking summary judgment. Pltf's Decl. of John J. McLeod ¶ 26, Ex. 24, page 1.

4. Nevertheless, despite the foregoing, Ironwood did not respond to my December 20, 2013, letter and, on December 30, filed its Motion for PSJ, unilaterally setting the hearing date for January 27, 2014.   Following Liberty's *Ex Parte* Application to continue the Motion for PSJ hearing date, which was vigorously opposed by Ironwood, the Hearing date for the Motion for PSJ was continued to February 24, 2014.

5. Other than the initial disclosures required under Rule 26 of the Federal Rules of Civil Procedure, the parties have not yet served discovery or conducted depositions, although Liberty fully intends to conduct significant discovery and depositions in this matter.

6.   Fed. R. Civ. P. 56(d) provides that:

> "If a party opposing [a motion for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

The purpose of this rule is to prevent parties from being "railroaded" by a premature motion for summary judgment brought before the close of discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (Rule 56(f) requires "summary judgment [to] be refused where the nonmoving party has not had the opportunity to discover information that is essential

**DECLARATION OF JEFFREY S. WHITTINGTON PURSUANT TO FED. R. CIV. P. 56(d) IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

2451685

1    to his opposition").

2    7. Given the lack of discovery thus far, Liberty is placed at a severe disadvantage

3 in its ability to respond substantively to Ironwood's (alleged) "Statement of

4 Undisputed Facts" ("SUF"). Specifically, Ironwood's SUF, filed in support of its

5 Motion for PSJ, cites 73 purportedly "undisputed" material facts despite there being

6 no discovery other than the initial disclosures.  The practical effect is that Liberty is

7 unable to materially respond either in the positive or in the negative to these allegedly

8 "undisputed facts" because these "facts" have not been subjected to the test of

9 discovery.  Accordingly, because Ironwood's Motion for PSJ predates any form of

10 discovery, Liberty is effectively prevented from providing a response to a majority of

11 Ironwood's alleged "undisputed facts."

12    8. Thus, to the extent this Court will be relying on Ironwood's purportedly

13 "undisputed facts" in rendering its decision,  Liberty respectfully requests the Court

14 deny Ironwood's Motion for Partial Summary Judgment, or, in the alternative, defer

15 considering and ruling on same until such time as the Parties have had the

16 opportunity to engage in meaningful discovery.

17 \\\

18 \\\

19 \\\

20 \\\

---

**4**

**DECLARATION OF JEFFREY S. WHITTINGTON PURSUANT TO FED. R. CIV. P. 56(d) IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

2451685

1       I declare under penalty of perjury under the laws of the United States of America

2   and the State of California that the foregoing is true and correct.  This declaration was

3   executed on February 3, 2014, in Calabasas, California.

4

5                           By:  /s/ Jeffrey S. Whittington

                               JEFFREY S. WHITTINGTON

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**DECLARATION OF JEFFREY S. WHITTINGTON PURSUANT TO FED. R. CIV. P. 56(d) IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

2451685

**PROOF OF SERVICE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**
**CASE NAME: Ironwood v. Liberty Insurance**

I declare as follows:

I am employed in the County of Los Angeles, California.  I am over the age of 18 years, and not a party to the within action; my business address is 23975 Park Sorrento, Suite 370, Calabasas, California 91302.  I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

On February 3, 2014, I served a true and correct copy, with all exhibits, of the following document(s) described as follows:

## DECLARATION OF JEFFREY S. WHITTINGTON PURSUANT TO FED. R. CIV. P. 56(d) IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

[ ]    On the interested parties in the within action by placing the above documents in the United States mail for Express Mail delivery at 23975 Park Sorrento, Suite 370, Calabasas, California 91302 in a sealed envelope, with Express Mail postage thereon fully prepaid; by depositing copies of the above documents in a box or other facility regularly maintained by Federal        Express, with delivery fees paid by the sender's account. (Code of Civil Procedure § 1013(c).)  *(Overnight Delivery Service)*

[ x ]    On the interested parties in the within action by faxing a true and correct copy of the        above documents to the facsimile number listed below.  *(Fax Service)*

[x]    via service through the CM/ECF system. *(eService)*

John J. McLeod, Esq.
Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B. Street, Suite 1570
San Diego, California 92101
john@mcleodlawgroup.com
pchirst@mcleodlawgroup.com

I certify under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct and that this declaration was executed on February 3, 2014, at Calabasas, California.

By:    ___/s/ Jessica Isaac_____          By:    ____Jessica Isaac_____
          Signature of Declarant                                  Name of Declarant

---

6

**DECLARATION OF JEFFREY S. WHITTINGTON PURSUANT TO FED. R. CIV. P. 56(d) IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

2451685

1  Jeffrey S. Whittington, Esq./SBN 236028
   Email: jwhittington@KBRlaw.com
2  Miriam Gregory, Esq./SBN 281083
   Email: mgregory@KBRlaw.com
3  KAUFMAN BORGEEST & RYAN LLP
   23975 Park Sorrento, Suite 370
4  Calabasas, CA 91302
   Telephone: (818) 880-0992
5  Facsimile: (818) 880-0993

6  Attorneys for Defendant
   Liberty Insurance Underwriters, Inc.
7

8              UNITED STATES DISTRICT COURT

9     CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

10 IRONWOOD COUNTRY CLUB,        ) Case No. 5:13-CV-00996-VAP (DTB)
                                  )
11        Plaintiffs,             ) [PROPOSED] ORDER REGARDING
                                  ) PLAINTIFF'S MOTION FOR PARTIAL
12     vs.                        ) SUMMARY JUDGMENT
                                  )
13 LIBERTY INSURANCE             ) HEARING DATE:    February 24, 2014
   UNDERWRITERS, INC. and DOES   ) HEARING TIME:    2:00 p.m.
14 1 through 100,                 ) COURTROOM:       2
                                  )
15        Defendants.             ) Discovery Cut-Off:
                                  ) Pre-Trial Conference:
                                  ) Trial Date:
16                                )
                                  ) FILED CONCURRENTLY WITH:
17                                )
                                  ) 1. Defendant's Points and Authorities in
18                                )    Opposition to Plaintiff's Motion for Partial
                                  )    Summary Judgment
                                  ) 2. Evidentiary Objections to Ironwood's Motion
19                                )    for Partial Summary Judgment
                                  ) 3. Defendant's Statement of Genuine Disputes and
20                                )    Statement of Undisputed Facts
                                  ) 4. Declaration of Jeffrey S. Whittington
                                  ) 5. Declaration of Seon Choi

---

1

**[PROPOSED] ORDER REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

2452599

1    TO ALL PARTIES HEREIN AND THEIR RESPECTIVE ATTORNEYS OF

2  RECORD:

3    PLEASE TAKE NOTICE THAT on February 24, 2014, at 2:00 p.m., the

4  Motion for Partial Summary Judgment, filed by Plaintiff, Ironwood Country Club

5  ("Ironwood"), came on for hearing in Courtroom 2 of the above-entitled court, the

6  Honorable Virginia A. Phillips, Judge presiding. Appearances were stated in the

7  record.

8    Having reviewed the moving, opposing, and reply papers on Ironwood's

9  Motion for Partial Summary Judgment, and oral argument of counsel having been

10  heard with respect to same, the Court, finds, adjudges and orders as follows:

11    Ironwood's Motion for Partial Summary Judgment is DENIED in full. The

12  Court finds that there is a genuine dispute of material fact as to each of the issues on

13  which Ironwood seeks summary judgment. The Court finds that Plaintiff's Motion for

14  Partial Summary Judgment is premature as no discovery has yet to be conducted.

15

16    IT IS SO ORDERED.

17

18    Dated: _____, 2014    _____

19                                                            HON. VIRGINIA A. PHILLIPS

20

1

## PROOF OF SERVICE
## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION
## CASE NAME: Ironwood v. Liberty Insurance

2

3

I declare as follows:

I am employed in the County of Los Angeles, California.  I am over the age of 18 years, and not a party to the within action; my business address is 23975 Park Sorrento, Suite 370, Calabasas, California 91302.  I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

4

5

6

On February 3, 2014, I served a true and correct copy, with all exhibits, of the following document(s) described as follows:

7

# [PROPOSED] ORDER REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARYJUDGMENT

8

[ ]    On the interested parties in the within action by placing the above documents in the United States mail for Express Mail delivery at 23975 Park Sorrento, Suite 370, Calabasas, California 91302 in a sealed envelope, with Express Mail postage thereon fully prepaid; by depositing copies of the above documents in a box or other facility regularly maintained by Federal      Express, with delivery fees paid by the sender's account. (Code of Civil Procedure § 1013(c).)  *(Overnight Delivery Service)*

9

10

11

[ x ]    On the interested parties in the within action by faxing a true and correct copy of the      above documents to the facsimile number listed below.  *(Fax Service)*

12

[x]    via service through the CM/ECF system. *(eService)*

13

John J. McLeod, Esq.
Paul C. Hirst, Esq.
McLEOD LAW GROUP, APC
701 B. Street, Suite 1570
San Diego, California 92101
john@mcleodlawgroup.com
pchirst@mcleodlawgroup.com

14

15

16

I certify under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct and that this declaration was executed on February 3, 2014, at Calabasas, California.

17

By:      /s/ Sharyn Waldrop_____          By:      Sharyn Waldrop_____
         Signature of Declarant                          Name of Declarant

18

19

20