**PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   EDCV 13-00996-VAP (DTBx)                 Date:  March 24, 2014

Title:      IRONWOOD COUNTRY CLUB -v- LIBERTY INSURANCE
            UNDERWRITERS, INC. AND DOES 1 THROUGH 100
==============================================================
PRESENT:          HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

          Marva Dillard                          None Present
          Courtroom Deputy                       Court Reporter

ATTORNEYS PRESENT FOR              ATTORNEYS PRESENT FOR
PLAINTIFFS:                        DEFENDANTS:

          None                               None

PROCEEDINGS:           MINUTE ORDER DENYING MOTION FOR SUMMARY
                       JUDGMENT (IN CHAMBERS)

     Before the Court is an amended Motion for Summary Judgment ("Motion" or
"Mot.") filed by Plaintiff, Ironwood Country Club ("Plaintiff") ("Ironwood") (Doc. No.
35).  The matter came before the Court for hearing on February 24, 2014.  After
consideration of the papers filed in support of, and in opposition to, the Motion, and
the arguments put forth at the hearing, the Court DENIES the Motion.

**I. BACKGROUND**

     On May 1, 2013, Plaintiff Ironwood Country Club filed an action in the
California Superior Court for the County of Riverside against Defendant Liberty
Insurance Underwriters, Inc. ("Liberty") ("Defendant").  The Complaint alleges

MINUTES FORM 11                          Initials of Deputy Clerk ___md____
CIVIL -- GEN                   Page 1

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

breach of contract and breach of the implied covenant of good faith and fair dealing in connection with Liberty's failure to defend Ironwood in a state law action, Cobb et al. v. Ironwood Country Club, Case No. INC 1205888.[1]  ("Complaint" or "Compl.") (Ex. A to Notice of Removal (Doc. No. 1) at 8.)  The underlying state action seeks declaratory relief in relation to Ironwood's Board of Director's January 2012 decision to stop repaying a $25,500.00 "Land Purchase Assessment" to certain members who had sold their country club memberships.  (See generally, Cobb Complaint.)

On June 3, 2013, Defendant filed a notice of removal, removing the action to this court on the basis of diversity jurisdiction.  (Not. of Removal (Doc. No. 1).)  On June 10, 2013, Defendant filed its Answer to Plaintiff's Complaint; and on January 16, 2014, Defendant filed an Amended Answer.  ("Answer") (Doc. No. 34.)  In the Amended Answer, Defendant claims Plaintiff made material misrepresentations and/or concealed information in its application for insurance and based on this concealment, the policy is voidable and subject to reformation or rescission.  (Id. ¶ 74.)

On January 27, 2014, Plaintiff filed an amended Motion for Partial Summary Judgment[2] on the issues of (1) Liberty's duty to defend Ironwood in the underlying Cobb lawsuit; (2) reimbursement of fees Ironwood incurred in defense of the Cobb lawsuit from May 15, 2012 to February 26, 2013; and (3) whether Bryan Gerstel's attorney invoices for Ironwood dated prior to May 15, 2012 are privileged and should

---

[1]Plaintiff requests the Court take judicial notice of the Complaint filed on August 12, 2012, in the underlying action, Cobb, et al. v. Ironwood Country Club ("Cobb Complaint").  (See Request for Judicial Notice ("RJN") (Doc. No. 35-8))  The Court may take judicial notice of court filings and other matters of public record, and accordingly, grants Plaintiff's request.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998)).

[2]Plaintiff originally filed the Motion for Summary Judgment on December 30, 2013.  (See Doc. No. 25.)  Plaintiff filed the amended Motion in response to Defendant's amended Answer.

MINUTES FORM 11                                        Initials of Deputy Clerk ___md____
CIVIL -- GEN                          Page 2

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

be returned to Ironwood.  In support of its Motion, Plaintiff filed a Statement of Undisputed Facts ("PSUF") (Doc. No. 35-2); Declaration of Bryan Gerstel ("Gerstel Decl.") (Doc. No. 35-3); Declaration of Joshua Tanner ("Tanner Decl.") (Doc. No. 35-4); Declaration of Alan Lux ("Lux Decl.") (Doc. No. 35-5); Declaration of Robert Manion ("Manion Decl.") (Doc. No. 35-6); and Declaration of John McLeod ("McLeod Decl.") (Doc. No. 35-7).

On February 3, 2014, Defendant filed an Opposition to the Motion ("Opposition" or "Opp'n.") (Doc. No. 36); Defendant's Statement of Genuine Issues in Opposition to the Motion ("SGI") and Statement of Undisputed Additional Material Facts ("DSUF") (Doc. No. 36-1); Defendants' Objections to Evidence Submitted by the Plaintiff ("Def.'s Evid. Objs."); Declaration of Jeffrey Whittington ("Whittington Decl.") (Doc No. 36-3); and Declaration of Seon Choi ("Choi Decl.") (Doc. No. 36-4). On February 10, 2014, Plaintiff filed a Reply in support of its Motion ("Reply") (Doc. No. 37); Response to Defendant's SGI (Doc. No. 37-1); and Objections to Evidence Presented by the Defendant ("Pl.'s Evid. Objs.") (Doc. No. 37-2).

## II. LEGAL STANDARD

A motion for partial summary judgment or summary adjudication is resolved under the same standard for summary judgment.  California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  Summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A genuine issue of material fact will exist "if the evidence is such that a

MINUTES FORM 11                                    Initials of Deputy Clerk ___md____
CIVIL -- GEN                    Page 3

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248. In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

# III. DISCUSSION

## A.    Summary Judgment on Liberty's Duty to Defend Is Premature

Ironwood seeks a judgment that, as a matter of law, Liberty has a duty to defend Ironwood in the underlying <u>Cobb</u> lawsuit. Liberty argues that because it has raised rescission as an affirmative defense, Ironwood's motion for summary judgment on this issue is premature.

Generally, "[a] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." <u>Nat'l Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 499 (9th Cir. 1997) (citing <u>Montrose Chemical Corp. of Cal. v. Superior Court</u>, 6 Cal. 4th 287, 295 (1993)). The insurer's duty to defend arises immediately upon notice of a covered claim against its insured if the facts known to the insurer indicate a potential or possibility for indemnity. <u>Id.</u> "An insurer has no duty only if, at the time of its decision, it can prove that the claim cannot fall within policy coverage." <u>Id.</u> Accordingly, when an insurer's duty to defend is the only issue presented, it is often appropriate for summary adjudication as the question is limited to whether an insurer can show that, at the time the claim was denied, the claim could not fall within the policy coverage.

When, however, the insurer has not only denied coverage, but also asserted rescission, United States District Courts in California have found that summary adjudication of whether a duty to defend exists is premature. <u>Atmel Corp. v. St. Paul Fire & Marine Ins. Co.</u>, 416 F. Supp. 2d 802, 807 (N.D. Cal. 2006); <u>Rocklin Park Place Condominiums Owners Ass'n v. Liberty Ins. Underwriters, Inc.</u>, 2013 WL 4828154, at *3-4 (E.D. Cal. Sept. 6, 2013); <u>see also</u> Honorable H. Walter Croskey et. al., <u>Cal. Prac. Guide Ins. Lit.</u>, § 5:147.5. In <u>Atmel</u>, the District Court for the Northern District of California addressed whether summary adjudication of an insurer's duty to defend was appropriate when the insurer raised rescission as an affirmative defense. 416 F. Supp. 2d at 807. The court reasoned that "because

MINUTES FORM 11                                    Initials of Deputy Clerk ___md____
CIVIL -- GEN                        Page 4

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

rescission is retroactive to the time that the representation becomes false, if [the insurer] is entitled to rescission, then it never owed [the insured] a duty to defend . . . Because a valid rescission voids a policy ab initio, and because both [the insured's] attempted enforcement of and [the insurer's] attempted rescission of the policy are being decided in this one action, any preliminary declaration that the policies are currently in effect or that [the insurer] is currently in breach of its duties would be inappropriate."  Id. at 807.

In Rocklin, the District Court for the Eastern District of California adopted the Atmel reasoning, and held that because the insurer's "rescission defense could potentially void the policy, this is not the proper juncture for summary adjudication" of the issue of the insurer's duty to defend.  2013 WL 4828154, at *4.

Plaintiff argues that Rocklin and Atmel were wrongly decided and based on an incorrect interpretation of California law governing an insurer's duty to defend.  (Mot. at 14.)  Instead, Plaintiff cites to Endurance Am. Specialty Ins. Co. v. WFP Sec. Corp., where the District Court of the Southern District of California held that summary judgment on the insurer's duty to defend was not premature, despite the insurer's rescission claim.  2012 WL 7808097, at *3 (S.D. Cal. Sept. 28, 2012).[3]  In Endurance, the insurer argued that summary judgment was premature because it had not been able to conduct discovery to obtain evidence that would preclude coverage.  Id.  Applying California law regarding the duty to defend, the court held that the insurer "was either aware of the evidence it now seeks in discovery at the time of tender or it was not.  It is not entitled to discovery to determine the existence of that evidence."  Id.  The court proceeded to decide the issue of the insurer's duty to defend on summary judgment.

The reasoning in Endurance is not inconsistent with the decisions in Rocklin and Atmel.  Unlike the insurer in Endurance, Liberty does not argue that the Motion

---

[3]Plaintiff also cites to cases from different jurisdictions holding that an insurer may be required to pay defense costs under a policy until the rescission action is determined.  (Reply at 5-7.)  Unlike Atmel and Rocklin, however, these cases do not apply California law.

MINUTES FORM 11                                    Initials of Deputy Clerk ___md____
CIVIL -- GEN                        Page 5

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

is premature because it needs more time for discovery in order to justify its decision to deny coverage.  As the court held in Endurance, any such argument by Liberty would be rejected.[4]  Instead, Liberty argues that the Policy is void and coverage was properly denied based on information in the invoices Ironwood submitted to Liberty for reimbursement.  Liberty has specifically identified sufficient evidence in support of its rescission defense to distinguish this action from Endurance.  Here, the Court's concern is not that more evidence is needed before a decision can be rendered, but rather, that it is inappropriate to decide whether there is a duty to defend under the Policy before deciding whether the Policy itself is void.[5]  Accordingly, the Court DENIES without prejudice Plaintiff's Motion as to the issue of Defendant's duty to defend.[6]

**B.    Summary Judgment on Whether the Pre-tender Invoices Are Privileged**

Ironwood seeks summary judgment on the issue of whether invoices sent to Liberty that were dated before May 5, 2012 ("Pre-tender Invoices") are privileged. Mr. Tanner, Ironwood's General Manager and Chief Operating Officer ("COO"), directed all of Ironwood's invoices for legal services, including the Pre-tender Invoices, to be sent to Liberty for the purposes of reimbursement.  Ironwood asserts the invoices are confidential communications protected by the attorney-client privilege.  (Mot. at 21.)  Ironwood argues that Mr. Tanner did not have the authority to waive the privilege because he did not have authorization from the Board of Directors.  (Id. at 23.)  Furthermore, Ironwood argues that even if there had been

_____

[4]The Court does not need to reach Ironwood's argument that it is entitled to discovery under Federal Rule of Civil Procedure 56(d) as to the duty to defend.  The Court notes that, to the extent Ironwood's request for additional discovery is made to find evidence to support the decision to rescind, this is not an appropriate basis for denying a motion for summary judgment as premature.  (See Opp'n. at 14.)

[5]The Court notes that Plaintiff did not move for summary adjudication of the rescission defense.

[6]As Liberty's duty to reimburse Ironwood for defense costs incurred in relation to the Cobb lawsuit hinges on whether Liberty has a duty to defend, the Court also DENIES without prejudice Ironwood's Motion in regard to reimbursement.

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

authorization, it did not waive the attorney-client privilege attached to the communications because the invoices were inadvertently disclosed without sufficient awareness of the relevant circumstances and the likely consequences.  (Id. at 22.) Ironwood seeks a judgment that, as a matter of law, the Pre-tender Invoices are privileged.

Liberty seeks discovery under Rule 56(d) in order to respond to Plaintiff's Motion.  On the merits, Liberty argues the Pre-tender Invoices are not confidential communications protected by the attorney-client privilege because they do not reveal Ironwood's litigation strategy.  (Opp'n. at 16.)  Even if the Pre-tender Invoices are privileged, Liberty argues that the privilege was waived because Ironwood voluntarily, and without coercion, submitted them directly to Liberty for reimbursement.  (Opp'n. at 17.)

### 1. Liberty's Federal Rule of Civil Procedure 56(d) Request

Liberty seeks discovery under Federal Rule of Civil Procedure 56(d) ("Rule 56(d)"), arguing that it is unable to respond to Plaintiff's Statement of Undisputed Facts because there has been no discovery beyond initial disclosures.  (Whittington Decl. ¶ 7.)

Under Rule 56(d), "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).

In Opposition, Liberty argues, "Ironwood's Motion is based on its Complaint and self-serving hearsay internal conversations regarding the Land Purchase Assessment issue and related communications with Gerstel contained in the Declarations of Ironwood personnel, its broker, and its attorney Gerstel, whose invoice entries are at the heart of the dispute . . . To the extent that the Court will rely on these statements to decide this Motion, Liberty should have the opportunity to conduct formal discovery on these discussions to oppose the Motion."  (Opp'n. at 14.)  Liberty does not specify what it seeks to discover, except to state that more information is needed to confirm actual discussions and the decision-making process

MINUTES FORM 11                                    Initials of Deputy Clerk ___md____
CIVIL -- GEN                          Page 7

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

related to Ironwood's decision to stop paying the Land Purchase Assessment.  (Id. at n. 26.)

In construing Rule 56(d)[7], the Ninth Circuit has indicated that the opposing party "must make clear what information is sought and how it would preclude summary judgment."  Garrett v. San Francisco, 818 F.2d 1515, 1518 (9th Cir. 2003).  "Ordinarily, summary judgment should not be granted when there are relevant facts remaining to be discovered, but the party seeking discovery bears the burden of showing what specific facts it hopes to discover that will raise an issue of material fact."  Harris v. Duty Free Shoppers Ltd. P'ship, 940 F.2d 1272, 1276 (9th Cir. 1991).

Liberty's rule 56(d) request is not sufficiently detailed to demonstrate what information, in relation to the privilege issue, Liberty seeks to discover that will raise an issue of material fact.  The Opposition only specifically references conversations regarding decisions about the Land Purchase Assessment, and does not mention conversations about the disclosure of the attorney invoices.  Furthermore, it is unclear whether the Rule 56(d) request was even made in relation to the privilege issue, or if Liberty only seeks additional discovery in relation to the duty to defend.  (See Opp'n. at 14 (Rule 56(d) request is a subheading under argument summary judgment on duty to defend is premature.))  Accordingly the Court denies Liberty's Rule 56(d) request and will decide the Motion as to the privilege issue as submitted.

## 2.     Undisputed Facts and Evidentiary Rulings

Both sides cite facts that are not relevant to resolution of the privilege issue.  To the extent certain facts are not mentioned in this Order, the Court has not relied on them in reaching its decision.  The Court has considered the evidentiary objections filed by each party and independently examined the admissibility of the evidence offered by both sides in support of, and opposition to, the Motion.  See Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only

---

[7]In 2010 Federal Rule of Civil Procedure 56 was amended.  After the amendment, Federal Rule of 56(d) "carries forward without substantial change the provisions of former subdivision(f)."  2010 Advisory Committee Notes on Rules.  Accordingly, case law interpreting Rule 56(f) prior to the 2010 amendment is applicable to the interpretation of Rule 56(d).

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

consider admissible evidence in ruling on a motion for summary judgment.")  The Court has not considered facts that are irrelevant or based upon inadmissible evidence.  The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of this Motion.  See Local Rule 56-3.

As an initial matter, the Court notes that Defendant has responded to many of facts in PSUF as "disputed" because "Defendant lacks sufficient information to form a belief as to the truth or falsity of the asserted fact as the Parties have not conducted discovery other than their Rule 26(a) exchange."  See e.g., SGI ¶ 29.  As the Court has denied Defendant's Rule 56(d) request, and Defendant has failed to offer any evidence to dispute these facts, the Court deems these facts undisputed for the purposes of this Motion.

On August 21, 2012, Mr. Cobb filed a lawsuit against Ironwood alleging claims arising from the Ironwood's Board of Director's decision to stop repaying a $25,500.00 "Land Purchase Assessment" to members who forfeited their club memberships.  (PSUF ¶ 26.[8])  On September 13, 2012, Liberty informed Ironwood's insurance broker, Mr. Lux, that it would defend Ironwood in the Cobb lawsuit.  (PSUF ¶ 27.[9])  Liberty requested copies of the bills that Ironwood had received for legal fees and costs incurred in connection with the Cobb matter.  (PSUF ¶ 28.[10])  Liberty

─────────────────

[8]Defendant does not dispute this fact, but objects to Tanner Decl. ¶ 16 as lacking foundation and Lux Decl. ¶ 16 as inadmissible hearsay.  The Court does not reach these objections as it has reviewed the Cobb Complaint which provides sufficient support for this fact.

[9]Defendant does not dispute this fact, but objects to Lux Decl. ¶ 17 as inadmissible hearsay.  The Court overrules this objection because the statement is offered for the effect on the listener, not for the truth of the matter asserted.

[10]Defendant does not dispute this fact, but objects to Lux Decl. ¶ 17 as
(continued...)

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

indicated that it needed to review the bills to assess how much Ironwood would be reimbursed.  (Lux. Decl. ¶ 17.)  On September 13, 2012, Mr. Lux asked Mr. Tanner, Ironwood's General Manager and COO, to send him "copies of any and all bills that Ironwood received in the Cobb matter."  (PSUF ¶ 29; Tanner Decl. ¶¶ 2, 17.[11])  As COO and General Manager, Mr. Tanner is responsible for the marketing and procurement of insurance policies for Ironwood and for working with Mr. Lux with respect to handling claims and suits against Ironwood.  (Tanner Decl. ¶ 2.)  In addition, Mr. Tanner reviews all invoices that Ironwood receives for legal services.  (Tanner Decl. ¶ 18.[12])  Copies of Ironwood's invoices for legal services are maintained by Ironwood's accounting department.  (Tanner Decl. ¶ 18.)

In response to Mr. Lux's request for Ironwood's invoices for legal fees and costs in connection with the Cobb matter, Mr. Tanner directed Ironwood's accounting department to forward "all of the invoices for legal services" to Mr. Lux.  (Tanner Decl. ¶ 19.[13])  Mr. Lux did not advise Mr. Tanner to include only invoices dated after

---

[10](...continued)
inadmissible hearsay.  The Court overrules this objection.  (See n. 9.)

[11]Defendant raises a Rule 56(d) objection to this fact.  Defendant also objects to Lux Decl. ¶ 17, which the Court overrules.  (See n. 9.)

[12]Defendant objects to Tanner Decl. ¶ 18, as inadmissible hearsay.  The basis for this objection is unclear, but to the extent Defendant is objecting to the general use of a Declaration as inadmissible hearsay, the Court notes that under Federal Rule of Civil Procedure 56(c)(A), a party may cite to Declarations in support of a motion for summary judgment.  The objection is overruled.

[13]Defendant objects to Tanner Decl. ¶ 19 as inadmissible hearsay.  The Court overrules this objection because any hearsay statements in Tanner Decl. ¶ 19 are
(continued...)

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

May 2012, when Liberty received the Cobb claim.  (Tanner Decl. ¶ 19.)  Mr. Tanner claims he did not understand that Liberty was "only asking for bills reflecting legal fees incurred in defense of the Cobb claim."  (Tanner Decl. ¶ 19.)

On September 13, 2013, Mr. Lux sent Liberty all the invoices he received from Ironwood's accounting department.  (PSUF ¶ 33.[14])  Mr. Lux did not review the invoices before sending them to Liberty.  (Lux Decl. ¶ 18.)

The invoices from Mr. Gerstel, Ironwood's counsel, that were sent to Liberty included several Pre-tender invoices dated before May 5, 2012.  (PSUF ¶ 38.[15])

---

[13](...continued)
offered for the effect on the listener, not for the truth of the matter asserted.

[14]Defendant does not dispute this fact, but objects to Lux Decl. ¶ 18 as inadmissible hearsay.  The Court sees no basis for this objection as it relates to PSUF ¶ 33 and overrules this objection because any hearsay statements in Lux Decl. ¶ 18 are offered for the effect on the listener, and not the truth of the matter asserted.

[15]Defendant raises a Rule 56(d) objection to this fact.  Defendant also objects to Tanner Decl. ¶ 20 and Gerstel Decl. ¶ 11 as inadmissible hearsay.  The Court sustains the objections to Gerstel Decl. ¶ 11, p. 3, ln. 24- p. 4, ln. 5 and to Tanner Decl. ¶ 20.  The Court finds, however, that the Exhibit 1 to the McLeod Decl. provides sufficient evidentiary support for the fact that invoices dated prior to May 5, 2012 were sent to Liberty.  The Court also sustains Defendant's objections to Tanner Decl. ¶¶ 23 (ln. 20-26) 24 (ln. 1-5.), Gerstel Decl. ¶¶ 16, 17 as inadmissible hearsay.  Accordingly, although PSUF ¶¶ 50 and 53, which state the specific invoices that were sent to Liberty, are undisputed, no admissible evidence has been
(continued...)

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

Mr. Tanner claims the Pre-tender Invoices were not provided to Liberty with any intention of waiving the attorney-client privilege.  (PSUF ¶ 42.[16])  Mr. Tanner did not request authority from the Board of Directors to waive any privileges applicable to the Pre-tender Invoices.  (PSUF ¶ 45.[17])  According to Mr. Tanner, of the invoices sent to Liberty, the Post-tender Invoices are the only invoices that should have been submitted.  (PSUF ¶ 52.[18])

On October 25, 2012, Liberty sent a letter to Ironwood agreeing to pay Ironwood's counsel, Mr. Gerstel, to defend Ironwood in the <u>Cobb</u> lawsuit subject to

---

[15](...continued)
provided in support of them.  The Court notes that to address this issue, Ironwood could have provided redacted copies of the attorney invoices that were sent to Liberty.

[16]Defendant objects to this fact under Rule 56(d) and because it is a conclusion of law.  Defendant also objects to Tanner Decl. ¶ 21 as improper lay witness and expert testimony.  The Court has modified the language in the statement of undisputed facts to address the evidentiary objection.

[17]Defendant objects to this fact under Rule 56(d).  Defendant also objects to Tanner Decl. ¶ 26 and Manion Decl. ¶ 12, ln. 8-11 as inadmissible hearsay and improper lay witness/ expert testimony.  The Court overrules the hearsay objection and has modified the language in the statement of undisputed facts to address the other evidentiary objections.

[18]Defendant objects to this fact under Rule 56(d) and because it is a conclusion of law.  Defendant also objects to Tanner Decl. ¶ 25 as improper lay witness/ expert testimony and inadmissible hearsay.  The Court overrules the hearsay objection has modified the language in the statement of undisputed facts to address the other evidentiary objections.

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

the reservation of Liberty's rights under the Policy.  (PSUF ¶ 37; DSUF ¶ 3[19]; Ex. 8 to Lux. Decl. ("October Letter").)  The October Letter directs Ironwood's attention to the "Application for Nonprofit Executive Advantage Policy" that Ironwood submitted. (PSUF ¶ 2; Ex. 1 to Tanner Decl. ("Application").)  Question 14 of the Application ("Prior Knowledge Question") asks: "Does anyone for whom insurance is sought have any knowledge or information of any act, error, omission, fact, or circumstances which may give rise to a Claim which may fall within the scope of the proposed insurance?"  (Application at 2; DSUF ¶ 2.)  The October Letter identifies Mr. Gertsel's invoices dated September 6, 2011 and October 13, 2011 and suggests that in light of the information in these invoices, Ironwood's answer to the Prior Knowledge Question on the Application may be inaccurate.  (DSUF ¶¶ 6-9; October Letter at 7, 10-11.)  The October Letter asks for additional information regarding these invoices and reserves Liberty's rights pursuant to sections 6.1 and 6.2 of the Policy.[20]  (DSUF

------------------

[19]Plaintiff has objected to all of Defendant's Statements of Undisputed Fact as hearsay and barred by the best evidence rule on the ground that Liberty is attempting to summarize the contents of documents.  See generally Pl.'s Evid. Objs. The Court has reviewed and cited directly to the documents referenced in DSUF and provides the citation to DSUF only for additional reference.

[20]Section 6 of the Policy, entitled "Application Representations and Severability," provides:

6.1.   The Insureds represent that the statements and representations contained in the Application are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insurer under this Policy.  This Policy is issued in reliance upon the truth of such statements and representations.

6.2.   The Insureds agree that if the Application contains any statements or representations that are untrue, this Policy shall be void as to the Insured Organization and any Insured Person who knew the facts that

(continued...)

MINUTES FORM 11                                    Initials of Deputy Clerk ___md____
CIVIL -- GEN                          Page 13

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

¶ 3; October Letter at 7.)

Mr. Gerstel became aware that Mr. Lux had sent Liberty copies of the Pre-tender Invoices after Ironwood received the October Letter from Liberty.  (PSUF ¶ 38.[21])  In the past, Mr, Gerstel and Ironwood have always kept the Pre-tender Invoices confidential as part of the attorney-client relationship.  (PSUF ¶ 41.[22])  The Pre-tender invoices were sent to Liberty without Mr. Gerstel's knowledge or authorization.  (PSUF ¶¶ 47, 48.[23])

Beginning on December 10, 2012, Ironwood has made several written requests

_____

[20](...continued)
were not truthfully disclosed, provided that such knowledge shall not be imputed to any other Insured Person.
(See Ex. 2 to Tanner Decl. ("Nonprofit Executive Advantage Policy") at 4.)

[21]Defendant objects to this fact under Rule 56(d).  Defendant also objects to Gerstel Decl. ¶ 11 as inadmissible hearsay.  The Court overrules this objection as to PSUF ¶ 38 because this fact does not depend on hearsay statements within Gerstel Decl. ¶ 11.

[22]Defendant objects to this fact under Rule 56(d).  Defendant also objects to Gerstel Decl. ¶ 13 as inadmissible hearsay and Tanner Decl. ¶ 21 as improper lay witness/ expert testimony.  The Court overrules these objections as to PSUF ¶ 41 because the statements relied on describe, based on their personal knowledge, Tanner's and Gerstel's typical custom and practice as to Ironwood's attorney invoices and are not hearsay.

[23]Defendant objects to these facts under Rule 56(d).  Defendant also objects to Gerstel Decl. ¶ 13 as inadmissable hearsay.  The Court overrules the objection as the statement these facts rely on in Gerstel Decl. ¶ 13 is not hearsay.  (See Gerstel Decl. ¶ 13: "The Pre-Tender Invoices were sent to Liberty without my knowledge, approval, or authorization.")

MINUTES FORM 11                                      Initials of Deputy Clerk ___md____
CIVIL -- GEN                        Page 14

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

asking Liberty to return the Pre-tender Invoices because they are privileged and to destroy any copies of those invoices.  (PSUF ¶¶ 56-57.)  Liberty has not returned or agreed to destroy any copies of the Pre-tender Invoices. (PSUF ¶¶ 58-59.)[24]

### 3.   Attorney Client Privilege

Federal Rule of Evidence 501 provides that in "a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. § 501.  The court has diversity jurisdiction over this action, and accordingly, California state law governs the privilege issue.  See Star Editorial, Inc. v. U.S. Dist. Court for Cent. Dist. of Cal., 7 F.3d 856, 859 (9th Cir. 1993); Flores v. Albertson's, Inc., 2004 WL 3639290, at *1 (C.D. Cal. Apr. 9, 2004).

### i.   Confidential Communications

Under California Evidence Code section 952, a "confidential communication between client and lawyers" is "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."  Cal. Evid. Code § 952.  The attorney-client privilege applies "not only to communications made in anticipation of litigation, but also to legal advice when no litigation is threatened."  Roberts v. City of Palmdale, 5 Cal. 4th 363, 371 (1993); STI Outdoor v. Superior Court, 91 Cal. App. 4th 334, 341 (2001) (privilege not limited to "litigation-related communications").

---

[24]Defendant does not dispute PSUF ¶¶ 56-59, but objects to Tanner Decl. ¶ 22 as lacking foundation and Gerstel Decl. ¶ 15 as inadmissible hearsay.  The Court sustains these objections, however, the other evidence Plaintiff cites provide sufficient support for these facts.  (See Exs. 1, 2, 5, 6, 10, 13 to McLeod Decl.)

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

California courts have recognized that information contained in attorney invoices and billing statements may be protected by an attorney-client privilege.  See Maughan v. Google Tech., Inc., 143 Cal. App. 4th 1242, 1256 (2006) (acknowledging redaction of attorney invoices to protect attorney-client privilege).  Indeed, attorney invoices are typically redacted to keep information; e.g., research on particular areas of law, confidential.  Here, the invoices were not redacted before they were sent to Liberty, and included detailed descriptions of the legal issues Mr. Gerstel researched on behalf of Ironwood.  Thus, the Pre-tender Invoices are confidential communications that, absent waiver, are protected by the attorney-client privilege.

### ii.    Authority to Waive

Mr. Tanner and Mr. Manion stated in their declarations that as Ironwood's General Manager and COO, Mr. Tanner does not have the authority to waive any privilege.  (PSUF ¶ 43.)  According to Mr. Tanner and Mr. Manion, any waiver of attorney-client privilege requires authorization from the Board of Directors.  (PSUF ¶ 44.)  Ironwood argues that Mr. Tanner did not obtain authority from the Board to waive any privileges applicable to the Pre-tender Invoices.  (PSUF ¶ 46.[25])  Thus, Ironwood argues, disclosure of the Pre-tender Invoices was unauthorized, and does not constitute waiver.

Ironwood, as a corporate client, is the holder of the attorney-client privilege.  See D. I. Chadbourne, Inc. v. Superior Court of City & Cnty. of San Francisco, 60 Cal. 2d 723, 732 (1964) (recognizing corporations may be clients for purposes of attorney-client privilege); Titmas v. Superior Court, 87 Cal. App. 4th 738, n.1 (2001).  Corporations, however, must act through individual persons, and accordingly corporate officers are generally authorized to assert the attorney-client privilege on behalf of the corporation.  See Nat'l Football League Properties, Inc. v. Superior Court, 65 Cal. App. 4th 100, 111 (1998) (officers were entitled to assert corporation's

---

[25]Defendant objects to PSUF ¶¶ 43, 44, 46 as legal conclusions.  The Court has not included these "facts" in the undisputed statement and instead treats them as argument.

attorney-client privilege without authorization from the Board of Directors); William Wegner et. al., Rutter Group California Practice Guide Civil Trials & Evidence, § 8:2051.1 ("the client is a corporation, it alone (through its officers and directors) is the holder of the privilege and it alone may waive the privilege.")  Under California Evidence Code section 912, the holder of the privilege has the power to waive the privilege.  See Cal. Evid. Code. § 912; Favila v. Katten Muchin Rosenman LLP, 188 Cal. App. 4th 189, 218 (2010) ("The corporation . . . is the holder of the [attorney-client] privilege and the only party who can waive the privilege.").  Thus, "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." Venture Law Grp. v. Superior Court, 118 Cal. App. 4th 96, 105 (2004) (quoting Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348–349 (1985)); Reilly v. Greenwald & Hoffman, LLP, 196 Cal. App. 4th 891, 902-03 (2011) ("absent a waiver of the attorney-client privilege by someone authorized to make it on [the corporation's] behalf").

Mr. Tanner is Ironwood's COO and General Manager, and as part of his overall responsibilities he works with Ironwood's insurance broker, Mr. Lux, to procure insurance policies, handle claims and suits against Ironwood, and to provide notice of any claims and suits to insurance carriers.  (Tanner Decl. ¶ 2.)  As a corporate officer, Mr. Tanner is authorized to waive the attorney-client privilege.  Mr. Tanner was acting within the scope of his authority when he directed the invoices to be sent, and accordingly, had the authority to waive the attorney-client privilege.

### iii.    Waiver of Attorney-Client Privilege

Waiver of the attorney-client privilege is defined by statute.  California Evidence Code section 912(a) provides that an attorney-client privilege may be waived if its holder, without coercion, discloses a significant part of the communication or has consented to a disclosure.  Cal. Evid. Code § 912(a); Glade v. Superior Court, 76 Cal. App. 3d 738, 744 (1978) (document is privileged until the holder voluntarily discloses a substantial part of the privileged communication or otherwise unambiguously manifests his consent for disclosure by others) (emphasis added); Terrebonne, Ltd. of California v. Murray, 1 F. Supp. 2d 1050, 1059 (E.D. Cal. 1998)

(applying California law).  Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure.  Cal. Evid. Code § 912(a)

Ironwood, the holder of the attorney-client privilege[26], voluntarily[27] sent the

_____

[26]When someone other than the holder of the privilege, such as the attorney, discloses privileged material, courts look to whether the client manifested consent to the attorney's or third-party's disclosure.  The court analyzes "the subjective intent of the holder of the privilege and the relevant surrounding circumstances for any manifestation of the holder's consent to disclose the information."  State Comp. Ins. Fund, 70 Cal. App. 4th at 653.  Accordingly, courts are less likely to find a client consented to disclosure, when an attorney or a third-party intentionally (or inadvertently) disclosed privileged information.  See id. ("waiver" does not include accidental, inadvertent disclosure of privileged information by the attorney); People v. Gardner, 151 Cal. App. 3d 134, 141 (1984) (physician-patient privilege precludes a court disclosure of a communication, even though there has been an accidental or unauthorized out-of-court disclosure of such communication by hospital or probation officer).

[27]Disclosures made in response to discovery requests have been interpreted as involuntary, and thus inadvertent discloses of privileged information in this context is less likely to constitute waiver.  See American Mutual Liability Ins. Co. v. Superior Court, 38 Cal. App. 3d 579 (1974) (attorney-client privilege not waived by attorney's inadvertent production of files in response to a subpoena duces tecum because production not voluntary); O'Mary v. Mitsubishi Electronics Am., Inc., 59 Cal. App. 4th 563, 577 (1997) ("discovery is coercion.  The force of law is being brought upon a person to turn over certain documents.  Inadvertent disclosure during discovery by no stretch of the imagination shows consent to the disclosure: It merely demonstrates that the poor paralegal or junior associate who was lumbered with the tedious job of going through voluminous files and records in preparation for

(continued...)

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

attorney invoices to Liberty for reimbursement.  Ironwood does not claim it was unaware that it was sending attorney invoices, or that it did not know the invoices would be reviewed by Liberty for the purposes of reimbursement.  When, as is the case here, the holder of the privilege voluntarily discloses privileged documents, there is no requirement the holder possess a specific intent to waive the privilege.[28] Indeed, under California law, a corporation may waive the attorney-client privilege when it voluntarily discloses documents to a third party, even if the disclosure is subject to a confidentiality agreement.  See McKesson HBOC, Inc. v. Superior Court, 115 Cal. App. 4th 1229, 1236 (2004).  In McKesson, a corporation voluntarily disclosed a privileged audit committee report and interview memoranda to the United States Attorney and the Securities Exchange Commission ("SEC") under an agreement stating that it did not intend to waive the attorney-client privilege, but allowing the Government to disclose the documents under certain circumstances.  Id. at 1234. The court found that the documents were privileged, but that McKesson waived the attorney-client privilege by voluntarily disclosing the documents to the Government.[29]  Id. at 1238; see also DeFrees v. Kirkland, 2012 WL 1356495, at *9-

———————————

[27](...continued)
a document production may have missed something.  O'Mary invites us to adopt a "gotcha" theory of waiver, in which an underling's slip-up in a document production becomes the equivalent of actual consent.  We decline.  The substance of an inadvertent disclosure under such circumstances demonstrates that there was no voluntary release.").

[28]Generally, "waiver" is defined as the "intentional relinquishment of a known right."  Platt Pac., Inc. v. Andelson, 6 Cal. 4th 307, 315 (1993).  Some California courts have applied this definition of waiver when analyzing whether there is "consent to disclosure" under section 912(a).  See State Comp. Ins. Fund v. WPS, Inc., 70 Cal. App. 4th 644, 653 (1999) (citing Platt in context of waiver of attorney-client privilege).

[29]The Court rejected the argument that section 912(d), which allows disclosure
(continued...)

EDCV 13-00996-VAP (DTBx)
IRONWOOD COUNTRY CLUB v. LIBERTY INSURANCE UNDERWRITERS, INC. AND DOES 1 THROUGH 100
MINUTE ORDER of March 24, 2014

13 (C.D. Cal. Apr. 11, 2012) (corporation's voluntary disclosure of privileged legal memoranda to the full board, other companies, and the SEC waived attorney-client privilege).

Ironwood argues that, although its disclosure of the Pre-tender Invoices to Liberty was uncoerced, the waiver was not "voluntary" or done with "sufficient awareness of the relevant circumstances and likely consequences."  (See Mot. at 22 (citing Roberts v. Superior Court, 9 Cal. 3d 330, 343 (1973) ("The waiver of an important right must be a voluntary and knowing act done with sufficient awareness of the relevant circumstances and likely consequences.))).  This standard, however, has generally been applied to waiver by consent to disclose, and specifically to consent to waive provisions in contracts.  See Roberts, 9 Cal. 3d at 343 ("a form consent by the patient-litigant waiving her privilege is to be strictly construed against the insurance company supplying the form so that the waiver encompasses only that which clearly appears on its face"); Maas v. Mun. Court, 175 Cal. App. 3d 601, 606 (1985) (no consent to disclosure in written immunity agreement).  When a person waives a privilege by signing a contract, it must be a voluntary and knowing act done with sufficient awareness of the relevant circumstances and likely consequences. Accordingly, waiver of privilege based on a contractual provision must be unambiguous and only applies what is clearly covered on the face of the contract. See Roberts, 9 Cal. 3d at 343 ; Maas, 175 Cal. App. 3d at 606 (consent to disclosure may be made in advance by contract but must be "unambiguously manifested"). Here, Plaintiff voluntarily and without coercion disclosed the documents; thus, the standard for consent to disclosure is not applicable.

California courts have made exceptions when voluntary disclosure of

_____

[29](...continued)
without waiving the attorney-client privilege "when disclosure is reasonably necessary for the accomplishment of the purpose" for which the lawyer was consulted, applied to McKesson's disclosure to the Government.

MINUTES FORM 11                                    Initials of Deputy Clerk ___md____
CIVIL -- GEN                        Page 20

documents was made under the mistaken belief that disclosure was required by law. See Wells Fargo Bank v. Superior Court, 22 Cal. 4th 201, 211-12 (2000) (trustee's uncoerced disclosure of confidential documents to beneficiaries did not waive privilege because disclosure was made under the mistaken belief it was required by its duty to report trust administration matter to the beneficiaries.); BP Alaska Exploration, Inc. v. Superior Court, 199 Cal. App. 3d 1240, 1252 (1988) (No consent to disclose when concession that the crime-fraud exception applied to attorney work product was based on "erroneous legal conclusion under which both parties and the court labored rather than an intentional and knowing relinquishment.").  Here, there is no indication that Ironwood believed it was required by law to send the Pre-Tender Invoices.  Instead, it was sending the invoices for the purpose of reimbursement.

Accordingly, based on the undisputed facts, the Court cannot find that as a matter of law, the Pre-tender Invoices are protected by the attorney-client privilege. . Accordingly, the Court DENIES Plaintiff's Motion as to the privilege issue.  Under Federal Rule of Civil Procedure 56(f)(2) , the Court may grant summary judgment for a nonmoving party after giving notice and a reasonable time to respond, however, the Court declines to do so in this matter.

## IV. CONCLUSION

For the foregoing reasons, the Court:

(1) DENIES without prejudice Plaintiff's Motion as to Defendant's duty to defend and obligation to reimburse Plaintiff for defense fees and costs as premature;

(2) DENIES Plaintiff's Motion as to whether the Pre-tender Invoices are privileged.

**IT IS SO ORDERED.**